**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946-1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

WRITER'S DIRECT DIAL NUMBER
(212) 373-3355

WRITER'S DIRECT FACSIMILE
(212) 492-0355

WRITER'S DIRECT E-MAIL ADDRESS
msilverman@paulweiss.com

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
ERIC S GOLDSTEIN
ERIC GOODISON
CHARLES H GOOGE, JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY, III
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
ROBERT M HIRSH
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
LORETTA A IPPOLITO
JAREN JANGHORBANI

MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
JEFFREY B SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JAMES H SCHWAB
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
MARILYN SOBEL
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS, JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI, JR

*NOT ADMITTED TO THE NEW YORK BAR

May 30, 2014

**Via ECF and Hand Delivery**
The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Castel:

*Sullivan* v. *Barclays PLC et al.*, No. 13-cv-2811

   This letter is submitted on behalf of all Defendants pursuant to this Court's March 7, 2014 Scheduling Order. All Defendants intend to move to dismiss Plaintiffs' Second Amended Complaint ("SAC") on all or some of the following grounds:[1]

   Plaintiffs' primary **Commodity Exchange Act ("CEA") claims** fail for five reasons, each of which requires dismissal.[2]

   *First*, Plaintiffs' CEA claims are barred by the applicable two-year statute of limitations because (i) widely publicized news reports and other public information put Plaintiffs on inquiry notice of their potential claims more than two years before they brought suit, and (ii) Plaintiffs' conclusory allegations of fraudulent concealment are deficient. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR I*), 935 F. Supp. 2d 666, 704, 710-11 (S.D.N.Y. 2013).

   *Second*, Plaintiffs' LIFFE futures claims call for an impermissible extraterritorial application of the CEA. *See Loginovskaya* v. *Batratchenko*, 936 F. Supp. 2d 357, 366, 372 (S.D.N.Y. 2013) (citing *Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

---

[1] Defendants reserve the right to assert the lack of personal jurisdiction as a defense to the SAC.
[2] Because Plaintiffs fail to allege adequately a primary violation of the CEA, Plaintiffs' derivative claims for aiding and abetting and principal-agent liability should be dismissed.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. P. Kevin Castel                                                                                    2

Plaintiffs allege no facts showing that they purchased LIFFE futures on a domestic exchange or through domestic transactions. Indeed, they plead the opposite. (*See* SAC ¶¶ 77-87; *id.* Ex. A-3 ¶¶ 4, 40.) Plaintiffs' allegations that "U.S. investors" were able to trade LIFFE futures "by accessing NYSE LIFFE connect terminals in the U.S." (*id.* ¶ 81) are irrelevant. *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 2014 WL 1778041, at *4 (2d Cir. May 6, 2014) (purchaser's U.S. citizenship and placement of order from U.S. do not render foreign transaction domestic under *Morrison*).

*Third*, Plaintiffs lack standing because the CEA provides only a limited private right of action to those persons harmed by "manipulation of the price of" futures contracts or "the price of the commodity underlying such contract." 7 U.S.C. § 25(a)(1)(D)(ii). Euribor is neither the "commodity" nor the "price of the commodity" underlying LIFFE and CME futures. The commodity underlying LIFFE futures is a Euro time deposit—€1,000,000 to be delivered in three months. *Cf. LIBOR I*, 935 F. Supp. 2d at 719-20. And Plaintiffs concede that the commodities underlying CME futures are Euros and U.S. Dollars—not Euribor. (*See* SAC ¶¶ 105, 124.) Because Plaintiffs fail to plead that Defendants manipulated the price of the commodities underlying the CME and LIFFE futures, Plaintiffs have standing to sue under the CEA only insofar as they can plead that Defendants manipulated the prices of the CME and LIFFE futures contracts themselves. Plaintiffs have not done so.[3]

*Fourth*, Plaintiffs fail to allege adequately specific intent—that each Defendant acted with the purpose or conscious object of affecting the price of CME and LIFFE futures. *In re Commodity Exch. Inc. Silver Futures & Options Trading Litig.*, 2014 WL 1243851, at *2 (2d Cir. Mar. 27, 2014). Plaintiffs allege no facts to suggest that any Defendant acted with intent to alter the price of CME futures, and Plaintiffs' speculative assertions regarding LIFFE futures are also insufficient. Allegations that Defendants acted with intent to influence Euribor (*e.g.*, SAC ¶¶ 179, 253, 330), coupled with allegations that the price of CME and LIFFE futures are linked to Euribor (*id.* ¶¶ 111, 114-41), fail to state a claim. *See In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *7 (N.D. Ill. Feb. 9, 2012).

*Fifth*, Plaintiffs fail to allege "actual damages" that were "proximately caused" by Defendants' alleged conduct. *S & A Farms, Inc.* v. *Farms.com, Inc.*, 678 F.3d 949, 953-54 (8th Cir. 2012). Plaintiffs allege Euribor manipulation that is episodic and varying in directions. (*See* SAC ¶¶ 130-40.) But Plaintiffs fail to plead facts showing (i) that they transacted in futures "on days on which . . . prices were artificial," and (ii) "that their positions were such that they were injured" as a result of the alleged misconduct. *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR II*), 962 F. Supp. 2d 606, 620-21 (S.D.N.Y. 2013). Thus, Plaintiffs' CEA claims should be dismissed for failure to adequately allege actual damages and causation.

Plaintiffs' **Sherman Act claim** is equally defective and should be dismissed on the basis of any one of several independently sufficient grounds.

---

[3]   Plaintiffs also lack standing to assert any claim based on "a purchase or sale of an interest rate swap, forward rate agreement or other financial instrument benchmarked, priced and/or settled to Euribor" (SAC ¶ 394), because they do not allege that they transacted in such instruments.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. P. Kevin Castel                                                                                                 3

*First*, Plaintiffs fail to allege "enough factual matter (taken as true)" to render plausible whatever antitrust conspiracy or conspiracies they intend to allege. *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007). If Plaintiffs mean to allege ad hoc efforts to coordinate Euribor submissions (*see, e.g.*, SAC ¶ 423), then the claim should be dismissed because Plaintiffs fail to allege which Defendants participated in which purported agreements at which times. If Plaintiffs intend to allege a "continuing agreement" among all Defendants (*id.* ¶ 424), then the claim should be dismissed because Plaintiffs fail to plausibly allege the nature of that agreement, when it was made, or even how such an agreement could be maintained among all Defendants over so many years.

*Second*, Plaintiffs fail to plead any reduction in competition, because setting Euribor is a cooperative process. Two judges have now confirmed this conclusion in connection with LIBOR and TIBOR, which are set using processes that are materially indistinguishable from those used to set Euribor. *See LIBOR I*, 935 F. Supp. 2d at 687-95; *LIBOR II*, 962 F. Supp. 2d at 627-28; *Laydon* v. *Mizuho Bank Ltd.*, 2014 WL 1280464, at *8, *10-*12 (S.D.N.Y. Mar. 28, 2014). Plaintiffs' Sherman Act claim fails both because (i) they do not plead a restraint of trade, and (ii) they cannot trace any alleged injury to a reduction in competition, and thus lack antitrust standing.

*Third*, Plaintiffs also lack antitrust standing because they are not "efficient enforcer[s]" of the antitrust laws given the indirect and highly speculative nature of any alleged injuries. *Laydon*, 2014 WL 1280464, at *9-*10. The SAC does not allege that Sullivan suffered any financial loss on his alleged LIFFE futures positions as a result of any alleged misconduct. (*See, e.g.*, SAC ¶ 42.) As for his alleged CME futures positions, these instruments do not reference Euribor, and the SAC itself pleads a "weak positive correlation" between Euribor and the price of these instruments. (*Id.* ¶ 122.) There is no detail at all about White Oak's alleged LIFFE futures positions. (*Id.* ¶ 43.) Further, assessing Plaintiffs' purported injuries would engage the Court in the speculative exercise of reconstructing "but for" Euribor submissions to determine what Euribor "should" have been and then somehow controlling for the responses of other market participants and other intervening factors—such as the price of Euro cash, which Plaintiffs themselves have identified in the SAC. (*See id.* ¶ 123.) Where, as here, a "theory of antitrust injury depends upon a complicated series of market interactions," the damages are speculative, and Plaintiffs lack antitrust standing. *Laydon*, 2014 WL 1280464, at *10.

*Fourth*, Plaintiffs' antitrust claim is barred by the Foreign Trade Antitrust Improvements Act, which prohibits claims based on foreign conduct absent a "direct, substantial, and reasonably foreseeable effect" on domestic commerce. 15 U.S.C. § 6a. Plaintiffs allege sporadic efforts to coordinate submissions to a foreign banking association relating to foreign transactions in a foreign currency, and that this purported coordination affected instruments traded on a foreign exchange (the London-based LIFFE) or otherwise had a highly-attenuated effect on CME futures that do not even reference Euribor. With respect to the LIFFE transactions, Plaintiffs' U.S. nationality is irrelevant, because allegations that "supra-competitive prices were paid by persons in the United States" do not establish a direct effect on domestic commerce. *McLafferty* v. *Deutsche Lufthansa A.G.*, 2009 WL 3365881, at *4 (E.D. Pa. Oct. 16, 2009) (internal quotations omitted). And with respect to the CME transactions, Plaintiffs' own allegations establish the tenuous causal relationship between Euribor rates and Euro

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. P. Kevin Castel                                                                                          4

currency futures prices. *See Lotes Co.* v. *Hon Hai Precision Indus. Co.*, 2013 WL 2099227, at *7 (S.D.N.Y. May 14, 2013) (requiring the domestic effect to follow "as an immediate consequence" of defendants' activity).

      Plaintiffs' **Racketeer Influenced and Corrupt Organizations Act ("RICO") claims** should also be dismissed for the following reasons:

      *First*, Plaintiffs' RICO claims are impermissibly extraterritorial. The Second Circuit recently held that the reach of the RICO statute is co-extensive with the reach of the statute governing the alleged predicate acts. *European Cmty.* v. *RJR Nabisco, Inc.*, 2014 WL 1613878, at *7 (2d Cir. Apr. 23, 2014). The statute governing the alleged predicate here, wire fraud, (SAC ¶ 442), does not have extraterritorial reach. *Id.* at *8-*9. Nor do Plaintiffs adequately allege that Defendants engaged in domestic wire fraud: (i) knowing participation in, (ii) a scheme to defraud, (iii) to get money or property, (iv) that is furthered by the use of interstate wires. *United States* v. *Pierce*, 224 F.3d 158, 165 (2d Cir. 2000); *Chanayil* v. *Gulati*, 169 F.3d 168, 170-71 (2d Cir. 1999). Plaintiffs do not allege that the purported scheme was conceived in the U.S., that any alleged acts in furtherance of the scheme were carried out in the U.S., or that U.S. "money or property" was the objective of the alleged scheme, and they fail to allege a single use of the U.S. wires in furtherance of the scheme. Plaintiffs' vague allegation that materials passed through U.S. electronic servers, (SAC ¶ 442), falls far short of establishing the substantial domestic nexus necessary. Plaintiffs' claim that Defendants conspired to carry out these acts, (SAC ¶ 447), is equally extraterritorial and fails for the same reasons.

      *Second*, Plaintiffs lack standing. Courts scrutinize RICO standing using the same analytical framework employed in determining antitrust standing. *See Holmes* v. *Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Thus, Plaintiffs lack RICO standing for the same reasons that they are not "efficient enforcers" of the antitrust laws. Further, to have standing, Plaintiffs must show that they were the "intended targets of the RICO violations" and that the alleged RICO injury was the "preconceived purpose" of the RICO activities. *G-I Holdings, Inc.* v. *Baron & Budd*, 238 F. Supp. 2d 521, 549 (S.D.N.Y. 2002). The SAC is devoid of any facts that would support these elements.

      *Third*, Plaintiffs fail to plead each element of wire fraud with the particularity required by Fed. R. Civ. P. 9(b). *DiVittorio* v. *Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). At minimum, Plaintiffs must allege the contents of the communication, the parties involved, and where and when the communications took place. *Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). Plaintiffs' allegations, however, consist primarily of citations to instant messages excerpted in regulatory settlements, many of which are internal communications that involved only one Defendant or are communications between one Defendant and non-parties. Plaintiffs also fail to provide specific details such as where these alleged communications took place. Moreover, the SAC is silent as to the intent to defraud, as well as any predicate acts allegedly committed by numerous Defendants. Because Plaintiffs' pleading as to the predicate acts is inadequate, they also cannot make the required showing that there was a "pattern" of racketeering activity.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. P. Kevin Castel                                                                                                              5

   *Fourth*, the RICO Amendment to the PSLRA, 18 U.S.C. § 1964(c), is a far-reaching bar on "civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant." *MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011); *see also LIBOR I*, 935 F. Supp. 2d at 726 (same). Plaintiffs cannot avoid the RICO Amendment through artful pleading. *Id.*

   *Fifth*, Plaintiffs' allegations are insufficient to support a claim of RICO conspiracy. The core of a RICO conspiracy is an agreement by the parties to commit predicate acts. *Elsevier Inc.* v. *W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010). However, Plaintiffs fail to allege facts showing that each Defendant, through words or actions, reached an agreement to manipulate Euribor, or even what the agreement was. Further, Plaintiffs' allegations that Defendants were on the Euribor panel or were subject to government investigations are insufficient to give rise to a plausible inference of conspiracy. *See Maric* v. *St. Agnes Hosp. Corp.*, 65 F.3d 310, 313 (2d Cir. 1995) (mere opportunity is insufficient); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (investigations are insufficient).

   Plaintiffs' **unjust enrichment claim** also fails. To state a claim against any particular Defendant, Plaintiffs must plead facts plausibly showing how that Defendant has been enriched at Plaintiffs' expense. *See, e.g.*, *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 532 (S.D.N.Y. 2008). Plaintiffs' conclusory assertions that all Defendants "financially benefitted from the unlawful manipulation" and that "[t]hese unlawful acts caused Plaintiffs . . . to suffer injury," (SAC ¶¶ 456-57), fail to satisfy this threshold pleading requirement. Moreover, Plaintiffs have not alleged direct dealings with, or any sort of relationship to, any Defendant, as an unjust enrichment claim requires. *Reading Int'l, Inc.* v. *Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003). Judges Daniels and Buchwald dismissed parallel unjust enrichment claims on these very grounds. *See Laydon*, 2014 WL 1280464, at *14; *LIBOR I*, 935 F. Supp. 2d at 737.

   Finally, **all of Plaintiffs' claims fail under the group pleading doctrine**, as the SAC contains virtually no allegations against Defendants that have not entered into regulatory settlements as to Euribor except for group allegations directed against "Defendants" and "Contributor Bank Defendants" collectively. *See, e.g.*, *Ochre LLC* v. *Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6-*7 (S.D.N.Y. Dec. 3, 2012), *aff'd* 530 F. App'x 19 (2d Cir. 2013) (summary order).

                    Respectfully submitted,

                     Moses Silverman
                     *Counsel for Defendant Deutsche Bank AG*

cc: All Counsel (via ECF)