# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated, | Docket No. 13-cv-02811 (PKC) ECF Case |

Plaintiffs,

- against -

BARCLAYS PLC, BARCLAYS BANK PLC,
BARCLAYS CAPITAL INC., BNP PARIBAS S.A.,
CITIGROUP, INC., CITIBANK, N.A.,
COÖPERATIEVE CENTRALE RAIFFEISEN-
BOERENLEENBANK B.A., CRÉDIT AGRICOLE
S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK
AG, DB GROUP SERVICES UK LIMITED, HSBC
HOLDINGS PLC, HSBC BANK PLC, ICAP PLC,
ICAP EUROPE LIMITED, J.P. MORGAN CHASE &
CO., JPMORGAN CHASE BANK, N.A., THE ROYAL
BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE
SA, UBS AG AND JOHN DOE NOS. 1-50,

Defendants.

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE BARCLAYS' DEFENDANTS

# TABLE OF CONTENTS

Page

I.      Introduction.....................................................................................................1

Procedural Fairness.................................................................................................1

Substantive Fairness...............................................................................................2

II.     The Court Should Preliminarily Approve The Barclays
        Settlement Agreement...................................................................................2

        A.      The Judicial Standards For Preliminary Approval...............................2

        B.      The Benefits To The Settlement Class From The Barclays
                Settlement ...........................................................................................4

        C.      The Barclays Settlement Is Procedurally Fair Because It Was Produced By Well-
                Informed, Arms-Length Negotiations By Experienced Counsel, Supervised By A
                Nationally Recognized Mediator .........................................................7

        D.      There Are No Obvious Or Other Deficiencies In This Settlement
                Agreement............................................................................................9

        E.      The Settlement Agreement Does Not Favor Plaintiffs Or Class Members Nor
                Create Any Preferences.......................................................................10

        F.      The Barclays Settlement Consideration Is Well Within The Range Of What
                Possibly May Be Found, At The Final Approval Stage, To Be Fair And
                Reasonable .........................................................................................13

                1.      Applying The *Grinnell"* Final Approval" Factors To The Barclays
                        Settlement Is Unnecessary At The Preliminary
                        Approval Stage.........................................................................17

                2.      Unlike In *Grinnell*, Recovery On Many Claims Being Settled Here Is Not
                        Foreclosed Because Of The Availability Of The Joint And Several Liability
                        Of Other Defendants From Whom The Settlement Class May Recover The
                        Damages Caused By Barclays ..................................................19

III.    The Court Should Conditionally Certify The Settlement Class
        On The Claims Against Barclays...................................................................20

        A.      The Requirements of Rule 23(a) Are Satisfied By The Settlement
                Class On The Claims Against Barclays...............................................21

i

1. Numerosity Of The Settlement Class Is Satisfied On The Claims Against Barclays...................................................................21

2. There Are Common Questions of Law and Fact In The Settlement Class' Claims Against Barclays.....................................................21

3. The Plaintiffs' Claims Against Barclays Are Typical Of The Settlement Class' Claims Against Barclays .......................................24

4. The Class Representatives Are Adequate Representatives For The Settlement Class' Claims Against Barclays....................................24

   a. There Is No Fundamental Or Other Conflict Of The Class Representatives With The Settlement Class On The Claims Against Barclays....................................................25

   b. Class Counsel Are Adequate .....................................................26

   c. Class Counsel Should Be Appointed As Such Under FRCP 23(g)(1) ......................................................................27

B. The Proposed Settlement Class On The Claims Against Barclays Satisfies The Two Prongs of Rule 23(b)(3) .............................................28

   1. Common Questions of  Law and Fact Predominate Over Individual Questions On The Settlement Class' Claims Against Barclays ........................................................................28

   2. A Settlement Class Is The Superior Method To Adjudicate The Claims Against Barclays, And Preserves Judicial Resources...........................................................................31

IV. Amalgamated Bank Should Be Appointed As Escrow Agent.......................................................................................32

V. Conclusion ..................................................................................32

## Table of Authorities

**Cases**                                                                                          **Page**

*Amcham Prods., Inc. v. Windsor,*
   521 U.S. 591, 625 (1997) ...........................................................................28, 29, 31

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ........................................................................24

*Bano v. Union Carbide Corp,*
   273 F.3d 120, 129-30 (2d Cir. 2001) ...........................................................2

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ..................................................................................30

*Brown v. Kelly,*
   609 F.3d 467 (2d Cir. 2010) ......................................................................28

*Cf. Strobl v. New York Mercantile Exch.*,
   582 F. Supp. 770, 778 (S.D.N.Y. 1984) .....................................................19

*Charron v. Wiener,*
   731 F.3d 241 (2d. Cir 2013) ......................................................................11

*Central States Southeast & Southwest Areas Health & Welfare*
*Fund v. Merck–Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir.2007) .......................................................................27

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ............................................................. *passim*

*Cohen v. J.P. Morgan Chase & Co.,*
   262 F.R.D. 153 (E.D.N.Y. 2009) ...............................................................20

*Consolidated Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ........................................................................21

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ........................................................................30

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ..........................................................................7

*Dziennik v. Sealift, Inc.*,
     2007 WL 1580080 (E.D.N.Y. May 29, 2007).........................................................................25

*In re Flonase Antitrust Litig.*,
     951 F.Supp.2d 739, 748 (E.D. Pa. 2013)............................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
     787 F.3d 408 (7th Cir. 2015).................................................................................................4

*Gottesman v. General Motors Corp.*,
     436 F.2d 1205 (2d Cir. 1971)..............................................................................................14

*In re Agent Orange Product Liability Litig.*,
     818 F.2d 145 (2d Cir. 1987)............................................................................................12,13

*In re Air Cargo Shipping Antitrust Litig.*,
     2009 WL 3077396 (E.D.N.Y. 2009)……………….............................................................5,28

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
     689 F.3d 229 (2d Cir. 2012)......................................................................................20,29,31

*In re Ampicillin Antitrust Litig.*,
     82 F.R.D. 652 (D.D.C. 1979)..................................................................................................5

*In re AOL Time Warner, Inc.*,
     No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...................................18

*In re Austrian and German Bank Holocaust Litig.*,
     80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................................................7

*In re Automotive Parts Antitrust Litig.*
     2014 WL 1377828 (E.D. Mich. Feb. 13, 2014)…...................................................................4

*In re Canadian Sup. Secs. Litig.*,
     2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011).......................................................................11

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D.Mich.2003).........................................................................................12

*In re Corrugated Container Antitrust Litig.*,
     659 F.2d 1322 (5th Cir. 1981)........................................................................................14,25

*In re Currency Conversion Fee Antitrust Litig.*,
     2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .................................................................. *passim*

*In re Diet Drugs*,
   2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ........................................................................29

*In re Drexel Burnham Lambert Group Inc.*,
   960 F.2d 285 (2d Cir. 1992) ........................................................................24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ........................................................................24

*In re Giant Interactive Grp. Inc. Secs. Litig.*,
   279 F.R.D. 151 (SDNY 2011) ........................................................................11

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y.2004) ........................................................................ *passim*

*In re HealthSouth Corp. Sec. Litig.*,
   334 Fed. App'x 248 (11th Cir. 2009) ........................................................................12

*In re Initial Public Offering Sec. Litig.*
   260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................7,21,30

*In re Ionosphere Clubs, Inc.*,
   156 B.R. 414 (S.D.N.Y. 1993) ........................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012) ........................................................................29

*In re Linerboard Antitrust Litig.*,
   292 F.Supp.2d 631 (E.D.Pa. 2003) ........................................................................5

*In re Marsh ERISA Litig.*,
   265 F.R.D. ........................................................................11

*In re Michael Milken and Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................ *passim*

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 717519 (E.D. Mich. Feb. 22, 2011)……. ........................................................................4

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. Mar. 20, 1997) ........................................................................2,7,12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................16

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014)……..  .........................................3,4,7

*In re Prudential Sec., Inc.*,
    1995 WL 798907 (S.D.N.Y. Nov. 20, 1995)……... ....................................... *passim*

*In re Qiao Xing Secs. Litig.*,
    2008 WL 872298 (S.D.N.Y. Apr. 2, 2008) ............................................................11

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ............................................................................12

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999).............................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Special Verdict (N.D. Cal. Dkt. No. 8562, Sep. 3, 2013) ......................................14

*In re Traffic Exec. Ass'n. E. R.R.s.*,
    627 F.2d 631 (2d Cir. 1980)….  ..............................................................................3

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ..................................................................................30

*In re Wachovia Equity Secs. Litig.*,
    2012 WL 2774969 (S.D.N.Y. June 12, 2012) .......................................................11

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D.Del.2002)................................................................................12

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ......................................................19

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .......................................................................15

*In re Washington Public Power Supply Sys. Secs, Litig.*,
    1988 WL 158947 (W.D. Wash. 1988) ..................................................................12

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .............................................................................20,24

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ..................................................................25

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) ................................................................14,17

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) .................................................................14

*McReynolds v. Richards–Cantave*,
  588 F.3d 790 (2d Cir.2009) ......................................................................4

*Meredith Corp. v. SESAC, LLC*,
  2015 WL 728026 (S.D.N.Y. Feb. 19, 2015) ...........................................31

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2014) ...................................................................29

*Monaco v. Carpinello*,
  2007 WL 1174900 (E.D.N.Y. 2007) ..........................................................7

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) .......................................................7

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .....................................................................13

*Plummer v. Chemical Bank*,
  668 F.2d 654, 658 (2d Cir. 1982) ............................................................18

*Precision Associates, Inc. v. Panalpina World Transport*,
  2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ........................................11

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ...............................................................18

*Seijas v. Republic of Arg.*,
  606 F.3d 53 (2d Cir. 2010) .......................................................................32

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)............................................7

*Silberblatt v. Morgan Stanley*,
  524 F. Supp. 2d 425 (S.D.N.Y. 2007) ......................................................3

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................30

*U.S. Football League v. Nat'l Football League*,
644 F. Supp. 1040 (S.D.N.Y. 1986) ........................................................14

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .......................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...........................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir.2005) .........................................................................2

## Statutes

15 U.S.C. § 1 ................................................................................................6

## Rules

Fed. R. Civ. P. 23(e) ..................................................................................1,3

Fed. R. Civ. P. 23(b)(2) .................................................................................3

Fed. R. Civ. P. 23(b)(3)................................................................... *passim*

Rule 23 ......................................................................................................2,3

Rule 23(a).........................................................................................20,21,28

Rule 23(a)(1)................................................................................................21

Rule 23(a)(2).....................................................................................21,23,29

Rule 23(a)(3)................................................................................................24

Rule 23(a)(4)...........................................................................................24,27

Rule 23(g)(1)................................................................................................27

Rule 23(g)(2)................................................................................................27

Rule 23(g)(4)................................................................................................27

**Other Authorities**

Antitrust Enforcement Enhancements and Cooperation Incentives (June 22, 2004) ......................8

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* (1972).......................29

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002).....................3,9,14

## I.     Introduction

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."),

Plaintiffs[1] respectfully submit this memorandum of law and the accompanying Declarations of

Kenneth R. Feinberg, Esq., ("Feinberg Decl."), Christopher Lovell, Esq., ("Lovell Decl.") and

Vincent Briganti, Esq., ("Briganti Decl.") to demonstrate that this Court should grant Plaintiffs'

motion for an Order that: (a) preliminarily approves Plaintiffs' proposed Settlement with

Defendants Barclays plc, Barclays Bank plc and Barclays Capital Inc. (together, "Barclays")

subject to later, final approval; (b) conditionally certifies a Settlement Class on the claims against

Barclays, subject to later, final approval of such Settlement Class; and (c) appoints Amalgamated

Bank as Escrow Agent under the Settlement Agreement.[2] *See* Proposed Order annexed as Ex. A

to Notice of Motion.

The Settlement Agreement provides substantial consideration to the Settlement Class,

including Barclays' payment of **$94,000,000.00** and Barclays' provision of significant

cooperation to Plaintiffs and Plaintiffs' Counsel which has assisted and will continue to assist

Plaintiffs' presentation of their claims against the other Defendants.  Agreement ¶9; *see* Pt. II

"B", "Benefits to the Settlement Class from the Barclays Settlement."

The two essentials for preliminary approval are procedural fairness and substantive

fairness.  Pt. II "A" *infra*.

**Procedural Fairness.**  The Barclays Settlement is the product of serious, informed,

arms-length negotiations and "hard bargaining" between experienced counsel, including three

---

[1] The Plaintiffs are California State Teachers' Retirement System, Sonterra Capital Master Fund, Ltd., FrontPoint Partners Trading Fund, L.P., FrontPoint Australian Opportunities Trust, Stephen Sullivan, and White Oak Fund LP, (collectively, "Plaintiffs").

[2] Unless otherwise noted, all capitalized terms referenced herein have the meaning set forth in the Settlement Agreement between Plaintiffs and Barclays dated October 7, 2015 (the "Settlement Agreement"), which is annexed hereto as Exhibit 1 to the Lovell Decl.

formal mediation sessions that were extensively supervised by a nationally recognized mediator, Kenneth R. Feinberg, Esq. Feinberg Decl. ¶¶ 7-8. These three mediation sessions ended in impasse. *Id*. ¶¶ 11-12. Only the subsequent efforts by the Mediator eventually succeeded in bridging the parties' differences. *Id.* ¶¶ 13-14; *see* Pt. II. "C" *infra*. The process by which the Barclays Settlement Agreement was reached ensured procedural fairness. *Id.*

**Substantive Fairness**. The Settlement is substantively fair. No preferences have been created. *See* Pts. II. "D" and "E" *infra*. Barclays' $94,000,000 payment, its cooperation, and the additional benefits from the other terms of the Barclays Settlement Agreement easily clear the low bar at preliminary approval: whether the settlement consideration is "possibly" within the range of approval at the final hearing after notice to Class members. *See* Pts. II "A" through "F" *infra.*

Finally, all the prerequisites under Rule 23 for conditional certification of a Settlement Class on the claims against Barclays are fully satisfied. *See* Pt. III below.

**II.     The Court Should Preliminarily Approve The Barclays Settlement Agreement**

A procedural history of this Action has been set forth in the Briganti Decl. ¶¶ 2-17.

**A.  The Judicial Standards For Preliminary Approval**

In reviewing and considering proposed class action settlements, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *Bano v. Union Carbide Corp*, 273 F.3d 120, 129-30 (2d Cir. 2001) (there is an overriding public interest in settling and quieting litigation, particularly class actions); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

Proposed settlements of Rule 23(b)(3) classes, like this one[3], require notice to class members, an opportunity for those class members to object, and final approval by the Court after a hearing at which class members may appear and be heard.  Fed. R. Civ. P. 23(e) (settlements in class actions require "…the court's approval"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 428 (S.D.N.Y. 2007) (Castel, J); *see generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002).

Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Assn. E. R.R.s.*, 627 F.2d 631, 634 (2d Cir. 1980).

Preliminary approval of a settlement is not expressly mentioned in either the Fed. R. Civ. P. generally or Rule 23 in particular.  Frequently, the judicially created requirements for preliminary approval have been expressed as follows:

> "Where the proposed settlement [1] appears to be the product of serious, informed, non–collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of **possible** approval, preliminary approval is granted."

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*") (emphasis and numbers in brackets supplied); *Platinum,* 2014 WL 3500655, at *11.  The Barclays Settlement amply satisfies each of these four requirements.  *See* Pts. II. "C"-"F" *infra*.

In conducting the preliminary approval inquiry, a court considers primarily the "negotiating process leading up to the settlement, [*i.e.,* procedural fairness], as well as the settlement's substantive terms, [*i.e.,* substantive fairness]."  *In re Platinum & Palladium*

---

[3] Fed. R. Civ. P. 23(b)(3) classes are based upon common issues and require notice to the class of settlements. Fed. R. Civ. P. 23(b)(2) classes are based on non-monetary or injunctive relief. They do not require notice to the class.

*Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014)

("*Platinum*") (same), *appeal dismissed* (Oct. 6, 2014); *McReynolds v. Richards–Cantave,* 588

F.3d 790, 803–04 (2d Cir.2009) (same).  The issue is whether the terms are "at least sufficiently

fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."

*NASDAQ II*, 176 F.R.D. at 102.

### B.  The Benefits To The Settlement Class From The Barclays Settlement

First, the Barclays Settlement is the initial, "ice breaker" settlement in this action. It

provides the twin benefits to the Class of substantial monetary consideration, $94,000,000, and a

potential catalyst for other Defendants to settle.[4]

Next, Barclays has agreed that, if the Settlement is finally approved, there will be **no**

reversion of settlement monies to Barclays for opt-outs or failures to submit proofs of claim.

Settlement Agreement ¶¶ 9, 19.3.   Thus, unlike in many class action settlements, if the

Settlement is finally approved by this Court, then no part of the $94,000,000 is subject to any

reversion to Barclays.[5]  That is, no matter how many Settlement Class Members ultimately fail

to file proofs of claim or opt-out, if the Settlement is finally approved by this Court, none of the

Settlement monies will revert to Barclays.  Given that the rates of submissions of proofs of claim

are (often substantially) less than 100%, the non-reversion terms of the Barclays Settlement

---

[4] *See In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2011 WL 717519 *10 (E.D. Mich. Feb. 22, 2011) ("Also of significant value is the fact that the Settlement Agreement with Home City can serve as an "ice-breaker" settlement"); *In re Automotive Parts Antitrust Litig.*, 2:12-CV-00203-MOB, 2014 WL 1377828 (E.D. Mich. Feb. 13, 2014).

[5] *Contrast Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980) (in the litigated trial and judgment context, the share of the settlement due to class members who failed to claim reverted to Defendants); *see Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (size of the judgment against Defendants determined only by the claims of the class members who actually submit proofs of claim).

Under the Settlement with Barclays, the proceeds that would have been paid to those persons who fail to claim, will not revert to Barclays.  Instead, they will be redistributed among, and enhance the recovery of, those Settlement Class Members who do claim.

Agreement likely will add substantial enhancement to the benefits and the recovery received from the Settlement by the Settlement Class Members who submit valid proofs of claim.

A third benefit is that Barclays has provided and will continue to provide valuable cooperation to Plaintiffs in prosecuting the claims against the remaining Defendants.  This includes cooperation involving the production of extensive data and data retrieval. Settlement Agreement ¶¶24.7, 24.8, and 24.10.  This aspect of Barclays' cooperation is likely over and above Barclays' obligations under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, tit. II, 118 Stat. 661 (2004) ("ACPERA").  *See* Settlement Agreement ¶¶ 22-27 (listing Barclays' cooperation responsibilities).[6]  Such transaction data is important in the formulation of the plan of allocation of the Settlement proceeds.  Feinberg Decl. ¶19; *see* Pt. II "E" *infra*.  Transaction data is also valuable in the prosecution of the merits of the claim.

A fourth benefit from the Barclays Settlement is a risk diversification benefit.  On the one hand, Plaintiffs and the Settlement Class are no longer placing all their eggs in the basket of continued litigation.  *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 642-43 (E.D. Pa. 2003) (court considered the facts that the settlement allows class plaintiffs to diversify the risk of no recovery with an immediate financial recovery).  On the other hand, if the continued litigation against the non-settling Defendants is successful, Plaintiffs will still achieve a recovery on the

---

[6] *In re Air Cargo Shipping Antitrust Litig.*, No. 06-MD-1775, 2009 WL 3077396, at *7 (E.D.N.Y. 2009) (Gleeson, J) (the cooperation was valuable because it could facilitate a more expeditious resolution of the litigation against the remaining defendants).

Settlement consideration requiring cooperation against non-settling defendants has long been recognized to be especially beneficial on joint and several liability claims.  *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979).  This is because (1) the settling defendant typically has knowledge of probative facts that may be used against other defendants, and (2) the dismissal of the settling-defendant from the action does not extinguish the plaintiffs' ability to recover any and all joint and several liability damages over and above the amount of the settlement payment.  *Id.*  Here, Barclays is providing settlement cooperation over and above Barclays' ACPERA responsibility.

joint and several liability claims that is equal to that which Plaintiffs would have received had they kept all their eggs in the litigation basket. That is, notwithstanding this Barclays Settlement, Plaintiffs' may still recover, on the joint and several liability claims, all the damages that were caused by Barclays.

In consideration for the foregoing benefits, Settlement Class Members will release Barclays from claims in respect of instruments whose prices were allegedly distorted by the manipulation of Euribor. Settlement Agreement ¶¶14, 15. These instruments are referred to as Euribor Products. *Id.* ¶1.17. Also, Plaintiffs' claims against Barclays will be dismissed. *Id.* ¶¶14-15. This will end Plaintiffs' prospects of recovering damages caused solely by Barclays on non-joint and several liability claims.

The antitrust benefit to the Settlement Class of continuing to litigate their claims against Barclays may well have been limited by virtue of Barclays' potential qualification for leniency under ACPERA. Suppose Plaintiffs continued to litigate against Barclays, and that Barclays continued their satisfactory cooperation under ACPERA (which Barclays has done so far). In that event, if all the risks of continued litigation were overcome by Plaintiffs, any antitrust recovery from Barclays would have been limited, for most or all Class Members, to single damages for Barclays' own conduct. ACPERA, Pub. L. No. 108-237, §213(b), 118 Stat. 665, 666 (codified as amended at 15 U.S.C. § 1 note). But, again, antitrust claims involve joint and several liability. That is, through the interplay of ACPERA and joint and several liability, Plaintiffs may recover from other Defendants treble (not merely single) damages allegedly caused by Barclays. This interplay reduces the potential antitrust "costs" of the Settlement and enhances the value of the cooperation that Barclays is providing to assist Plaintiffs' prosecution of their claims against the other Defendants.

**C. The Barclays Settlement Is Procedurally Fair Because It Was Produced By Well-Informed, Arms-Length Negotiations By Experienced Counsel, Supervised By A Nationally Recognized Mediator**

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). [7]

In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997).

> As likewise stated by the *Manual for Complex Litigation,* a 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery'. *Manual for Complex Litigation, Third* ¶ 30.42 (1995). That presumption clearly attaches here.

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999); *In re Platinum*, 2014 WL 3500655, at *11; *Shapiro v. JPMorgan Chase & Co.*, 11 CIV. 8331 CM MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) ("Co–Lead Counsel, who have extensive experience in prosecuting complex class actions, strongly believe the Settlement is in the best interests of the Class, an opinion which is entitled to 'great weight'").

---

[7] *In re Currency Conversion Fee Antitrust Litig.*, 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) citing to *NASDAQ II*, 176 F.R.D. at 102; *see also* MANUAL 4ᵀᴴ AT §21.632; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*") ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement"); *In re Initial Public Offering Sec. Litig.* 260 F.R.D. 81, 87 (S.D.N.Y. 2009)(same); *Monaco v. Carpinello*, 2007 WL 1174900 *9 (E.D.N.Y. 2007).

The process leading up to and the timing of the Barclays Settlement fully support preliminary approval thereof.  Feinberg Decl. *passim*.  Class counsel were well informed.  *Id.* ¶¶ 9, 18; Briganti Decl. ¶¶ 9-11; Lovell Decl. ¶14.  Class Counsel received specific proffers under ACPERA from Barclays that provided Plaintiffs with more pertinent information over a few days than is often yielded by years of discovery.  Although the Barclays proffers related to Barclays' conduct, including the extent that that conduct involved other Defendants, Plaintiffs are settling the claims only against Barclays here.  Plaintiffs' extensive investigation (including based on government orders), provided Plaintiffs with additional information about the wider context within which the facts revealed by the Barclays' proffers occurred.

Further, as Class counsel attest, Plaintiffs' and Barclays' talks about potential settlement conditions, and an appropriate process and structure for settlement negotiations took place over the course of many months.  Lovell Decl., ¶¶5-13. When matters progressed to the point, in May 2015, that the process for settlement talks had been agreed upon, those talks began in earnest. They involved "hard bargaining" under the supervision of a nationally recognized mediator in three formal mediation sessions spread over a month that ended in impasse.  Feinberg Decl. ¶¶ 9, 12.  Following that impasse, Mr. Feinberg worked in continued, informal mediation to bridge the parties' differences.  By August, Mr. Feinberg had succeeded and the parties signed an MOU.

The negotiations were serious, always at arm's-length, and non-collusive.  *Id.* at ¶¶ 7, 9, 18; Lovell Decl. ¶14; Briganti Decl. ¶ 11.  Mr. Feinberg confirms that the negotiation process was *bona fid*e, at times contentious, and advocated by sophisticated and capable counsel all around the table. Feinberg Decl., ¶ 15.  Class counsel are experienced with claims of this type. *See* Ex. 1 to Briganti Decl., Ex. 2 to Lovell Decl.  Given all these circumstances, Class counsel's

opinion is entitled to considerable weight.  The foregoing showing amply satisfies the procedural

fairness requirement for preliminary approval.

And Mr. Feinberg's involvement as mediator further weighs in favor of a finding that the

Settlement Agreement is procedurally fair.  *See, e.g., Affinity Health Plan*, 859 F. Supp. 2d at

618-19 ("The involvement of . . . an experienced and well-known . . . class action mediator, is

also a strong indicator of procedural fairness.").  Within these circumstances, procedural fairness

is amply demonstrated and there is "a strong initial presumption that the compromise is fair and

reasonable."  *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

### D.  There Are No Obvious Or Other Deficiencies In This Settlement Agreement

Under the next *NASDAQ II* preliminary approval element, the Barclays Settlement

involves a structure and terms that are common in class action settlements in this District.

*NASDAQ II,* 176 F.R.D. at 102; Briganti Decl. ¶ 16.  There are no exceptions or departures.

Class Counsel believe that the closest issue to a departure involves the provisions at ¶ 37 of the

Settlement Agreement, which concerns Barclays' right to terminate the Settlement Agreement

under certain circumstances.

Specifically, by ¶ 37, Plaintiffs agreed that Barclays has a qualified right to terminate the

Settlement Agreement before Final Approval.  This qualified right begins with the number and

significance of the Class Members, if any, who request to be excluded (or "opt out") of the

settlement class.  Such provisions are common in class action settlements and are included,

generally speaking, based on the defendant's desire to quiet the litigation through the class action

settlement and not leave open any material exposure.  Typically, such rescissory rights are based

upon specific numerical factors, such as the absolute number or percentage of class members

who opt out.

The difference here is that Barclays has no absolute right to rescind based on any specific number of opt out class members.  Rather, Barclays has only the right to apply to the Mediator to terminate the Settlement Agreement, if the Class Members who excluded themselves from the Settlement Class, would likely have been eligible to receive collectively (but for their exclusion) a material part of the potential distributions from the Settlement Fund.  Settlement Agreement ¶ 37.

Plaintiffs have the right to oppose any such application by Barclays.  Barclays' arguments and Plaintiffs' counter arguments will be decided, under the Settlement Agreement, by the Mediator, Kenneth Feinberg, Esq.  Given the contentious and intense negotiations on previous issues in this Action and the likelihood that the eventuality of a potentially large number of opt-outs will never be realized, the parties' negotiation of the foregoing qualified right is reasonable.  Their reliance upon a nationally recognized mediator who helped overcome the parties' previous differences expedited the completion of the MOU, is at least fair and reasonable.  Thus, Barclays' qualified, rescissory rights clearly do not constitute an obvious or other deficiency.

Accordingly, the Barclays Settlement Agreement amply satisfies the "no obvious deficiency" requirement of *NASDAQ II*.

### E.  The Settlement Agreement Does Not Favor Plaintiffs Or Class Members Nor Create Any Preferences.

Under the next *NASDAQ II* factor, the Settlement Agreement does not favor or disfavor any Plaintiffs or Settlement Class Members nor discriminate against, create any limitations of, or exclude from payments any persons or groups with the Settlement Class.  *NASDAQ II*, 176 F.R.D. at 102; Settlement Agreement *passim*.  Making such distinctions is fully allowable and

expected, if there is a rational basis for them, in plans of allocation.[8]  Here, Plaintiffs need

transactional records from Barclays before beginning the process to formulate the plan of

allocation of the Settlement proceeds.  Feinberg Decl., ¶ 19.  Barclays has informed Plaintiffs'

Counsel that Barclays is in the process of isolating and collecting those records for production, as

contemplated by ¶¶ 24.7 and 24.8 of the Settlement Agreement.

Preliminary approval is routinely granted to settlements before any plan of allocation

exists.  *E.g.,* Feinberg Decl., ¶ 19; *In re Wachovia Equity Secs. Litig.,* No. 08-6171 (RJS), 2012

WL 2774969, at *1 (S.D.N.Y. June 12, 2012) (approving plan of allocation after preliminary

approval of proposed settlement and certification of settlement class); *In re Canadian Sup. Secs.

Litig.,* No. 09-10087, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (same); *In re Giant

Interactive Grp. Inc. Secs. Litig.*, 279 F.R.D. 151, 156 (S.D.N.Y. 2011) (same); *In re Marsh

ERISA Litig.*, 265 F.R.D. 128, 135 (S.D.N.Y. 2010) (same); *In re Qiao Xing Secs. Litig*., No. 07-

7097, 2008 WL 872298, at *1-2 (S.D.N.Y. Apr. 2, 2008) (same).[9]

---

[8] In *Charron v. Wiener*, 731 F.3d 241, 244-246, 254 (2d. Cir 2013) ("*Charron*"), all five named plaintiffs objected to the settlement made by class counsel because the settlement made allocation and other decisions that left various claims wholly unpaid, and did so without separate representation for differing interests.  The Court of Appeals overruled the objections.  *Id*. Here, the named Plaintiffs --- including California State Teachers' Retirement System ("CalSTRS") --- support the Settlement.  The Settlement makes no allocation decisions.  There is no intent to leave any category of claims unpaid.  After transaction data has been received from Barclays, the plan of allocation will, if appropriate, be formulated under the auspices of Mediator Kenneth Feinberg, Esq., with any appropriate additional counsel representation.  *Compare* Feinberg Decl. ¶19 *with* fn. 10 *infra.*

[9] For example, in *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-0042, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ("*Freight Forwarders*"), plaintiffs moved for preliminary approval of the first ten partial settlements prior to formulating any plan of allocation.  *Id.*, ECF 527 (9/20/2011); ECF 576 (4/2/2012); ECF 590 (6/14/2012); ECF 637 (8/29/2012); ECF 645 (09/17/2012); ECF 668 (10/10/2012); ECF 687 (12/10/2012); and ECF 712 (1/29/2013).   The Honorable John J. Gleeson preliminarily approved each of these settlements before any plan of allocation had been proposed.  *Id.*, ECF 530 (9/23/11); ECF 587 (5/9/2012); ECF 604 (8/11/2012); ECF 643 (9/12/2012); ECF 649 (9/19/2012); ECF 673 (10/18/2012); ECF 692 (12/12/2012); and ECF 715 (1/30/2013).  The court then approved the proposed class notice program, again prior to any plan of allocation.  *Id.*, ECF 666.  The class notice provided that "a plan of allocation has not yet been determined" and referred class members to the settlement website.  *Id.*, ECF 656-3.  During the notice period, the plan of allocation was posted on the settlement website.  Plaintiffs moved for approval of the plan of allocation in conjunction with their

Indeed, even final approval of class action settlements is appropriate prior to the preparation of a plan of allocation, especially in a complex case in which only one or two defendants have settled and sufficient records for determination as to the distribution of the proceeds are not yet available.  *In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 170 (2d Cir. 1987); *In re Washington Public Power Supply Sys, Litig.*, 1988 WL 158947, *4 (W.D. Wash. 1988); *NASDAQ III.*, 187 F.R.D. at 480;  *In re HealthSouth Corp. Sec. Litig.*, 334 Fed. App'x 248, 251, 253-255 (11th Cir. 2009); *see Manual for Complex Litigation, Fourth*, § 21.313 at 296; *Newberg on Class Actions* § 12:35 at 342 (4th ed. 2002).

But here, Plaintiffs **do** fully anticipate sending the proposed plan of allocation with the notice to Class Members of the Barclays Settlement (and any other settlements that have been preliminarily approved by that time).  Thus, the proposed plan of allocation will be available to Settlement Class Members before they have to decide to accept its benefits, opt out, or object to final approval.  In this regard, after receiving Barclays' transaction records, Plaintiffs will develop the appropriate process for formulating a plan of allocation.  Again, Class counsel have arranged that this will include, if appropriate, allocation mediation before Mr. Feinberg, as well as appropriate representation for any different interests.[10]

---

motion for final approval of the ten settlements on July 26, 2013, ECF 854, and the approval was granted. *Freight Forwarders*, 2013 WL 4525323, at *6.

[10] *Compare In re PaineWebber Ltd. P'ship Litig.*, 174 F.R.D. 35, 36 (S.D.N.Y. 1996), *aff'd* 117 F.3d 721 (2d Cir. 1997) (affirming for the reasons provided by the District Court which had rejected unnamed class members' motion to intervene and create subclass for plaintiffs subject to statute of limitations defense because "the mere fact that a proposed intervenor would assert different claims from those asserted by the named plaintiffs does not render the latter inadequate to represent the former, nor does the fact that the named plaintiffs may be subject to defenses that the proposed intervenor is not"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 260 (D.Del.2002), *aff'd*, 391 F.3d 516, 532–33, 539 (3d Cir.2004); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 62 (D. Mass. 2005) (the Court approved structural protections implemented by class counsel); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 515 (E.D.Mich.2003).

In these circumstances, the Settlement Agreement wholly avoids any preferences or discriminations.  Moreover, whether any such preferences or discriminations will ever be proposed (and, if so, which ones), will be determined by an appropriate process.  Accordingly, this third *NASDAQ II*  preliminary approval element is fully satisfied as well.

> **F.  The Barclays Settlement Consideration Is Well Within The Range Of What Possibly May Be Found, At The Final Approval Stage, To Be Fair And Reasonable**

Under the final *NASDAQ II* preliminary approval factor, the substantial consideration provided by the Barclays Settlement is well within what "possibly" could be found to be within the range of reasonable consideration at the final Settlement approval hearing.  *NASDAQ II,* 176 F.R.D. at 102.  The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993) ("'The weighing of a claim against compensation cannot be . . . exact. Nor should it be, since an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'") (ellipses in original). "Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval." *NASDAQ III*, 187 F.R.D. at 478. As noted in one prominent antitrust case, the "essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of

reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981).

Regarding the range of reasonableness, private antitrust plaintiffs, unlike the government, have the burden to prove antitrust impact and damages. *Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir.), *cert. denied*, 403 U.S. 911 (1971). This burden to prove impact and damages, even in non-complex cases, has been problematic. Thus, for example, even where a criminal guilty plea was obtained, a jury found no damages in a civil case. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, (N.D. Cal., Sept. 3, 2013) (Dkt. No. 8562 , Special Verdict on indirect purchases).

"Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476. *See also In re Flonase Antitrust Litig.,* 951 F.Supp.2d 739, 748 (E.D. Pa. 2013) ("Even if Plaintiffs had succeeded in proving liability at trial, there is no guarantee they would have recovered damages."); *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335, 1377 (2d Cir. 1988); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166–69 (7th Cir. 1983) (antitrust judgment was remanded for a new trial and damages).

Here, the monetary consideration alone, $94,000,000, is significantly greater than what Barclays regarded as Plaintiffs' maximum hypothetical damages. It is also significantly less than what Plaintiffs calculated as Barclays' possible damages. *Compare Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("*Maywalt*") (maximum "likely" damages is the appropriate test) *with In re Prudential Sec., Inc.*, No. M-21-67 (MP), 1995 WL 798907, at

*14 (S.D.N.Y. Nov. 20, 1995) ("*Prudential*") (Pollack, J) (where many non-settling defendants are present, class counsel must be circumspect in stating facts that may aid the non-settling defendants).

Thus, Plaintiffs' impact and damages contentions against Barclays would be sharply disputed, including at trial. This inevitably would involve a "battle of the experts." *NASDAQ* 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Before confronting the risks of proving impact and damages, Plaintiffs face the complexities, challenges, and risk of a far greater task: establishing the other elements of liability. The facts and claims here are very complex. As has been recognized, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). This task involves obtaining and proving the significance of instant messages, trading patterns, and extensive other facts or evidence. These all involve ambiguities and inferences. This creates many risks in establishing liability in this case.

Here again, Class counsel are circumscribed in what they may assert with respect to the proof by the presence of all the non-settling Defendants. *Prudential*, 1995 WL 798907, at *14. But the answers to the key common questions of fact and law for all Settlement Class Members will be hotly disputed in this litigation. Class counsel will zealously seek to overcome all the foregoing ostensible risks.

In their pending motions to dismiss, the non-settling Defendants raise precedent (including a pending appeal to be argued next month in the Second Circuit Court of Appeals) that Defendants argue favors dismissal here.  ECF Nos. 198, 200.  Class counsel contend that the precedent involves wholly distinguishable fact patterns and is contradicted by other precedent. Class counsel strenuously disagree with the non-settling Defendants as will be made clear in the oppositions to the motions to dismiss.

In view of the foregoing and many other risks of continued prosecution, the Settlement beneficially diversifies the Settlement Class' position.  The Settlement Class obtains a bird in the hand **and** has the opportunity to obtain the same bird (or three birds because treble damages are available against the non-settling defendants) in the bush on the claims involving joint and several liability.   In assessing this potential settlement, Class counsel were mindful of the "benefits afforded the Class including the *immediacy* and *certainty* of the recovery, against the continuing risks of litigation."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013) (emphasis in the original).

In light of the ostensible risks of litigation and all the circumstances, Class Counsel's judgment is as follows.  The total consideration provided by the Barclays Settlement, including the cooperation that Barclays has provided and will continue to provide to Plaintiffs, is fair, reasonable and adequate in light of all the circumstances (including the maximum recovery against Barclays).

Accordingly, the final *NASDAQ II* preliminary approval element is amply satisfied because the Settlement consideration from this initial, ice breaker settlement with Barclays is well within the range of that which may possibly later be found to be fair, reasonable, and

16

adequate at final approval.  *NASDAQ II*, 176 F.R.D. at 102; Feinberg Decl. ¶ 15; Briganti Decl.

¶17.

### 1.   Applying The *Grinnell* "Final Approval" Factors To The Barclays Settlement Is Unnecessary At The Preliminary Approval Stage

In this Circuit, at the final approval hearing, the Court is to consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *see Maywalt*, 67 F.3d at

1079-80 (fundamental to a determination of whether a settlement is fair, reasonable and adequate

"'is the need to compare the terms of the compromise with the *likely* rewards of litigation.'").

In the showings above, Plaintiffs have already directly addressed *Grinnell* factors 4-6,

and 8-9.  Plaintiffs respectfully submit that the foregoing *Grinnell* factors are the only

appropriate ones for purposes of preliminary approval.

***Grinnell* Factor 1.**  The factual and legal issues involve esoteric financial complexities.

But the future litigation may be handled pursuant to standard case management procedures.  As

is always true in cases involving large document productions by defendants, a key component of

the duration of the case will be the time that the non-settling Defendants require to produce their

documents, and that the parties require to review the different Defendants' as well as non-

parties' documents.  The litigation is likely to be expensive.

***Grinnell* Factor 2.**  *Grinnell* factor 2 (the reaction of the class to a settlement) is

premature.  Certainly, however, all of the named Plaintiffs favor the Settlement. ***Grinnell* Factor**

**3**.  The stage of the proceedings and the amount of discovery completed, are as follows.  No formal discovery has been completed because discovery has been stayed. On the other hand, at this stage of the proceedings, Plaintiffs have received valuable proffers from Barclays which, in a matter of days, have provided what sometimes may take years to learn through litigation.  As previously set forth, Plaintiffs also know many facts from government orders that provide factual context for the facts learned from Barclays.   It is true that Plaintiffs have not received discovery from other Defendants, but only Plaintiffs' claims against Barclays are being settled.  Even at final approval, discovery is not required.  *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (the relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement); *see also Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982).

 ***Grinnell* Factor 7.**  Barclays clearly has the ability to withstand a greater judgment than $94,000,000.  But this factor does not contra-indicate the appropriateness of the Settlement.  *In re Global Crossing Sec. and ERISA Litig.*, 255 F.R.D. 439, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").

 Because the foregoing amply suffices at this stage to show that the consideration from the Barclays Settlement is "possibly" within the range of final approval, performing a more detailed *Grinnell* analysis is unwarranted here.

 Indeed, in "terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman,*

*Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *see also In re Warner Chilcott Ltd.*

*Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

> **2.** **Unlike In *Grinnell*, Recovery On Many Claims Being Settled Here Is Not Foreclosed Because Of The Availability Of The Joint And Several Liability Of Other Defendants From Whom The Settlement Class May Recover The Damages Caused By Barclays**

Another reason that a more detailed *Grinnell* analysis is inappropriate is that *Grinnell* did

not involve a settlement of the claims against one of twelve different Defendants.  Instead, it

involved the payment by all four defendants of $10 million. In contrast, here, one Defendant has

settled but all the others remain in the litigation. Many of the claims here are premised on joint or

otherwise conspiratorial conduct that creates joint and several liability.  *Cf. Strobl v. New York*

*Mercantile Exch.*, 582 F. Supp. 770, 778 (S.D.N.Y. 1984) (defendants jointly and severally liable

on a jury verdict for price fixing, manipulation in violation of the antitrust laws and commodities

laws, as well as common law fraud), *aff'd* 768 F.2d 22 (2d Cir. 1985).

The interplay of the foregoing distinctions renders the Barclays Settlement significantly

different from the "entire settlement for all purposes" facts and circumstances of *Grinnell* that

led to the *Grinnell* final approval factors.

Yet another reason that obviates the need for performing a more detailed Grinnell

analysis is that, unlike the preliminary approval **elements**, the *Grinnell* final approval

considerations are merely factors, not elements.  Thus, "not every factor must weigh in favor of

settlement, rather the court should consider the totality of these factors in light of the particular

circumstances." *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 456

(S.D.N.Y.2004) (internal quotation marks and citation omitted) (Lynch, J).   Plaintiffs

respectfully submit that there is no need at this point to engage in a more detailed analysis of the

*Grinnell* factors.

### III.     The Court Should Conditionally Certify The Settlement Class On The Claims Against Barclays

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  The Rule 23(b) subsection at issue here is Rule 23(b)(3).

Even in the **final** settlement approval context, Courts have reasoned:

> "As the initial and fundamental principle, it is important to remember that when considering certification in the context of a proposed settlement, 'courts must take a liberal rather than a restrictive approach.'  In other words, many of the restrictions or considerations that come into play in the standard certification analysis do not receive the same treatment at the settlement stage."

*Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 CM, 2010 WL 4877852, at *9 (S.D.N.Y. Nov. 30, 2010) (quoting *Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009)); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997).

At this **preliminary** approval stage, the Settlement Class on the claims against Barclays satisfies the provisions of Rule 23(a) and Rule 23(b)(3).  The Settlement Class excludes victims injured outside the purview of United States law, but includes those persons protected by U.S. law who transacted in financial instruments, the prices of which Defendants allegedly distorted or sought to distort, by manipulating Euribor, in order to profit their proprietary positions. Specifically, the Settlement Agreement provides for the following Settlement Class:

> All persons who purchased, sold, held, traded or otherwise had any interest in Euribor Products from June 1, 2005 through and including March 31, 2011, who were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted Euribor Products in the United States or its territories from June 1, 2005 through and including March 31, 2011, including, but not limited to, all persons who traded CME Euro currency futures contracts, all persons who transacted in NYSE LIFFE Euribor futures and options from a location within the United States, and all persons who traded any other Euribor Product from a location within the United States . . . .

20

Settlement Agreement ¶4.[11]

### A.   The Requirements of Rule 23(a) Are Satisfied By The Settlement Class On The Claims Against Barclays

#### 1.   Numerosity Of The Settlement Class Is Satisfied On The Claims Against Barclays

Rule 23(a)(1)'s numerosity requirement does not mean that joinder must be impossible, but rather "…merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Public Offering Securities Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). In fact, numerosity can be presumed at a level of forty class members or more. *Id. citing Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). Class counsel have strong reason to believe that there are at least hundreds of geographically dispersed persons and entities that fall within the Settlement Class definition. Briganti Decl. ¶ 19. Thus, joinder would be impracticable. Rule 23 (a)(1) is satisfied.

#### 2.   There Are Common Questions of Law and Fact In The Settlement Class' Claims Against Barclays

Fed. R. Civ. P. 23(a)(2) requires that there are "questions of law or fact common to the class." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). Rule 23(a)(2) is generally considered a "'low hurdle' easily surmounted." *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. at 206 n.8. Commonality may be satisfied by the presence of only a single question common to the class. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Although one common question alone suffices, the intricate and detailed circumstances alleged here present literally scores of important common questions of fact and law. Personal

---

[11] The Settlement Agreement (¶4) provides that if Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined class period in the Barclays Settlement shall be expanded so as to be coterminous with such expansion.

jurisdiction, subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions raised by the motions to dismiss (ECF Nos. 198, 200), create an extensive core of common questions of fact and law relating to Plaintiffs' claims and Defendants' affirmative defenses. These core common questions will arise again and again at the proof stages of the case.

Greatly adding to the common questions of law and fact are the same liability and impact questions that every Plaintiff and Class Member has to answer through the same body of common class wide proof.

1. What constitutes a false or manipulative submission by a Euribor Panel Bank? This threshold question involves hotly contested issues of fact that will be of overriding importance in this litigation. As their traders talked and colluded about the optimal level of Euribor to profit their proprietary positions held in Euribor Products, the Defendants allegedly adjusted their Euribor submissions in the direction of their financial self-interest. FAC ¶15 (top government official states that, what is "shocking" about the "Euribor scandals is not only the manipulation of benchmarks, … but also the collusion between banks who are supposed to be competing with each other."). Nonetheless, Defendants will strenuously contend that much of the language in the communication is ambiguous, that the evidence is otherwise mixed, and/or they had non-manipulative reasons for their Euribor submissions.

2. What effect did the collusive manipulations of the prices of cash market instruments have on the Contributing Banks' submissions to Euribor? Unlike various other LIBOR manipulation cases, in this action, Plaintiffs allege as follows. The conspiring Defendants intended to move and manipulate the Euribor submissions of other

Euribor Panel Banks by manipulating cash market prices by "pushing" prices around, spoofing, agreed pricing of Euro instruments, rigging bids, refusing to deal with market participants, and trading Euro denominated instruments at below market prices. *E.g.,* FAC ¶¶ 18-19. Developing the corpus of proof to answer this question and establish the unlawful effects on Euribor of this widespread conspiratorial conduct will be an enormous task common to all Class members in order to determine the non-manipulated Euribor index "but for" the conspiracy.

3. Based on the enormous body of evidence that Plaintiffs have developed and will develop in the pursuit of answers to the common questions listed above, which of the Defendants were engaged in conspiratorial conduct in Euribor, and for what period(s) were they involved in same?

4. What was the true non-manipulated Euribor for each day of the Class Period?

5. Does injury arising from the difference between the actual manipulated Euribor and the non-manipulated Euribor constitute antitrust injury or any other legally cognizable injury.

6. After non-manipulated Euribor index numbers have been determined for the entire class period, what was the difference between the actual Euribor rate and the non-manipulated Euribor rate on each day? The answer to this question will determine or influence whether there was impact and, if so, how much impact (damages) on each day for Settlement Class Members.

The foregoing common questions involve dozens of common sub-questions of fact and law that are also common to all Settlement Class Members. According, Rule 23(a)(2) is overwhelmingly satisfied here.

3. **The Plaintiffs' Claims Against Barclays Are Typical Of The Settlement Class' Claims Against Barclays**

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. The rule's permissive standard is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("'Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.'").

Here, Plaintiffs' claims and all Class Members' claims arise from the same course of conduct involving collusive manipulation by Defendants of Euribor. Therefore, Plaintiffs' claims are typical of Class Members claims. *Compare e.g., Marisol*, 126 F.3d at 376 (finding named plaintiffs' claims typical of the class under Rule 23(a)(3) where "each named plaintiff challenges a different aspect of the child welfare system;" "[t]he claimed deficiencies implicate different statutory, constitutional and regulatory schemes;" and "no single plaintiff (named or otherwise) is affected by each and every legal violation alleged . . . and [] no single specific legal claim identified by the plaintiffs affects every member of the class" (citing *In re Drexel Burnham Lambert Group Inc.,* 960 F.2d 285, 291 (2d Cir. 1992)).

4. **The Class Representatives Are Adequate Representatives For The Settlement Class' Claims Against Barclays**

Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  Generally, courts will consider "whether (1) plaintiff's

interests are antagonistic to the interest of other members of the class and (2) plaintiff's

attorneys are qualified, experienced and able to conduct the litigation." *Id*. at 61.

### a. There Is No Fundamental Or Other Conflict Of The Class Representatives With The Settlement Class On The Claims Against Barclays

"'Only a conflict that goes to the very subject matter of the litigation will defeat a party's

claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI), 2007 WL

1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D.

243, 259 (S.D.N.Y. 1998) (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*& Procedure* § 1768, at 639 (1972)); *see also In NASDAQ Market-Makers Antitrust Litig.,*169

F.R.D. 493, 514-15 (S.D.N.Y. 1996) (*"NASDAQ I"*) (to warrant denial of class certification, "it

must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of

every class member in proceeding with the litigation").

No such fundamental or other conflict exists here.  First, all Class Members share an

overriding interest in obtaining the largest possible monetary recovery from Barclays (and, for

that matter, the remainder of the Defendants).  *See Global Crossing*, 225 F.R.D. at 453

(certifying settlement class and finding that "[t]here is no conflict between the class

representatives and the other class members.  All share the common goal of maximizing

recovery."); *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 208 (5th Cir. 1981)

(certifying settlement class and holding that "so long as all class members are united in asserting

a common right, such as achieving the maximum possible recovery for the class, the class

interests are not antagonistic for representation purposes").

Second, all Settlement Class Members similarly share a common interest in obtaining

Barclays' early and substantial cooperation in prosecuting the claims against the non-Settling

Defendants.

Third, all Settlement Class Members share the same overriding interests to overcome the procedural dismissal motions, develop the enormous fact record during discovery, overcome the ambiguities and competing explanations of evidence and establish the collusive, successful manipulation of Euribor.   Further, all Settlement Class Members share an interest in successfully showing that such manipulation of Euribor was sufficient to cause antitrust injury, and quantify sufficient impact on Euribor and, accordingly, on Euribor Product prices.

Thus, there is no fundamental or other conflict.  The interests of Plaintiffs (as proposed class representatives) in proving liability and damages are aligned with those of members of the Settlement Class.

### b.  Class Counsel Are Adequate

Proposed Class counsel have diligently represented the interests of the Class in this litigation.  They investigated and brought the case.  Briganti Decl. ¶¶ 2, 20. They preserved the statute of limitations. *Id*.  They negotiated with Barclays, the other Defendants, and the Department of Justice ("DOJ") to obtain Barclays' cooperation (including Barclays' proffers and documents).  *Id.* at ¶ 20.  They performed all of the years' work leading up to and prepared the 205 page Fourth Amended Complaint.  *Id.*  They negotiated with Barclays and the Mediator to produce the Barclays Settlement.   Lovell Decl. ¶¶7-12, 14; Briganti Decl. ¶¶7-11; Feinberg Decl. ¶ 14. They have carefully arranged to obtain transactional data and work with a nationally recognized mediator before addressing whether there is a rational basis for any preferences or discounts in the plan of allocation.  Class counsel will continue zealously and carefully to represent the Settlement Class interests.  Briganti Decl. ¶¶13-20.

Also, the Class counsel are thoroughly familiar with complex class action, antitrust and commodities litigation.  Lovell Stewart has successfully tried antitrust and commodities claims,

and also has obtained as Lead Counsel or Co-Lead Counsel what were at the times the largest class action recoveries under three federal statutes, two of which (the antitrust laws and commodity laws) are the primary statutes at issue here.  *See* Firm Resume annexed as Exhibit 2 to Lovell Decl.

With nearly fifty years' experience litigating complex class actions, Lowey, as court-appointed lead or co-lead counsel or as individual plaintiff's counsel, obtained what were at the time the first, second, third, and fourth largest class action recoveries under the Commodity Exchange Act, and has secured nearly a billion dollars in recoveries on behalf of Fortune 100 Companies and other sophisticated investors in antitrust and competition-related litigation.  *See* Firm Resume annexed as Exhibit 1 to Briganti Decl.

Because no fundamental conflicts exist, the Settlement Class is appropriately represented by the proposed Class Counsel.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir. 2007) (separate representation of multiple classes is required only where there is a "fundamental conflict" that goes "to the very heart of the litigation").  Accordingly, the "no fundamental conflicts" and "adequate class counsel" requirements of Rule 23(a)(4) are both satisfied.

### c.   **Class Counsel Should Be Appointed As Such Under FRCP 23(g)(1)**

Federal Rule of Civil Procedure 23(g)(1) provides that "…a court that certifies a class must appoint class counsel."  Rule 23(g)(1).  Rule 23(g)(2) provides that where, as here, only one application is made seeking appointment as class counsel, "… the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)."  Rule 23(g)(2).  As set forth at pp. 26-27 above and in the accompanying submissions, Lowey and Lovell are adequate and should be appointed as Interim Lead Counsel for the Settlement Class.

**B.** **The Proposed Settlement Class On The Claims Against Barclays Satisfies The Two Prongs of Rule 23(b)(3)**

Once the four requirements of Rule 23(a) have been satisfied, Plaintiffs must also conditionally establish (1) "…that the questions of law or fact common to class members predominate over any questions affecting only individual members…" and (2) "…that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**1.** **Common Questions of Law and Fact Predominate Over Individual Questions On The Settlement Class' Claims Against Barclays**

Rule 23(b)(3)'s certification is appropriate when "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Note. to 1966 amend.).  To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *Brown*, 609 F.3d at 483.  "If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *Air Cargo*, 2014 WL 7882100, at *35.

Predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust law," unlike mass tort cases in which the "individual stakes are high and disparities among class members are great." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Prudential*, 148 F.3d at 315 (noting that "the complexity of a

28

case alleging physical injury . . . differs greatly from a case alleging economic injury"). For

antitrust cases, predominance is readily established because the elements of the plaintiffs'

antitrust claims tend to be amenable to common proof. This is because liability focuses on the

alleged unlawful actions of the defendants, not the actions of individual plaintiffs. Accordingly,

antitrust claims tend to be well suited for class treatment. *Compare Amchem,* 521 U.S. at 624

*with Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2014).[12]

Moreover, the "predominance inquiry will sometimes be easier to satisfy in the

settlement context." *See also Am. Int'l Grp.,* 689 F.3d at 240. Unlike class certification for

litigation purposes, the judicial economy at issue for a settlement class is obtained through the

effectuation of the settlement itself, rather than through a trial of the class's claims. *See*

*Amchem*, 521 U.S. at 620; *see also NASDAQ I*, 169 F.R.D. at 517 (stating that predominance

test standard is met "unless it is clear that individual issues will overwhelm the common

questions and render the class action valueless").[13]

Though arguably not pertinent because this is a Settlement Class, the following is

clearly correct. If the claims against Barclays had not been settled, the dozens of common

questions referenced in the discussion of common questions under Rule 23(a)(2), would have

_____

[12] *See also, e.g.*, *In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement"); *Vitamin C*, 279 F.R.D. at 109 (stating that in horizontal price fixing cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class");

[13] The presence of the right of Class Members to opt out further favors conditional certification of this Settlement Class here. Even if some individual differences did exist among Settlement Class Members, those Class Members who "believe they may do better on their own are permitted to opt out." *Interchange*, 986 F. Supp. 2d at 239 n.20. As to potential individual issues among Class Members who stay in the Settlement Classes, "the fact of the settlement is 'relevant'" to the certification question, "since [the settlement] creates a single method and procedure for recovering monetary claims that might be otherwise complex and individualized." *Id*. (citing *Amchem*, 521 U.S. at 619); *see also In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000) (certifying a settlement class, stating any "individual issues relating to causation, injury and damage . . . disappear because the settlement's objective criteria provide for an objective scheme of compensation").

predominated over individual questions in the prosecution of the claims against Barclays.  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92.  Here, all Plaintiffs and Class Members face and must answer the same common factual and legal questions to establish personal jurisdiction, subject matter jurisdiction, conspiracy, the fact of any unlawful Euribor manipulation, the amount of such Euribor manipulation and many additional matters of proof.  These common questions will predominate over individual questions.  *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (in price-fixing case, "allegations of the existence of a price-fixing conspiracy are susceptible to common proof").

For example, antitrust injury "poses two distinct questions," one legal and one factual. *Cordes*, 502 F.3d at 106.  The legal question is "whether any such injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Cordes*, 502 F.3d at 106 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).   Thus, "the legal question raised by the antitrust injury element is common to the class." *See Cordes*, 502 F.3d at 108.

It is well-established that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *overruled on other grounds by In re Initial Public Offering Sec. Litig.*, 471 F. 3d 24, 42 (2d Cir. 2006).

The judicial economy obtained through the effectuation of the settlement applies to the issue of impact. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) (Scirica, J., concurring) ("Issues of predominance and fairness do not undermine this settlement. . . . All claims arise out of the same course of defendants' conduct; all share a common nucleus of

operative fact, supplying the necessary cohesion. Class members' interests are aligned . . . .

shared issues of fact or law outweigh issues not common to the class and individual issues do

not predominate.").

### 2.   A Settlement Class Is The Superior Method To Adjudicate The Claims Against Barclays, And Preserves Judicial Resources

Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is

superior to other methods available for "fairly and efficiently adjudicating the controversy."  *See*

Fed. R. Civ. P. 23(b).  The Court must balance the advantages of class action treatment against

alternative available methods of adjudication. Fed. R. Civ. P. 23(b)(3)(A)-(D) (listing four non-

exclusive factors relevant to this determination). The superiority requirement, however, is

applied in a more lenient fashion in the settlement context because the Court "need not inquire

whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S.

at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

A class action is the superior method for the fair and efficient adjudication of the Action.

First, Class Members are significant in number and geographically disbursed, making a "class

action the superior method for the fair and efficient adjudication of the controversy." *In re*

*Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

Second, the majority of Class Members have neither the incentive nor the means to

litigate these claims. This is because the damages suffered by most of the individual members of

the Settlement Class are likely to be small compared to the very considerable expense and burden

of individual litigation.  This makes it virtually impossible for them to protect their rights.

Accordingly, to date, no Class member "has displayed any interest in bringing an individual

lawsuit." *Meredith Corp. v. SESAC, LLC*, No. 09 Civ. 9177, 2015 WL 728026, at *8 (S.D.N.Y.

Feb. 19, 2015). Thus, a class action allows them to "pool claims which would be uneconomical

to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566; *see also Seijas v. Republic of Arg.,* 606 F.3d 53, 58 (2d Cir. 2010)). "Under such circumstances, a class action is efficient and serves the interest of justice." *Id.*

Third, the prosecution of separate actions by thousands of individual members of the Settlement Class would impose heavy burdens upon the Court. It would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class.  For all the foregoing reasons, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.  Thus, both prongs of Rule 23(b)(3) are satisfied.

## IV.    Amalgamated Bank Should Be Appointed As Escrow Agent

Paragraph 1.15 of the Settlement Agreement requires Plaintiffs' Counsel and Barclays jointly designate an Escrow Agent to maintain the Settlement Fund. Plaintiffs' Counsel and Barclays have jointly designated Amalgamated Bank to serve as Escrow Agent. As of June 30, 2015, Amalgamated Bank has nearly $4 billion in assets oversees approximately $40 billion in investment advisory and custodial services. Plaintiffs' Counsel have negotiated with Amalgamated Bank to provide its services as Escrow Agent at market rates.

## V.    Conclusion

 For the reasons stated above, Plaintiffs respectfully request that the Court enter the accompanying proposed Order that, among other things: (1) grants preliminary approval of the proposed Settlement; (2) conditionally certifies the Settlement Class for purposes of sending notice to the Class; (3) appoints Lowey and Lovell Stewart as Class Counsel; and (4) appoints Amalgamated Bank as Escrow Agent.

Dated: October 30, 2015

New York, New York

By: _____

Christopher Lovell
Gary S. Jacobson
Benjamin M. Jaccarino
Lovell Stewart Halebian Jacobson LLP
61 Broadway, Suite 501
New York, New York 10006
Tel:  (212) 608-1900
Fax:  (212) 719-4677
*clovell@lshllp.com*
*gsjacobson@lshllp.com*
*bjaccarino@lshllp.com*

By:  */S/Vincent Briganti*_____
Vincent Briganti
Geoffrey Horn
Lowey Dannenberg Cohen & Hart, P.C.
White Plains Plaza
One North Broadway
Suite 509
White Plains, New York 10601
Tel:  (914) 997-0500
Fax:  (914) 997-0035
*vbriganti@lowey.com*
*ghorn@lowey.com*

*Counsel for Plaintiffs and the Proposed Class*