UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br>　　　　　　　　　Plaintiffs,<br>　　　　　- against -<br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br>　　　　　　　　　Defendants. | Docket No. 13-cv-02811 (PKC)<br><br>ECF Case |

**DECLARATION OF CHRISTOPHER LOVELL, ESQ**

I, Christopher Lovell, pursuant to 28 U.S.C. §1746, declare:

1.	I am a partner in Lovell Stewart Halebian Jacobson LLP (the "Firm").  I submit this Declaration in support of Plaintiffs' motion for preliminary approval of the Settlement Agreement Between Plaintiffs and The Barclays Defendants.  As used herein, Barclays refers to Defendants Barclays plc, Barclays Bank plc and Barclays Capital Inc.

2.	Annexed as Exhibit 1 hereto is the Settlement Agreement Between Plaintiffs And The Barclays Defendants.  Annexed as Exhibit 2 hereto is my Firm's resume.

3.	My Firm is experienced with antitrust and commodity futures claims.  *See, *Exhibit 2.  I have almost 38 years' experience with such claims.  I have successfully tried such claims in this District.  I have served as Court-appointed counsel in many successfully settled class actions that have produced billions of dollars of recoveries. *See* Exhibit 2.

4.	I personally have worked on this case for my Firm.

5.	During 2015, I spoke to Barclays' counsel about the conditions and structure of negotiations to settle Plaintiffs' claims against Barclays.  Prior to and during the Settlement process, once the Department of Justice permitted Barclays to do so, Barclays made a number of proffers to Plaintiffs of specific factual information pursuant to Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").

6.	As a result of Barclays' ACPERA proffers, Plaintiffs had obtained by June 2015 substantial information about the claims against Barclays.  These proffers provided us with information that may have required years to learn through normal litigation and discovery.

7.	In negotiating with Barclays, Plaintiffs had the benefit of: (a) government orders revealing various facts, (b) proffers from Barclays' counsel pursuant to the ACPERA, (c)

1

counsel's investigation of information regarding the claims here, and (d) to mediation sessions in which Barclays made legal, economic and other presentations of their defenses and other information.

8. Counsel's investigation included consultations with three economists about issues pertinent to this case. We consulted with two economists regarding the degree of deviation in Euribor resulting from the conduct of Defendants as well as the conduct of Barclays alone. These consultations also include the range of the total financial consequences of such deviations.

9. Also, Class Counsel investigated, researched, analyzed, and evaluated a broad array of relevant legal issues.

10. On May 27, 2015, June 23, 2015, and June 25, 2015, Kenneth Feinberg held in person mediation sessions between Plaintiffs and Barclays. The third mediation session ended in impasse.

11. After the impasse on June 25th, Mr. Feinberg continued to mediate in telephone calls between the parties. The Mediator's telephone calls were ultimately successful and helped produce the Settlement.

12. On August 11, 2015, counsel for Barclays and Plaintiffs signed a Memorandum of Understanding ("MOU"). This MOU set forth the terms on which the parties agreed, subject to the preparation of a full Settlement Agreement, to settle all claims based on Plaintiffs' claims relating to Euribor or Euribor Products that Plaintiffs have or could have asserted against Barclays in this action. At that time, Plaintiffs' Counsel

13. On October 7, 2015, Plaintiffs and Barclays executed the Settlement Agreement annexed here as Exhibit 1.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br>　　　　　　　　　Plaintiffs,<br>　　　　　　　- against -<br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br>　　　　　　　　　Defendants. | Docket No. 13-cv-02811 (PKC)<br><br>ECF Case |

**DECLARATION OF CHRISTOPHER LOVELL, ESQ**

I, Christopher Lovell, pursuant to 28 U.S.C. §1746, declare:

1. I am a partner in Lovell Stewart Halebian Jacobson LLP (the "Firm"). I submit this Declaration in support of Plaintiffs' motion for preliminary approval of the Settlement Agreement Between Plaintiffs and The Barclays Defendants. As used herein, Barclays refers to Defendants Barclays plc, Barclays Bank plc and Barclays Capital Inc.

2. Annexed as Exhibit 1 hereto is the Settlement Agreement Between Plaintiffs And The Barclays Defendants. Annexed as Exhibit 2 hereto is my Firm's resume.

3. My Firm is experienced with antitrust and commodity futures claims. *See,* Exhibit 2. I have almost 38 years' experience with such claims. I have successfully tried such claims in this District. I have served as Court-appointed counsel in many successfully settled class actions that have produced billions of dollars of recoveries. *See* Exhibit 2.

4. I personally have worked on this case for my Firm.

5. During 2015, I spoke to Barclays' counsel about the conditions and structure of negotiations to settle Plaintiffs' claims against Barclays. Prior to and during the Settlement process, once the Department of Justice permitted Barclays to do so, Barclays made a number of proffers to Plaintiffs of specific factual information pursuant to Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").

6. As a result of Barclays' ACPERA proffers, Plaintiffs had obtained by June 2015 substantial information about the claims against Barclays. These proffers provided us with information that may have required years to learn through normal litigation and discovery.

7. In negotiating with Barclays, Plaintiffs had the benefit of: (a) government orders revealing various facts, (b) proffers from Barclays' counsel pursuant to the ACPERA, (c)

1

counsel's investigation of information regarding the claims here, and (d) to mediation sessions in which Barclays made legal, economic and other presentations of their defenses and other information.

8. Counsel's investigation included consultations with three economists about issues pertinent to this case. We consulted with two economists regarding the degree of deviation in Euribor resulting from the conduct of Defendants as well as the conduct of Barclays alone. These consultations also include the range of the total financial consequences of such deviations.

9. Also, Class Counsel investigated, researched, analyzed, and evaluated a broad array of relevant legal issues.

10. On May 27, 2015, June 23, 2015, and June 25, 2015, Kenneth Feinberg held in person mediation sessions between Plaintiffs and Barclays. The third mediation session ended in impasse.

11. After the impasse on June 25th, Mr. Feinberg continued to mediate in telephone calls between the parties. The Mediator's telephone calls were ultimately successful and helped produce the Settlement.

12. On August 11, 2015, counsel for Barclays and Plaintiffs signed a Memorandum of Understanding ("MOU"). This MOU set forth the terms on which the parties agreed, subject to the preparation of a full Settlement Agreement, to settle all claims based on Plaintiffs' claims relating to Euribor or Euribor Products that Plaintiffs have or could have asserted against Barclays in this action. At that time, Plaintiffs' Counsel

13. On October 7, 2015, Plaintiffs and Barclays executed the Settlement Agreement annexed here as Exhibit 1.

14. The Settlement Agreement was the culmination of arms-length, settlement negotiations that had extended over many months. At no time was there any collusion. Before any financial numbers were ever discussed in the settlement negotiations and before any demand or counter-offer was ever made, I was well informed about the legal risks, factual uncertainties, potential damages and other aspects of the strengths and weaknesses of the claims against Barclays.

I declare under penalty of perjury that the foregoing is true and correct statement of my opinions. Executed on October 30, 2015, at New York, NY.

*[signature]*

Christopher Lovell