I, Kenneth R. Feinberg, pursuant to 28 U.S.C. §1746, declare:

1.      I am a person of the full age of majority and, if called to testify, am competent to testify as to the facts set forth herein.

2.      I am the agreed upon Mediator in the above captioned matter involving Plaintiffs (by and through Lovell Stewart Halebian Jacobson, LLP and Lowey Dannenberg Cohen Hart P.C., hereinafter referred to as "Class Counsel") and Defendants Barclays plc, Barclays Bank plc and Barclays Capital Inc. (together, "Barclays") (by and though Barclays Counsel).  I submit this Declaration in connection with the pending Motion for Preliminary Approval of the settlement reached as a result of the mediation process.

3.      I have acted as an independent neutral mediator for over 30 years, retained by private parties, and federal and state courts, to design and administer mediation procedures aimed at resolving thousands of complex disputes.  I have acted as a mediator in a wide range of disputes, including mass torts, insurance coverage, contracts, and securities and antitrust litigation.  In some of these disputes, as in the above-captioned matter, I have been retained by the litigants to act as the neutral mediator. In other disputes, I have been appointed by the court to serve as the mediator (*see, e.g., In Re Agent Orange*, 611 F.Supp. 1396 (1985)). And, after the September 11 terrorist attacks, I was appointed by the Attorney General of the United States to act as the Special Master/Administrator of The

Federal September 11 Victim Compensation Fund of 2001 (*see* 49 U.S.C. Section

40101; 28 C.F.R. Sections 104.2 *et seq.* (2003)).

4.     I have also been appointed by federal and state judges to act as the

independent neutral and Distribution Agent in administering class action

settlements in complex commercial cases, including the allocation and distribution

of class settlement proceeds to eligible claimants.  *See, e.g., Securities and*

*Exchange Commission v. Maurice R. Greenberg and Howard I. Smith*, 09-civ.

6939 (S.D.N.Y. 2011) (Preska, J.).

5.     A copy of my curriculum vitae is attached hereto as Exhibit A.

6.     By May 2015, I had been asked by both Class Counsel and Barclays

Counsel if I would agree to serve as a sole Mediator in an agreed upon voluntary

and confidential mediation process designed to secure a comprehensive settlement

in the above-captioned matter involving Plaintiffs and Barclays.  I agreed to do so

with the full support and approval of both sides.  A mediation budget and schedule

were agreed upon, with Declarant acting as the sole neutral mediator to assist the

mediation participants in attempting to reach a comprehensive settlement of the

dispute.

7.     Prior to being retained by both sides, I had no knowledge or

understanding of the facts of the dispute.  During the course of the mediation, I

acted as an independent, neutral mediator encouraging each side separately, and

both sides together, to resolve their differences through strenuous, arms-length, hotly contested negotiation.  I supervised the entire process as the Mediator.

8.      In the course of the mediation process, commencing around May 19, 2015 and concluding on or about July 7, 2015, I engaged in frequent telephone conversations and three face-to-face meetings with the mediation participants, separately and together, in an effort to help the parties reach a successful mediated settlement.

9.      At the face-to-face meetings on May 27, 2015, I met with representatives of both sides, heard from each side concerning background information about the litigation and its status, as well as each party's views as to the litigation risks if a mediated settlement were not achieved.  Each side also discussed with me in confidence what it saw as the outstanding issues and how those outstanding issues might be resolved.  The settlement discussions were vigorous, hotly contested, well informed, and at arms-length.  They involved highly experienced counsel representing both sides, who engaged in hard bargaining.

10.     Another joint mediation session was held in Washington, DC on June 23, 2015.  This mediation session was also attended by experts for both the Plaintiffs and Barclays, each of whom made extensive economic presentations, including on the calculation of potential damages.

3

11.     Another joint mediation session was held in New York City on June 25, 2015, at which time I urged resolution of various issues.  Financial terms were negotiated, but the parties were unable to reach agreement as to any of the outstanding issues.

12.     After the impasse on June 25, 2015, I conducted calls with both sides until July 7, 2015.

13.     During the course of the mediation process, I continuously reiterated that each side confronted substantial risks if the litigation went forward.

14.     At my urging and direction, the mediation participants then engaged in direct negotiations to create a memorandum of understanding (the "MOU"). The disagreements were eventually resolved sufficiently to reach an MOU and, eventually, a settlement agreement (the "Settlement Agreement").

15.     It is my belief that the settlement reached in the above-captioned matter as a result of the mediation is fair, reasonable, and adequate.  The negotiation process was *bona fid*e, and advocated by sophisticated and capable counsel on both sides.  I base this opinion both on my previous experience in mediating similar complex civil disputes and my careful evaluation and analysis of the proposed settlement terms and conditions in this matter.

4

16.     I further note that this first and early settlement with Barclays provides Plaintiffs with a precedent and settlement structure that may encourage other interested defendants to settle.

17.     The Settlement Fund of $94,000,000 (of which $1,000,000 is non-refundable for the costs of notice, claims administration, or other steps taken pursuant to Court order) is also adequate based upon my review of confidential economic materials shown to me.  I further find the terms of settlement set forth in the Settlement Agreement to be adequate considering the significant cooperation that Barclays has provided and will continue to provide to Plaintiffs under the Settlement Agreement, and my understanding that Barclays is a candidate for leniency for conduct alleged in this action under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, tit. II, 118 Stat. 661 (2004) ("ACPERA").

18.     Based upon my extensive experience in designing, implementing, and administering settlement compensation programs, it is my opinion that the language and nature of the Release in this settlement is appropriate and the result of vigorous, well-informed, arms-length negotiation between and among the mediation participants.

19.     Finally, as often happens, the Settlement Agreement appropriately does not make allocation decisions.  Preliminary approval is often granted to

5

settlements before allocation decisions have been made.  After Class Counsel has obtained transactional documents, the allocation process may begin. I have agreed to consult and serve as Mediator or Advisor to ensure an appropriate process and fair plan of allocation.

20.     Regarding plans of allocation, I have been assigned by various courts with responsibility for designing, implementing and administering systems for the allocation and distribution of settlement proceeds totaling in the billions of dollars.

21.     Most recently, I served as the Special Master of the September 11th Victim Compensation Fund of 2001.  In that capacity, federal law delegated to me the responsibility for designing, implementing and administering a $7 billion public fund for the families of 9/11 victims and survivors who were physically injured.  I am currently serving as the Fund Administrator of the Computer Associates Restitution Fund, appointed by the Federal Court in the Eastern District of New York, as well as Special Master of the *In Re Zyprexa* settlement, appointed by the Federal District Court in the Southern District of New York.  In both matters, I have been responsible for designing and administering allocation formulas for the distribution of settlement proceeds to eligible claimants.  I also recently completed my service as court-appointed Special Master of the *Latino Officers Assn. v. the City of New York* class action discrimination case in the

Southern District of New York, where I again was responsible for allocating and distributing settlement proceeds.

I declare under penalty of perjury that the foregoing is true and correct statement of my opinions.  Executed on October 30, 2015, at Washington, DC.

Kenneth R. Feinberg