## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br><br>             Defendants. | No. 13-cv-02811 (PKC)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**TABLE OF CONTENTS**

**Page**

I.    FOREIGN DEFENDANTS HAVE NOT CONSENTED TO JURISDICTION. .............. 1

II.   FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC
      JURISDICTION. ....................................................................................... 2

      A.    Plaintiffs Fail to Allege Suit-Related Contacts with the Forum. ........... 2

      B.    Allegations of In-Forum "Effects" Are Insufficient. ............................. 4

      C.    Allegations of Conspiracy with U.S.-Based Entities Are Insufficient.... 5

III.  FEDERAL STATUTES DO NOT GIVE RISE TO JURISDICTION. ............................. 7

IV.   RBS AND UBS ARE NOT ESTOPPED FROM CHALLENGING
      JURISDICTION. ....................................................................................... 8

V.    JURISDICTIONAL DISCOVERY IS INAPPROPRIATE. .............................................. 8

CONCLUSION ......................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
   2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ....................................................5, 7, 8

*ACUITY v. Roadtec, Inc.*,
   2013 WL 6632631 (N.D. Ill. Dec. 16, 2013)..............................................................1

*Adelphia Recovery Tr. v. Goldman Sachs & Co.*,
   748 F.3d 110 (2d Cir. 2014)........................................................................................8

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
   782 F. Supp. 215 (S.D.N.Y. 1992)..............................................................................6

*AM Tr. v. UBS AG*,
   78 F. Supp. 3d 977 (N.D. Cal. 2015) ......................................................................1, 2

*Arma v. Buyseasons, Inc.*,
   591 F. Supp. 2d 637 (S.D.N.Y. 2008)........................................................................2

*Augsbury Corp. v. Petrokey Corp.*,
   470 N.Y.S.2d 787 (3d Dep't 1983).............................................................................1

*B & M Kingstone, LLC v. Mega Int'l Commercial Bank Co.*,
   15 N.Y.S.3d 318 (1st Dep't 2015) .............................................................................1

*Beach v. Citigroup Alternative Invs. LLC*,
   2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .............................................................1, 2

*Calder v. Jones*,
   465 U.S. 783 (1984).....................................................................................................4

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998)..........................................................................................3

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*,
   7 N.Y.3d 65 (2006) ......................................................................................................5

*Eades v. Kennedy, PC Law Offices*,
   799 F.3d 161 (2d Cir. 2015)........................................................................................3

*Etna Prods. Co. v. Dacofa Trading Co.*,
   1992 WL 51507 (S.D.N.Y. Mar. 11, 1992) ...............................................................2

*Freedman v. Suntrust Banks, Inc.*,
  2015 WL 5579559 (D.D.C. Sept. 21, 2015) ..........................................................................1

*Glaros v. Perse*,
  628 F.2d 679 (1st Cir. 1980) ...............................................................................................6

*Gleason Works v. Klingelnberg-Oerlikon Geartec Vertriebs-GmbH*,
  58 F. Supp. 2d 47 (W.D.N.Y. 1999) ....................................................................................8

*Gucci Am. v. Weixing Li*
  2015 WL 5707135 (S.D.N.Y. Sept. 29, 2015) ......................................................................3

*Gucci Am. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) ............................................................................................3, 8

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  104 F. Supp. 2d 279 (S.D.N.Y. 2000) ..................................................................................7

*In re Amaranth Nat. Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ..................................................................................5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .............................................................. *passim*

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) .................................................................................................5

*In re Satyam Comput. Servs. Sec. Litig.*,
  915 F. Supp. 2d 450 (S.D.N.Y. 2013) ..............................................................................6, 7

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) .................................................................................................4

*In re Vitamin C Antitrust Litig.*,
  2012 WL 12355046 (E.D.N.Y. Aug. 8, 2012) ......................................................................5

*King Cnty. v. IKB Deutsche Industriebank AG*,
  712 F. Supp. 2d 104 (S.D.N.Y. 2010) ..................................................................................1

*Laydon v. Mizuho Bank, Ltd.*,
  2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ..................................................................5, 8

*Leasco Data Processing Equip. Corp. v. Maxwell*,
  468 F.2d 1326 (2d Cir. 1972) ...............................................................................................6

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) .................................................................................................3

*Longaberger Co. v. Kolt*,
    586 F.3d 459 (6th Cir. 2009) ...........................................................................................8

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395 (2d Cir. 2014) ............................................................................................7

*Max Daetwyler Corp. v. R. Meyer*,
    762 F.2d 290 (3d Cir. 1985) ............................................................................................7

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ........................................................................................................6

*O'Dette v. Fisher*,
    2014 U.S. Dist. LEXIS 163343 (E.D.N.Y. Nov. 21, 2014) ............................................8

*SEC v. Softpoint, Inc.*,
    2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) .....................................................................7

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ............................................................................................3

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ..........................................................................................2, 3

*United States v. Hayes*,
    99 F. Supp. 3d 409 (S.D.N.Y. 2015) ..............................................................................5

*Varga v. Credit Suisse*,
    155 N.Y.S.2d 655 (Sup. Ct. 1956) ..................................................................................1

*Vera v. Republic of Cuba*,
    91 F. Supp. 3d 561 (S.D.N.Y. 2015) ..............................................................................1

*Vest v. Waring*,
    565 F. Supp. 674 (N.D. Ga. 1983) ..................................................................................7

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .................................................................................................4, 5

**Statutes**

N.Y. Banking Law § 200 ...........................................................................................................1

N.Y. Banking Law § 200-b ........................................................................................................1

N.Y. Civil Practice Act § 229 ...................................................................................................1

iv

Plaintiffs concede there is no general jurisdiction here (Opp. 1), but argue that Foreign Defendants[1] consented to jurisdiction or are subject to specific jurisdiction.  Their arguments fail.

## I.       FOREIGN DEFENDANTS HAVE NOT CONSENTED TO JURISDICTION.

Plaintiffs' argument (Opp. 15-18) that certain Foreign Defendants[2] consented to personal jurisdiction *in this case* by registering branch offices with the DFS under New York Banking Law § 200 is contradicted by the statutory language and applicable law, including case law cited by Plaintiffs themselves.  Under § 200, a foreign bank must appoint an agent for service of process *solely* for actions "arising out of a transaction with its New York agency . . . or branch[.]"  N.Y. Banking Law § 200(3).  Plaintiffs do not allege a cause of action arising out of a transaction with any Foreign Defendant's New York branch or agency and, therefore, § 200 does not apply.  Plaintiffs cannot, and do not even try to, reconcile this statutory language with their position.[3]  *See* PJ Br. 6-8 (citing authority that § 200 limits any consent to *specific* jurisdiction and that Plaintiffs' argument "directly contradict[s] *Gucci*").[4]

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in Foreign Defendants' opening brief.

[2] Plaintiffs do not assert that the ICAP Entities consented to jurisdiction, entered into any ISDAs, registered to do business in New York, or traded with any retail customers, and, contrary to the allegation in the FAC (¶ 102), neither of the ICAP Entities is a clearing member of the CME.  (*See* Bigwood Decl. ¶ 3; Bridges Decl. ¶ 3.)

[3] Plaintiffs' cases (Opp. 16-17) lend them no support.  *Varga v. Credit Suisse*, 155 N.Y.S.2d 655, 658 (Sup. Ct.), *aff'd*, 157 N.Y.S.2d 341 (1st Dep't 1956), ruled that defendants consented to general jurisdiction based on the court's interpretation of another statute, the former Civil Practice Act § 229, which Plaintiffs do not invoke and has nothing to do with this case.  Indeed, the trial and appellate courts in *Varga* specifically held that the underlying cause of action was not "within the scope of [§ 200(3)]" because it did not "aris[e] out of a transaction with [defendants'] New York agency."  *Id.*.  *Augsbury Corp. v. Petrokey Corp.*, 470 N.Y.S.2d 787 (3d Dep't 1983), and *Beach v. Citigroup Alternative Investments LLC*, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014), addressed registration under a different statute, the New York Business Corporation Law, which does not limit consent to claims "arising out of" a transaction with the New York agency or branch.  *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), and *B & M Kingstone, LLC v. Mega International Commercial Bank Co.*, 15 N.Y.S.3d 318 (1st Dep't 2015), which address enforcement of subpoenas, are similarly distinguishable.  *See* PJ Br. 7 n.9.  Finally, Plaintiffs' citation to Banking Law § 200-b (Opp. at 16) is entirely off-base.  That provision is a grant of standing or subject matter jurisdiction, and does not relate to personal jurisdiction.  *See King Cnty. v. IKB Deutsche Industriebank AG*, 712 F. Supp. 2d 104, 114-15 (S.D.N.Y. 2010).

[4] Plaintiffs' argument that UBS consented to jurisdiction by registering under the IBA (Opp. 16 n.24) is flawed because it is based on a misreading of the statute and would subject a foreign bank to suit in any jurisdiction in which it has a federal branch, putting foreign banks in a *worse* position than national banks, which are not subject to general jurisdiction wherever they have branches.  *See Freedman v. Suntrust Banks, Inc.*, 2015 WL 5579559, at *5 (D.D.C. Sept. 21, 2015); *see also AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015) (rejecting Plaintiffs' argument).  Nor do RBS's and UBS's operations and UBS's registration in Illinois constitute consent to jurisdiction.  PJ Br. 6 n.8 (citing authority); *see also ACUITY v. Roadtec, Inc.*, 2013 WL 6632631, at *5 (N.D. Ill. Dec. 16, 2013) ("Although … registration indicates that [defendant] seeks the benefits and protections of Illinois' laws, an Illinois

Plaintiffs' speculative argument that each Foreign Defendant consented to jurisdiction here based on ISDAs executed by three Defendants, on the theory that jurisdictional discovery *may* reveal that other Defendants entered into ISDAs with non-plaintiffs that contain similar forum selection clauses (Opp. 2-3), is unavailing. *Etna Prods. Co. v. Dacofa Trading Co.*, 1992 WL 51507, at *3 (S.D.N.Y. Mar. 11, 1992) (dismissing complaint where "[p]laintiff relies on conclusory allegations, conjecture, and speculation to support its claim of jurisdiction").[5]  In any event, Plaintiffs do not allege that *any* Foreign Defendant executed an ISDA with any named Plaintiff that actually governs the transactions underlying Plaintiffs' claims.[6]  That is fatal because jurisdiction must be established over the claims of the named plaintiff, as "claims of unnamed class members are irrelevant to the question of specific jurisdiction." *AM Tr.*, 78 F. Supp. 3d at 986; *see also Beach*, 2014 WL 904650, at *6 ("Contacts with unnamed class members may not be used as a jurisdictional basis . . . .").[7]

## II.   FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION.

### A.   Plaintiffs Fail to Allege Suit-Related Contacts with the Forum.

Plaintiffs' argument that certain Foreign Defendants' business activities in New York—establishment of branches in New York, alleged transactions in Euribor-based derivatives in the U.S. (including with U.S. counterparties), employment of traders of Euribor-based derivatives in

---

license or registration does not automatically confer general personal jurisdiction.").

[5] The only ISDA any Plaintiff (CalSTRS) allegedly entered into with any HSBC Entity (HSBC Bank plc) specifies English courts as the venue for litigating disputes relating to the contract.  Brown Decl. ¶ 7 & Attach. at pp. 13, 22.

[6] Plaintiffs assert that a 2004 ISDA between RBS and CalSTRS establishes jurisdiction over RBS.  Opp. 3, 14-15.  But that ISDA contains a consent to jurisdiction solely in proceedings "relating to this Agreement," Krisiloff Decl. Ex. 5, § 13(b), and despite amending their complaint four times, Plaintiffs have never alleged that any of CalSTRS' alleged swap transactions "relat[es] to" that specific ISDA, *see* PJ Br. 12 n.15.  Even if the FAC contained such an allegation, it would not confer jurisdiction with respect to claims unrelated to the contractual relationship embodied in the ISDA, including antitrust, RICO, or any CEA or other claims relating to transactions in exchange-traded instruments at issue here (CME Euro currency futures and LIFFE Euribor futures, FAC ¶¶ 57-62). *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (jurisdiction must be established "with respect to each claim asserted") (citations omitted); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526, at *34 (S.D.N.Y. Oct. 20, 2015) (not "all claims against a counterparty may be brought in a contractually selected forum"); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) (forum selection clause inapplicable where "rights being asserted do not originate from the contract containing the forum selection clause").

[7] Thus, any Foreign Defendant's ISDAs with entities other than Plaintiffs—even if they were relevant to the inquiry here—would not confer jurisdiction over that Foreign Defendant with respect to Plaintiffs' claims. *See supra* note 6.

New York, registrations as swap dealers with the CFTC, or memberships in the CME or LIFFE—give rise to personal jurisdiction is incorrect, as Plaintiffs' claims do not arise out of these activities.[8]  Misleadingly citing cases interpreting the requirements of New York's long-arm statute, which poses a lower bar to jurisdiction than constitutional due process, Plaintiffs argue that a causal relationship between their claims and Foreign Defendants' contacts with the forum is unnecessary so long as their claims are "not completely unmoored" from those contacts.[9]   Opp. 6-7.  The Second Circuit, however, requires a "'but for' connection between the defendant's forum-directed activities and the claim," *LIBOR IV*, 2015 WL 6243526, at \*28, and proximate cause where, as here, "the defendant had only limited contacts with the state," *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998).  Plaintiffs fail to allege *any* causal connection between the alleged misconduct that forms the basis of Plaintiffs' claims and the forum (whether New York, Illinois, or the U.S.).

Although Plaintiffs assert that personal jurisdiction over Rabobank and DB can be premised on employee misconduct in New York (Opp. 8-9), none of the cited materials supports

---

[8] Plaintiffs allege no transactions in *any* allegedly Euribor-based derivatives with the Crédit Agricole Entities, ICAP Entities, DB Group Services (UK) Ltd. ("DBGS"), HSBC Holdings plc or Rabobank.  Although Plaintiffs allegedly entered into FX forwards with Deutsche Bank ("DB"), HSBC Bank plc, RBS, SG, and UBS, Opp. 7, FX forwards are not indexed to Euribor and therefore these transactions do not support personal jurisdiction.  PJ Br. 11-12; Merits Br. 7.  Even if they were indexed to Euribor, they still would not support jurisdiction over the counterparty Foreign Defendants.  PJ Br. 12.  Moreover, Plaintiffs fail to allege jurisdiction over HSBC Bank plc and SG for the additional reason that CalSTRS has not identified any specific FX forward with it that it alleges was artificially priced.  Merits Br. 32 n.42.  In addition, it is undisputed that HSBC Bank plc's performance of the underlying contract occurred in the U.K. and the contract is subject to English court venue provisions.  *See supra* note 5.

[9] *Gucci America v. Weixing Li* expressly applies "but for" causation when addressing due process.  2015 WL 5707135, at \*9 (S.D.N.Y. Sept. 29, 2015), *appeal docketed*, No. 15-3850 (2d Cir. Dec. 1, 2015).  The portions of *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015), and *Sunward*, 362 F.3d at 23, that Plaintiffs cite address New York's long-arm statute, not due process.  Jurisdiction is proper only if it comports with due process, regardless of the applicability of New York's long-arm statute.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir.), *cert denied,* 134 S. Ct. 2888 (2014) (personal jurisdiction inquiry is a two-step analysis:  first, whether jurisdiction exists under law of forum state; second, whether exercise of jurisdiction comports with due process).  *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013), cited by Plaintiffs for the proposition that a court may exercise specific jurisdiction over a defendant based on "single or occasional" acts, Opp. 6, contains no such quote or holding.  Rather, *Licci* held that a foreign defendant's use of a correspondent bank account in New York to execute "dozens" of wire transfers supported the exercise of specific jurisdiction over claims alleging that the wire transfers were purposefully used "as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress."  732 F.3d at 170-71.

the assertion that employees of either engaged in Euribor-related misconduct in New York.[10]

## B.   Allegations of In-Forum "Effects" Are Insufficient.

Plaintiffs argue that there is specific jurisdiction over Foreign Defendants because each purportedly knew that its alleged manipulation of Euribor "caused effects" in the U.S.[11]  Opp. 9-11.  But the test for jurisdiction under *Calder v. Jones* is more pointed:  whether the forum was the "focal point" of defendant's conduct because defendant "expressly aimed" its conduct at the forum and "knew that the brunt of [the] injury" would be felt there.  465 U.S. 783, 789-90 (1984).  Indeed, *Walden v. Fiore* holds that the fact that the plaintiff "suffered foreseeable harm" in the forum is insufficient to "satisf[y] the minimum contacts inquiry."  134 S. Ct. 1115, 1124 (2014) (internal quotation marks omitted); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).

Plaintiffs fail to allege facts plausibly showing that New York (or the U.S.) was the "focal point" of Foreign Defendants' conduct or that Foreign Defendants knew the "brunt" of any injury would be felt there.  Indeed, although they allege Foreign Defendants knew that the alleged misconduct would have effects in the U.S., Opp. 10, Plaintiffs acknowledge that those effects were "global."  *Id.* 11.[12]  Plaintiffs' jurisdictional arguments are no different from those

---

[10] Plaintiffs allege no facts showing anyone at Rabobank made requests for artificial *Euribor* submissions from New York (or anywhere in the U.S.)—and nothing in Rabobank's regulatory settlements (*see* FAC, Exs. C-1-C-3) or in the trial testimony of former Rabobank employee Anthony Allen (Krisiloff Decl., Ex. 11) indicates otherwise. Indeed, Rabobank's regulatory settlements make clear that any employees involved in any Euribor misconduct were located in Europe, and the Allen trial (which concerned Yen LIBOR and USD LIBOR) had absolutely nothing to do with Euribor—as reflected in the fact that in ten days of testimony the word "Euribor" was uttered *once*. Gelfand Decl., Ex. A at 206:7-20.

In addition, Plaintiffs do not allege any facts showing—and the cited regulatory findings do not indicate—that DB's "Monday Risk Calls" contemplated or had any impact on Euribor-based derivatives sold in the U.S. *See* FAC Ex. F-6 at 9. Also, DBGS did not, as Plaintiffs assert, admit in its DOJ settlement that its traders "confer[red] with N.Y.-based traders and management about manipulating Euribor." *See* FAC Ex. F-4. Plaintiffs' further argument that a single DBGS employee "joined the [purported] conspiracy" refers to two other London-based individuals and not the U.S. or New York. Opp. 13 n.21. Finally, DB's DFS Consent Order—the source of Plaintiffs' references to the Bank's "New York Branch"—does not refer to any Euribor-related conduct occurring in New York. PJ Br. 16 n.16.

[11] A nationwide contacts analysis is not appropriate. *See infra* Section III.

[12] The Barclays materials cited by Plaintiffs *undermine* their assertion that the alleged Euribor conduct was "aimed" at the U.S. or that that the "brunt" of any injury would be felt in the U.S., as they indicate that on average only 6.5% of Barclays's trading in "Euribor-based derivatives" between 2005-2011 was with U.S. counterparties. Krisiloff Decl. ¶¶ 22.

rejected by three other judges in this District adjudicating claims involving alleged manipulation of other interest rate benchmarks.  *See LIBOR IV*, 2015 WL 6243526, at *32 ("it does not stand to reason[] that foreign defendants aimed their manipulative conduct at the [U.S.] or any particular forum state"); *accord 7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at *10-11 (S.D.N.Y. Mar. 31, 2015); *Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015).[13]  Plaintiff's reliance on the criminal case *United States v. Hayes*, 99 F. Supp. 3d 409 (S.D.N.Y. 2015), *order adopted in part*, 2015 U.S. Dist. LEXIS 101212 (S.D.N.Y. Aug. 3, 2015), *appeal docketed*, No. 15-2597 (2d Cir. Aug. 13, 2015), is misplaced, as the magistrate judge explicitly limited his holding there to criminal cases.  *See id.* at 424 n.4 (law of personal jurisdiction in civil actions is "inapposite" in criminal context because "criminal law and civil law serve different purposes and have different sources and constraints").[14]

C.      **Allegations of Conspiracy with U.S.-Based Entities Are Insufficient.**

Plaintiffs' argument that a purported conspiracy with U.S.-based Defendants supports jurisdiction (Opp. 12-14) fails.[15]  *First*, Plaintiffs have not plausibly alleged, as they must, a *prima facie* conspiracy among twenty Defendants to move Euribor upward and downward "on a daily basis" for their financial benefit over a six-year time period (June 2005 and March 2011)—

---

[13] Plaintiffs point to Thomson Reuters' alleged use of U.S. wires to disseminate published Euribor and Foreign Defendants' transmission of Bloomberg electronic messages "through servers located in New York," Opp. 10 & n.13, but it is "unreasonable" to consider that these "highly attenuated connection[s]" constitute purposeful availment.  *Laydon*, 2015 WL 1515358, at *3.  For this reason (and because the conduct does not pertain to Euribor, *see supra* note 10), testimony that a former Rabobank trader made deposits via U.S. wires into accounts at U.S. banks (Opp. 10 n.12) is insufficient to confer jurisdiction.

[14] Plaintiffs' other cases are also off-point.  *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (plaintiffs entitled to jurisdictional discovery based on meeting minutes showing that defendant was present at meeting where participants discussed price-fixing "expressly directed" at the U.S.; no similar evidence of conduct expressly directed at the forum is present here); *In re Vitamin C Antitrust Litig.*, 2012 WL 12355046, at *12 (E.D.N.Y. Aug. 8, 2012) (upholding jurisdiction based on foreseeable effects in the forum of conduct occurring abroad, which cannot be reconciled with the later decision in *Walden*, *see* PJ Br. 10-11); *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536 (S.D.N.Y. 2008) (same); *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71-72 (2006) (addressing whether electronic communications into New York sufficient to support jurisdiction under New York long-arm statute, not due process).

[15] Personal jurisdiction over a defendant through the imputation of contacts of putative co-conspirators has been widely criticized and is further undermined by *Walden*—which emphasized that jurisdiction must be based on contacts that the defendant ***himself*** creates with the forum.  PJ Br. 13.  Plaintiffs' response that conspiracy jurisdiction nonetheless remains viable points only to authorities that pre-date *Walden*.  Opp. 12 & n.18.  The *Hayes* case does not support Plaintiffs, as it did not concern personal jurisdiction analysis.  *See supra* Section II.B.

let alone facts which could support an inference that *each* Foreign Defendant was a member of any purported conspiracy with any person in the U.S.  PJ Br. 14.  Plaintiffs' reliance on European Commission ("EC") settlements entered into by Barclays, DB, RBS, and SG, and a statement in an EC press release that Crédit Agricole CIB, "HSBC,"[16] and JPMorgan "may" have been part of the same cartel, is misplaced.  Opp. 12-13; *see* FAC ¶ 354.  The EC settlements concern activity in the European Economic Area and neither those documents nor the discovery materials provided by Barclays provide that any Foreign Defendant specifically conspired with anyone in the U.S.[17]  Plaintiffs, moreover, do not, and cannot, allege that Crédit Agricole S.A., DBGS, the ICAP Entities, Rabobank, or UBS were identified by the EC as participating in a cartel, and do not assert that Barclays' discovery materials identified these Foreign Defendants as participating in the alleged conspiracy.  *See* FAC App'x B.[18]

*Second*, Plaintiffs fail to allege any tortious act committed in New York or the U.S. by a U.S. person or entity pursuant to any alleged conspiracy.[19]  Although Plaintiffs assert that JPMorgan and Citibank "connected the entire conspiracy and all its members to the U.S.," Opp. 13, an alleged co-conspirator's residence in the forum is insufficient to establish conspiracy jurisdiction over foreign defendants in the absence of specific facts demonstrating that it acted in furtherance of the alleged conspiracy in the forum—allegations that are absent here.[20]  In

---

[16] It is undisputed that HSBC France was the "HSBC" entity on the Euribor panel and employed the "HSBC" employees allegedly involved in Euribor misconduct, not Defendants HSBC Holdings plc or HSBC Bank plc. Brown Decl. ¶¶ 5-6. Plaintiffs allege no basis for attributing HSBC France's alleged conduct to these Defendants.

[17] Plaintiffs' assertion that ICAP conspired with a Barclays trader, Opp. 13, is unsupported by allegations in the FAC, as the FAC does not suggest any agreement or conduct by the ICAP Entities to support the existence of a conspiracy.  PJ Br. 9 n.10.  Further, Plaintiffs' conspiracy jurisdiction theory would still fail because neither the DB nor the Barclays individuals with whom ICAP supposedly communicated (FAC ¶¶ 195, 198) are alleged to have conducted any activity in the U.S.  PJ Br. 13-15.

[18] The conviction of former Rabobank trader Allen for conspiring to commit wire fraud does not support Plaintiffs' assertion of conspiracy jurisdiction, because the Allen trial had nothing to do with Euribor.  *See supra* at [•] n. [•].

[19] Although the case cited by Plaintiffs, *In re Satyam Computer Services Securities Litigation*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013), states the third prong differently, *Satyam* merely paraphrased the standard set forth in *Allstate Life Insurance Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992), which requires that plaintiffs "show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction."

[20] *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972) ("[T]he mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator."), *abrogated on other grounds*, *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010); *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir.

addition, although Plaintiffs cite some Foreign Defendants' allegedly Euribor-based derivatives transactions with U.S. counterparties as evidence of U.S.-based conduct related to the conspiracy,[21] Plaintiffs fail to show (i) how these transactions were tortious or (ii) that their claims arise out of these transactions.  *See supra* Section II.A.

## III.   FEDERAL STATUTES DO NOT GIVE RISE TO JURISDICTION.

Nationwide service of process provisions in federal statutes do not give rise to personal jurisdiction over the Foreign Defendants.  *See* Opp. 3.  Plaintiffs cannot rely on these statutes[22] because their federal claims fail on the merits.  *See* Merits Br. Parts I-IV; PJ Br. 17.[23]  Even if Plaintiffs asserted viable federal claims and a nationwide contacts analysis was appropriate,[24] this would mean *only* that the relevant forum for purposes of the jurisdictional contacts inquiry would be the U.S. as a whole.[25]  Foreign Defendants' alleged contacts with the U.S. are insufficient to establish jurisdiction.  *See supra* Section II; PJ Br. 16-17.[26]

---

1980) ("conspiracy theory of personal jurisdiction . . . . require[s] something more than the presence of a co-conspirator within the forum state"); *LIBOR IV*, 2015 WL 6243526 at \*29 ("[A] bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough.").  The conduct of former Barclays employee Eric Bommensath does not support Plaintiffs' argument because there is no allegation that he participated in, or even had knowledge of, alleged Euribor manipulation.  *See* PJ Br. 14.

[21] Plaintiffs do not even allege that the Crédit Agricole Entities, ICAP Entities or DBGS entered in any allegedly Euribor-based derivatives transactions occurring in the U.S.  *Satyam*, 915 F. Supp. 2d at 485 (conspiracy allegations insufficient to establish jurisdiction over co-conspirator not connected to transactions occurring in U.S.).

[22] The opposition ignores that Plaintiffs cannot rely on the CEA and Clayton Act service provisions as to DBGS and the ICAP Entities, as they fail to plead the statutes' venue prerequisites.  *See* PJ Br. 18 n.19.

[23] Courts regularly decline to address *personal* jurisdiction under federal statutes where federal claims fail on the merits.  PJ Br. 17 n.18.  *Lotes Co. v. Hon Hai Precision Industry Co.,* 753 F.3d 395 (2d Cir. 2014) (cited at Opp. 6 n.9), does not hold otherwise, as it addressed subject matter jurisdiction, not personal jurisdiction.

[24] Nationwide contacts analysis is no longer appropriate following *Daimler*.  *See* PJ Br. 18-19.

[25] The cases Plaintiffs cite do not require a different analysis.  *See SEC v. Softpoint, Inc.*, 2001 WL 43611, at \*3 (S.D.N.Y. Jan. 18, 2001) ("where . . . [U.S.] . . . is the only sovereign whose power to adjudicate is in question, it logically follows that the relevant 'minimum contacts' . . . should be the defendant's contacts with the [U.S.]"); *accord Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 283-85 (S.D.N.Y. 2000); *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295 (3d Cir. 1985).  *See also Vest v. Waring*, 565 F. Supp. 674, 694 (N.D. Ga. 1983) (analyzing defendants' minimum contacts with *state*, despite assertion of Sherman Act claims).

[26] Plaintiffs alternatively argue that jurisdiction lies under Fed. R. Civ. P. 4(k)(2), Opp. 11 n.17, which requires them to show that defendants are not "subject to jurisdiction in any state's courts" and that the exercise of jurisdiction is "consistent with the [U.S.] Constitution and laws."  Plaintiffs have failed, however, to certify that Foreign Defendants are not subject to jurisdiction in any state, as they must.  *See 7 W. 57th St.*, 2015 WL 1514539, at \*13. Instead, they argue that Foreign Defendants are subject to this Court's jurisdiction.  In any event, Plaintiffs still have failed to plead that Foreign Defendants' contacts satisfy due process.  *See supra* Section II.

**IV.    RBS AND UBS ARE NOT ESTOPPED FROM CHALLENGING JURISDICTION.**

Contrary to Plaintiffs' arguments, RBS and UBS are not estopped from challenging jurisdiction by having sought transfer of this case from Illinois in April 2013, Opp. 18-20, as "judicial estoppel is inappropriate when a party is merely changing its position in response to a change in the law." *Longaberger Co. v. Kolt*, 586 F.3d 459, 470 (6th Cir. 2009) (collecting cases). This is precisely what RBS and UBS did here in response to *Daimler* (which was decided after the supposed judicial admissions). *See Gucci Am. v. Weixing Li*, 768 F.3d 122, 135-36 (2d Cir. 2014) (foreign parties can change their positions on personal jurisdiction in response to *Daimler*); *LIBOR IV*, 2015 WL 6243526, at *36 (permitting defendants to assert personal jurisdiction defenses despite not doing so previously).[27]

**V.    JURISDICTIONAL DISCOVERY IS INAPPROPRIATE.**

*All* other courts in this District that have considered personal jurisdiction issues in interest rate benchmark matters have done so without jurisdictional discovery. *See LIBOR IV*, 2015 WL 6243526; *7 W. 57th St.*, 2015 WL 1514539; *Laydon*, 2015 WL 1515358. The discovery that Plaintiffs request—ISDAs between Defendants and any U.S. counterparty—is either already in Plaintiffs' possession or concerns non-plaintiffs (*see supra.* Section I), and thus does nothing to establish jurisdiction. The failure to plead a *prima facie* case for personal jurisdiction is fatal to Plaintiffs' request for jurisdictional discovery. *See* PJ Br. 20.[28]

**CONCLUSION**

Foreign Defendants should be dismissed from this action pursuant to Rule 12(b)(2).

---

[27] Plaintiffs argue that permitting UBS and RBS to challenge personal jurisdiction now would confer an "unfair advantage." Opp. 18 n.29, 19. Plaintiffs clearly have suffered no prejudice (and articulate none) given that personal jurisdiction would be similarly lacking if the case had remained in the original forum. In any event, "[j]udicial estoppel is [not] designed to . . . ensur[e] fairness between litigants," *O'Dette v. Fisher*, 2014 U.S. Dist. LEXIS 163343, at *17 (E.D.N.Y. Nov. 21, 2014), but rather "to protect . . . the integrity of the judicial process." *Adelphia Recovery Tr. v. Goldman Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (citation omitted). Plaintiffs do not, and cannot, explain how the integrity of the judicial process would be damaged here.

[28] Contrary to Plaintiffs' assertion, Opp. 6 n.8, this Court can consider Foreign Defendants' affidavits without allowing Plaintiffs to conduct jurisdictional discovery or holding an evidentiary hearing. *See*, *e.g.*, *Gleason Works v. Klingelnberg-Oerlikon Geartec Vertriebs-GmbH*, 58 F. Supp. 2d 47, 50 (W.D.N.Y. 1999) (In deciding a motion to dismiss for lack of personal jurisdiction, the court "has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery . . .; or it may conduct an evidentiary hearing on the merits of the motion.'" (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981))).

Dated: New York, New York
       December 23, 2015

Respectfully submitted,


/s/ David R. Gelfand                            /s/ Andrew W. Hammond
David R. Gelfand                                Andrew W. Hammond (AH0415)
Sean M. Murphy                                  Kimberly A. Haviv (KH6198)
Mark D. Villaverde                              White & Case LLP
MILBANK TWEED HADLEY
  & McCLOY LLP                                  1155 Avenue of the Americas
28 Liberty Street                               New York, New York 10036
New York, New York 10005                        Tel.: (212) 819-8297
Tel.: (212) 530-5000                            Fax:  (212) 354-8113
dgelfand@milbank.com                            ahammond@whitecase.com
smurphy@milbank.com                             khaviv@whitecase.com
mvillaverde@milbank.com
                                                Darryl S. Lew (DL4765)
*Attorneys for Defendant Coöperatieve*          701 Thirteenth Street, NW
*Centrale Raiffeisen-Boerenleenbank B.A.*       Washington, DC 20005
                                                Tel.: (202) 626-3600
                                                Fax:  (202) 639-9355
                                                dlew@whitecase.com

                                                *Counsel for Defendants Crédit Agricole SA*
                                                *and Crédit Agricole CIB*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
Michael J. Biondi
Maxwell A. H. Kosman
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3355
msilverman@paulweiss.com
afinch@paulweiss.com
mbiondi@paulweiss.com
mkosman@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG
and DB Group Services (UK) Limited*

/s/ Edwin R. DeYoung
Edwin R. DeYoung
Gregory T. Casamento
LOCKE LORD LLP
Three World Financial Center
New York, New York  10281
Tel.: (212) 415-8600
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel.: (214) 740-8000
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
Chicago, Illinois 60606
Tel.: (312) 443-0700
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings plc
and HSBC Bank plc*

/s/ Brian S. Fraser
Brian S. Fraser
Shari Brandt
H. Rowan Gaither IV
Robyn H. Frumkin
RICHARDS KIBBE & ORBE LLP
200 Liberty Street
New York, New York 10281
(212) 530-1800
(bfraser@rkollp.com)
(sbrandt@rkollp.com)
(rgaither@rkollp.com)
(rfrumkin@rkollp.com)

*Attorneys for Defendants ICAP plc and ICAP
Europe Ltd.*

/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506-2500

Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

- 10 -

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie Dycus
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendant The Royal Bank of Scotland plc*

/s/ Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California 94105
jsanders@gibsondunn.com

*Attorneys for Defendant UBS AG*