# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

**28 LIBERTY STREET**

**NEW YORK, NY 10005**

212-530-5000

FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-20-7615-3000
FAX: 44-20-7615-3100

FRANKFURT
49-69-71914-3400
FAX: 49-69-71914-3500

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

BEIJING
8610-5969-2700
FAX: 8610-5969-2707

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SEOUL
822-6137-2600
FAX: 822-6137-2626

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

TOKYO
813-5410-2801
FAX: 813-5410-2891

SÃO PAULO
55-11-3927-7700
FAX: 55-11-3927-7777

DAVID R. GELFAND
Partner
Direct Dial Number
212-530-5520
E-MAIL: dgelfand@milbank.com

April 25, 2016

**VIA ECF AND HAND DELIVERY**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Sullivan, et al. v. Barclays PLC et al.*, No. 13-cv-2811-PKC

Dear Judge Castel:

We are counsel for Defendant Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank") in the above-captioned action and submit this letter on behalf of the Foreign Defendants[1] in response to Plaintiffs' April 15, 2016 letter (Dkt. No. 252) ("Pls.' Letter") notifying the Court of a recent decision in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789-LGS, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) (attached hereto as Exhibit A) ("*FX*"). We also write to advise the Court of another recent decision in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-02262, 2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) (attached hereto as Exhibit B) ("*LIBOR VI*"), that is relevant to the Foreign Defendants' pending motion to dismiss for lack of personal jurisdiction and that dismissed claims against certain Foreign Defendants here for lack of

---

[1] The Foreign Defendants are: Crédit Agricole S.A. and Crédit Agricole CIB (the "Crédit Agricole Entities"), Deutsche Bank AG, DB Group Services (UK) Ltd., HSBC Holdings plc and HSBC Bank plc (the "HSBC Entities"), ICAP plc and ICAP Europe Ltd. (the "ICAP Entities"), Rabobank, The Royal Bank of Scotland plc, Société Générale, and UBS AG.

The Honorable P. Kevin Castel
April 25, 2016
Page 2

personal jurisdiction. *See* Dkt. No. 197.[2]  Both decisions support the Foreign Defendants' motion.

*First*, *FX* and *LIBOR VI* refute Plaintiffs' arguments that certain Foreign Defendants consented to general jurisdiction in New York by registering a branch office with the New York Department of Financial Services ("NYDFS") and designating a local agent for acceptance of service of process pursuant to New York Banking Law § 200(3). *See* Dkt. No. 228 ("Pls.' Opp.") at 15-18; Pls.' Letter at 4 n. 2.  Both *FX* and *LIBOR VI* expressly reject this argument, holding that "[b]y the terms of the statute, any consent to jurisdiction by virtue of [defendants'] registration with the NYDFS is not general jurisdiction over all claims, but instead is limited to claims arising out of transactions with the [defendants'] New York agencies or branches." *FX* at *2; *see also LIBOR VI* at *7 ("Interpreting this statute as one that provides general jurisdiction in the absence of express consent…would 'risk unravelling the jurisdictional structure envisioned by the Supreme Court" (alterations omitted; quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 639 (2d Cir. 2016))).  Similarly, *FX* refutes Plaintiffs' claim that a separate statutory provision, New York Banking Law § 200-b, confers personal jurisdiction because that provision "contains nothing from which consent to jurisdiction might be implied" and, moreover, "confer[s] subject matter jurisdiction and not personal jurisdiction." *FX* at *2.

*Second*, *FX* refutes Plaintiffs' contention that the Foreign Defendants consented to personal jurisdiction through their purported "general practice" of entering into ISDA Master Agreements containing New York forum selection clauses with non-plaintiffs. *See* Pls.' Opp. at 2-3.  As the *FX* court held, those agreements "confer a contractual right [only] to the counterparties to those agreements." *FX* at *3.

*Third*, *FX* and *LIBOR VI* reject the argument—made by Plaintiffs here (Pls.' Opp. at 3-5)—that the personal jurisdiction analysis under the Fifth Amendment is more lenient than under the Fourteenth Amendment.  *FX* at *4 (finding that "the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical" and that "[c]ourts have . . . uniformly rejected arguments that the general jurisdiction analysis under the Fifth Amendment differs from the principles set forth by the Supreme Court in *Goodyear* and *Daimler*"); *LIBOR VI* at *6 ("'[B]ecause the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide' the jurisdictional analysis." (quoting *SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013))).

*Fourth*, for reasons articulated in *LIBOR VI*, *FX* does not support Plaintiffs' argument that specific jurisdiction is established by their allegations that certain Foreign Defendants conspired with U.S.-based persons and entities, traded in Euribor-based derivatives in the United

---

[2] In *LIBOR VI*, Judge Buchwald ruled that the court lacked personal jurisdiction over the HSBC Entities and the ICAP Entities—all Foreign Defendants in this case. *LIBOR VI* at *7. In prior rulings in *LIBOR*, Judge Buchwald dismissed claims against other Foreign Defendants here—Deutsche Bank AG, Rabobank, The Royal Bank of Scotland plc, and Société Générale—for lack of personal jurisdiction.  *See* Dkt. No. 200 ("Defs.' Opening Br."); Dkt. No. 237 ("Defs.' Reply Br."). The Crédit Agricole Entities were not parties to the *LIBOR* action.

The Honorable P. Kevin Castel
April 25, 2016
Page 3

States, or expressly aimed their conduct at the United States. Euribor is determined through the cooperative submission of estimates of the rate at which a hypothetical "prime bank" would lend unsecured Euros to another within the Eurozone. *See* Dkt. No. 198 at 14. By contrast, the rates at issue in *FX* are allegedly set in part through actual trading activity, including significant trading activity in the United States. *FX* at *5. Accordingly, the *FX* court found that defendants were subject to specific jurisdiction in New York because, unlike here, plaintiffs alleged that defendants' FX transactions themselves were used to manipulate the benchmark at issue and that defendants' "collusive and manipulative acts took place, in substantial part, in New York," where defendants allegedly "continuously and systematically entered into FX transactions." *FX* at *5; *compare id.* at *4 (finding specific jurisdiction over defendants that had such operations in New York) *with id.* at *7 (dismissing one defendant because "allegations as to collusive conduct and U.S.-based business" described the defendant's U.S. affiliate, not the defendant).[3]

As Judge Buchwald recently held in *LIBOR VI*, the specific jurisdiction ruling in *FX* does not apply in the interest rate benchmark context for this very reason. As the *LIBOR VI* court put it:

> In [*FX*], defendants allegedly manipulated the WM/Reuters Closing Spot Rates, an important benchmark in the FX market, by discussing and engaging in coordinated trading strategies. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 587-88 (S.D.N.Y. 2015). Therefore, substantial FX business, including billions of dollars of FX transactions, in the United States provides a basis to find that defendants engaged in suit-related conduct here, because defendants' accomplished their purported scheme <u>by entering into FX transactions</u>. Here, by contrast, defendants need not engage in any market transactions at all, much less in Eurodollar futures contracts, to affect the LIBOR fix, and we have already held that plaintiffs have failed to show that defendants engaged in their purported suppression of LIBOR in order to benefit their Eurodollar trading position.

*LIBOR VI* at *7 (emphasis in original). The *FX* court's specific jurisdiction rulings thus have no applicability to this case.[4] It is immaterial here whether any Foreign Defendants traded

---

[3] *See also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 589 (S.D.N.Y. 2015) (plaintiffs alleged that more than a dozen of certain defendants' U.S.-based employees were terminated, suspended, or resigned as a result of regulatory and internal investigations into FX manipulation).

[4] Moreover, *FX* supports dismissal as to those Foreign Defendants (the Crédit Agricole Entities, DB Group Services (UK) Ltd., HSBC Holdings plc, and the ICAP Entities) that—like Standard Chartered plc in *FX*—did not "participate in the trading of [any relevant financial] instruments." *Compare FX* at *7 (dismissing claims against Standard Chartered plc), *with* Defs.' Opening Br. at 11-12; *id.* App'x A (DB Group Services (UK) Ltd., HSBC Holdings plc, and the ICAP Entities did not transact in relevant instruments *at all*, and the Crédit Agricole Entities are not alleged to have transacted in relevant instruments in the United States). *FX* also supports dismissal as to those Foreign Defendants (DB Group Services (UK) Ltd., the ICAP Entities, and the HSBC Entities) that—like Standard Chartered plc in *FX*—"do[] not operate or maintain offices in the United States." *Compare FX* at *7 (dismissing claims against Standard Chartered plc), *with* Defs.' Opening Br. App'x A (identifying such Foreign Defendants here).

The Honorable P. Kevin Castel
April 25, 2016
Page 4

instruments linked to Euribor in the United States because those trades have no connection to the alleged wrongful activity at issue in this case.[5] Under the reasoning of *LIBOR VI*, Plaintiffs' deficient allegations of conspiracy, in-forum conduct, and express aiming fail to support a finding of specific jurisdiction.

Both *FX* and *LIBOR VI* provide further support for the Foreign Defendants' pending motion to dismiss the Fourth Amended Class Action Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Very truly yours,

David R. Gelfand

cc:   All counsel (*via ECF*)

---

[5] Plaintiffs' allegations that certain Foreign Defendants manipulated Euribor by "pushing cash" and "spoofing" (Fourth Am. Class Action Compl. ¶¶ 185-99) fail for similar reasons, as Plaintiffs do not allege that any such trading activity occurred *in the forum*.