# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated, | Docket No. 13-cv-02811 (PKC) <br><br> ECF Case |
| Plaintiffs, | |
| - against - | |
| BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS CITIBANK, N.A., CITIGROUP INC., JPMORGAN CHASE & CO., AND JPMORGAN CHASE BANK, N.A.'S MOTION FOR CLARIFICATION, OR, IN THE ALTERNATIVE, RECONSIDERATION**

Plaintiffs respectfully submit this memorandum in opposition to the motion (ECF No. 292) by Citibank and JPMorgan ("Moving Defendants")[1], pursuant to Fed. R. Civ. P. 59(e), 60(a) and Local Civ. R. 6.3, for clarification or reconsideration of this Court's Memorandum and Order. *See Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ("Opinion").

The Moving Defendants have failed to carry their burden.[2]  They have wholly failed to apply the standards[3] of the foregoing Rules to the facts here.  Instead, the Moving Defendants have made a series of incorrect assertions as the bases for the requested relief.  *See* "B" - "E" below.  Accordingly, the requested relief should be denied.

---

[1] The Moving Defendants are Defendants Citibank, N.A., Citigroup Inc., JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A.

[2] *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) ("The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might materially have influenced its earlier decision.).

[3] *Taggart v. Moody's Investors Service*, 06 Civ. 3388(PKC), 2007 WL 2809846, at *1 (S.D.N.Y. Sept. 26, 2007) (Castel, J.) (movant seeking reconsideration and to "clarify" her arguments under Rule 59(e) and Local Rule 6.3 "faces a heavy burden;" "[r]econsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'") (citation omitted).
   Rule 60(a) motions are meant to correct a "clerical mistake or a mistake arising from oversight or omission" (Fed. R. Civ. P. 60(a)); the motion "permits only a correction for the purpose of reflecting accurately a decision that the court actually made." *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995); *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1140 (2d Cir.1994) ("An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a).").
   The standards for reconsideration under Fed. R. Civ. P. 59(e) and Local Rule 6.3 are "identical." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). Unless the movant shows that the Court overlooked a material fact or controlling law in rendering its decision or that there has been "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," reconsideration must be denied. *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, No. 13 CIV. 6016 PKC, 2014 WL 129043, at *1 (S.D.N.Y. Jan. 14, 2014).

### A. The Moving Defendants Concede That The Core Rationale Of The Opinion's Efficient Enforcer Analysis Turns On Whether A Plaintiff Had "Direct Dealings With Defendants On Any Euribor-Based Transactions"

The Moving Defendants concede that the core rationale in this Court's treatment of the efficient enforcer issue is whether a plaintiff had "'direct dealings with defendants on any Euribor-based transactions'". D.Br.p. 3 citing to Opinion at *15. Plaintiffs essentially agree.

### B. Contrary To The Moving Defendants, Plaintiffs Did Allege That Defendants Directly Transact With Class Members In Futures Transactions

In order to try to remove exchange traded instruments from the action, the Moving Defendants argue that futures traders do not trade directly with one another. D.Br.pp. 2-3. Implicitly recognizing that it would be beyond the scope of a Rule 12(b)(6) motion to make findings of fact regarding whether futures traders transact directly with one another when they purchase and sell futures contracts, the Moving Defendants seek to supply the key premise for their relief by asserting that Plaintiffs supposedly have conceded this point:

> As Plaintiffs acknowledged in their opposition to Defendants' motion to dismiss, Euro currency futures traded on the Chicago Mercantile Exchange ("CME currency futures") and NYSE LIFFE Euribor futures contracts ("LIFFE futures") are traded on exchanges and not "over-the-counter," *i.e.*, **not directly between two counterparties**. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, ECF No. 229, at 4.

D.Br.pp. 2-3 (emphasis added). With great respect for the Moving Defendants, Plaintiffs have repeatedly read p.4 of their Memorandum and can find no such "acknowledgement". The closest statement that Plaintiffs made to the subject matter is merely that:

> All Euribor-based derivatives are priced based on Euribor. ¶ 13. This includes over-the counter instruments such as interest rate swaps, forward rate agreements, and foreign exchange forwards, as well as exchanged-traded futures and options contracts like the NYSE LIFFE three month Euribor futures contract and CME Euro currency futures contract. ¶ 113.

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, ECF No. 229, at 4.

Far from "acknowledging" that futures traders do not transact directly with one another, Plaintiffs specifically alleged in the Fourth Amended Complaint both that the Department of Justice found --- and that various Defendants admitted --- that, in trading Euribor based futures contracts, Defendants do transact directly with US counterparties:

> Barclays [Rabobank, Deutsche, and UBS] entered into interest rate derivatives transactions tied to LIBOR and EURIBOR – such as swaps, forward rate agreements, and futures – with counterparties to those transactions. Many of those counterparties were located in the United States. Those United States counterparties included, among others, asset management corporations, retirement funds, mortgage and loan corporations, and insurance companies. Those counterparties also included banks and other financial institutions in the United States or located abroad with branches in the United States.

Fourth Amended Complaint ¶40 (quoting from the Department of Justice).

> Defendants, in their roles as members of LIFFE, used interstate wires on LIFFE CONNECT® terminals located in the United States to trade NYSE LIFFE Euribor futures contracts with, among others, U.S. counterparties, subjecting them to the jurisdiction of the U.S. Courts.

Fourth Amended Complaint ¶55; *see also* ¶115 (Futures contracts are bilateral contracts and represents an agreement between two parties, a buyer and a seller of the underlying commodity).

Although beyond the scope of this motion, there is a solid evidentiary basis for alleging that Defendants transacted Euro currency futures directly with at least some class member counterparties.[4]  In sum, at least some Class members and Defendants allegedly (and in reality)

---

[4] Basically, orders from buyers and sellers meet in the futures market, and various members of the public do transact directly with one another.  In prior cases, the Chicago Mercantile Exchange has maintained a standardized book that matches the customer code from the purchaser of each transaction with the customer code for the seller of each transaction. This and

3

did purchase Euro currency futures contract directly from one another. However, absent discovery, Plaintiffs (and other class members) are not in a position to allege any direct purchases from Defendants of Euro currency futures.  *See* fn. 4.   Although this Court correctly found that no Plaintiff alleged a Euro currency futures contract purchase directly from a Defendant (Opinion at *9, 14-15, 18), this Court has not yet been presented with allegations and an argument that a plaintiff made such a direct purchase of Euro currency futures from Defendants.   Contrary to the Moving Defendants, such direct trades did occur and may, after discovery, be competently alleged.

    C.  **Contrary To Defendants, Exchange Based Instruments Are Still In This Suit**

Premised upon their foregoing assertion that Plaintiffs supposedly "acknowledged" that futures traders do not deal directly with one another, the Moving Defendants conclude that "exchange based instruments are no longer within this suit".  D.Br.pp. 2-3.  First, Plaintiffs made no such "acknowledgement".  *See* "B" above.  Second, Plaintiffs explicitly allege in the Fourth Amended Complaint that Defendants themselves traded exchange based instruments as at least a motivation for entering and profiting from their conspiracy and manipulations.

- Beginning in late 2006, Defendants started to accumulate massive positions in the March 2007 NYSE LIFFE three-month Euribor futures contracts worth approximately €500,000,000,000. ¶ 187.
- They then conspired to make false Euribor submissions (¶¶ 147-48, 230, Fig. 2), and used their treasuries' "firepower" (¶ 231) to "push cash" prices lower (¶¶ 234-35) and drive the prices of NYSE LIFFE three-month Euribor futures artificially higher.

---

other required "audit trail" records the Chicago Mercantile Exchange maintains, allow the determination of who traded with whom in CME futures contracts.

    Only after such direct transaction between traders has been reflected in the Chicago Mercantile Exchange books, does the CME exchange clearing house later take over as the counterparty of each transaction.  But this substitution is for the purposes of financial stability and guaranteeing the performance of futures contracts.  Such substitution is only forward-looking.  The original direct purchase (for example) between a Defendant and a class member continues to be reflected in the CME chronological transaction records.

4

- Defendants' "excellent concerted action" (¶ 238), which involved at least "2month of preparation" (¶ 235) generated millions of dollars in profits for Defendants in a single day (¶¶ 237-41).
- The intended result was corresponding losses to the "end users" of Euribor-based derivatives, including those who transacted in Euribor-based exchange-traded instruments.  ¶ 242.

Third, Plaintiffs have information that Barclays regularly engaged in and/or acted as a clearing firm for euro currency futures transactions on the CME.  Fourth, Plaintiffs' information from government orders, and multiple other sources is that Defendants did transact in and clear Euro currency futures contract transactions.  Thus, Defendants' own futures trades and positions are highly relevant to Defendants' motivation, the extent of their conspiracy, the appropriate ambit of merits discovery into Defendants' dealings, and class notice discovery.

For the foregoing and additional reasons, the Moving Defendants' conclusion that "exchange traded instruments are no longer within the scope of this suit" is wrong.

D. **Contrary To The Moving Defendants, The Court Has Not Dismissed All Claims Against Non-Counterparties**

The Moving Defendants also premise their foregoing incorrect conclusion on their following assertion.  "To the extent Plaintiffs sought to bring claims against non-counterparties, the Court dismissed those claims."  D.Br.p. 2.  Because Plaintiffs were not counterparties with the Moving Defendants, this assertion is incorrect.  Plaintiffs also stated Commodity Exchange Act manipulation claims against Defendants UBS and Rabobank.  Those Defendants were not alleged to be counterparties on Plaintiffs' Euro currency futures transactions. (Again, no such allegations can be made until after discovery).  The sole reason that the Commodity Exchange Act claims were dismissed against UBS and Rabobank was on personal jurisdiction grounds. *Compare* Opinion at *44 *with* Opinion at *45-46.  If Plaintiffs' pending motion for leave to amend is granted, then the CEA claim against UBS and Rabobank will be reinstated.

5

### E. The Moving Defendants Have Failed To Carry Their Burden For Clarification Or Reconsideration

Premised on their foregoing incorrect assertions, the Moving Defendants assert that this Court should "clarify that all claims based on exchange traded instruments are dismissed with prejudice". D.Br.p. 4. Because the reasons that the Moving Defendants have given for such relief are repeatedly in error, they have failed to carry their burden to demonstrate that such clarification is necessary or warranted.

Although Plaintiffs have no burden here, Plaintiffs respectfully submit that the Moving Defendants' requested "clarification" is unwarranted.  The motion to dismiss the antitrust claims of Plaintiffs Sullivan, White Oak, Sonterra and FrontPoint Trading in respect of exchange traded instruments was granted.  Those Plaintiffs have (so far) failed to allege direct futures contract transactions with Defendants.  Whether such Plaintiffs' well pled Commodity Exchange Act claim for exchange traded instruments will remain in the suit, depends on the outcome of Plaintiffs' motion for leave to amend the complaint as to the personal jurisdiction allegations against Rabobank and UBS.

The Moving Defendants' alternative request for reconsideration is even less well supported.  Once again, they have failed to apply the strict reconsideration standards to the facts here.  *See* fn. 3 *supra*.  Likewise, the repeated premises for the Moving Defendants' reconsideration argument are the same erroneous premises analyzed above for the clarification argument.  D.Br.pp. 1-3.  Accordingly, the Moving Defendants have failed their burden to demonstrate that the extraordinary relief of reconsideration is warranted.  *See* fn. 3 above.

## CONCLUSION

The Court should deny the motion for clarification or, in the alternative, reconsideration of the Court's Opinion.

Dated: March 21, 2017
       New York, New York

       **LOVELL STEWART HALEBIAN**
       **JACOBSON LLP**

       By: /s/ Christopher Lovell
           Christopher Lovell
           Gary S. Jacobson
           Benjamin M. Jaccarino
           61 Broadway, Suite 501
           New York, NY 10006
           Tel.: 212-608-1900
           Fax: 212-719-4677
           clovell@lshllp.com
           gsjacobson@lshllp.com
           bjaccarino@lshllp.com

       **LOWEY DANNENBERG COHEN**
        **& HART, P.C.**

       By: /s/ Vincent Briganti
           Vincent Briganti
           Geoffrey Horn
           Peter D. St. Phillip
           One North Broadway
           White Plains, New York 10601
           Tel.: (914) 997-0500
           Fax: (914) 997-0035
           vbriganti@lowey.com
           ghorn@lowey.com
           pstphillip@lowey.com

       *Proposed Interim Co-Lead Class Counsel*

Nicole Lavallee
Todd A. Seaver
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
nlavallee@bermandevalerio.com
tseaver@bermandevalerio.com

Patrick T. Egan
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
pegan@bermandevalerio.com

Brian P. Murray
Lee Albert (pro hac vice to be filed)
**GLANCY PRONGAY & MURRAY LLP**
122 East 42nd Street, Suite 2920
New York, NY 10168
Tel.: 212-682-5340
Fax: 212-884-0988
bmurray@glancylaw.com
lalbert@glancylaw.com

David E. Kovel
**KIRBY McINERNEY LLP**
825 Third Avenue
New York, NY 10022
Tel.: 212-371-6600
Fax: 212-751-2540
dkovel@kmllp.com

*Additional Counsel for Plaintiffs*

8