<u>[PROPOSED] PLAN OF DISTRIBUTION</u>

**A.  Scope of Plan And Definitions**

1.      The Court has preliminarily approved each of three settlements ("Settlements"), each subject to Final Approval by the Court. The Settlements are with the following defendants ("Settling Defendants"):

- Barclays plc, Barclays Bank plc, and Barclays Capital Inc. ("Barclays") (preliminarily approved on December 15, 2015) [ECF No. 234] for **$94,000,000**;

- HSBC Holdings plc and HSBC Bank plc. ("HSBC") (preliminarily approved on January 18, 2017) [ECF No. 279] for **$45,000,000**; and

- Deutsche Bank AG and DB Group Services (UK) Ltd. ("Deutsche Bank") (preliminarily approved on July 6, 2017) [ECF No. 364] for **$170,000,000**.

2.      A. This Plan of Distribution shall govern (and apply solely to) the Net Settlement Fund from these three Settlements.  See ¶4 below.  Class members are encouraged to review the Settlement Website, http://www.euriborsettlement.com/, for details, updates, and answers to frequently asked questions ("FAQ") relating to this Plan.

B.      Plaintiffs contend that the Settling Defendants manipulated an interest rate for the Euro currency known as the Euro Interbank Offered Rate or "Euribor".  Defendants allegedly did so in order to change in their favor the prices and payments of Euribor Products.[1]  This, in turn, allegedly harmed Plaintiffs and Class members.

---

[1] "Euribor Products" means any and all interest rate swaps, forward rate agreements, futures, options, structured products, and any other instrument or transaction related in any way to Euribor, including but not limited to, New York Stock Exchange ("NYSE") London International Financial Futures and Options Exchange ("LIFFE") Euribor futures contracts and options, CME Euro currency futures contracts and options, Euro currency forward agreements, Euribor-based swaps, Euribor-based forward rate agreements and/or any other financial instruments that reference Euribor.

C.      This Plan distributes 90% of the Net Settlement Fund based upon the Total Adverse Impact of each Qualified Claimant from "Euribor Artificiality". *See* ¶¶6-9 below.  Euribor Artificiality "is an estimate of the impact on Euribor of Defendants' alleged unlawful behavior." *See* ¶8 below.

D.      In addition to entitlement to a payment based on any Total Adverse Impact they experienced, a Qualified Claimant will also be entitled to a payment based upon their Total Adjusted Volume of transactions in Euribor Products. *See* ¶13 below.  The Plan distributes 10% of the Net Settlement Fund according to each Qualified Claimant's Total Adjusted Volume of transactions, subject to a guaranteed minimum payment to each Qualified Claimant.  *See* ¶¶13-14 and Fn. 2 below.

E.      These terms are defined and the calculations are described in greater detail as set forth below.

3.      As used herein, the **Total Settlement Fund** means the aggregate amount of the funds in the Settlements finally approved by the Court.

4.      As used herein, **Net Settlement Fund** means the Total Settlement Fund minus the costs, expenses, and fees approved by the Court.  For the avoidance of doubt, such costs, expenses and fees include all taxes, attorneys' fees, class representative fees, settlement administration fees, or other costs or fees of any nature whatsoever that are approved by the Court.

5.      **Qualified Claimant.** Class members must submit a valid proof of claim in order to be eligible to participate in a distribution from the Net Settlement Fund.  A Qualified Claimant is a Class member whose proof of claim is deemed adequately supported, and timely.

**B.   *Pro Rata* Distribution of Ninety Percent of the Net Settlement Fund Based Upon Total Adverse Impact.**

6.      ***Pro Rata* Distribution Of Ninety Percent of the Net Settlement Fund.**  Ninety percent of the Net Settlement Fund shall be distributed *pro rata* according to the Settlement Administrator's determination of each Qualified Claimant's Total Adverse Impact.  *See* ¶7 below. *Example*: If a Qualified Claimant has Total Adverse Impact (sometimes "TAI") that constitutes

0.025% of the total TAI for all Qualified Claimants which have TAI, then the Qualified Claimant will be entitled to receive 0.025% of 90% of the Net Settlement Fund.

7.      **Total Adverse Impact**.  The TAI for each claimant will be the sum of their total adverse impact, if any, on Discounted Transactions (*see* subparagraphs "A" - "B" below), and their total adverse impact, if any, on Over-The-Counter ("OTC") Transactions made with Defendants.  See "A" - "G" below. The Settlement Administrator shall calculate the TAI for each Qualified Claimant through the following steps.

A.      The Court denied in part and granted in part Defendants' motion to dismiss this action.  As a result, there are two general types of transactions: (1) OTC Transactions with Defendants as to which the claims have not been dismissed; and (2) Discounted Transactions.  There also are two types of Discounted Transactions: (1) Transactions in CME Eurocurrency Futures Contracts or LIFFE Futures Contracts and options on those futures contracts (collectively, "Futures Transactions"), and (2) Over-the-Counter Transactions with Non-Defendants ("OTC Transactions with Non-Defendants").

B.      **Legal Risk Discount.**  A 15% Legal Risk Discount applies to Futures Transactions.  A 20% Legal Risk Discount applies to OTC Transactions with Non-Defendants.  For these purposes, Defendants include the following entities, as well as the subsidiaries and affiliates of these entities: Barclays plc, Barclays Bank plc, Barclays Capital Inc., Citigroup, Inc., Citibank, N.A., Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.), Crédit Agricole S.A., Crédit Agricole CIB, Deutsche Bank AG, DB Group Services (UK) Ltd., HSBC Holdings plc, HSBC Bank plc, J.P. Morgan Chase & Co., JPMorgan Chase Bank, N.A., The Royal Bank of Scotland plc, Société Générale SA, UBS AG, ICAP plc, and ICAP Europe Limited.  No Legal Risk Discount applies to the OTC Transactions made with Defendants.  *See* examples in "E" below.

C.      **Euribor Artificiality.**  Plaintiffs contend that unlawful conduct caused Euribor rates sometimes to increase and sometimes to decrease.  The difference between the artificial rate allegedly caused by unlawful conduct and a fair, non-manipulated rate is referred to as "Euribor Artificiality."  *See* ¶8 below.

D.      **Impact Of Euribor Artificiality On Each Category Of Transactions.**  For each Qualified Claimant, the Settlement Administrator will separately determine the amounts of impact of Euribor Artificiality on each of the three categories of transaction: (1) such Qualified Claimant's transactions in the Futures Transactions category; (2) such Qualified Claimant's transactions in the OTC Transactions with Non-Defendants category; and (3) such Qualified Claimant's transactions in the OTC Transactions with Defendants category.

E.      For each of the first two categories, the Settlement Administrator will then multiply the amount of impact by the appropriate Legal Risk Discount.  For the Futures Transactions category, this will be the 15% reduction.  For the OTC Transactions with the Non-Defendants category, this will be the 20% reduction.  Again, there will be no Legal Risk Discount for the OTC Transactions with Defendants.  *Examples*:

i.      If the application of Euribor Artificiality to a Qualified Claimant's Futures Transactions produces an overall adverse impact of $2,000, then that Qualified Claimant will have an adverse impact in the Futures Transactions category of $1,700 ($2,000 multiplied by 0.85 which makes the 15% Legal Risk Discount applicable to Futures Transactions).

ii.     If the application of Euribor Artificiality to a Qualified Claimant's OTC Transactions with Non-Defendants produces an overall adverse impact of $1,000, then that Qualified Claimant will have an adverse impact in the OTC Transactions with Non-Defendants category of $800 ($1,000 multiplied by 0.8 which makes the 20% Legal Risk Discount applicable to OTC Transactions with Non-Defendants).

iii.        If the application of Euribor Artificiality to a Qualified Claimant's OTC Transactions with Defendants produces an overall adverse impact of $1,000, then the Qualified Claimant will have an adverse impact in the OTC Transactions with Defendants category of $1,000 (again, there is no Legal Risk Discount for OTC Transactions with Defendants).

iv.        The application of Euribor Artificiality to a Qualified Claimant's transactions in any of the foregoing categories may result in a favorable impact (that is, the Qualified Claimant arguably gained from the Euribor Artificiality on that transaction).  If so, in the calculations within that category, this favorable impact will be subtracted from the Qualified Claimant's transactions in that category which experienced adverse impact.  In each category, a Qualified Claimant may, on net, experience an overall adverse impact or an overall favorable impact.  If the overall impact for Futures Transactions is favorable, then the Legal Risk Discount will be applied. If the overall impact for OTC Transactions with Non-Defendants is favorable, then the Legal Risk Discount will be applied.

F.        **Total on Discounted Transactions**.  The Settlement Administrator will then add the Qualified Claimant's adverse or favorable impact for Futures Transactions to their adverse or favorable impact for OTC Transactions with Non-Defendants.  If this sum results in adverse impact, then the Qualified Claimant will have total adverse impact from Discounted Transactions.  *Example:* If a Qualified Claimant had adverse impact from Euribor Artificiality of $1,700 on Futures Transactions, and adverse impact of $800 on OTC Transactions with a Non-Defendant, then that Qualified Claimant has adverse impact from Discounted Transactions of $2,500.   *Example 2*: If a Qualified Claimant had an adverse impact from Euribor Artificiality of $1,700 on Futures Transactions, and a favorable impact of $800 on OTC Transactions with a Non-Defendant, then that Qualified Claimant has total adverse impact from Discounted Transactions of $900.  *Example 3*: If a Qualified Claimant had favorable impact from Euribor Artificiality of $1,000 on Futures Transactions,

and adverse impact from Euribor Artificiality of $200 on OTC Transactions with Non-Defendants, then that Qualified Claimant will have a total favorable impact on Discounted Transactions.  If a Qualified Claimant's total impact on Discounted Transactions is favorable, then their favorable impact will have no effect on the calculation of their Total Adjusted Volume nor the amount due the Qualified Claimant from the sum of Total Adjusted Volume and Total Adverse Impact.

G.     **Total Adverse Impact**. Each Qualified Claimant's Total Adverse Impact will be the sum of their total adverse impact, if any, on Discounted Transactions, and their total adverse impact, if any, on OTC Transactions with Defendants.  *Example:* If a Qualified Claimant had $2,500 in total adverse impact from Discounted Transactions and $1,000 in total adverse impact from OTC Transactions with Defendants, then that Qualified Claimant's TAI will be $3,500.  *Example*: If a Qualified Claimant had total adverse impact on Discounted Transactions of $2,500 and a total favorable impact of $1,000 on OTC Transactions with Defendants, then the Qualified Claimant will have TAI of $2,500.  *Example*: If the Qualified Claimant had $1,000 in total adverse impact on OTC Transactions with Defendants and total favorable impact of $2,500 on Discounted Transactions, then that Qualified Claimant will have a TAI of $1,000.   *Example*: If a Qualified Claimant has a total favorable adverse impact on Discounted Transactions, and a total favorable impact on OTC Transactions, then that Qualified Claimant will not be entitled to any TAI payment.  But the Qualified Claimant will be eligible for a payment based on Total Adjusted Volume.  *See* ¶10 below.

8.     **Euribor Artificiality**.  "Euribor Artificiality" is an estimate of the impact on Euribor of Defendants' alleged unlawful behavior.  Tables will be posted on the Settlement Website on or before March 15, 2018 reflecting days on which Euribor one-month, three-month, and/or six-month tenors were artificial, and indicating whether each such tenor was artificially high or artificially low.  On or before July 31, 2018, the tables posted on the Settlement Website will reflect the amounts of the Euribor Artificiality for such tenors.  Class members may follow the Settlement Website,

http://www.euriborsettlement.com/, for this information as well as any postings of additional days or tenors of Euribor Artificiality.

9.     **Adverse Impact**.   Adverse Impact will be recognized if a Qualified Claimant demonstrates that it engaged in any of the transactions which will be described on the Settlement Website on or before March 15, 2018 under "Adverse Impact."  For example, and without limitation, Adverse Impact will be recognized if a Qualified Claimant demonstrates that it engaged in any of the following transactions:

a.   Paid a Euribor-indexed interest rate when Euribor was artificially high in the applicable tenor(s).

b.   Received a Euribor-indexed interest rate when Euribor was artificially low in the applicable tenor(s).

c.   Currency Forward Contracts.  Purchased Euros forward at a time when Euribor was artificially high in the applicable tenor(s).

d.   Currency Forward Contracts.  Sold Euros forward at a time when the Euribor was artificially low in the applicable tenor(s).

e.   Purchased a Futures Contract or sold a call option on a Futures Contract at the final expiration price on the last day of the contract when Euribor was artificially low in the Euribor three-month tenor.

f.   Sold a Futures Contract or purchased a put option on a Futures Contract at the final expiration price on the last day of the contract when Euribor was artificially high in the Euribor three-month tenor.

Adverse Impact will also be recognized if a Qualified Claimant demonstrates that it engaged in any of the other Futures Transactions, OTC Transactions with Defendants, and OTC Transactions with

Non-Defendants that will be set forth on the Settlement Website under "Adverse Impact" on or before March 15, 2018.

### C. Distribution Of The Remaining Ten Percent Of The Net Settlement Fund

10. **Distribution Based On Total Adjusted Volume.** Ten percent of the Net Settlement Fund will be distributed according to the Settlement Administrator's determination of each Qualified Claimant's Total Adjusted Volume on their transactions, provided that there will be a guaranteed minimum payment provision as set forth in ¶14 below.

11. **Calculation Of The Total Adjusted Volume Of Each Qualified Claimant**. The Settlement Administrator shall make the following calculations in order to determine each Qualified Claimant's Total Adjusted Volume.

A. **Computation Of Adjusted Volume For OTC Transactions With Defendants**. The Settlement Administrator will add the recognized volume of purchases and sales of each Qualified Claimant's OTC Transactions with Defendants. The resulting sum will be the Qualified Claimant's recognized volume for OTC Transactions with Defendants. Because there is no Legal Risk Discount, this will also be the Qualified Claimant's adjusted volume for OTC Transactions with Defendants.

B. **Computation Of Adjusted Volume For OTC Transactions With Non-Defendants.** The Settlement Administrator will add the recognized volume of purchases and sales of each Qualified Claimant's OTC Transactions with Non-Defendants. The resulting sum will be the Qualified Claimant's recognized volume for OTC Transactions with Non-Defendants. The Settlement Administrator will then apply the appropriate 20% Legal Risk Discount to such total. The resulting amount will be the Qualified Claimant's adjusted volume for OTC Transactions with Non-Defendants. *Example:* Suppose a Qualified Claimant had a recognized volume on

8

OTC Transactions with Non-Defendants of $1,000,000.  The $1,000,000 would be multiplied by 0.8, which would produce an adjusted volume of $800,000 for that Qualified Claimant on OTC Transactions with Non-Defendants.

C. **Computation Of Adjusted Volume For Futures Transactions.** The Settlement Administrator shall add the recognized volume of purchases and sales of each Qualified Claimant's Futures Transactions (which, again, includes options on futures). The resulting sum will be the Qualified Claimant's recognized volume for Futures Transactions.  The Settlement Administrator will then apply the appropriate 15% Legal Risk Discount to such total.  The resulting amount will be the Qualified Claimant's adjusted volume for Futures Transactions.  *Example:* Suppose a Qualified Claimant had a recognized volume on Futures Transactions of $1,000,000. The $1,000,000 would be multiplied by 0.85, which would produce an adjusted volume of $850,000 for that Qualified Claimant on Futures Transactions.

D. **Calculation Of Each Qualified Claimant's Total Adjusted Volume**.  The Settlement Administrator shall then add the totals in "A", "B", and "C" above in order to determine each Qualified Claimant's Total Adjusted Volume. *Example*:  If the Qualified Claimant had adjusted volume of $1,000,000 on OTC Transactions with Defendants, $800,000 in adjusted volume on OTC Transactions with Non-Defendants, and adjusted volume of $850,000 on Futures Transactions, then that Qualified Claimant's Total Adjusted Volume will be $2,650,000.

12. **Each Qualified Claimant's *Pro Rata* Share Of Total Adjusted Volume.**  Each Qualified Claimant shall receive their *pro rata* share of the Total Adjusted Volume of all Qualified Claimants, provided that there will be adjustments so as to guarantee each Qualified Claimant a minimum payment of $30.00.  See ¶14 below.  *Example:* if a Qualified Claimant has a Total Adjusted

Volume that equals 0.025% of the Total Adjusted Volume of all Qualified Claimants, then that Qualified Claimant will be due to receive a payment equal to 0.025% of 10% of the Net Settlement Fund, provided that there will be adjustments to guarantee the minimum payment.  See ¶14 below.

13.     **Payments Are Additive.**  Each Qualified Claimant will be due to be paid the sum of its entitlement of its Total Adverse Impact payment (if any) and its Total Adjusted Volume payment, subject to adjustments to effectuate a guaranteed minimum payment.

14.     **Guaranteed Minimum Payment To Each Qualified Claimant**.  If the sum of the totals due to a Qualified Claimant on Total Adverse Impact (if any) and Total Adjusted Volume is less than $30.00[2], then the Settlement Administrator shall increase the amount due to that Qualified Claimant by an amount sufficient to produce a payment to such Qualified Claimant of $30.00. *Example:* if the sum of the payments due to a Qualified Claimant equals $20.00, then the Settlement Administrator shall add $10.00 to that payment in order to produce the guaranteed minimum payment of $30.00.   *See* fn. 2.  The amounts required for this adjustment will be paid from the Total Adjusted Volume Payments.

D. **Miscellaneous**

15.     **Determinations Under This Plan.**  All determinations and interpretations of this Plan shall be made by A.B. Data, Ltd., the court-appointed Settlement Administrator subject to review by Lead Counsel.

16.     **The Court May Change The Plan At Any Time.**  This Plan shall be subject to change by the Court, at its own initiative, without prior notice to Class members. Any change in the Plan   by   the   Court   will   be   promptly   posted   on   the   Settlement   Website, http://www.euriborsettlement.com/.

---

[2] This minimum payment will be reduced to $10.00 if the only Settlement to receive final approved is the HSBC Settlement.

17.     **Amendment.** This Plan shall be subject to amendment by motion at any time by Class Counsel provided that (a) notice is provided to Qualified Claimants on the Settlement Website, with at least twenty-one (21) days' time for the filing of objections to such amendment, and (b) the Court approves, in whole or in part, such amendment.

18.     **Settlement Administration Mediator.**  Kenneth Feinberg, Esq., shall serve as the Settlement Administration Mediator.