UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>- against -<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br><br>            Defendants. | Docket No. 13-cv-02811 (PKC) |

**DECLARATION OF BRIAN J. BARTOW
IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS
ACTION SETTLEMENTS WITH BARCLAYS PLC, BARCLAYS BANK PLC,
BARCLAYS CAPITAL INC., DEUTSCHE BANK AG, DB GROUP SERVICES (UK)
LTD., HSBC HOLDINGS PLC AND HSBC BANK PLC AND MOTION FOR AWARD
OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Brian J. Bartow, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. I am General Counsel and Chief Compliance Officer of the California State Teachers' Retirement System ("CalSTRS"). I joined CalSTRS in 2008 as Assistant General Counsel and served as Acting General Counsel before being appointed to my current role in 2010.

2. I have personal knowledge of the facts set forth in this Declaration, which I make in support of Plaintiffs' motion for final approval of the class action settlements with Barclays plc, Barclays Bank plc, and Barclays Capital, Inc. ("collectively, "Barclays"), Deutsche Bank AG and DB Group Services (UK) Ltd. (collectively, "Deutsche Bank"), and HSBC Holdings plc and HSBC Bank plc (collectively, "HSBC") and Class Counsel's motion for approval of an award of attorneys' fees and reimbursement of expenses now before the Court in *Sullivan v. Barclays plc et al.*, No. 13-cv-2811 (PKC) (S.D.N.Y.) (the "Action").

3. As CalSTRS's General Counsel, I am the chief legal advisor to the Teachers' Retirement Board, which sets CalSTRS's policies, oversees CalSTRS's investments, and makes rules for the system, in addition to ensuring that members' and beneficiaries' benefits are paid in accordance with law. One of my principal duties in this capacity is to evaluate, recommend, and supervise all complex CalSTRS litigation, including securities and antitrust litigation involving CalSTRS's investment portfolio.

4. **Background**: CalSTRS was established by legislation in 1913 to provide retirement benefits to California's public-school educators from pre-kindergarten through community college. CalSTRS has grown significantly since its inception and today is the largest educator-only pension fund in the world and the second largest pension fund in the United States, with over 930,000 members and beneficiaries and an investment portfolio with a market value of $224.4 billion as of February 28, 2018.

5. **Retention of Counsel and Negotiated Fee Agreement**: As a fiduciary to its members in the management of their retirement assets, CalSTRS has a strong interest in ensuring that financial markets, including the market for financial instruments priced, benchmarked and/or settled based on Euribor ("Euribor Products"), are free from anticompetitive practices and are not being manipulated. When I learned of the Action and alleged wrongdoing in the Euribor Products market, I recognized that CalSTRS would have a strong interest in both pursuing damages and in helping to ensure that the market for Euribor Products is free from anticompetitive and manipulative behavior.

6. In light of this interest, CalSTRS retained Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP (collectively "Class Counsel") and Berman Tabacco (collectively with Class Counsel, "Counsel") in September 2014 to prosecute claims related to the tens of thousands of Euribor Products, including those that CalSTRS transacted directly with several Defendants, including, UBS, Barclays, Citibank, Deutsche Bank, HSBC, JPMorgan, RBS, and Société Générale.

7. Consistent with its regular practice in complex cases, CalSTRS negotiated a contingent fee structure at arm's-length with Counsel prior to their retention.[1] This fee structure employs a graduated fee scale that provides for a 23% fee on the first $100 million recovered, 22% on the next $200 million recovered, 19% on the next $200 million recovered and a lower fee percentage on subsequent amounts. It also caps the maximum amount of fees requested by Class Counsel at 3.5 times the value of aggregate lodestar reasonably incurred by all plaintiffs' counsel in the case. While CalSTRS is accustomed to negotiating fee agreements with outside litigation counsel, the fee agreement here was carefully calibrated to capture the unique challenges and substantial risks

---

[1] Should the Court request, CalSTRS is prepared to submit its fee agreement with Counsel for *in camera* review.

associated with this specific case. I took into account and discussed with Counsel the posture of the litigation, its risk profile, CalSTRS's approach to negotiating legal fees, the historical levels of fees to which CalSTRS has agreed to, and fees for comparable legal services prior to arriving at the negotiated fee structure.

8. As a fiduciary for thousands of current and retired California public school teachers CalSTRS scrupulously and vigorously protects the rights of its teacher members. For this reason CalSTRS has one of the toughest corporate governance surveillance programs of any public pension fund. For the same reason CalSTRS also adheres to strict conflicts-of-interest policies intended to avoid the least suggestion of political or other influence on its operations and discharge of its fiduciary obligations. For example CalSTRS has had for several years among the strict prohibitions on not accepting vendor gifts including political and other contributions from any of its contracted vendors. CalSTRS requires detailed, annual publically-available filings by each of its vendors confirming compliance. The office of General Counsel at CalSTRS oversees all such compliance.

9. **CalSTRS's Oversight of the Litigation**: Since September 2014 when CalSTRS joined the litigation, CalSTRS has actively overseen the work of Counsel and has participated in all aspects of litigation, beginning with Plaintiffs' Third Amended Complaint—the first time CalSTRS sought to join the Action. *See* ECF No. 139 (including allegations regarding CalSTRS' Euribor Products transactions).

10. Since then, I have reviewed advance drafts of the significant pleadings in the Action and have had numerous telephonic and face to face discussions and email communications with Counsel regarding the allegations made and arguments raised in opposition to Defendants' motion to dismiss.

11. I have received updates regarding the status of the litigation from Counsel on a regular basis and conferred with Counsel, both in person and telephonically, prior to settlement

4

discussions and important court hearings. I have requested from Counsel and received long-term and short-term litigation management plans, which I require to be updated periodically to better help me monitor this complex litigation and Counsel's efforts.

12. I played a direct role in Plaintiffs' settlement negotiations, participating in extensive discussions with Counsel regarding the strengths and weaknesses of Plaintiffs' claims, potential defenses and litigation strategy relevant to a potential settlement.

13. With regard to the settlement ultimately reached with Barclays, I participated by telephone for significant portions of the multi-day mediation supervised by mediator Kenneth Feinberg, and I authorized the resulting settlement amount and terms.

14. With regard to the settlement ultimately reached with HSBC, I traveled from California to attend Plaintiffs' mediation with HSBC in New York on May 2, 2016, which was supervised by Gary McGowan, Esq. At the outset of the mediation, on behalf of CalSTRS and the Class, I presented a statement to my counterpart at HSBC, the mediator, and all counsel regarding CalSTRS's view of the Defendants' alleged conduct, the litigation and the importance CalSTRS places on the Action. I remained throughout the day-long mediation with HSBC and participated with Counsel in the settlement negotiation strategy, and ultimately authorized the settlement amount and the other terms of the settlement agreement.

15. I also traveled from California to attend Plaintiffs' mediation with Deutsche Bank in New York on January 9, 2017, which was supervised by the Honorable Daniel Weinstein (Ret.) and Jed D. Melnick, Esq. I presented a statement to my counterpart at Deutsche Bank, the mediator, and all counsel regarding CalSTRS's view of the Defendants' alleged conduct, the litigation and the importance CalSTRS places on the Action. I remained throughout the day-long Deutsche Bank mediation and participated with Counsel in the settlement negotiation strategy, and ultimately authorized the settlement amount and the other terms of the settlement agreement.

16. CalSTRS's legal and investment staff were also involved in this process and, at my direction, worked closely with Counsel to identify its Euribor Products transactions. In addition, CalSTRS' Director of Fixed Income offered sworn testimony in the form of a declaration to provide factual support for the claims being advanced on behalf of the Class.

17. As General Counsel I insist upon complete hands-on management of any litigation in which CalSTRS becomes involved. In this Action, I require and receive detailed briefings from Counsel on substantive legal issues and litigation and settlement strategy. Indeed the Berman Tabacco firm has been selected to represent CalSTRS in a number of different matters and is in very frequent, sometimes daily, contact with the office of General Counsel, including discussions of strategy about this Action. I personally review the time records of outside attorneys that CalSTRS retains, even those employed, as here, on a percentage contingent fee basis. I review the detailed time records so that I can discharge my supervisory obligations as a plaintiff and putative class representative of the Class and also to monitor litigation activities in which the lawyers are engaged.

18. **CalSTRS Supports the Proposed Settlements and Fee Request**: Throughout this litigation, I have had numerous discussions with Counsel regarding the scope of potential damages, and the scope of the work of damages experts. Based on my experience overseeing complex securities and antitrust class action litigation for CalSTRS, I understand that constructing a rigorous, data-driven damages model is a challenging process that requires extensive expert work and analysis. I also recognize the risks posed by litigating complex class action cases, like this one, where Plaintiffs must ultimately prove damages on a class-wide basis, through class certification and trial.

19. Given this experience, I consider the partial settlements obtained here to be an important and valuable step for CalSTRS and the Class. I expect the monetary compensation received in connection with Barclays', Deutsche Bank's and HSBC's settlements will provide an

immediate measure of compensation for Class Member's claims. I recognize that the additional non-monetary consideration, most importantly the cooperation provided by Barclays, Deutsche Bank and HSBC, has significantly aided, and will continue to aid, in the prosecution of the Action.

20.  In light of these factors, CalSTRS supports Plaintiffs' motion for final approval of these settlements.

21.  I have also reviewed Class Counsel's motion for an award of attorneys' fees and reimbursement of expenses. The attorneys' fees requested exactly match the fee schedule that is part of the retainer agreement that CalSTRS negotiated with Counsel before becoming involved in the litigation. Thus, CalSTRS believes that such an award of attorneys' fees is fair and reasonable to the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 23, 2018.

_____
Brian J. Bartow