# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated, | Docket No. 13-cv-02811(PKC) |
| Plaintiffs, | |
| – against – | |
| BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50, | |
| Defendants. | |

STIPULATION AND AGREEMENT OF SETTLEMENT BETWEEN
PLAINTIFFS, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A.,
CITIGROUP INC., AND CITIBANK, N.A.

This Stipulation and Agreement of Settlement ("Agreement" or "Settlement Agreement") is made and entered into this 21st day of November, 2018 by and between, on the one hand, Defendants Citigroup Inc. and Citibank, N.A. (collectively, "Citi") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan" and, collectively with Citi, the "Settling Defendants") and, on the other hand, named Plaintiffs Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System, Sonterra Capital Master Fund, Ltd., FrontPoint Partners Trading Fund, L.P., FrontPoint Australian Opportunities Trust, any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC (collectively, "Plaintiffs"), for themselves and on behalf of each Settlement Class Member[1] in *Sullivan* v. *Barclays PLC*, No. 13-cv-02811.  This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, on August 13, 2015, Plaintiffs filed their fourth amended class action complaint ("Fourth Amended Class Action Complaint"), asserting 11 claims against the Settling Defendants and other banks and an interdealer broker:  (i) a conspiracy to restrain competition in and to fix the prices of Euribor-based derivatives in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) price fixing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (iii) bid rigging in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (iv) concerted refusal to deal in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (v) the manipulation of Euribor and the prices of Euribor-based derivatives, in violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1, *et seq.*; (vi) vicarious liability for manipulation of Euribor and prices of Euribor-based derivatives, in violation of Section 2(a)(1) of the CEA, 7 U.S.C. § 2(a)(1); (vii) aiding and abetting the manipulation of Euribor and the prices of Euribor-based derivatives, in violation of Section 22(a)(1) of the CEA, 7 U.S.C. § 25(a)(1); (viii) racketeering by engaging in wire fraud to transmit false Euribor submissions, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*; (ix) conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d); (x) unjust enrichment; and (xi) breach of the implied covenant of good faith and fair dealing.  Plaintiffs further contend that they suffered monetary damages as a result of the Settling Defendants' conduct;

WHEREAS, the Settling Defendants deny Plaintiffs' allegations and maintain they have good and meritorious defenses to the claims of liability and damages made by Plaintiffs;

WHEREAS, arm's-length settlement negotiations have taken place, through counsel, between the Settling Defendants and Plaintiffs, including mediation before Mediator David Geronemus, Esq., and this Agreement embodies all of the terms and conditions of the Settlement between the Settling Defendants and Plaintiffs, both individually and on behalf of each Settlement Class Member;

WHEREAS, the Settling Defendants agree to cooperate with Interim Lead Counsel and Plaintiffs as set forth in Section E of this Agreement;

WHEREAS, on October 5, 2018, Plaintiffs and the Settling Defendants jointly requested a stay of all litigation proceedings and deadlines between Plaintiffs and the Settling Defendants in the

---

[1]   All capitalized terms shall have the meaning set forth herein.

Action pending the submission of this Agreement to the Court, to which the Court has not responded;

WHEREAS, Interim Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that:  (i) it is in the best interests of the Settlement Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class, and (ii) the Settlement set forth herein is fair, reasonable and adequate, and in the best interests of Settlement Class Members;

WHEREAS, the Settling Defendants have agreed to enter into this Agreement, while denying the allegations brought in the Action and maintaining that they have meritorious defenses to Plaintiffs' claims of liability and damages, in order to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and thereby to resolve this controversy and avoid the risks inherent in complex litigation; and

WHEREAS, Plaintiffs, for themselves and on behalf of each Settlement Class Member, and the Settling Defendants agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of:  (i) any violation of any statute or law, (ii) any liability or wrongdoing by the Settling Defendants, or (iii) the truth of any of the claims or allegations alleged in the Action;

NOW, THEREFORE, IT IS HEREBY AGREED by and among Plaintiffs (for themselves and each Settling Class Member) and the Settling Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Action as against the Settling Defendants shall be finally and fully settled and releases extended and exchanged, as set forth below:

## A.    DEFINITIONS

1.    As used in this Agreement, the following capitalized terms have the meanings specified below.

1.1.    "Action" means *Sullivan, et al. v. Barclays PLC, et al.*, No. 13-cv-02811, currently pending in the S.D.N.Y.

1.2.    "Agreement" or "Settlement Agreement" means this Stipulation and Agreement of Settlement, together with any exhibits attached hereto, which are incorporated herein by reference.

1.3.    "Authorized Claimant" means any Settling Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to any Distribution Plan or order of the Court.

1.4.    "Business Day" means any days from Monday through Friday, inclusive, that are not holidays in the United States.

1.5.    "Citi" means Citigroup Inc. and Citibank, N.A.

1.6.    "Claims Administrator" means the Notice and/or Claims Administrator(s) to be approved by the Court.

1.7.    "Class" or "Settlement Class" shall have the meaning set forth in ¶ 4.

1.8.    "Class Member" or "Settlement Class Member" means a Person who is a member of the Settlement Class.

1.9.    "Class Period" means June 1, 2005 through and including March 31, 2011.

1.10.    "Court" means the U.S. District Court for the Southern District of New York, also referred to herein as the S.D.N.Y.

1.11.    "Defendants" means Barclays plc, Barclays Bank plc, Barclays Capital Inc., Citigroup Inc., Citibank, N.A., Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.), Crédit Agricole S.A., Crédit Agricole CIB, Deutsche Bank AG, DB Group Services UK Limited, HSBC Holdings plc, HSBC Bank plc, ICAP plc, ICAP Europe Limited, J.P. Morgan Chase & Co., JPMorgan Chase Bank, N.A., The Royal Bank of Scotland plc, Société Générale SA, UBS AG and John Does Nos. 1-50.

1.12.    "Dismissed Defendants" means Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.; Credit Agricole S.A., Credit Agricole CIB; The Royal Bank of Scotland PLC; Société Générale SA; UBS AG; ICAP plc, ICAP Europe Ltd., and any other defendant previously dismissed from the Action.

1.13.    "Distribution Plan" means any plan or formula of allocation of the Settlement Fund, to be approved by the Court, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

1.14.    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 33 have occurred.

1.15.    "Escrow Agent" means the entity designated by Interim Lead Counsel with the consent of the Settling Defendants (which consent shall not be unreasonably withheld), and any successor agent, to maintain the Settlement Fund.  Interim Lead Counsel anticipates that the Escrow Agent will be Amalgamated Bank.

1.16.    "Euribor" means the Euro Interbank Offered Rate.

1.17.    "Euribor Products" means any and all interest rate swaps, forward rate agreements, futures, options, structured products, and any other instrument or transaction related in any way to Euribor, including but not limited to, NYSE LIFFE Euribor futures contracts and options, CME Euro currency futures contracts and options, Euro currency forward agreements, Euribor-based swaps, Euribor-based forward rate agreements and/or any other financial instruments that reference Euribor.

1.18.    "Execution Date" means the date on which this Agreement is executed by the last party to do so.

1.19.    "Final" means, with respect to the Judgment, that it represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  For purposes of this ¶ 1.19, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.  Any appeal or other proceeding pertaining solely to any order adopting or approving the Distribution Plan, and/or any order issued in respect of an application for attorneys' fees and expenses pursuant to ¶ 29, shall not in any way delay or prevent the Judgment from becoming Final.

1.20.    "Final Approval Order" means the Court's approval of the Settlement following preliminary approval thereof, notice to the Class and a hearing on the fairness of the Settlement, the form of which shall be mutually agreed upon by the Settling Parties and submitted to the Court substantially in the form attached hereto as Exhibit B for approval thereof.

1.21.    "Incentive Award" means any award by the Court to Plaintiffs as described in ¶¶ 18 and 29.

1.22.    "Interim Lead Counsel" means Lowey Dannenberg, P.C., and Lovell Stewart Halebian Jacobson LLP.

1.23.    "Investment Vehicles" means any investment company, separately managed account or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds; and (ii) employee benefit plans.

1.24.    "JPMorgan" means JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

1.25.    "Judgment" means the order of judgment and dismissal of the Action with prejudice as to the Settling Defendants, the form of which shall be mutually agreed upon by the Settling Parties and submitted to the Court substantially in the form attached hereto as Exhibit C for approval thereof.

1.26.    "Mediator" means David Geronemus, Esq. or, if he is unable or unwilling to serve in that capacity, an alternate neutral mediator jointly selected in good faith by Interim Lead Counsel and the Settling Defendants' Counsel.

1.27.    "Net Settlement Fund" means the Settlement Fund less the payments set forth in ¶¶ 18.1 to 18.6.

1.28.    "Notice" means the form of notice of the proposed Settlement to be provided to Class Members as provided in this Agreement and the Preliminary Approval Order, the form and substance of which shall be mutually agreed upon by the Settling Parties and submitted to the Court for approval thereof.

1.29.   "Other Settlement" means any stipulation and agreement of settlement Plaintiffs reach with any other Defendant involving this Action that will be submitted to the Court for notice and approval at the same time as this Agreement.

1.30.   "Person(s)" means a natural person, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint-stock company, estate, legal representative, trust, unincorporated association, proprietorship, municipality, state, state agency, entity that is a creature of any state, any government, governmental or quasi-governmental body or political subdivision, authority, office, bureau, agency or instrumentality of the government, any business or legal entity, or any other entity or organization; and any spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

1.31.   "Plaintiffs" means Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System, Sonterra Capital Master Fund, Ltd., FrontPoint Partners Trading Fund, L.P., FrontPoint Australian Opportunities Trust, any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC.

1.32.   "Plaintiffs' Counsel" means (i) Interim Lead Counsel and (ii) any other attorney or law firm that represents Plaintiffs and seeks to receive any portion of the attorneys' fees that may be awarded by the Court in connection with this Settlement.

1.33.   "Preliminary Approval Order" means an order entered by the Court providing for preliminary approval of the Settlement, including certification of the Class for purposes of the Settlement only, the form of which shall be mutually agreed upon by the Settling Parties and submitted to the Court substantially in the form attached hereto as Exhibit A for approval thereof.

1.34.   "Proof of Claim and Release" means the form to be sent to Class Members, as ordered by the Court, by which any Settling Class Member may make a claim against the Net Settlement Fund.

1.35.   "Released Claims" means any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action or which could have been alleged in the Action against the Released Parties concerning any Euribor Products or any similar financial instruments priced, benchmarked, or settled to Euribor purchased, sold, held, traded, and/or transacted by the Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S.

Person, or by a Person from or through a location within the U.S.), or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of Euribor or Euribor Products under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. or any other statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to Euribor (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act 15 U.S.C. § 1 et seq., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law). The following claims shall not be released by this Settlement: (i) any claims against former employees of the Settling Defendants arising solely from those former employees' conduct that occurred while not employed by the Settling Defendants; (ii) any claims against the named Defendants in this Action other than the Settling Defendants; (iii) any claims against inter-dealer brokers or their employees or agents when and to the extent they were engaged as employees or agents of the other defendants or inter-broker dealers; or (iv) any claims against any Defendant not affiliated with the Settling Defendants who may be subsequently added in this Action. For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States.

1.36.   "Releasees" (or "Released Parties") means each and every Settling Defendant, their predecessors, successors and assigns, each of their respective past, present, and future direct and indirect parents, subsidiaries, affiliates, and joint ventures, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of the Settling Defendants), shareholders (in their capacity as shareholders of the Settling Defendants), attorneys, insurers or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasee. For the avoidance of doubt, "Releasees" shall not include any named Defendants other than the Settling Defendants.

1.37.   "Releasors" (or "Releasing Parties") means each and every Plaintiff and each and every Settling Class Member on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacities as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacities as such. Notwithstanding that the United States Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasor includes any Settling Class Member as to which the government entity has the legal right to release such claims. As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasor. For the avoidance of doubt, the "Releasors" include all Persons entitled to bring Released Claims on behalf of any Settling Class Member.

1.38.   "Settlement" means the settlement of the Released Claims set forth herein.

1.39.   "Settlement Amount" means one hundred eighty-two million five hundred thousand U.S. dollars ($182,500,000.00) of which up to seven hundred fifty thousand U.S. dollars ($750,000.00) may be used for the costs of notice and for Taxes and Tax Expenses as defined in ¶ 13.2.

1.40.   "Settlement Fund" means the Settlement Amount plus any interest that may accrue.

1.41.   "Settlement Hearing" means the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of the proposed Settlement.

1.42.   "Settling Class Member" means Plaintiffs and other members of the Settlement Class who do not timely and validly exclude themselves from the Settlement pursuant to FED. R. CIV. P. 23(c) and in accordance with the procedure to be established by the Court.

1.43.   "Settling Defendants" means JPMorgan and Citi.

1.44.   "Settling Party" means the Settling Defendants or any Plaintiff (for itself and on behalf of each Settling Class Member).

1.45.   "Settling Parties" means the Settling Defendants and Plaintiffs (for themselves and on behalf of each Settling Class Member).

**B.   PRELIMINARY APPROVAL ORDER, NOTICE ORDER AND SETTLEMENT HEARING**

2.   **Reasonable Best Efforts to Effectuate this Settlement.** The Settling Parties agree to cooperate with one another to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Agreement.

3.   **Motions for Preliminary Approval and Stay.** Within forty-five (45) calendar days after the Execution Date, Interim Lead Counsel shall submit this Agreement to the Court and shall file a motion for entry of the Preliminary Approval Order. On October 5, 2018, Plaintiffs and the Settling Defendants jointly requested that all litigation proceedings and deadlines between Plaintiffs and the Settling Defendants be temporarily stayed pending the parties' drafting, execution, and presentation of the Agreement for Court approval. Upon execution of this Agreement, Interim Lead Counsel shall move to stay all proceedings in the Action against the Settling Defendants until the Court renders a final decision on approval of the Settlement. The stay request may be included in Plaintiffs' Motion for Preliminary Approval provided that it is made upon execution of this Agreement.

4.   **Stipulation to Certification of a Settlement Class.**

4.1.   The Settling Parties hereby stipulate for purposes of the Settlement only that the following Class shall be certified:

All Persons who purchased, sold, held, traded or otherwise had any interest in Euribor Products from June 1, 2005 through and including March 31, 2011, who were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted in Euribor Products in the United States or its territories from June 1, 2005 through and including March 31, 2011, including, but not limited to, all Persons who traded CME Euro currency futures contracts, all Persons who transacted in NYSE LIFFE Euribor futures and options from a location within the United States, and all Persons who traded any other Euribor Product from a location within the United States, provided that, if Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined Class in this Agreement shall be expanded so as to be coterminous with such expansion. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a defendant, and the United States Government.

Notwithstanding the sentence in Paragraph 4.1 above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for the purposes of this Settlement and this Settlement Class, the Parties agree that Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants. However, to the extent that any Defendant or any entity that might be deemed to be an affiliate or subsidiary thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

4.2.     Plaintiffs shall file an application seeking the certification of the Settlement Class as described herein pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Unless the Settlement is terminated, Settling Defendants shall take no position with respect to any motion for class certification the Plaintiffs anticipate filing and/or file in connection with their claims against other Defendants in the Action.

4.3.     If the Settlement as described herein is disapproved by any court, is terminated as provided herein, or is reversed or vacated following any appeal taken therefrom, then this stipulation for the purposes of Settlement that the above Class should be certified becomes null and void, and any Court order certifying a class for the purposes of this Settlement shall be vacated, and the Settling Defendants reserve all rights to contest that the Action should be certified as a class action. Nothing in this Agreement shall preclude the Settling Defendants from opposing motions for class certification or from taking positions in actions other than this Action.

5.     **Notice to Class.**  Interim Lead Counsel shall be responsible for selecting a Claims Administrator to be approved by the Court, and Settling Defendants shall not object to Interim Lead Counsel's selection. In the event that the Court preliminarily approves the Settlement, Interim Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the

Preliminary Approval Order, provide Class Members whose identities can be determined after reasonable efforts with notice of the date of the Settlement Hearing.  The Notice may be sent solely for this Settlement or combined with notice of any Other Settlement or of any litigation class.  The Notice shall also explain the general terms of the Settlement set forth in this Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application (as defined in ¶ 29), and a description of Class Members' rights to object to the Settlement, request exclusion from the Class, and appear at the Settlement Hearing.  The text of the Notice shall be agreed upon by Interim Lead Counsel and the Settling Defendants before its submission to the Court for approval thereof.  The cost of providing the Notice to Class Members in the manner set forth above shall be paid out of the Settlement Fund, and the Claims Administrator shall administer dissemination of the Notice. The Settling Defendants agree to provide the Claims Administrator with reasonably available contact information for Settlement Class counterparties to Euribor Products they transacted with during the Class Period for the purpose of mailing the Notice, to the extent not prevented from doing so by any court order or any law, regulation, policy, or other guidance or rule of any regulatory agency or governmental body restricting disclosure of such information.  Such contact information shall be subject to the Stipulation and Protective Order in the Action.  If Settling Defendants reasonably conclude in good faith that it is necessary or advisable, in the Settling Defendants' sole discretion, as a result of domestic or foreign data protection, privacy, or bank secrecy law requirements or any other law, rule or regulation, the Settling Defendants may (i) retain a third-party agent to provide the Notice to Settlement Class Members who cannot be included in the general class-wide notice process; or (ii) provide counterparty information only to the Claims Administrator for purposes of distributing the Notice. In the event that the Settlement is not approved, Plaintiffs will not be required to return to the Settling Defendants any sums paid from the Settlement Fund for the reasonable costs of Notice and Taxes and Tax Expenses as defined in ¶ 13.2 up to a maximum of $750,000.  The Settling Defendants shall bear the costs and responsibility of serving notice of the Settlement as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, and shall do so in a timely manner. The Settling Defendants shall also cause a copy of such notice as well as proof of service of such notice to be provided to Interim Lead Counsel.

6.     **Publication.**  Interim Lead Counsel shall cause to be published a summary ("Summary Notice") in accord with the Notice submitted to the Court by Interim Lead Counsel and approved by the Court.  The Settling Defendants shall have no responsibility for providing publication or distribution of the Settlement or any notice of the Settlement to Class Members or for paying for the cost of providing notice of this Settlement to Class Members.  The Settling Parties shall mutually agree on any content relating to the Settling Defendants that will be used by Interim Lead Counsel and/or the Claims Administrator in any Settlement-related press release or other media publications, including on websites.

7.     **Motion for Final Approval and Entry of Final Judgment.**  After Notice is issued and prior to the date of the Settlement Hearing set by the Court in the Preliminary Approval Order, to the extent permitted by the Court, Interim Lead Counsel shall make a motion to the Court for the final approval of the Settlement, and the Settling Parties shall jointly seek entry of the Final Approval Order and Judgment on substantially the following terms:

7.1.     Finally certifying solely for settlement purposes the Settlement Class;

7.2.    Fully and finally approving the Settlement contemplated by this Agreement as fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms and conditions;

7.3.    Finding that the Notice constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

7.4.    Directing that the Action be dismissed with prejudice as to the Settling Defendants and, except as provided for herein, without costs;

7.5.    Discharging and releasing the Released Claims as to the Releasees;

7.6.    Permanently barring and enjoining the institution and prosecution by Plaintiffs and any Settling Class Member of any lawsuit, arbitration or other proceeding against the Releasees in any jurisdiction asserting any of the Released Claims;

7.7.    Barring claims by any Person against the Releasees for contribution or indemnification or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise;

7.8.    Reserving the Court's continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration and enforcement of this Agreement, subject to the terms of ¶ 23.5;

7.9.    Determining pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing entry of a Final Judgment as to the Settling Defendants; and

7.10.    Containing such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

8.    Sufficiently before the Settlement Hearing, Plaintiffs' Counsel will timely request that the Court approve the Fee and Expense Application (as defined in ¶ 29).  As set forth in ¶ 31, the Fee and Expense Application and the Distribution Plan are matters separate and apart from the Settlement between the Settling Parties.  If the Fee and Expense Application or the Distribution Plan are not approved, in whole or in part, it will have no effect on the finality of the Final Approval Order approving the Settlement and the Final Judgment dismissing the Action with prejudice as to the Settling Defendants.

## C.    SETTLEMENT FUND

9.    **Payments Made by the Settling Defendants.**  The Settling Defendants shall cause a total of thirty-six million five hundred thousand U.S. dollars ($36,500,000) of the Settlement Amount to be deposited by wire transfer into an interest-bearing Escrow Account controlled by Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP ("Interim Lead Counsel") within ten (10) Business Days after the Court enters an order preliminarily approving the Settlement, and the balance of the Settlement Amount (one-hundred forty-six million U.S. dollars

($146,000,000)) within ten (10) Business Days after Final Approval of the Settlement. These ten (10) Business Day time periods shall not begin to run unless and until Interim Lead Counsel provides appropriate wire instructions and a Form W-9 to Settling Defendants' counsel.  Citi and JPMorgan shall each be responsible for their respective agreed-upon shares of the Settlement Amount.  Neither Citi nor JPMorgan shall have any obligation with respect to any portion of the Settlement Amount that is the responsibility of the other Defendant.   All interest earned on any portion of the Settlement Amount paid into the Settlement Fund shall be added to and become part of the Settlement Fund.  The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund and bank accounts that are either: (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (b) secured by instruments backed by the full faith and credit of the United States Government.  The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund. This is not a claims-made settlement. Except as provided in ¶ 36, the Settlement Amount shall not be subject to reduction, and, upon the occurrence of the Effective Date, no funds may be returned to the Settling Defendants through reversion or other means.  The Escrow Agent shall only act in accordance with instructions mutually agreed upon by the Settling Parties in writing. Other than the payment of the Settlement Amount as set forth in this ¶ 9, Settling Defendants shall have no responsibility for any interest, costs or other monetary payment, including any attorneys' fees and expenses, taxes, or costs of notice or claims administration, except that Settling Defendants shall be responsible for notice as required by CAFA, 28 U.S.C. § 1715, as set forth in ¶ 5.

10.     **Disbursements Prior to Effective Date.**  No amount may be disbursed from the Settlement Fund prior to the Effective Date, except that, upon written notice to the Escrow Agent by Interim Lead Counsel with a copy to the Settling Defendants:  (a) reasonable costs of the Notice and the Claims Administrator ("Notice and Administrative Costs") may be paid from the Settlement Fund as they become due; (b) reasonable costs of the Escrow Agent ("Escrow Agent Costs") may be paid from the Settlement Fund as they become due; (c) Taxes and Tax Expenses as defined in ¶ 13.2 may be paid from the Settlement Fund as they become due; and (d) any attorneys' fees and expenses awarded by the Court, as set forth in ¶ 29, shall be payable from the Settlement Fund upon award, to the extent permitted pursuant to ¶ 30.  Interim Lead Counsel shall attempt in good faith to minimize the amount of Escrow Agent Costs and Notice and Administrative Costs to the extent consistent with providing reasonable notice to Class Members and/or acting in accordance with Court orders.

11.     **Refund by Escrow Agent.**  If the Settlement is finally disapproved by any court or is terminated as provided herein, or the Judgment is overturned on appeal or by writ, the Settlement Fund, including all interest earned on such amount while held in the Escrow Account, and excluding any amounts for any proper, already disbursed Notice Costs and Taxes and Tax Expenses as defined in ¶ 13.2 (up to a maximum of $750,000) will be refunded, reimbursed and repaid by the Escrow Agent to the Settling Defendants as provided in ¶ 38.

12.     **No Additional Payments by the Settling Defendants.**  Under no circumstances will the Settling Defendants be required to pay more than the Settlement Amount.  For purposes of clarification, and as provided in ¶¶ 16 and 18, the payment of any Fee and Expense Award (as defined in ¶ 29), Notice and Administrative Costs, Taxes and Tax Expenses, Escrow Agent Costs,

and any other costs associated with the implementation of this Agreement, shall be paid exclusively from the Settlement Fund. This Settlement is not a claims-made settlement and, if all conditions of the Settlement are satisfied, and the Judgment is entered and becomes Final, no portion of the Settlement Fund will be returned to the Settling Defendants, irrespective of the number of claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants.

13.      **Taxes.**  The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B–l.  The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 13, including the "relation-back election" (as defined in Treas. Reg. § 1.468B–l) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

13.1.    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent and/or Claims Administrator.  The Escrow Agent and/or Claims Administrator shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B–2 by, *e.g.*, (a) obtaining a taxpayer identification number, (b) satisfying any information reporting or withholding requirements imposed on distributions from the Settlement Fund, and (c) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B–2(k)) and paying any taxes reported thereon.  Such returns (as well as the election described in this ¶ 13) shall be consistent with this ¶ 13 and in all events shall reflect that all Taxes, as defined in ¶ 13.2, on the income earned by the Settlement Fund shall be paid from the Settlement Fund as provided in ¶ 18.

13.2.    All (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon the Settling Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this ¶ 13, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 13 (collectively, "Tax Expenses"), shall be paid from the Settlement Fund; in all events, the Settling Defendants and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  With funds from the Settlement Fund, the Escrow Agent shall indemnify and hold harmless the Settling Defendants and their counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall timely be paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax

Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B–2(I)(2)); neither the Settling Defendants nor their counsel is responsible therefor, nor shall they have any liability therefor.  The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 13.

14.     **Plaintiffs' Release and Covenant Not to Sue.**

14.1.   Upon the Effective Date, and in exchange for the receipt of the Settlement Amount provided for herein, the receipt and sufficiency of which is hereby acknowledged, the Releasors, and any other Person claiming against the Settlement Fund (now or in the future) through or on behalf of any Releasor, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Releasees from any and all Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting any such Released Claim in any lawsuit, arbitration or other proceeding against any Releasee in any court or venue in any jurisdiction worldwide.  Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless of whether any such Releasor ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release, any distribution from the Settlement Fund or Net Settlement Fund.  The releases set forth herein are given pursuant to New York law, including N.Y. General Obligations Law § 15-108 which bars claims for contribution by joint tortfeasors and other similar claims, and are to be construed under New York law without regard to its conflict of law principles.

14.2.   This Agreement is expressly intended to absolve Releasees against any claims for contribution, indemnification, or similar claims from other Defendants in the Action or any defendant who may be subsequently added in this Action, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York (including, without limitation, N.Y. General Obligations Law § 15-108) or any other jurisdiction that might be construed or deemed to apply to any claims for contribution, indemnification or similar claims against any Releasee.  Notwithstanding the foregoing, should any court determine that any Defendant is or was legally entitled to any kind of contribution or indemnification from the Settling Defendants arising out of or related to Released Claims, the Releasors agree that any money judgment subsequently obtained by the Releasors against any Defendant shall be reduced to an amount such that, upon paying the entire amount, the Defendant would have no claim for contribution, indemnification or similar claims against the Settling Defendants.

14.3.   Except in the event of termination of this Settlement, the Settling Parties agree not to assert under Rule 11 of the Federal Rules of Civil Procedure, or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis.

15.     **Unknown Claims/California Civil Code Section 1542.**  Although the release set forth in ¶ 14 is not a general release, such release constitutes a waiver of Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release set forth in ¶ 14 also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state, or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code. The Settling Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts. In entering and making this Agreement, the Settling Parties assume the risk of any mistake of fact or law, and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

16.   **Payment of Fees and Expenses.**  Subject to Court approval, Plaintiffs and Plaintiffs' Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses, and any Incentive Award approved by the Court.  The Settling Defendants shall have no responsibility for any costs, fees, expenses, Notice and Administrative Costs, taxes, Escrow Agent Costs incurred for or by Plaintiffs' or Class Members' respective attorneys, experts, advisors, agents, or representatives, except that Settling Defendants will be responsible for notice as required by CAFA, 28 U.S.C. § 1715.

17.   **Defendants' Release.**  Upon the Effective Date of the Settlement, the Settling Defendants shall release and be deemed to release and forever discharge, and shall forever be enjoined from prosecuting any and all claims against Plaintiffs, the Settling Class Members, and their counsel arising out of or relating to the institution, prosecution, and resolution of the Released Claims in the Action; provided, however, that this paragraph does not release or discharge any claim or right the Settling Defendants may have to enforce this Agreement, or any claim or right the Settling Defendants may otherwise have arising out of or relating to any Euribor Product that any Plaintiff or Class Member purchased from, sold to, or otherwise transacted with the Settling Defendants, including any claim or right to enforce the terms of any such Euribor Product.

**D.   ADMINISTRATION AND DISTRIBUTION OF SETTLEMENT FUND**

18.   **Distribution of Settlement Fund.**  The Claims Administrator, subject to such supervision and direction of the Court and/or Interim Lead Counsel as may be necessary or as circumstances may require, shall administer the claims submitted by Settling Class Members and shall oversee the distribution of the Settlement Fund pursuant to the Distribution Plan.  Subject to the terms of this Agreement and any order(s) of the Court, upon the Effective Date (or earlier if provided in ¶ 10), the Settlement Fund shall be applied in the order and as follows:

18.1.   To pay Notice and Administrative Costs;

18.2.    To pay Escrow Agent Costs;

18.3.    To pay all costs and expenses reasonably and actually incurred in assisting Settling Class Members with the filing and processing of claims against the Net Settlement Fund;

18.4.    To pay the Taxes and Tax Expenses;

18.5.    To pay any Fee and Expense Award, as defined in ¶ 29;

18.6.    To pay any Incentive Award, as defined in ¶ 29; and

18.7.    To distribute the Net Settlement Fund to Authorized Claimants as allowed by the Agreement, any Distribution Plan or order of the Court.

19.    **Distribution of Net Settlement Fund.**  Upon the Effective Date and thereafter, and in accordance with the terms of this Agreement, the Distribution Plan, and any order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

19.1.    Each Settling Class Member who claims to be an Authorized Claimant shall be required to submit to the Claims Administrator a verified completed Proof of Claim and Release supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to such Settling Class Member;

19.2.    Except as otherwise ordered by the Court, each Settling Class Member who fails to submit a Proof of Claim and Release within such period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Agreement and the Settlement set forth herein, but shall in all other respects be subject to and bound by the provisions of this Agreement, the releases contained in this Agreement, and the Judgment;

19.3.    The Net Settlement Fund shall be distributed to Authorized Claimants, and in no event shall there be any reversion to the Settling Defendants.  The distribution to Authorized Claimants shall be substantially in accordance with the Distribution Plan to be approved by the Court upon such further notice to the Class as may be required. Interim Lead Counsel has developed the Distribution Plan that has been or will be submitted to the Court. If Interim Lead Counsel modifies the Distribution Plan, Interim Lead Counsel will provide Settling Defendants the revised Distribution Plan at least five (5) Business Days before it is submitted to the Court. Settling Defendants shall take no position with respect to the Distribution Plan or any revisions to the Distribution Plan. Any such Distribution Plan is not a part of this Agreement.  No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the later of (i) the Effective Date; or (ii) the date by which the Distribution Plan has received final approval and the time for any further appeals with respect to the Distribution Plan has expired; and

19.4.    Each Settling Class Member shall be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Judgment, regardless of whether

such Class Member seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Net Settlement Fund.

20.    **No Liability for Distribution of Settlement Funds.**  The Releasees and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Distribution Plan, the determination, administration or calculation of claims, the payment or withholding of Taxes or Tax Expenses, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters. Effective immediately upon the Execution Date, the Releasors hereby fully, finally, and forever release, relinquish, and discharge the Releasees and their counsel from any and all such liability.  No Person shall have any claim against Plaintiffs' Counsel or the Claims Administrator based on distributions made substantially in accordance with the Agreement and the Settlement contained herein, the Distribution Plan, or further orders of the Court.

21.    **Balance Remaining in Net Settlement Fund.**  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) following distribution pursuant to ¶ 19, Interim Lead Counsel shall submit an additional distribution plan to the Court for approval.  If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 19 and is of such an amount that, in the discretion of the Claims Administrator, it is not cost-effective or efficient to redistribute to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs, Escrow Agent Costs, Taxes and Tax Expenses and other costs and expenses related to the Action, shall be donated to a non-profit charitable organization recommended by Plaintiffs and approved by the Court.

## E.    THE SETTLING DEFENDANTS' COOPERATION

22.    **Stay Except As Provided Herein.**  The Settling Parties agree that all proceedings and deadlines in the Action, including with respect to discovery, except with respect to the Settling Defendants' cooperation obligations as provided in ¶¶ 23 to 28, shall be stayed pending the Court's entry of the Preliminary Approval Order.  The stay will automatically be dissolved if (a) the Court does not enter the Preliminary Approval Order, the Final Approval Order or the Judgment, or (b) the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified or reversed, unless, as set forth in ¶ 36, the Settling Parties, in their sole discretion within thirty (30) calendar days from the date of the mailing of such ruling to such Settling Parties, provide written notice to all other Settling Parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order, the Final Approval Order or the Judgment, as modified by the Court or on appeal.

23.    **The Settling Defendants' Cooperation.**  The Settling Defendants shall provide reasonable cooperation in the Action, including discovery cooperation, requested by Interim Lead Counsel, to benefit the Settlement Class, as provided by ¶¶ 23 to 28.  All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense are avoided. Interim Lead Counsel shall tailor its requests for the production of documents with a view towards minimizing unnecessary burdens and costs to the Settling Defendants in connection with collecting, reviewing and producing materials that have not already been produced in the course of the Action, related settlements, reports and/or investigations by regulatory agencies.

-16-

23.1.   Notwithstanding any other provision in this Agreement, the Settling Defendants shall have no obligation to produce any document or provide any information that is privileged under the attorney-client, work product, joint defense, common interest, bank examination, or other applicable privilege or immunity from disclosure. None of the cooperation provisions set forth herein are intended to, nor do they, waive any such privileges or immunities. The Settling Defendants agree that their counsel will meet with Interim Lead Counsel as is reasonably necessary to discuss any such applicable privilege or protection.  Any disputes regarding privilege that cannot be resolved among the Settling Parties shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in ¶ 23.5.  If Additional Cooperation Materials are required to be provided, at a reasonable time after the production(s) thereof, to be negotiated in good faith, the Settling Defendants agree to provide Plaintiffs, through Interim Lead Counsel, with (a) privilege logs for any relevant documents reasonably requested by Plaintiffs as cooperation discovery in accordance with this Agreement that the Settling Defendants withhold on the basis of any privilege, doctrine, immunity, or regulatory objection, if and to the extent such privilege logs are reasonably necessary to establish the basis for the Settling Defendants' withholding of the documents and as allowed by law, rule or regulation, and (b) any existing privilege logs for documents that the Settling Defendants withheld from U.S. governmental authorities (but not from any other governmental authorities, as applicable) as part of its investigation into the Settling Defendants' alleged manipulation of Euribor and Euribor Products, to the extent such privilege logs relate to documents reasonably requested by Plaintiffs under Section E herein, if and to the extent such privilege logs are reasonably necessary, and as allowed by law, rule or regulations. Settling Defendants' production of existing privilege logs, if any, will be made in a way so as not to identify the government authority or authorities to which Settling Defendants provided the logged documents. The Settling Parties agree that their counsel shall meet and confer with each other regarding any dispute as to the privileges and protections described in this paragraph or as to the documents contained in the Settling Defendants' privilege logs. To the extent the Settling Parties cannot resolve any such disputes, they shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in ¶ 23.5.  If any document protected by the attorney-client privilege, work product doctrine, the common interest doctrine, the joint defense privilege, the bank examination privilege, and/or any other applicable privilege or protection is accidentally or inadvertently produced, Plaintiffs, upon notice from Settling Defendants, shall promptly cease reviewing the document, and the document and all copies of it shall promptly be returned to the Settling Defendants' counsel within five (5) Business Days. Plaintiffs and Plaintiffs' Counsel shall also delete or destroy the portions of any other document or work product which refer to or summarize the document. The document shall not be used or referred to in any way by Plaintiffs and Plaintiffs' Counsel, and its production shall in no way be construed to have waived any privilege, protection or restriction attached to such document or information.

23.2.   Notwithstanding any other provision in this Agreement, the Settling Defendants shall have no obligation to produce any document or provide any information that is restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secrets or other law, rule, or regulation. In the event that Plaintiffs reasonably request documents or information otherwise within the scope of the materials to be provided under Section E of this Agreement that the Settling Defendants reasonably believe

in good faith to be restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secrets or other law, rule or regulations, and the restriction can be avoided without undue burden to the Settling Defendants through a reasonable workaround, such as by removing or anonymizing identifying information or redacting protected information or by producing substantially the same information in a different form, the Settling Defendants shall cooperate in good faith with Plaintiffs to implement such a workaround.

23.3.    Notwithstanding any other provision of this Agreement, in the event that the Settling Defendants believe that Interim Lead Counsel has requested cooperation of a kind or to an extent that is not reasonable or not within the scope of the Settling Defendants' obligations as set forth herein, the Settling Defendants' counsel and Interim Lead Counsel agree to meet and confer with each other regarding such disagreement and to seek resolution pursuant to the alternative dispute resolution procedures set forth in ¶ 23.5, if necessary.

23.4.    Plaintiffs' Counsel agree to use any and all of the information and documents obtained from the Settling Defendants only for the purpose of the Action, and agree to be bound by the terms of the Stipulation and Protective Order entered in this Action. For the avoidance of doubt, Plaintiffs' Counsel expressly agrees that the documents, materials, and/or information provided by the Settling Defendants including without limitation oral presentations and witness testimony, may be used directly or indirectly by Plaintiffs' Counsel solely in connection with the prosecution of the Action against the non-settling defendants, but not for the institution or prosecution of any other action or proceeding against any Released Party or for any other purpose whatsoever, including, but not limited to, actions or proceedings in jurisdictions outside the United States.

23.5.    Any dispute or controversy arising out of or relating to the cooperation set forth in Section E of this Agreement or the termination provision contained in the Supplemental Agreement shall be resolved first by discussion among counsel for the Settling Parties and, failing that, exclusively by confidential mediation, or, if mediation fails to resolve the dispute, by arbitration, in each case administered by the Mediator (unless and to the extent that all Settling Parties agree on another neutral for resolution of a particular dispute) at JAMS, Inc., formerly known as Judicial Arbitration and Mediation Services ("JAMS"), in accordance with its procedures and Comprehensive Arbitration Rules & Procedures then in effect ("Rules") and in accordance with the Expedited Procedures in those Rules (or such other alternative dispute resolution organization and/or rules as all Settling Parties shall agree upon), except as modified herein. The mediation or arbitration, as the case may be, shall be conducted on a strictly confidential basis, and the Settling Parties shall not disclose the existence or nature of any claim; any documents, correspondence, briefing, exhibits, or information exchanged or presented in connection with any claim; or any rulings, decisions, or results of any claim or argument (collectively, the "Arbitration Materials") to any third party, with the sole exception of legal counsel (who shall also be bound by these confidentiality terms), and under seal in any judicial proceeding commenced in connection with this ¶ 23.5 or to the extent such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements or other legal requirements.  The arbitral decision shall be final and binding upon the Settling Parties hereto.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.  Except as the Rules may provide, the Settling Parties shall share JAMS's administrative fees and the

arbitrator's fees and expenses. Each Settling Party shall be responsible for such Settling Party's attorneys' fees and costs, except as otherwise provided by any applicable statute or other law.  Any Settling Party may commence litigation in any state or federal court of competent jurisdiction located in New York County, New York, to obtain injunctive relief in aid of arbitration, to compel arbitration, or to confirm or vacate an arbitrator's award. The Settling Parties agree to take all steps necessary to protect the confidentiality of the Arbitration Materials in connection with any such proceeding, agree to use their best efforts to file all confidential information (and documents containing confidential information) under seal, and agree to the entry of an appropriate protective order encompassing the confidentiality terms of any settlement agreement.  The seat of arbitration shall be New York, New York.

24.      **Document Production.** Subject to the restrictions set forth above, the Settling Defendants will provide cooperation to Plaintiffs by producing to Interim Lead Counsel the following categories of documents in ¶¶ 25 and 26, at such times specified below, to the extent any such documents exist, in an equivalent format to that in which they were produced to governmental authorities, including any metadata included in such production, or, with respect to any documents not previously produced to governmental authorities, in a format to be agreed, to the extent that such documents are reasonably available and accessible to the Settling Defendants and have not already been produced to Plaintiffs in the Action.  Plaintiffs and the Settling Defendants agree to bifurcate the timing of production of Initial Cooperation Materials and Additional Cooperation Materials, as set forth below, and to negotiate in good faith as to the timing of specific Cooperation Materials consistent with such bifurcation.  Unless otherwise indicated, the time period of the documents subject to production shall be June 1, 2005 – March 31, 2011 ("Class Period").

25.      **Initial Cooperation Materials**.  The Settling Defendants shall produce the following Cooperation Materials after preliminary approval of the Settlement by the Court, except the Settling Defendants may, in the good-faith exercise of their respective sole discretion, defer production of certain documents identified by ¶ 25.2 until after the Court has entered the Final Approval of the Settlement (and expiration of the time to appeal such Final Approval or resolution of any and all appeals regarding the Settlement):

25.1.   All documents and data produced by the Settling Defendants to any governmental authorities in connection with any investigation by such entities of conduct related to Euribor, to the extent not already produced to Plaintiffs.

25.2.   Documents and communications that are potentially probative of the personal jurisdiction of this Court over the Dismissed Defendants, to the extent such documents and communications (1) have not already been produced or are produced pursuant to ¶ 25.1, and (2) were previously collected by Settling Defendants in connection with any Euribor-related governmental investigation and are identified by the searches to be agreed upon by the Settling Parties and subject to the parameters previously agreed upon by the Settling Parties which the Settling Parties expressly agree survive execution of this Agreement notwithstanding ¶57 below (hereinafter referred to as "Personal Jurisdiction Documents"). For the avoidance of doubt, documents "previously collected by Settling Defendants in connection with any Euribor-related governmental investigation" refers to the set of custodial files collected by the Settling Defendants prior to the application of any search terms.

25.3.    Settling Defendants agree to begin a rolling production pursuant to this Section E as soon as practicable after the Court enters the Preliminary Approval Order.

26.    **Additional Cooperation Materials.**  The Settling Defendants agree to negotiate in good faith the production of any Additional Cooperation Materials (the scope of which shall be no broader than that identified below in ¶ 26.1 through ¶ 26.10) only if and after both of the following events have occurred:  (1) preliminary approval of the Settlement by the Court; and (2) the Court or an appellate court issues an order, which has not been stayed and remains in effect, reinstating Plaintiffs' claims against one or more of the Dismissed Defendants.  The Settling Parties recognize that both of the preceding conditions may never be satisfied, and in such case, the Settling Defendants will have no further obligations to produce Additional Cooperation Materials.  Nevertheless, if both conditions are satisfied, promptly following the satisfaction of these conditions, Plaintiffs and the Settling Defendants will meet and confer to agree on the scope of and timing for the relevant production of Additional Cooperation Materials. For the avoidance of doubt, the mere fact that a category or type of document or information is listed below in ¶ 26.1 through 26.10 neither expressly nor impliedly indicates the Settling Defendants' agreement to produce such category or type of document or information.

26.1.    To the extent previously collected by the Settling Defendants in connection with any Euribor-related investigation by any governmental authorities or by the Settling Defendants, reasonably available communications to or from the European Banking Federation ("EBF") and/or the Association Cambiste Internationale ("ACI") or any of their committees or representatives, concerning Euribor submission rates.

26.2.    Reasonably available trade data pertaining to transactions of the Settling Defendants in Euro-denominated, unsecured, fixed-rate inter-bank money market instruments for the period from June 1, 2004 through 2011, the scope of which will be agreed to in a meet and confer process if the events identified in ¶ 26 occur.

26.3.    Reasonably available trade data pertaining to transactions of the Settling Defendants in Euribor Products for the period from June 1, 2005 through March 31, 2011, the scope of which will be agreed to in a meet and confer process if the events identified in ¶ 26 occur.

26.4.    Reasonably available documents sufficient to show Euribor reporting rules or standards, the scope of which will be agreed to in a meet and confer process if the events identified in ¶ 26 occur.

26.5.    Reasonably available documents sufficient to show Euribor submissions made by the Settling Defendants.

26.6.    Documents reflecting substantially the same information as that reflected in Settling Defendants' submissions to the Federal Reserve Bank of New York, Bank of International Settlements, and OTC Derivatives Supervisors Group relating to their surveys on turnover in foreign exchange and interest rate derivatives markets for Euribor Products, to the extent such information exists and is reasonably accessible, and to the extent such disclosure is permitted by relevant authorities and under applicable banking or other laws

and regulations, for the years 2004, 2007, 2010 and 2013, provided that such documents shall not include the Settling Defendants' communications with such surveyors.

26.7.   Non-privileged declarations, affidavits, or other sworn or unsworn written statements or testimony of former and/or current directors, officers or employees of the Settling Defendants concerning the allegations set forth in this Action with respect to Euribor to the extent such documents exist, are reasonably accessible to the Settling Defendants, and may be disclosed under applicable confidentiality, privacy or regulatory restrictions. To the extent documents fall under foreign privacy laws, the Settling Defendants shall in good faith seek any necessary regulatory consents for production or otherwise discuss with Plaintiffs ways to best resolve foreign law privacy issues with a view towards producing relevant information to plaintiffs.

26.8.   Reasonable access to up to two Settling Defendant witnesses per Settling Defendant group for deposition or trial, to the extent the Settling Defendants have control over those witnesses, and to the extent permitted by relevant law or authorities. However, if based on the receipt of the Additional Cooperation Materials, Plaintiffs determine in good faith the need for additional witnesses, the parties will meet in good faith to discuss the addition of witnesses (if any) not to exceed two additional witnesses per Settling Defendant group. If the parties are unable to reach an agreement after meeting and conferring, the dispute will be resolved in accordance with the alternative dispute resolution procedures set forth in ¶ 23.5 above of the Settlement Agreement.

26.9.   Such further documents and information as Interim Lead Counsel may reasonably request that are relevant to the claims or defenses in the Action and are reasonably accessible to the Settling Defendants and not unduly burdensome to produce.

26.10.  Attorney proffer(s) concerning the Settling Defendants' knowledge of the Euribor related conduct at issue in Plaintiffs' complaints.

27.   **Other Information.** With respect to any production of documents arising from the Settling Defendants' obligations under this Settlement, the Settling Defendants will cooperate in providing declarations to authenticate documents Plaintiffs may seek to introduce as evidence at proceedings in this Action, to the extent reasonably necessary. The Settling Defendants will provide Plaintiffs with a description of the data fields included in any trade and risk data produced by the Settling Defendants to the extent reasonably requested by Plaintiffs, and to the extent reasonably necessary and available.

28.   **Continuation, Scope, and Termination of the Settling Defendants' Obligations.** The Settling Defendants' obligations to provide the cooperation specified in this Section E are continuing until and shall terminate upon the earlier of: (A) the date when final judgment has been rendered with no remaining rights of appeal, in the Action against all Dismissed Defendants; or (B) four (4) years after any reinstatement of the claims, whether by the District Court or the Court of Appeals, which has not been stayed and remains in effect; or (C) five (5) years after the Court enters the Preliminary Approval Order.

F.      **ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

29.     **Fee and Expense Application.**

29.1.   The Settling Defendants shall have no interest or right in or to any portion of the Settlement Fund based on any ruling that the Court makes on any application by Plaintiffs' Counsel for fees, costs or expenses.  Interim Lead Counsel, on behalf of all Plaintiffs' Counsel, may, at their discretion and election, choose to submit an application or applications to the Court (collectively, "Fee and Expense Application") for distributions to them from the Settlement Fund of an award of attorneys' fees or reimbursement of expenses, including but not limited to attorneys' fees, and past, current or future litigation expenses ("Fee and Expense Award") incurred in connection with prosecuting the Action. Plaintiffs may also make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation ("Incentive Award").

29.2.   Plaintiffs' Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees plus interest. Plaintiffs' Counsel may also apply to the Court for reimbursement from the Settlement Fund of Plaintiffs' Counsel's litigation expenses plus interest. Settling Defendants shall take no position with respect to the Fee and Expense Application.

29.3.   Prior to the Settlement Hearing, Plaintiffs and Plaintiffs' Counsel shall file any motions seeking a Fee and Expense Award from the Settlement Fund for payment of attorneys' fees and reimbursement of costs and expenses, and for the payment of an Incentive Award as follows:

(1)     Plaintiffs' Counsel shall seek attorneys' fees in an amount to be specified in the Notice.

(2)     Plaintiffs' Counsel shall seek reimbursement for their costs and expenses incurred as of the date of the Motion for Final Approval and Entry of Final Judgment is filed pursuant to ¶ 7.

(3)     Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this Action, which amount constitutes the Incentive Award.

(4)     Plaintiffs' Counsel may apply to the Court, at the time of an application for distribution to Authorized Claimants, for an award from the Settlement Fund of attorneys' fees for services performed and reimbursement of expenses incurred in connection with the administration of the Settlement after the Settlement Hearing. Plaintiffs' Counsel reserves the right to make additional applications to the Court for payment from the Settlement Fund for attorneys' fees for services performed and reimbursement of expenses incurred. Any such applications are subject to Court approval.

30.    **Payment of Fee and Expense Award.**  Upon the Court's approval of a Fee and Expense Award, Interim Lead Counsel, on behalf of all Plaintiffs' Counsel, may withdraw the awarded attorney's fees and expenses within eleven (11) Business Days after the Court enters the Final Approval Order.  The Settling Defendants shall take no position with respect to Interim Lead Counsel's motion for attorneys' fees and expenses.  Any Plaintiffs' Counsel seeking to draw down their share of a Fee and Expense Award prior to the occurrence of the Effective Date shall unconditionally guarantee the repayment of the amount drawn down.  In the event that the Effective Date does not occur or this Agreement is terminated or cancelled, or otherwise fails to become effective for any reason, including, without limitation, in the event that any of the Settling Parties exercise their respective rights in ¶¶ 36 to 39, then within ten (10) Business Days after such event, Plaintiffs' Counsel shall refund to the Settlement Fund any portion of any Fee and Expense Award that was withdrawn plus interest thereon at the same rate at which interest is accruing for the Settlement Fund, and the Escrow Agent shall refund the Settlement Fund to the Settling Defendants in accordance with ¶¶ 11 and 38, including any Fee and Expense Award refunded to the Settlement Fund by Plaintiffs' Counsel pursuant to this ¶ 30.  In the event the Settlement is terminated, Plaintiffs' Counsel, including each of the law firms' individual partners and/or principals, shall be jointly and severally liable for the return to Settling Defendants any sums paid as the Fee and Expense Award. For the avoidance of doubt, Plaintiffs' Counsel need not refund any proper, already disbursed Notice Costs and Taxes and Tax Expenses (up to a maximum of $750,000).

31.    **Award of Fees and Expenses Not Part of Settlement.**  The procedures for, and the allowance or disallowance by the Court of, any Fee and Expense Application are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding relating to any Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment and the Settlement of the Action as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award or the Distribution Plan shall constitute grounds for termination of this Agreement.

32.    **No Liability for Fees and Expenses of Plaintiffs' Counsel.**  The Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Plaintiffs' Counsel for fees and expenses and/or to any other Person who may assert some claim thereto, or any Fee and Expense Award that the Court may make in the Action.

## G.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL OR TERMINATION

33.    **Effective Date.**  The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

33.1.   The Settlement Agreement has been fully executed by the Settling Parties through their counsel;

33.2.   The Court has certified a Settlement Class and entered the Preliminary Approval Order, substantially in the form to be agreed to by the Settling Parties, approving this Agreement and approving the program and form for the Notice;

33.3.    Class Notice has been issued as ordered by the Court;

33.4.    The Settling Defendants no longer have any right under the terms of this Agreement to terminate the Agreement;

33.5.    The Court has entered the Final Approval Order finally approving the Settlement Agreement in all respects as required by Rule 23(e) of the Federal Rules of Civil Procedure; however, this required approval does not include the approval of the Fee and Expense Application and the Distribution Plan and the Judgment;

33.6.    The Court has entered the Judgment of dismissal with prejudice as to the Releasees with respect to Plaintiffs and Settling Class Members, and the Judgment has become Final; and

33.7.    Either (i) no appeal of the Final Approval Order has been filed and the time for commencing an appeal has expired, or (ii) in the event an appeal of the Final Approval Order is filed, either (a) such appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the Final Approval Order has been affirmed on appeal in all material respects and the prescribed time, if any, for commencing any further appeal has expired.

34.    **Occurrence of Effective Date.**  Upon the occurrence of all of the events referenced in ¶ 33, above, any and all remaining interest or right of the Settling Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Net Settlement Fund shall be transferred from the Escrow Agent to the Claims Administrator at the written direction of Interim Lead Counsel.

35.    **Failure of Effective Date to Occur.**  If all of the conditions specified in ¶ 33, above, are not satisfied, then this Agreement shall be terminated, subject to and in accordance with ¶ 38, unless the Settling Parties mutually agree in writing to continue with it for a specified period of time.

36.    **Failure to Enter Proposed Preliminary Approval Order, Final Approval Order or Judgment.**  If the Court does not enter in any material respect the Preliminary Approval Order, the Final Approval Order, or the Judgment, or if the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement incorporated therein shall be terminated, unless all of the Settling Parties, in their sole discretion within thirty (30) days from the date of issuance of such ruling, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order, the Final Approval Order or the Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of Plaintiffs and the Class by Interim Lead Counsel.  No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided for and agreed to herein, provided, however, that no order of the Court concerning any Fee and Expense Application or the Distribution Plan, or any modification or reversal on appeal of such an order, shall constitute grounds for termination of this Agreement by any Settling Party.  Without limiting the foregoing, each Settling Defendant shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the

-24-

Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Action as to the Settling Defendants and a full release of the Releasees as set forth in ¶¶ 14 and 15 of this Agreement

37. **Termination by Plaintiffs.** Interim Lead Counsel, acting on behalf of the Plaintiffs, shall have the right, but not the obligation, in their sole discretion, to terminate this Agreement if both of the Settling Defendants fail to comply with ¶ 9 and both of the Settling Defendants fail to cure such non-compliance within ten (10) business days after Interim Lead Counsel provides written notice to the Settling Defendants' counsel of such non-compliance. If only one of the Settling Defendants fails to comply with ¶ 9, Interim Lead Counsel shall have the right, but not the obligation, to terminate this Agreement solely as to the non-complying Settling Defendant, if that Settling Defendant fails to cure such non-compliance within ten (10) business days after Interim Lead Counsel provides written notice to that Settling Defendants' counsel of such non-compliance. Any termination as to only one Settling Defendant shall not have any effect on this Agreement as to the other Settling Defendant. Any election to terminate this Agreement pursuant to this paragraph must be made by Interim Lead Counsel in writing to the Settling Defendants' counsel within fifteen (15) business days after one or both of the Settling Defendants fail to comply with ¶ 9 and the time to cure such non-compliance has passed.

38. **Effect of Termination.** Unless otherwise ordered by the Court, in the event that the Effective Date does not occur, or this Agreement is terminated or cancelled, or otherwise fails to become effective for any reason, including, without limitation, in the event that any of the Settling Parties exercise their respective rights in ¶¶ 36 to 37, then:

38.1. Within ten (10) Business Days after written notification of such event is sent by counsel for the Settling Defendants or Interim Lead Counsel to the Escrow Agent, the Settlement Fund, including the Settlement Amount and all interest earned in the Settlement Fund, but excluding any reasonable Notice Costs and Taxes and Tax Expenses (up to a maximum of $750,000), will be refunded, reimbursed, and repaid by the Escrow Agent to the Settling Defendants in the same proportion as their respective shares of the Settlement Amount.

38.2. The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to the Settling Defendants, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

38.3. The Settling Parties shall be restored, to the maximum extent possible, to their respective positions in the Action as of immediately prior to the execution of the Settlement term sheet on October 4, 2018, with all of their respective legal claims and defenses, preserved as they existed on that date, including, without limitation, any challenge or objection to personal jurisdiction;

38.4. Any and all releases shall be of no further force or effect;

38.5. The terms and provisions of this Agreement, with the exception of ¶¶ 11, 30, 38, and 42 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any

acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Action or in any other lawsuit, arbitration or other proceeding for any purpose (other than to enforce the terms remaining in effect); and

       38.6.   Any Judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc.*

       39.   **Supplemental Agreements.**  In addition to the provisions contained in ¶ 36, each Settling Defendant shall have the right, but not the obligation, in its sole discretion, to terminate this Agreement pursuant to the Supplemental Agreement as to Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., and the Supplemental Agreement as to Defendants Citigroup Inc. and Citibank, N.A. (the "Supplemental Agreements") to be executed by the Settling Parties contemporaneously with the execution of this Agreement. The Supplemental Agreements shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Settling Parties shall seek to file it only under seal.  The Settling Defendants have also entered into an Allocation Agreement regarding the share of the Settlement Amount for which each Settling Defendant shall be responsible in accordance with ¶ 9.  That agreement also shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Settling Defendants shall seek to file it only under seal.

       40.   **Impact of Any Other Settlement.**  If any Other Settlement is reached prior to the Settlement Hearing, the "Settlement Class," definition, as well as the terms contained within the "Cooperation," "Release and Covenant Not to Sue," and "Termination" provisions herein (as described in ¶¶ 14, 23-28, and 36-39) shall be no less favorable to Settling Defendants than the corresponding term or provision applicable to any Other Settlement.  If Settling Defendants believe one or more terms or provisions referenced above is less favorable than a corresponding term or provision in any Other Settlement, Settling Defendants will provide written notice of such belief to Interim Lead Counsel as prescribed in this Settlement Agreement within ten (10) Business Days of the filing of such Other Settlement with the Court. Following receipt of the written notice, Settling Defendants and Interim Lead Counsel will confer as to whether the relevant term or provision in this Settlement Agreement is less favorable as compared to the Other Settlement. If there is agreement between Settling Defendants and Interim Lead Counsel that the provision at issue is less favorable, Settling Defendants and Interim Lead Counsel will execute an amendment to the Settlement Agreement, adopting and incorporating the provision as drafted in the Other Settlement into the Settlement Agreement, and will submit the amendment to the Court for its approval. If Settling Defendants and Interim Lead Counsel are unable to reach an agreement on the relevant provision, Settling Defendants or Interim Lead Counsel may move the Court to resolve the dispute.

## H.   NO ADMISSION OF LIABILITY

       41.   **Final and Complete Resolution.**  The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action, and it shall not be deemed or construed as an admission by any Settling Party of anything, including, without limitation, the merit or lack of merit of any claim or defense, or an admission of liability by any Person, including, without limitation, Releasees.

       42.   **Use of Agreement as Evidence.**  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the

Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, of any allegation made in the Action, or of any wrongdoing or liability of Releasees; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of the Releasees in any civil, criminal, or administrative proceeding before any court, administrative agency, arbitration panel or other tribunal.  Nothing in this paragraph or Agreement shall exclude Plaintiffs from using any documents and testimony obtained pursuant to Section E herein as necessary to continue to prosecute the Action against Defendants other than Releasees.  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file this Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in support of a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or any similar defense or counterclaim.  The limitations described in this ¶ 42 apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order or the Judgment.

## I.   MISCELLANEOUS PROVISIONS

43.   **The Settling Defendants' Right to Communicate.**  Interim Lead Counsel acknowledges and agrees that the Settling Defendants have the right to communicate orally and in writing with, and to respond to inquiries from, Class Members, including (without limitation): (a) communications between Class Members and representatives of the Settling Defendants whose responsibilities include client relations to the extent such communications are initiated by Class Members; (b) communications between Class Members who are ongoing clients of the Settling Defendants or who seek to become clients of the Settling Defendants; (c) communications that might be necessary to conduct the Settling Defendants' business; (d) disclosures the Settling Defendants deem necessary to comply with any relevant laws, regulations (including without limitation banking and securities regulations), subpoenas, or other form of judicial process; and (e) disclosures of the fact or amount of the Settlement to the Settling Defendants' external auditors.  However, the Settling Defendants shall not communicate with a material and/or substantial portion of Class Members about the Settlement without prior approval of the contents and subject of the communication from the Court or Interim Lead Counsel.

44.   **Voluntary Settlement.**  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

45.   **Reservation of Rights.**  This Settlement Agreement does not settle or compromise any claims by Plaintiffs or any Class Member asserted against any Defendant or any potential defendant other than Settling Defendants and the Releasees. The rights of any Class Member against any other Person other than Settling Defendants and the Releasees are specifically reserved by Plaintiffs and the Class Members.

46.   **Consent to Jurisdiction.**  The Settling Defendants, Releasees, each Plaintiff and each Settling Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding, or dispute arising out of or relating to this

Agreement or the applicability of this Agreement.  For the purpose of such suit, action, or proceeding, to the fullest extent permitted by law, the Settling Parties, Releasees and the Settling Class Members irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is, in any way, an improper venue or an inconvenient forum or that the Court lacked power to approve this Settlement Agreement or enter any of the orders contemplated hereby.

47.     **Resolution of Disputes; Retention of Exclusive Jurisdiction.**  Except as set forth in ¶ 23.5, any disputes between or among the Settling Defendants and any Plaintiff or Class Member (or their counsel) concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Agreement.

48.     **Binding Effect.**  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Defendants, Releasees, Plaintiffs and Settling Class Members hereto.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs and Plaintiffs' Counsel shall be binding upon all Settling Class Members. The Settling Parties enter into this Settlement Agreement with full knowledge that adverse or favorable court decisions and/or other events, including those pertaining to any of the Plaintiffs' capacity to serve as litigants or class representatives, may take place in the future that might affect the positions of either or both parties, including prior to Final Approval of the Settlement.  The Settling Parties intend to be bound by this Settlement Agreement notwithstanding the possibility or occurrence of any such future events or changes in position.

49.     **Authorization to Enter Settlement Agreement.**  The undersigned representatives of the Settling Defendants represent that they are fully authorized to enter into and to execute this Agreement on behalf of the Settling Defendants.  Interim Lead Counsel, on behalf of Plaintiffs, represent that they are, subject to Court approval, authorized to take all action required or permitted to be taken by or on behalf of the Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Class that they deem appropriate.

50.     **Notices.**  All notices and other communications required to be given hereunder which may be given pursuant to the provisions hereof, other than the Notice (the form and delivery of which shall be determined by the Court), shall be in writing.  Each such notice shall be given either by (a) e-mail; (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; (d) FedEx or similar overnight courier; or (e) facsimile and first class mail, postage pre-paid, and, if directed to any Settling Class Member, shall be addressed to Interim Lead Counsel at their addresses set forth on the signature page hereof; and if directed to the Settling Defendants, shall be addressed to their attorneys at the addresses set forth on the signature pages hereof or such other addresses as Interim Lead Counsel or the Settling Defendants may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

51.     **No Conflict Intended.**  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

52.     **No Party Deemed to Be the Drafter.**  No Settling Party shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of

interpretation or construction that would or might cause any provision to be construed against the drafter.

53.    **Choice of Law.**  This Agreement and the exhibit(s) hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

54.    **Amendment; Waiver.**  This Agreement shall not be modified in any respect except by a writing executed by all the Settling Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

55.    **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts.  Facsimile and scanned/PDF signatures shall be considered valid signatures. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

56.    **Integrated Agreement.**  This Agreement, including any exhibits hereto and agreements referenced herein, contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Settling Parties and is not subject to any condition not provided for or referenced herein.  This Agreement supersedes all prior or contemporaneous discussions, agreements, and understandings among the Settling Parties with respect hereto.  This Agreement may not be modified in any respect except by a writing that is executed by all the Settling Parties hereto.

57.    **Confidentiality:  Plaintiffs,** Plaintiffs' Counsel, and the Settling Defendants agree to keep private and confidential the terms of this Agreement, except for disclosure at the Court's direction or disclosure *in camera* to the Court, until this document is filed with the Court, provided, however, that nothing in this Section shall prevent the Settling Defendants from making any disclosures they deem necessary to comply with any relevant laws, regulations (including without limitation banking and securities regulations), subpoena or other form of judicial process, or from disclosing the fact or amount of the Settlement to the Settling Defendants' external auditors. Nothing in this provision shall preclude Settling Defendants from disclosing, without notice to Interim Lead Counsel, the fact, amount or terms of the Settlement as a result of a good faith determination that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements, or other legal or regulatory requirements or from disclosing the fact, amount or terms of the Settlement to their regulators, insurers or external auditors.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date set forth below.

Dated: November 21, 2018


### On Behalf of Plaintiffs individually and all Class Members:

Vincent Briganti
Geoffrey M. Horn
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
ghorn@lowey.com

Christopher Lovell
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, New York 10006
Telephone: (212) 608-1900
clovell@lshllp.com


### On behalf of Citigroup Inc., and Citibank, N.A.

Ashley E. Bass
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001

Andrew A. Ruffino
COVINGTON & BURLING LLP
620 8th Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

### On behalf of JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.:

Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2502
pgluckow@stblaw.com

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date set forth below.

Dated: November 21, 2018

### On Behalf of Plaintiffs individually and all Class Members:

Vincent Briganti
Geoffrey M. Horn
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
ghorn@lowey.com

Christopher Lovell
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, New York 10006
Telephone: (212) 608-1900
clovell@lshllp.com

### On behalf of Citigroup Inc., and Citibank, N.A.

Ashley E. Bass
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001

Andrew A. Ruffino
COVINGTON & BURLING LLP
620 8th Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

### On behalf of JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.:

Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2502
pgluckow@stblaw.com

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date set forth below.

Dated: November 21, 2018

### *On Behalf of Plaintiffs individually and all Class Members:*

| | |
|---|---|
| Vincent Briganti | Christopher Lovell |
| Geoffrey M. Horn | LOVELL STEWART HALEBIAN |
| LOWEY DANNENBERG, P.C. | JACOBSON LLP |
| 44 South Broadway, Suite 1100 | 61 Broadway, Suite 501 |
| White Plains, New York 10601 | New York, New York 10006 |
| Telephone: (914) 997-0500 | Telephone: (212) 608-1900 |
| vbriganti@lowey.com | clovell@lshllp.com |
| ghorn@lowey.com | |

*On behalf of Citigroup Inc., and Citibank, N.A.*

*On behalf of JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.:*

Paul C. Gluckow

Ashley E. Bass
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001

Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2502
pgluckow@stblaw.com

Andrew A. Ruffino
COVINGTON & BURLING LLP
620 8th Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated, | Docket No. 13-cv-02811 (PKC) |

                        Plaintiffs,

*- against -*

**EXHIBIT A**

BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,

                        Defendants.

## [PROPOSED] ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT WITH JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., CITIGROUP INC., AND CITIBANK, N.A., SCHEDULING HEARING FOR FINAL APPROVAL THEREOF, AND APPROVING THE PROPOSED FORM AND PROGRAM OF NOTICE TO THE CLASS

WHEREAS, the Plaintiffs,[1] Citigroup Inc. and Citibank, N.A. (collectively "Citi") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan" and, collectively with Citi, the "Settling Defendants") entered into a Settlement Agreement on November 21, 2018 (the "Settlement");

WHEREAS, Plaintiffs having moved for Preliminary Approval of the Settlement; and

WHEREAS, the Court having read and considered the Settlement and accompanying documents; and the Plaintiffs and Settling Defendants (collectively, the "Settling Parties") having consented to the entry of this Order,

NOW, THEREFORE, this ___ Day of _____, ____, upon application of the Settling Parties,

**IT IS HEREBY ORDERED** that:

1.      Except for the terms defined herein, the Court adopts and incorporates the definitions in the Settlement for the purposes of this Order.

2.      The Court finds that it has subject matter jurisdiction to approve the Settlement, including all exhibits thereto, under 28 U.S.C. § 1331, and that it has personal jurisdiction over the Settling Parties and all Settlement Class Members for the purpose of approving the Settlement, including all exhibits thereto.

**A.  The Settlement**

3.      The terms of the Settlement are hereby preliminarily approved. The Court preliminarily finds that the Settlement was entered into at arm's-length by experienced counsel and are sufficiently within the range of reasonableness, fairness, and adequacy.

---

[1] The Plaintiffs are Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System ("CalSTRS"), Sonterra Capital Master Fund, Ltd., FrontPoint Partners Trading Fund, L.P., FrontPoint Australian Opportunities Trust, any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC.

4.      For purposes of the Settlement, the Settlement Class shall be preliminarily certified and maintained as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and the Court finds that the applicable provisions of Rule 23 of the Federal Rules of Civil Procedure have been satisfied. The Settlement Class for the Settlement is defined as:

> All Persons who purchased, sold, held, traded or otherwise had any interest in Euribor Products from June 1, 2005 through and including March 31, 2011, who were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted in Euribor Products in the United States or its territories from June 1, 2005 through and including March 31, 2011, including, but not limited to, all Persons who traded CME Euro currency futures contracts, all Persons who transacted in NYSE LIFFE Euribor futures and options from a location within the United States, and all Persons who traded any other Euribor Product from a location within the United States. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a defendant, and the United States Government.

5.      Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for the purposes of this Settlement and the Settlement Class, the Parties agree that Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate or subsidiary thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

6.      The Court hereby appoints Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP as Class Counsel to such Settlement Class for purposes of the Settlement, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

7.      Plaintiffs are hereby appointed as representatives of the Settlement Class for purposes of the Settlement.

8.      The Court appoints Amalgamated Bank to act as Escrow Agent for the Settlement Fund, which shall have such duties and responsibilities in such capacity as set forth in the Settlement Agreement.

9.      All proceedings in the Action as to Settling Defendants, other than such proceedings as may be necessary to implement the proposed Settlement or to effectuate the terms of the Settlement, are hereby stayed and suspended until further order of this Court.

10.     The Court's preliminary certification of the Settlement Class for the Settlement, and appointment of Plaintiffs as Class Representatives for the Settlement, as provided herein is without prejudice to, or waiver of, the rights of any non-settling Defendant to contest any other request by Plaintiffs to certify a class. The Court's findings in this Preliminary Approval Order shall have no effect on the Court's ruling on any motion to certify any class in this litigation, or appoint Class Representatives, and no party may cite or refer to the Court's certification of the Settlement Class for the Settlement as binding or persuasive authority with respect to any motion to certify such class or appoint Class Representatives.

11.     The Court appoints A.B. Data, Ltd. as Settlement Administrator for purposes of the Settlement.

12.     A hearing will be held on [[_____, 2019 at_____[a.m./p.m.] (which date shall be at least 140 days after entry of this Order) in Courtroom 11D of this Courthouse before the undersigned, to consider the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). The foregoing date, time, and place of the Settlement Hearing shall be set forth in the Class Notice, which is ordered herein, but shall be subject to adjournment or change by the Court without further notice to the Settlement Class Members, other than that which may be

3

posted at the Court or on www.EuriborSettlement.com (the "Settlement Website").

13.    The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be consented to by the Settling Parties and without further notice to the Settlement Class.

14.    The Plan of Allocation and Proof of Claim and Release are preliminarily approved as within the range of reasonableness, fairness, and adequacy. The Court also preliminarily finds that notice of the Settlement should be given as provided in this Order.

15.    All Settlement Class Members and their legally authorized representatives, unless and until they have submitted a timely request for exclusion from the Settlement Class (hereinafter, "Request for Exclusion"), are hereby preliminarily enjoined from (i) filing, commencing, prosecuting, intervening in, or participating as a plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims; (ii) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on the Released Claims; (iii) attempting to effect an opt-out of a group, class, or subclass of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on the Released Claims; and (iv) assisting any third party in commencing or maintaining any suit against any Releasee related in any way to any Released Claims.

16.    No later than 30 days after entry of this Order (the "Class Notice Commencement Date"), the Settlement Administrator or other notice agent shall commence mailing of Class Notice and cause copies of the mailed notice, in the form (without material variation) of Exhibit 3 to the Joint Declaration of Vincent Briganti and Christopher Lovell, dated November 21, 2018 ("November 2018 Joint Decl."), to be mailed by United States First-Class Mail, postage prepaid, as

described in the proposed notice program attached to the Affidavit of Linda V. Young, dated November 21, 2018 ("Young Aff."). November 2018 Joint Decl. Ex. 2. The foregoing initial mailings shall be substantially completed no later than 40 days after the Class Notice Commencement Date (the "Initial Mailing Completion Date").

17.     No later than the Class Notice Commencement Date, the Settlement Administrator shall cause to be published a publication notice, without material variation from Exhibit 4 to the November 2018 Joint Decl., as described in the proposed notice program attached as Exhibit A to the Young Aff. November 2018 Joint Decl. Ex. 2.

18.     The Settlement Administrator shall maintain the Settlement Website, www.Euribor Settlement.com, until the termination of the administration of the Settlement. The Settlement Website shall include copies of the Settlement Agreement (including exhibits), this Order, the mailed and publication notices, the motion for preliminary approval and all exhibits attached thereto and shall identify important deadlines and provide answers to frequently asked questions. The Settlement Website may be amended as appropriate during the course of the administration of the Settlement. The Settlement Website, www.EuriborSettlement.com, shall be searchable on the Internet.

19.     The Settlement Administrator shall maintain a toll-free interactive voice response telephone system containing recorded answers to frequently asked questions, along with an option permitting callers to speak to live operators or to leave messages in a voicemail box.

20.     The Court approves, in form and substance, the mailed notice, the publication notice, and the website as described herein. The Class Notice plan specified herein (i) is the best notice practicable; (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and of their right to object to or exclude themselves from the proposed Settlement; (iii) is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice of the Settlement Hearing; and (iv) fully satisfies all applicable

5

requirements of Rule 23 of the Federal Rules of Civil Procedure, Due Process, and any other applicable rules or laws.

21.     No later than 4 days after the Initial Mailing Completion Date, the Settlement Administrator shall serve and file a sworn statement attesting to compliance with the notice provisions in paragraphs 17-20 of this Order.

22.     Any Settlement Class Member and any governmental entity that objects to the fairness, reasonableness, or adequacy of any term or aspect of the Settlement, the application for attorneys' fees and expenses, or the Final Approval Order and Final Judgment, or who otherwise wishes to be heard or intervene in the Action, may appear in person or by his or her attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant. However, except for good cause shown, no person other than Class Counsel, Citi's counsel and JPMorgan's counsel shall be heard and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be considered by the Court unless, no later than thirty-five (35) days prior to the Settlement Hearing), the Settlement Class Member or the governmental entity files with the Court (and serves the same on or before the date of such filing by hand or overnight mail on the Class Counsel and counsel of record for Citi and JPMorgan) a statement of the objection or motion to intervene, as well as the specific legal and factual reasons for each objection or motion to intervene, including all support that the objecting Settlement Class Member or the governmental entity wishes to bring to the Court's attention and all evidence the objecting Settlement Class Member or governmental entity wishes to introduce in support of his, her, or its objection or motion. Such submission must contain: (1) a heading that refers to the Action by case name and case number; (2) a statement of the specific legal and factual basis for each objection or intervention argument; (3) a statement of whether the objecting or intervening person or entity intends to appear at the Settlement Hearing, either in person or through counsel and, if through counsel, a statement

6

identifying that counsel by name, address, and telephone number; (4) a description of any and all evidence the objecting person or entity may offer at the Settlement Hearing, including but not limited to the names, addresses, and expected testimony of any witnesses; all exhibits intended to be introduced at the Settlement Hearing; and documentary proof of the objecting person's membership in the Settlement Class; (5) a description of the Euribor Products transactions entered into by the Settlement Class Member that fall within the Settlement Class definition (including, for each transaction, the identity of the broker, the date of the transaction, the type (including direction) of the transaction, the counterparty (if any), the exchange on which the transaction occurred (if any), any transaction identification numbers, the rate, and the notional amount of the transaction); and (6) a list of other cases in which the objector or intervenor or counsel for the objector or intervenor has appeared either as an objector or counsel for an objector in the last five years.  Persons who have timely submitted a valid Request for Exclusion are not Settling Class Members and are not entitled to object.

23.       Any objection to the Settlement or motion to intervene submitted by a Settlement Class Member pursuant to paragraph 22 of this Order must be signed by the Settlement Class Member (or his, her, or its legally authorized representative), even if the Settlement Class Member is represented by counsel. The right to object to the proposed Settlement or to intervene must be exercised individually by a Settlement Class Member or the Person's attorney, and not as a member of a group, class, or subclass, except that such objections and motions to intervene may be submitted by a Settlement Class Member's legally authorized representative.

24.       Any motion to intervene must comply with the Federal Rules of Civil Procedure and the Local Rules of the Court.

25.       All objectors shall make themselves available to be deposed by any Settling Party in the Southern District of New York or the county of the objector's residence or principal place of

business within seven (7) days of service of the objector's timely written objection.

26.     Any Settlement Class Member or governmental entity that fails to object or move to intervene in the manner described in paragraphs 22-25 of this Order shall be deemed to have waived the right to object (including any right of appeal) or to intervene and shall be forever barred from raising such objection or seeking to intervene in this or any other action or proceeding related to or arising out of the Settlement. Discovery concerning any purported objections to the Settlement and any purported motions to intervene shall be completed no later than five (5) days before the Settlement Hearing. Class Counsel and Settling Defendants' counsel, and any other Persons wishing to oppose timely filed objections in writing may do so not later than five (5) days before the Settlement Hearing.

27.     Any Request for Exclusion from the Settlement by a Settlement Class Member must be sent in writing to the Settlement Administrator at the address in the mailed notice and post marked by no later than thirty-five (35) days before the Settlement Hearing (the "Exclusion Bar Date").   For the avoidance of doubt, any request for exclusion applies to the entirety of the Settlement (that is, as to both Settling Defendants).  Any Request for Exclusion must contain the following information:

(a)  the name, address, and telephone number of the Settlement Class Member;

(b)  a list of all trade names or business names that the Settlement Class Member requests to be excluded;

(c)  the name of the Action ("*Sullivan et al. v. Barclays plc et al.*, No. 13-cv-02811(PKC) (S.D.N.Y.).");

(d)  a statement certifying such person is a Settlement Class Member;

(e)  a description of the Euribor Products transactions entered into by the Settlement Class Member that fall within the Settlement Class definition (including, for each transaction, the identity of the broker, the date of the transaction, the type (including direction) of the transaction, the counterparty (if any), the exchange on which the transaction occurred (if any), any transaction identification numbers, the rate, and the notional amount of the transaction); and

(f)  a statement that "I/we hereby request that I/we be excluded from the Settlement Class in *Sullivan et al. v. Barclays plc et al.*, No. 13-cv-02811(PKC) (S.D.N.Y.)."

28.     Any Request for Exclusion from the Settlement submitted by a Settlement Class Member pursuant to paragraph 27 of this Order must be signed by the Settlement Class Member (or his, her, or its legally authorized representative) and notarized, even if the Settlement Class Member is represented by counsel. The right to be excluded from the proposed Settlement must be exercised individually by a Settlement Class Member or his, her, or its attorney, and not as a member of a group, class, or subclass, except that a Request for Exclusion may be submitted by a Settlement Class Member's legally authorized representative. A Request for Exclusion shall not be effective unless it provides all of the required information listed in paragraph 27 of this Order and is post marked by the Exclusion Bar Date, as set forth in the Class Notice.

29.     Any Settlement Class Member who does not submit a timely and valid written Request for Exclusion from the Settlement Class shall be bound by all proceedings, orders, and judgments in the Action, even if the Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Released Claims, and even if such Settlement Class Member never received actual notice of the Action or the proposed Settlement.

30.     The Settlement Administrator shall promptly log each Request for Exclusion that it receives and provide copies of the log to Class Counsel and Settling Defendants' counsel as requested.

31.     The Settlement Administrator shall furnish Class Counsel and counsel for Citi and JPMorgan with copies of any and all objections, motions to intervene, notices of intention to appear, and other communications that come into its possession (except as otherwise expressly provided in the Settlement) within two (2) business day of receipt thereof.

32.     At least twenty-one (21) days before the Settlement Hearing, the Settlement Administrator shall prepare an opt-out list identifying all Persons, if any, who submitted a timely and valid Request for Exclusion from the Settlement Class, as provided in the Settlement Agreement, and an affidavit attesting to the accuracy of the opt-out list. The Settlement Administrator shall provide counsel for Citi and JPMorgan and Class Counsel with copies of any Requests for Exclusion (including all documents submitted with such requests) and any written revocations of Requests for Exclusion as soon as possible after receipt by the Settlement Administrator and, in any event, within two (2) business day after receipt by the Settlement Administrator and, in no event, later than 30 (30) days before the Settlement Hearing. Class Counsel shall file the opt-out list and affidavit of the Settlement Administrator attesting to the accuracy of such list with the Court.

33.     All Proof of Claim and Release forms shall be submitted by Settlement Class Members to the Settlement Administrator as directed in the mailed notice and must be post marked no later than seventy-five (75) days after the Settlement Hearing.

34.     To effectuate the Settlement and the Class Notice plan, the Settlement Administrator shall be responsible for: (a) establishing a P.O. Box (to be identified in the mailed notice and the publication notice), a toll-free interactive voice response telephone system and call center, and the Settlement Website; (b) effectuating the Class Notice plan, including by running potential Settlement Class Members' addresses through the National Change of Address Database to obtain the most current address for each person; (c) accepting and maintaining documents sent from Settlement Class Members, including Proof of Claim and Release forms, and other documents relating to the Settlement and its administration; (d) administering claims for allocation of funds among Settlement Class Members; (e) determining the timeliness of each Proof of Claim and Release submitted by Settlement Class Members, including the adequacy of the supporting documents submitted by Settlement Class Members; (f) corresponding with Settlement Class Members regarding any

deficiencies in their Proof of Claim and Release forms and regarding the final value of any allowed claim; (g) calculating each Authorized Claimant's allowed claim pursuant to the plan of allocation; (h) determining the timeliness and validity of all Requests for Exclusion received from Settlement Class Members; (i) preparing the opt-out list and an affidavit attaching and attesting to the accuracy of such list, and providing same to Class Counsel and counsel for Citi and JPMorgan; and (j) providing Class Counsel and counsel for Citi and JPMorgan with copies of any Requests for Exclusion (including all documents submitted with such requests).

35.     The Settlement Administrator shall maintain a copy of all paper Settlement-related communications for a period of one (1) year after distribution of the Net Settlement Funds and shall maintain a copy of all electronic Settlement-related communications for a period of three (3) years after distribution of the Net Settlement Funds, after which time all such materials shall be destroyed, absent further direction from the Settling Parties or the Court.

36.     The Court preliminarily approves the establishment of the Euribor Citi JPMorgan Settlement Account as a qualified settlement fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

37.     Neither the Settlement Agreement (nor any of its exhibits), whether or not the Effective Date occurs, nor any negotiations, documents, and discussions associated with them, nor the Final Approval Order and Final Judgment is or shall be deemed or construed to be an admission, adjudication, or evidence of (a) any violation of any statute or law or of any liability or wrongdoing by Citi, JPMorgan, or any Releasees; (b) the truth of any of the claims or allegations alleged in the Action; (c) the incurrence of any damage, loss, or injury by any Person; (d) the existence or amount of any artificiality; or (e) the propriety of certification of a class other than solely for purposes of the Settlement. Further, neither the Settlement Agreement (including its exhibits), whether or not the Effective Date occurs, nor any negotiations, documents, and

discussions associated with them, nor the Final Approval Order and Final Judgment, may be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any nature, whether by the Settlement Class or any Person, except if warranted by existing law in connection with a dispute under the Settlement Agreement or an action in which the Settlement Agreement is asserted as a defense. All rights of Citi, JPMorgan, and Plaintiffs are reserved and retained if the Effective Date does not occur in accordance with the terms of the Settlement Agreement.

38.     Class Counsel shall file their motions for payment of attorneys' fees and reimbursement of expenses, incentive awards, and for final approval of the Settlement at least fifty-six (56) days prior to the Settlement Hearing.

39.     If the Settlement is approved by the Court following the Settlement Hearing, a Final Approval Order and Final Judgment will be entered as described in the Settlement Agreement.

40.     The Court may, for good cause, extend any of the deadlines set forth in this Order without notice to Settlement Class Members, other than that which may be posted at the Court or on the Settlement Website, www.EuriborSettlement.com.

41.     In the event that the Settlement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith, including but not limited to all negotiations, documents, and discussions associated with them, and any Requests for Exclusion from the Settlement previously submitted and deemed to be timely, shall be null and void and be of no force and effect, except as expressly provided to the contrary in the Settlement, and shall be without prejudice to the *status quo ante* rights of the Settling Parties, and the Settlement Amount, and all interest earned in the Settlement Fund on that Settlement Amount, shall be refunded, reimbursed, and repaid to the Settling Defendants to the extent provided in the Settlement Agreement.

42.     If the Settlement is terminated or is ultimately not approved, the Court will modify

any existing scheduling order to ensure that the Settling Parties will have sufficient time to prepare for the resumption of litigation.

43.     Unless otherwise specified, the word "days," as used herein, means calendar days. In the event that any date or deadline set forth herein falls on a weekend or federal or state legal holiday, such date or deadline shall be deemed moved to the first business day thereafter.

**IT IS SO ORDERED.**

Signed this_____day of_____, _____, at the Courthouse for the United States District Court for the Southern District of New York.

_____
Honorable P. Kevin Castel
United States District Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>    *- against -*<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br><br>       Defendants. | Docket No. 13-cv-02811 (PKC)<br><br><br><br><br><br>**EXHIBIT B** |

## [PROPOSED]
## FINAL APPROVAL ORDER OF SETTLEMENT WITH JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., CITIGROUP INC., AND CITIBANK, N.A.

This matter came for a duly-noticed hearing on _____, 2019 (the "Settlement Hearing"), upon the Plaintiffs'[1] Motion for Final Approval of Settlement with Citigroup Inc. and Citibank, N.A. (collectively "Citi") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan" and, collectively with Citi, the "Settling Defendants") in the action captioned *Sullivan v. Barclays plc et al.*, No. 13-cv-2811 (PKC) (S.D.N.Y.) (the "Action"), which was consented to by the Settling Defendants (together with Plaintiffs, the "Parties"). Due and adequate notice of the Settlement Agreement between Plaintiffs and Settling Defendants dated, November 21, 2018 (the "Settlement Agreement") having been given to the Settlement Class Members, the Settlement Hearing having been held and the Court having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing therefor,

### IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      This Final Approval Order hereby incorporates by reference the definitions in the Settlement Agreement and all terms used herein. Except as otherwise expressly defined herein, the terms used shall have the same meanings as set forth in the Settlement Agreement.

2.      For purposes only of the settlement of the Released Claims[2] set forth in the

---

[1] The Plaintiffs are Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System ("CalSTRS"), Sonterra Capital Master Fund, Ltd., FrontPoint Partners Trading Fund, L.P., FrontPoint Australian Opportunities Trust, any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC.

[2] "Released Claims" means any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action or which could have been alleged in the Action against the Released Parties concerning any Euribor Products or any similar financial instruments priced, benchmarked, or settled to Euribor purchased, sold, held, traded, and/or transacted by the Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of Euribor or Euribor Products under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. or any other statute, regulation, or common law, or any purported

Settlement Agreement (the "Settlement"), the Court hereby finally certifies the following Settlement

Class, and further adopts the definition of "Euribor Products" from the Settlement[3]:

> All Persons who purchased, sold, held, traded or otherwise had any interest in Euribor Products from June 1, 2005 through and including March 31, 2011, who were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted in Euribor Products in the United States or its territories from June 1, 2005 through and including March 31, 2011, including, but not limited to, all Persons who traded CME Euro currency futures contracts, all Persons who transacted in NYSE LIFFE Euribor futures and options from a location within the United States, and all Persons who traded any other Euribor Product from a location within the United States. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a defendant, and the United States Government

3.      Based on the record, the Court reconfirms that the applicable provisions of Rule 23

of the Federal Rules of Civil Procedure have been satisfied for purposes only of the Settlement.

4.      In so holding, the Court finds that, solely for purposes of settlement, the Settlement

Class meets all of the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3). The Court hereby

finds, in the specific context of this Settlement, that: (i) the Settlement Class is so numerous that

joinder of all members of the Settlement Class is impracticable, FED. R. CIV. P. 23(a)(1); (ii) common

questions of law and fact exist with regard to the Defendants' alleged manipulation of Euribor, and

---

conspiracy, collusion, racketeering activity, or other improper conduct relating to Euribor (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act 15 U.S.C. § 1 et seq., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law). The following claims shall not be released by this Settlement: (i) any claims against former employees of the Settling Defendants arising solely from those former employees' conduct that occurred while not employed by the Settling Defendants; (ii) any claims against the named Defendants in this Action other than the Settling Defendants; (iii) any claims against inter-dealer brokers or their employees or agents when and to the extent they were engaged as employees or agents of the other defendants or inter-broker dealers; or (iv) any claims against any Defendant not affiliated with the Settling Defendants who may be subsequently added in this Action. For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States.

3 "Euribor Products" means any and all interest rate swaps, forward rate agreements, futures, options, structured products, and any other instrument or transaction related in any way to Euribor, including but not limited to, NYSE LIFFE Euribor futures contracts and options, CME Euro currency futures contracts and options, Euro currency forward agreements, Euribor-based swaps, Euribor-based forward rate agreements and/or any other financial instruments that reference Euribor.

the prices of Euribor Products, FED. R. CIV. P. 23(a)(2); (iii) the Plaintiffs' claims in this litigation are typical of those of the members of the Settlement Class, FED. R. CIV. P. 23(a)(3); and (iv) the Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent members of the Settlement Class and Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP ("Class Counsel") has adequately represented the interests of the Settlement Class, FED. R. CIV. P. 23(a)(4). The Court also finds that common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. FED. R. CIV. P. 23(b)(3).

5.     This Court has personal jurisdiction over the Plaintiffs, Citi, JPMorgan, and all members of the Settlement Class and subject matter jurisdiction over the Action to approve the Settlement Agreement and all exhibits attached thereto.

6.     The Court finds that the mailed notice, publication notice, website, and class notice plan implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, of their right to exclude themselves from or object to the proposed Settlement, of their right to appear at the Settlement Hearing, of the Plan of Distribution, and of Class Counsel's application for the Attorneys' Fees Award and any Incentive Award, and for reimbursement of expenses associated with the Action; (c) provided a full and fair opportunity to all members of the Settlement Class to be heard with respect to the foregoing matters; and (d) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process, and any other applicable rules or law.  Based upon Citi's and JPMorgan's submissions to the Court dated _____, 2019 and _____, 2019, respectively, the Court further finds that the Settling Defendants have complied with the obligations imposed on them under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

7.     The Court finds that [____] members of the Settlement Class have validly requested to be excluded from the Settlement Class.  Those excluded members of the Settlement Class are identified at ECF No.____.

8.     The Court finds that [____] objections to the proposed Settlement have been submitted.  Notwithstanding the [lack of] objections, the Court has independently reviewed and considered all relevant factors and has conducted an independent examination into the propriety of the proposed Settlement.

9.     It is hereby determined that all Settling Class Members are bound by the Settlement Agreement and this Final Approval Order, regardless of whether such member of the Settlement Class executes and delivers a Proof of Claim and Release, and all of their Released Claims against the Releasees,[4] as provided under the Settlement Agreement, are hereby dismissed with prejudice and released.

10.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally approves the Settlement, as set forth in the Settlement Agreement, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of the Settlement Class, including the Plaintiffs.  In reaching this conclusion, the Court considered the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Parties, with the assistance of skilled mediator David Geronemus,

---

[4] "Releasees" means each and every Settling Defendant, their predecessors, successors and assigns, each of their respective past, present, and future direct and indirect parents, subsidiaries, affiliates, and joint ventures, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of the Settling Defendants), shareholders (in their capacity as shareholders of the Settling Defendants), attorneys, insurers or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasee. For the avoidance of doubt, "Releasees" shall not include any named Defendants other that the Settling Defendants.

Esq. and that Class Counsel and the Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Settlement Agreement.  Accordingly, the Settlement embodied in the Settlement Agreement is hereby approved in all respects.  The Parties are hereby directed to carry out the Settlement Agreement in accordance with all of its terms and provisions, including the termination provisions.

11.    Notwithstanding the entry of this Final Approval Order, if the Settlement Agreement is validly terminated by the Plaintiffs or Settling Defendants, is disapproved in whole or in part by the Court, any appellate court, or any other court of review, or the Effective Date fails to occur, then the provisions of this Final Approval Order dismissing the Plaintiffs' claims shall be null and void with respect to such Settlement; the Plaintiffs' claims shall be reinstated; the Settling Defendant(s)' defenses shall be reinstated; the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, including but not limited to any requests for exclusion from the Settlement previously submitted and deemed to be valid, shall be vacated and be of no force and effect; the Settlement Agreement, including its exhibits, and any and all negotiations, documents, and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party, and of no force or effect; and the Parties shall be returned to their respective positions before the Settlement Agreement was signed. Notwithstanding the language in this Section, any provision(s) in the Settlement Agreement that the Parties have agreed shall survive termination shall continue to have the same force and effect intended by the Parties.  In the event the Settlement is terminated by only one Settling Defendant, the above described events shall apply to that Settling Defendant, but not the other Settling Defendant.

12.    The Settlement Fund defined in the Settlement Agreement ("Settlement Fund") has been established as a trust and shall be established as a fiduciary account (the "Settlement Fiduciary

Account"). The Court further approves the establishment of the Settlement Fiduciary Account under the Settlement Agreement as a qualified settlement fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

13.     Without affecting the finality of the Final Approval Order for purposes of appeal, the Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and the Settlement contemplated thereby and over the enforcement of this Final Approval Order. The Court also retains exclusive jurisdiction to resolve any disputes arising out of or relating to the Settlement Agreement, the Settlement, or the Settlement Fund (except for such disputes and controversies as are subject to Paragraph 23.5 of the Settlement Agreement, which disputes and controversies shall be governed by the terms of such section) to consider or approve administration costs and fees, including but not limited to fees and expenses incurred to administer the Settlement after the entry of the Final Approval Order, and to consider or approve the amounts of distributions to Authorized Claimants. In addition, without affecting the finality of this Final Approval Order, the Plaintiffs, Citi, JPMorgan, and the Settling Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Final Approval Order or the Settlement Agreement. Any disputes involving the Plaintiffs, Citi, JPMorgan, or Settling Class Members concerning the implementation of the Settlement Agreement shall be submitted to the Court.

14.     Each Settling Class Member must execute a release and covenant not to sue in conformity with the Settlement Agreement, as incorporated into the Proof of Claim and Release, to receive the Settling Class Member's share(s), if any, of the Net Settlement Fund defined in the Settlement Agreement. The Court hereby confirms the appointment of A.B. Data, Ltd. as Claims Administrator, and directs that the Claims Administrator shall ensure that each Proof of Claim and

Release provided to Settlement Class Members contains a copy of such release and covenant not to sue. However, each Settling Class Member's claims shall be released pursuant to Paragraphs 14-15 of the Settlement Agreement, regardless of whether the Settling Class Member executes a release and covenant not to sue pursuant to this Paragraph 14.

    15.    The Court hereby approves the Releasors'[5] releases of claims[6] as set forth in this Final Approval Order as of the Effective Date.

---

[5] "Releasors" means each and every Plaintiffs and each and every Settling Class Member on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacities as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacities as such. Notwithstanding that the United States Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasor includes any Settling Class Member as to which the government entity has the legal right to release such claims. As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasor. For the avoidance of doubt, the "Releasors" include all Persons entitled to bring Released Claims on behalf of any Settling Class Members.

[6] Upon the Effective Date, and in exchange for the receipt of the Settlement Amount provided for herein, the receipt and sufficiency of which is hereby acknowledged, the Releasors, and any other Person claiming against the Settlement Fund (now or in the future) through or on behalf of any Releasor, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Releasees from any and all Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting any such Released Claim in any lawsuit, arbitration or other proceeding against any Releasee in any court or venue in any jurisdiction worldwide. Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless of whether any such Releasor ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release, any distribution from the Settlement Fund or Net Settlement Fund. The releases set forth herein are given pursuant to New York law, including N.Y. General Obligations Law § 15-108 which bars claims for contribution by joint tortfeasors and other similar claims, and are to be construed under New York law without regard to its conflict of law principles. This Agreement is expressly intended to absolve Releasees against any claims for contribution, indemnification, or similar claims from other Defendants in the Action or any defendant who may be subsequently added in this Action, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York (including, without limitation, N.Y. General Obligations Law § 15-108) or any other jurisdiction that might be construed or deemed to apply to any claims for contribution, indemnification or similar claims against any Releasee. Notwithstanding the foregoing, should any court determine that any Defendant is or was legally entitled to any kind of contribution or indemnification from the Settling Defendants arising out of or related to Released Claims, the Releasors agree that any money judgment subsequently obtained by the Releasors against any Defendant shall be reduced to an amount such that, upon paying the entire amount, the Defendant would have no claim for contribution, indemnification or similar claims against the Settling Defendants. Except in the event of termination of this Settlement, the Settling Parties agree not to assert under Rule 11 of the Federal Rules of Civil Procedure, or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis.

Although the release set forth above is not a general release, such release constitutes a waiver of Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR
    DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

16.     The Court declares that the Settlement Agreement and the Final Approval Order shall be binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings against Releasees encompassed by the Released Claims that are maintained by or on behalf of any Releasor, regardless of whether the Releasor previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Released Claims, and even if such Releasor never received actual notice of the Action or this proposed Settlement.

17.     The Court permanently bars and enjoins the Releasors from: (a) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction against Citi, JPMorgan, or any Releasees based on the Released Claims; (b) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settling Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), against Citi, JPMorgan, or any Releasees based on the Released Claims; (c) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) against Citi, JPMorgan, or any

---

EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release set forth above also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state, or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  The Settling Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Agreement, the Settling Parties assume the risk of any mistake of fact or law, and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

Releasees based on the Released Claims; and (d) assisting any third party in commencing or

maintaining any suit against any Releasee related in any way to any Released Claims.

18.     The Court permanently bars and enjoins claims by any Person against Citi, JPMorgan

or any Releasees for all or a portion of any amounts paid or awarded in the Action by way of

settlement, judgment, or otherwise.  To the extent permitted by law, the Court permanently bars and

enjoins claims against Citi, JPMorgan and any Releasees for contribution or indemnification

(however denominated) for all or a portion of any amounts paid or awarded in the Action by way of

settlement, judgment, or otherwise by (a) any of the other Defendants currently named in the

Action; (b) any other Person formerly named as a party in the Action; or (c) any other Person

subsequently added or joined as a party in the Action.  Should any court determine that any

Defendant is or was legally entitled to any kind of set-off, apportionment, contribution, or

indemnification from Citi, JPMorgan or any Releasee arising out of or related to Released Claims,

any money judgment subsequently obtained by the Releasors against any Defendant shall be reduced

to an amount such that, upon paying the entire amount, the Defendant would have no claim for set-

off, apportionment, contribution, indemnification, or similar claims against Citi, JPMorgan or any

Releasee.

19.     Neither the Settlement Agreement (nor its exhibits), whether or not the Effective

Date occurs, nor any negotiations, documents exchanged among counsel for the Plaintiffs and the

Settling Defendants in connection with settlement discussions, and discussions associated with

them, nor the Final Approval Order and Judgment are or may be deemed to be or may be used as an

admission of, or evidence of: (a) the validity of any Released Claims, of any allegation made in the

Action, or of any wrongdoing or liability of Releasees; (b) any liability, fault or omission of the

Releasees in any civil, criminal, or administrative proceeding before any court, administrative agency,

arbitration panel or other tribunal; (c) the incurrence of any damage, loss, or injury by any Person;

(d) the existence or amount of any artificiality; or (e) the propriety of certification of a class other than solely for purposes of the Settlement. Further, neither the Settlement Agreement (nor its exhibits), whether or not the Effective Date occurs, nor any negotiations, documents exchanged among counsel for the Plaintiffs and the Settling Defendants in connection with settlement discussions, and discussions associated with them, nor the Final Approval Order and Judgment, nor any act performed or document executed pursuant to or in furtherance of the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file the Settlement Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in support of a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or any similar defense or counterclaim. Plaintiffs' Counsel may use any and all of the information and documents obtained from the Settling Defendants only for the purpose of the Action against the non-settling defendants, but not for the institution or prosecution of any other action or proceeding against any Releasee or for any other purpose whatsoever.  Plaintiff and Settling Defendants, without the need for approval from the Court, may adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits thereto as (i) shall be consistent in all material respects with the Final Approval Order; and (ii) do not limit the rights of Settling Class Members.

20.     The Court finds that, during the course of the Action, the Plaintiffs and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure as to each other.  Any data or other information provided by Settling Class Members in connection with the submission of claims shall be held in strict confidence, available only to (a) the Claims Administrator, Class Counsel, experts or consultants acting on behalf of the Settlement Class, and (b) Settling Defendants and experts or consultants acting on their behalf.  In

no event shall a member of the Settlement Class's data or personal information be made publicly available, except as provided for herein or upon Court Order for good cause shown.

21.     The Proof of Claim and Release form and Plan of Allocation are each approved as fair, reasonable, and adequate.

22.     The word "days," as used herein, means calendar days.  In the event that any date or deadline set forth herein falls on a weekend or federal or state legal holiday, such date or deadline shall be deemed moved to the first business day thereafter.

23.     The Court's certification of the Settlement Class and appointment of the Plaintiffs as class representatives, as provided herein, is without prejudice to, or waiver of, the rights of any Defendant to contest any other request by the Plaintiffs to certify a class. The Court's findings in this Final Approval Order shall have no effect on the Court's ruling on any motion to certify any other class or to appoint other class representatives in this litigation or any challenge to the Plaintiffs' capacity to litigate against other Defendants or to represent another putative class, and no party may cite or refer to the Court's approval of the Settlement Class as binding or persuasive authority with respect to any such motion or challenge.


**IT IS SO ORDERED.**

Signed this ___ day of _____, 2019.


_____
Honorable P. Kevin Castel
United States District Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>            *- against -*<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br><br>                    Defendants. | Docket No. 13-cv-02811 (PKC)<br><br><br><br>**EXHIBIT C** |

## [PROPOSED] FINAL JUDGMENT
## AND ORDER OF DISMISSAL WITH PREJUDICE OF JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., CITIGROUP INC., AND CITIBANK, N.A.

This matter came for a duly-noticed hearing on \_\_\_, 2019, upon the Plaintiffs[1] Motion for Final Approval of Settlement with Citigroup Inc. and Citibank, N.A. (collectively "Citi") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan" and, collectively with Citi, the "Settling Defendants") in the action captioned *Sullivan v. Barclays plc et al.*, No. 13-cv-2811 (PKC) (S.D.N.Y.) (the "Action"), which was consented to by the Settling Defendants (together with Plaintiffs, the "Parties"). The Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      This Judgment hereby incorporates by reference the definitions in the Settlement Agreement between Plaintiffs and Settling Defendants dated November 21, 2018 (the "Settlement Agreement"). All terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.      The Action, including each claim in the Action, is hereby dismissed with prejudice on the merits as to Citi and JPMorgan and without fees or cost.

3.      Upon the occurrence of the Effective Date in accordance with the terms of the Settlement Agreement, all of the following claims shall be released. Specifically, the Releasors,[2] and any other Person claiming against the Settlement Fund (now or in the future) through or on behalf

---

[1] The Plaintiffs are Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System ("CalSTRS"), Sonterra Capital Master Fund, Ltd., FrontPoint Partners Trading Fund, L.P., FrontPoint Australian Opportunities Trust, any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC.

[2] "Releasors" (or "Releasing Parties") means each and every Plaintiff and each and every Settling Class Member on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacities as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacities as such. Notwithstanding that the United States Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasor includes any Settling Class Member as to which the government entity has the legal right to release such claims.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasor. For the avoidance of doubt, the "Releasors" include all Persons entitled to bring Released Claims on behalf of any Settling Class Members.

of any Releasor, shall be deemed to have, and by operation of the Judgment shall have, fully, finally

and forever released, relinquished and discharged Releasees[3] from:

> any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action or which could have been alleged in the Action against the Released Parties concerning any Euribor Products[4] or any similar financial instruments priced, benchmarked, or settled to Euribor purchased, sold, held, traded, and/or transacted by the Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of Euribor or Euribor Products under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. or any other statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to Euribor (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act 15 U.S.C. § 1 et seq., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law).  The following claims shall not be released by this Settlement: (i) any claims against former employees of the Settling Defendants arising solely from those former

---

[3] "Releasees" (or "Released Parties") means each and every Settling Defendant, their predecessors, successors and assigns, each of their past, present, and future direct and indirect parents, subsidiaries, affiliates, and joint ventures, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of the Settling Defendants), shareholders (in their capacity as shareholders of the Settling Defendants), attorneys, insurers or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasee. For the avoidance of doubt, "Releasees" shall not include any named Defendants other than the Settling Defendants.

[4] "Euribor Products" means any and all interest rate swaps, forward rate agreements, futures, options, structured products, and any other instrument or transaction related in any way to Euribor, including but not limited to, NYSE LIFFE Euribor futures contracts and options, CME Euro currency futures contracts and options, Euro currency forward agreements, Euribor-based swaps, Euribor-based forward rate agreements and/or any other financial instruments that reference Euribor.

employees' conduct that occurred while not employed by the Settling Defendants; (ii) any claims against the named Defendants in this Action other than the Settling Defendants; (iii) any claims against inter-dealer brokers or their employees or agents when and to the extent they were engaged as employees or agents of the other defendants or inter-broker dealers; or (iv) any claims against any Defendant not affiliated with the Settling Defendants who may be subsequently added in this Action.  For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States.

4.    This release constitutes a waiver of Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.

With respect to the Settlement Agreement, the Releasors acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts. In entering and making this Agreement, the Releasors assume the risk of any mistake of fact or law, and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

5.    The Court, finding no just reason for delay, directs pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that the judgment of dismissal as to Citi and JPMorgan shall be

final and entered forthwith. The Court concludes that the risk of piecemeal appeals is low because of the absence of objectors.

**IT IS SO ORDERED.**

Signed this ___ day of _____, 2019.

_____
Honorable P. Kevin Castel
United States District Judge