# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>– against –<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br><br>Defendants | Docket No.: 13-cv-02811 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS CRÉDIT AGRICOLE S.A. AND CRÉDIT AGRICOLE CIB**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

    I.   THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL
         UNDER AMENDED RULE 23(e)(2) .................................................................... 3

        A.  The Settlement is Procedurally Fair ................................................................. 4

        B.  The Settlement is Substantively Fair ............................................................... 5

            1.  The Settlement provides superior relief for the Class ............................... 7

                a.   The costs, risks, and delay of trial and appeal favor this Settlement ............... 7

                b.   The remaining *Grinnell* factors also support final approval of this
                    Settlement ................................................................................................ 9

            2.  The plan of distribution provides an effective method for distributing relief,
               satisfying Rule 23(e)(2)(c)(ii) ................................................................. 13

            3.  The requested attorneys' fees are limited to ensure that the Class receives
               adequate relief ........................................................................................ 14

            4.  There are no unidentified agreements that would impact the adequacy of
               the relief for the Settlement Class .......................................................... 16

            5.  The Settlement does not provide any preferences to any Class representatives
               or members ............................................................................................. 16

    II.  THE SETTLEMENT CLASS SATISFIES ALL REQUIREMENTS OF RULE 23 ........ 17

    III. THE APPROVED CLASS NOTICE WAS ADEQUATE AND SATISFIED DUE
          PROCESS .................................................................................................... 18

    IV. THE PREVIOUSLY APPROVED PLAN OF DISTRIBUTION SHOULD BE
          GRANTED FINAL APPROVAL .................................................................... 19

        A.  The Standard for Final Approval of a Plan of Distribution ......................... 19

        B.  The Plan of Distribution Fully Satisfies the Standards for Final Approval ........ 20

        C.  Approval of the Plan of Distribution should be considered separate and apart
            from the other aspects of the Settlement .................................................... 21

CONCLUSION ............................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  No. 14-cv-7126 (JMF), 2018 WL 6250654 (S.D.N.Y. No. 29, 2018) .................................... 15

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001) ........................................................................................ 3

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................. 3

*Bolivar v. FIT Int'l Grp. Corp.*,
  No. 12-cv-781, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) ................................. 8

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................... 3, 6, 9, 10, 11, 12

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................... 13

*Dial Corp. v. News Corp.*,
  317 F.R.D. 426 (S.D.N.Y. 2016) ............................................................................... 15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 02CV1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)............................... 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................... 4, 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  MDL No. 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................... 10

*In re Corrugated Container Antitrust Litigation*,
  MDL No. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ....................................... 12

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................................. 4

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 439 (S.D.N.Y. 2004) ........................................................................... 3, 11

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ......................................................................... 8

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
  No. 18-cv-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022)................................. 4, 9

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................ 9

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................ 15, 20

*In re NASDAQ Market Makers Antitrust Litig.*,
   No. 94 Civ. 3996 (RWS), 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ................... 20

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................ 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................... 7, 8, 21

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ............................................................ 15

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................ 16

*In re Oracle Sec. Litig.*,
   No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ................... 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05-md-1720-MKB-JO, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ............ 3, 7

*In re Platinum and Palladium Commodities Litig.*,
   No. 10 Civ. 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .................... 7, 21

*In re Take Two Interactive Sec. Litig.*,
   No. 06 Civ. 803 (RJS), 2010 WL 11613684 n.8 (S.D.N.Y. June 29, 2010)............ 6

*In re Tronox Inc.*,
   No. 14-cv-5495 (KBF), 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ................ 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................. 12

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL. 1695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............... 11

*In re Vitamin C Antitrust Litig.*,
   No. 06-md-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .............. 7

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................ 20

*Maywalt v. Parker & Parsley Petroleum*,
   67 F.3d 1072 (2d. Cir. 1995) ................................................................................. 6

*Medina v. NYC Harlem Foods Inc.*,
   2022 WL 1184260 (S.D.N.Y. Apr. 21, 2022) ...................................................... 16

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................................ 7, 8, 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................ 19

*Romero v. La Revise Assocs.*,
   58 F. Supp. 3d 411 (S.D.N.Y. 2014) .................................................................... 5

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................ 4, 18, 19

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ............................................................................... 19

*Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*,
   No. 18-cv-4747 (DLI) (RER), 2022 WL 1003589 (E.D.N.Y. Jan. 5, 2022) ............................ 9

**Rules**

FED. R. CIV. P. 23 committee notes 2018 amendment ................................................... 6

FED. R. CIV. P. 23(c)(2) ............................................................................................... 18

FED. R. CIV. P. 23(e)(1) ............................................................................................... 18

FED. R. CIV. P. 23(e)(2) ........................................................................... 3, 4, 6, 7, 16

FED. R. CIV. P. 23(e)(3) ............................................................................................... 16

**Statutes**

Pub. L. No. 108-237 ..................................................................................................... 5

Pub. L. No. 111-190, 124 Stat. 1275 ........................................................................... 5

## INTRODUCTION

Pursuant to Paragraph 36 of the Order Preliminarily Approving Proposed Settlement with Crédit Agricole S.A. and Crédit Agricole CIB, Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class (ECF No. 520) ("Preliminary Approval Order"), and Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs[1] respectfully submit this Memorandum of Law and the accompanying Joint Declaration of Vincent Briganti and Christopher Lovell in support of Plaintiffs' motion for an order granting final approval of the Settlement with Defendants Crédit Agricole S.A. and Crédit Agricole CIB (collectively, "Crédit Agricole"), certification of the Settlement Class, and approval of the Plan of Distribution for use with this Settlement.

The terms of the Settlement are fair, reasonable, and adequate, satisfying the criteria for final approval under Rule 23. The Settlement resulted from years of hard-fought, arm's-length between highly sophisticated parties and their experienced counsel.

Pursuant to the Preliminary Approval Order, the Claims Administrator executed the Class Notice plan and distributed the mailed notice to Class members informing them, *inter alia*, that Crédit Agricole had agreed to pay $55,000,000 and provide non-monetary cooperation to settle the Action while still denying all Plaintiffs' allegations and liability. *See* Declaration of Steve Straub of A.B. Data, Ltd. ("Straub Decl.") at ¶ 4.  The Class Notice plan was set forth at length in connection with Plaintiffs' motion for preliminary approval of the Settlement. ECF No. 518-2.

---

[1] "Plaintiffs" are Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System ("CalSTRS"), any subsequently named plaintiff(s), and any of their assignees of any named plaintiff(s) that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC.  Unless otherwise noted, capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement of Settlement dated March 10, 2022 (the "Agreement" or "Settlement Agreement"), attached as Exhibit 1 to the Joint Declaration of Vincent Briganti and Christopher Lovell dated April 29, 2022 ("April 2022 Joint Decl.") (ECF No. 518-1).  Unless otherwise noted, internal citations and quotation marks are omitted and ECF citations are to the docket.

This motion is being filed before the deadline for objecting to or opting out of the Settlement. To date, no objections have been received and only two potential Class Members have sought to opt out of the Settlement. *See* Straub Decl. ¶¶ 29, 31. Plaintiffs will separately address any objections in accordance with the schedule set by the Court.  Nevertheless, the lack of any objections or substantial opt outs thus far indicates a positive reaction by the Class to the Settlement.

This Court has twice previously approved the Plan of Distribution (ECF No. 382-1) that Class Counsel developed with the assistance, knowledge, and opinions of several experts. *See* ECF No. 498 (Final Approval Order of Settlement with JPMorgan Chase & Co., JPMorgan Chase Bank, N.A, Citigroup Inc., and Citibank, N.A.); ECF No. 424 (Final Approval Order of Settlements with Barclays plc, Barclays Bank plc, Barclays Capital Inc., Deutsche Bank AG and DB Group Services (UK) Ltd., HSBC Holdings plc and HSBC Bank plc).[2] Class Counsel has litigated this Action for over nine years and, based on its extensive experience in class actions and its knowledge of this Action, requests that the Court once again finally approve the Plan of Distribution for use with this Settlement.

On May 9, 2022, the Court issued an order approving Plaintiffs' motion for preliminary approval, finding that it would likely be able to finally approve the Settlement and certify a Settlement Class. ECF No. 520.  The evidence in support of the preliminary determination is only strengthened following notice of the Settlement to the Class. As described herein and in Plaintiffs' motion for preliminary approval (ECF Nos. 516-17),[3] the Settlement is in the best interest of Plaintiffs and the Class. Therefore, Plaintiffs respectfully request that the Court grant final

---

[2] The "Prior Settling Defendants" are Barclays plc, Barclays Bank plc and Barclays Capital Inc. ("Barclays"), Deutsche Bank AG and DB Group Services (UK) Ltd. ("Deutsche Bank"), HSBC Holdings plc, and HSBC Bank plc. ("HSBC"), Citigroup Inc. and Citibank, N.A. ("Citi"), and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan").

[3] Plaintiffs incorporate by reference the arguments presented in their motion for preliminary approval of the Crédit Agricole Settlement.

approval of the Settlement, approve the Plan of Distribution as applied to the Crédit Agricole Settlement, and enter Final Judgment dismissing the claims against Crédit Agricole with prejudice on the merits to provide the Settlement Class with the substantial relief that Plaintiffs and their counsel worked so diligently to obtain.

## ARGUMENT

### I.   THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL UNDER AMENDED RULE 23(e)(2)

Public policy favors the resolution of class actions through settlement. *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439, 455 (S.D.N.Y. 2004). "[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Under Rule 23, as amended, the Court may approve the settlement upon a showing that the settlement is "fair, reasonable, and adequate . . . ." FED. R. CIV. P. 23(e)(2) (2018). The settlement should be approved if it is both procedurally and substantively fair. *Cf. In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720-MKB-JO, 2019 WL 359981, at *13 (E.D.N.Y. Jan. 28, 2019) ("*Payment Card*") (analyzing the amended Rule 23(e)(2) standards to be applied at both preliminary and final approval). The amended rule sets out a number of factors to guide the Court's analysis, with the factors in Rule 23(e)(2)(A) and (B) focusing on procedural fairness and those in Rule 23(e)(2)(C) and (D) focusing on substantive fairness. The factors in amended Rule 23(e) complement the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), which courts in this Circuit have long used to assess the fairness of a class

settlement. *See, e.g.*, *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 WL 2063864, at *6 (S.D.N.Y. June 8, 2022)

### A.      The Settlement is Procedurally Fair

To approve a settlement, Rule 23 requires courts to find that, "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B). "[A] class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's length negotiations concluded by experienced, capable counsel after meaningful discovery." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).

Plaintiffs are represented by counsel with extensive class action, antitrust, Commodity Exchange Act ("CEA"), and trial experience, which is strong evidence that the Settlement is procedurally fair. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair); *see also* ECF Nos. 518-6, 518-7 (Class Counsel's firm resumes). Class Counsel were well informed about the strengths and weaknesses of the claims and defenses presented in this Action. Both before and during settlement negotiations with Crédit Agricole, Class Counsel closely reviewed and analyzed the documents and information obtained throughout the course of Class Counsel's extensive investigation, including: (i) government settlements with other banks, including plea, non-prosecution and deferred prosecution agreements; (ii) publicly available information relating to the conduct alleged in Plaintiffs'

complaints; (iii) ACPERA[4] cooperation provided by Defendant Barclays, settlement cooperation provided by Defendants HSBC and Deutsche Bank, and document discovery provided by Defendants JPMorgan and Citi in this Action; (iv) expert and industry research regarding Euribor and Euribor Products in futures and over-the-counter markets; and (v) prior decisions of this Court and others deciding similar issues. *See, e.g.*, Joint Decl. ¶¶ 18, 23.

The parties reached this settlement after multiple rounds of negotiation in which the Parties discussed their views of the factual and legal issues in the case. The Parties' first attempt at settlement began in November 2019, more than six years after the commencement of the Action. *Id*. ¶ 17. After months of negotiations, this first attempt stalled in March 2020. *Id*. ¶ 20. Negotiations resumed in November 2020, and eventually bore fruit: the Parties signed a Term Sheet seven months later, and executed the Settlement Agreement on March 10, 2022. These long, hard-fought negotiations indicate that the Settlement is procedurally fair. *See, e.g.*, *Romero v. La Revise Assocs.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (applying the presumption of procedural fairness because the parties engaged in months of negotiations).

Given Class Counsel's considerable prior experience in complex class action litigation involving antitrust claims (among others), their extensive work in this case and their resulting knowledge of the strengths and weaknesses of Plaintiffs' claims, their assessment of the Settlement Class's likely recovery following trial and appeal, and their extensive arm's-length negotiations with Crédit Agricole, the Settlement is entitled to a presumption of procedural fairness.

### B.   The Settlement is Substantively Fair

To assess the substantive fairness of the Settlement, the Court must consider whether, "the relief provided for the class is adequate," and account for the following factors: "(i) the costs, risks,

---

[4] "ACPERA" means the Antitrust Criminal Penalty Enhancement and Reform Act (Pub. L. No. 108-237, tit. II, 118 Stat. 661, 665, extended by Pub. L. No. 111-190, 124 Stat. 1275)

and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C).  The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).

Courts in this Circuit have long considered the nine *Grinnell* factors in deciding whether a settlement is substantively fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)  ("*Grinnell*"); *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Maywalt v. Parker & Parsley Petroleum*, 67 F.3d 1072, 1079-80 (2d. Cir. 1995) ("Basic to [the determination of whether a settlement is fair, reasonable and adequate] … is the need to compare the terms of the compromise with the likely rewards of litigation."); *In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 803 (RJS), 2010 WL 11613684, at *9 n.8 (S.D.N.Y. June 29, 2010) ("A court reviewing a settlement for final approval must address the nine factors laid out in" *Grinnell*).

As the Committee Notes prepared in connection with the 2018 amendments to Rule 23 make clear, "[t]he goal of [amended Rule 23] is not to displace any factor [previously applied by courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23 committee notes 2018 amendment. Consequently, the amended Rule 23(e)(2) factors have been

interpreted as complementary to *Grinnell*. *See Payment Card*, 2019 WL 359981, at \*13 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C–D) factors . . . ."). Here, the factors set forth in Rule 23(e) and *Grinnell* weigh heavily in favor of final approval.

### 1. The Settlement provides superior relief for the Class

#### a. *The costs, risks, and delay of trial and appeal favor this Settlement*

To determine whether a settlement provides adequate relief to the class, the Court must assess "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 2019 WL 359981, at \*20 (internal quotation marks and citations omitted). Satisfying this factor necessarily "implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id.* Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with these *Grinnell* factors.

The Action involved, *inter alia,* antitrust claims, complex financial instruments, novel legal questions, and an evolving view of those questions by courts in this District as well as the Second Circuit and the U.S. Supreme Court. "Class actions have a well-deserved reputation as being most complex," *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*"), with antitrust and commodities cases standing out as some of the most "complex, protracted, and bitterly fought." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also In re Platinum and Palladium Commodities Litig.,* No. 10 Civ. 3617, 2014 WL 3500655, at \*12 (S.D.N.Y. July 15, 2014) (noting that commodities cases are "complex and expensive" to litigate); *In re Vitamin C Antitrust Litig.*, No. 06-md-1738 (BMC), 2012 WL

5289514, at *4 (E.D.N.Y. Oct. 23, 2012). This case is no different. Indeed, the risk of certifying and maintaining a class itself weights in favor of settlement approval. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated").

With respect to the Crédit Agricole Settlement, there was substantial risk of an adverse outcome for Plaintiffs. When the Parties executed the Settlement Agreement, the case was on appeal to the Second Circuit on a number of dispositive issues in the case, including whether this Court has personal jurisdiction over certain defendants, including Crédit Agricole. Even assuming Plaintiffs prevailed on appeal, Plaintiffs would still need to engage in complex, arduous discovery, overcome Crédit Agricole's defenses, and establish Crédit Agricole's liability. Given the complexity of the financial markets at issue, the expert work alone in this case has been costly, and such costs would only increase if litigation continued.  Joint Decl. ¶¶ 34-66, 78. Any trial in this action will carry a significant level of risk and uncertainty because it involves a financial market unfamiliar to the average juror. And if Plaintiffs succeed in establishing Crédit Agricole's liability, they will need to carry their burden of showing the Class's damages "to a reasonable certainty." *Bolivar v. FIT Int'l Grp. Corp.*, No. 12-cv-781, 2019 WL 4565067, at *1 (S.D.N.Y. Sept. 20, 2019); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages…").

This litigation has been massive, complex, and expensive to prosecute, and will likely continue to be. *See Meredith Corp*, 87 F. Supp. 3d at 663 ("The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement."). Approval

of the settlement will mitigate those risks, while providing the Class with significant financial compensation and cooperation materials to aid Plaintiffs in pursuing claims against other Defendants. *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 93 (S.D.N.Y. 2007) ("The prospect of an immediate monetary gain may be more preferable to class members than the uncertain prospect of a greater recovery some years hence.").

### b. *The remaining Grinnell factors also support final approval of this Settlement*

The remaining *Grinnell* factors not expressly encompassed in Rule 23(e)(2)(c)(i) also guide courts in assessing whether the relief provided to the class is adequate.[5] *See, e.g.*, *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 WL 2063864, at *9 (S.D.N.Y. June 8, 2022); *Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18-cv-4747 (DLI) (RER), 2022 WL 1003589, at *8 (E.D.N.Y. Jan. 5, 2022).

### i.   The reaction of the class to the settlement

The second *Grinnell* factor is "the reaction of the class to the settlement." *Grinnell*, 495 F.2d at 463. This motion is being filed before the deadline for objecting to or opting out of the Settlement. Plaintiffs will respond to any objections separately. However, as detailed in the Preliminary Approval Motion, Plaintiffs favor the Settlement. ECF Nos. 517-518; *see also* Bartow Decl. ¶¶ 23-25. Plaintiff CalSTRS' general counsel Brian Bartow has been directly involved in overseeing this Action, participating in strategy sessions, settlement negotiations, and mediations, in addition to monitoring Class Counsel's time and expenses. *See* Bartow Decl. ¶¶ 10-22. Plaintiffs

---

[5] The remaining factors include:

> "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Grinnell*, 495 F.2d at 463.

are sophisticated investors with significant financial expertise and are fully capable of assessing the benefits of the Settlement. Their approval is highly probative of the likely reaction of other Class Members upon reviewing the Settlement. Any Class Member who does not favor the Settlement may opt out.  Additionally, the Settlement is similar to the Barclays, Deutsche Bank, HSBC, Citi and JPMorgan settlements that this Court previously approved, for which there were few opt outs. *See* ECF Nos. 424 ¶ 8; 498 ¶ 7.

In accordance with the Preliminary Approval Order, the Class Notice plan has been carried out as described in the Young Decl. ¶¶ 4-16. To provide additional information for members of the Settlement Class to evaluate the Settlement, we have filed this motion in advance of the deadline for objecting and may supplement this argument to address any objections. To date, A.B. Data has received only two requests for exclusion and there have been no objections. Joint Decl. ¶ 26; Straub Decl. ¶ 30.

ii.   The stage of the proceedings and the amount of discovery completed

In assessing the fairness of the Settlement, the Court should also consider "the stage of the proceedings and the amount of discovery completed." *Grinnell*, 495 F.2d at 463. The Court may approve a settlement at any stage of litigation. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). The Court's primary concern in examining the stage of litigation and the extent of discovery undertaken is to understand whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their cases, and whether the settlement is adequate given those risks. *Id.*

Class Counsel's extensive investigation, analysis, participation in discovery, and review of cooperation materials provided them ample opportunity to evaluate Plaintiffs' claim in the context of the risks faced.  In light of the ostensible risks of litigation including the risk present

in light of the pending appeal of this Action, Class Counsel's considered judgment is that the total consideration provided by the Settlement, together with the non-monetary cooperation that Plaintiffs have received and will continue to receive, is fair, reasonable, and adequate in light of all of the circumstances. *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

     iii. <u>The ability of Crédit Agricole to withstand greater judgment</u>

   The seventh *Grinnell* factor, "the ability to withstand a greater judgment" (*Grinnell*, 495 F.2d at 463), does not weigh against granting final approval. While Crédit Agricole could survive a judgment greater than $55,000,000, this factor alone does not bear on the appropriateness of the Settlement. *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. at 460 ("'[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate.'"); *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved– indeed, if it did, it is hard to imagine why a defendant would ever settle a case."). Indeed, courts routinely observe that "'this determination in itself does not carry much weight in evaluating the fairness of the Settlement.'" *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL. 1695 (CM), 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007). With all other criteria satisfied, this factor is insignificant. *Cf.* Tr. of Nov. 21, 2014 Final Approval Hearing, *In re Elec. Books Antitrust Litig.*, 11-md-2293 (DLC) (S.D.N.Y. Nov. 21, 2014), ECF No. 686 at 13:22-24 (granting final approval where defendant's ability to withstand greater judgment was not "in dispute").

iv.   The Settlement is reasonable in light of the risks and potential range of recovery

The eighth and ninth *Grinnell* factors are "(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463; *see also In re Payment Card*. The recovery in this Settlement is substantial. This is particularly true in light of (a) the cooperation Plaintiffs received; (b) the number of defendants dismissed from the Action on personal jurisdiction grounds; and (c) the risks involved in not settling, as described *supra,* Part I.B.1.a. The monetary relief that Crédit Agricole will pay and the cooperation that they have agreed to provide will increase the Class's recovery while further lowering the risk of the continued prosecution of the case. Even if Plaintiffs are unable to reinstate claims against the Dismissed Defendants, Class Counsel effectively implemented a strategy that has achieved a "maximum aggregate recovery for the class." *In re Corrugated Container Antitrust Litigation*, MDL No. 310, 1981 WL 2093, at *23 (S.D. Tex. June 4, 1981) (approving several settlements achieved, including ice-breaker settlements that strategically helped facilitate other settlements).

 "The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Meredith Corp.*, 87 F. Supp. 3d at 665-66; *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (same). This is a multi-million-dollar Settlement that was achieved while on appeal.  If Plaintiffs' appeal is successful, it will simply lead to a new front in the litigation with the non-settling Defendants, not to certain victory on all issues for complete damages.  Some Defendants have avoided and may continue to avoid liability based on the argument that the Court lacks personal jurisdiction over them. On the merits, one or more of Plaintiffs' claims for relief may be unsuccessful or only

partially successful as to one or more Defendants. And if Plaintiffs established complete liability against the non-settling Defendants, they would still face substantial hurdles in establishing damages, including the quantum or proof that may be required to prove that Defendants' alleged manipulation of Euribor affected the prices of Euribor Products and the acceptable methodology for calculating the harm suffered due to transacting in these price-fixed financial products.

Based on Class Counsel's preliminary damages estimates, if Plaintiffs were to obtain a complete victory at trial and prevailed on any appellate challenges, Plaintiffs and the Class could possibly recover billions of dollars. The proposed Crédit Agricole Settlement together with the earlier settlements will have recovered $546,500,000 for the Class and provided the enhanced benefit of cooperation to assist Class Counsel in the continued prosecution of the non-settling Defendants, litigation that may further increase the total recovery for the Class. In light of the complete value provided, the monetary compensation provided by the Settlement is more than acceptable under the *Grinnell* factors.

### 2. The plan of distribution provides an effective method for distributing relief, satisfying Rule 23(e)(2)(c)(ii)

The Plan of Distribution, which was twice previously approved by the Court (*see* ECF Nos. 424, 498) provides a fair and effective method of distributing relief to the Class as required by Rule 23(e)(2)(C)(ii). Ninety percent (90%) of the Net Settlement Fund will be divided *pro rata* among Qualified Claimants with Total Adverse Impact to qualifying transactions. ECF No. 382-1 (Plan of Distribution), at 2-3. The *pro rata* distribution of the settlement proceeds provided for by the Plan is "designed to fairly and rationally allocate the proceeds of this Settlement among the Class." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014).

In addition, the remaining 10% of the Net Settlement Fund will be distributed according to each Qualified Claimant's total adjusted volume of transactions subject to a guaranteed minimum payment. ECF No. 382-1, at 2.  Distributions based on transaction volume are also commonly accepted in this District. *See, e.g.,* Order Approving the Plan of Distribution*, In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.), ECF No. 1095. Further, the minimum claim amount "is necessary in order to save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs . . . ." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (internal quotation marks and citations omitted) (collecting cases).

The Claims Administrator has been and will continue to scrutinize the claims submitted by the Class to ensure that the claims are valid and reflect accurate information. ECF No. 518-5 (Proof of Claim and Release), at 4, 7. The Claims Administrator has the right to and will request additional information to verify any claims where necessary. *Id.* This type of work is performed both by automated screens and human intervention to ensure, to the best of the Claims Administrator's ability, that only those Class Members who have been harmed by Crédit Agricole's alleged misconduct will receive proceeds from the Net Settlement Fund.

### 3. The requested attorneys' fees are limited to ensure that the Class receives adequate relief

As more fully described in the accompanying Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses, the percentage of attorneys' fees requested is reasonable given Class Counsel's retainer agreement with CalSTRS and in light of awards made in similar cases in this District.

Pursuant to the retainer with CalSTRS, Class Counsel's recovery is limited to 16.5% of the Settlement Fund, which may be paid upon final approval. Bartow Decl. ¶ 7; ECF No. 518-1

(Settlement Agreement) ¶¶ 31, 35. The retainer agreement between Class Counsel and CalSTRS was negotiated at arm's length and contains a contingent fee structure that uses a graduated fee scale that provides for a 16.5% fee at this level of recovery. Bartow Decl. ¶ 7. The fee schedule set forth in Class Counsel's retainer agreement with CalSTRS is entitled to deference. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("In many cases, the agreed-upon fee will offer the best indication of a market rate.").

Due to the CalSTRS sliding scale, the 16.5% fee is smaller than those the Court previously approved in connection with the other settlements in this Action. See ECF No. 425 (approving fee of 22.24% from a $309 million common fund); ECF No. 500 (approving fee of 19% from a $182.5 million fund). Other courts in this District have also routinely awarded larger fee percentages in cases of similar size and complexity. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF), 2018 WL 6250654, at *3 (S.D.N.Y. No. 29, 2018) (awarding 26% of the net settlement fund from a $504.5 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding one-third of the net settlement fund arising from a $586 million settlement). Further, absent a successful appeal and trial to verdict and/or another settlement(s) in this Action, Class Counsel is not entitled to any further payments, including in connection with its work distributing the Net Settlement Fund, pursuant to its agreement with CalSTRS. Consequently, Class Counsel will continue to experience a growing lodestar that it must absorb in its entirety.  The impact of an award of attorneys' fees on the relief for the Class is therefore reasonable.

### 4. There are no unidentified agreements that would impact the adequacy of the relief for the Settlement Class

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). Here, all agreements that could potentially impact the Settlement have been disclosed in the Settlement.

The Settlement provides Crédit Agricole a limited right to terminate the Settlement under certain conditions, which are set out in a Supplemental Agreement. ECF 518-1, ¶ 40. This type of supplemental agreement, commonly referred to as a "blow" provision, is common in class action settlements. *See, e.g.*, *Medina v. NYC Harlem Foods Inc.*, 2022 WL 1184260, at *6 (S.D.N.Y. Apr. 21, 2022); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02CV1152, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018). This agreement does not impact the adequacy of the relief provided to the Class.

### 5. The Settlement does not provide any preferences to any Class representatives or members

The Plan of Distribution "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Plan of Distribution provides for a *pro rata* distribution of 90% of the Settlement Fund among eligible claimants and distributes the remaining 10% via an objective measure involving the total adjusted volume of transactions. ECF No. 382-1 (Plan of Distribution), at 2-3. While there are certain discount factors applied under the Plan of Distribution, these discounts reflect the relative legal risks faced by claimants based upon the instruments that they traded and their counterparties. *See* Plan of Distribution at 3. These discounts were determined through an arm's length negotiation where each interest was represented by independent allocation counsel at a mediation conducted by Kenneth Feinberg, who served as a neutral allocation mediator. *See generally* Declaration of Kenneth R. Feinberg (ECF No. 382-2).

Based on all of the foregoing factors, including all of the risks that Plaintiffs would face in continuing to litigate this matter, the Court should grant final approval of the Settlement.

## II.    THE SETTLEMENT CLASS SATISFIES ALL REQUIREMENTS OF RULE 23

For all of the reasons detailed in the Preliminary Approval Motion and as held most recently in the Court's Preliminary Approval Order, the Settlement Class satisfies all requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of Rule 23(b)(3). The preliminarily certified Settlement Class should therefore be granted final certification for settlement purposes.[6]

There are at least hundreds, if not thousands, of geographically dispersed persons and entities that fall within the Settlement Class. *See* ECF No. 220 ¶ 19; ECF No. 276 ¶ 21; ECF No. 360 ¶ 38; ECF No. 518 ¶ 54. Over 40,000 claims have been filed in connection with the Barclays, Deutsche Bank, HSBC, Citi, and JPMorgan settlements. Straub Decl. ¶ 3. Commonality is easily satisfied here where there are numerous common questions of law and fact and where each Plaintiff and Settlement Class member would have to answer the same liability and impact questions through the same body of common class-wide proof. *See, e.g.,* ECF No. 517, at 19-20.

Plaintiffs' claims are typical of those of the entire Settlement Class because Plaintiffs' and Class members' claims all arise from the same course of conduct involving Defendants' alleged false reporting and manipulation of Euribor and the prices of Euribor Products.

The named Plaintiffs in this action are adequate representatives because they share the same overriding interest (1) in obtaining the largest financial recovery possible; and (2) in securing the non-monetary cooperation from Crédit Agricole to use in any reinstated prosecution of the

---

[6] Crédit Agricole consents to certification of the Settlement Class solely for the purposes of the Settlement and without prejudice to any position Crédit Agricole may take with respect to class certification in any other action or in this Action if the Settlement is terminated. ECF No. 518-1 ¶ 5.

litigation against the Dismissed Defendants. In addition, Class Counsel are highly experienced attorneys who have litigated these and other complex class actions for decades.

Lastly, as required by Rule 23(b)(3), common questions predominate and a class action is the superior method for resolving this case. Predominance exists because common questions, such as whether Defendants engaged in the alleged false reporting and manipulation of Euribor and the prices of Euribor Products, will determine the outcome of this litigation rather than individual issues. A class action is superior because Settlement Class members have no substantial interest in proceeding individually in this case, given the complexity and expense of the litigation.

## III. THE APPROVED CLASS NOTICE WAS ADEQUATE AND SATISFIED DUE PROCESS

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1). For actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23 (c)(2)(B). The standard for the adequacy of notice to the class is reasonableness. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The Settlement Class members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

The Class Notice plan has been carried out in accordance with the Preliminary Approval Order. *See* Straub Decl. ¶ 4; *see also* Declarations of Jason M. Stinehart; Declaration of Ching

Wen Lim; Declaration of Tomasz Karol Idzior; Declaration of Ajmal Choudry (noticing agents of Prior Settling Defendants), submitted herewith. Information regarding the Settlement, including downloadable copies of the Settlement Agreement, mailed notice, Proof of Claim and Release form, Preliminary Approval Order, and other relevant documents (as well as a toll-free telephone number to answer questions and facilitate filing of claims) were also posted on a dedicated website created and maintained by the Claims Administrator at www.EuriborSettlement.com. *Id*. ¶¶26-27.

The Class Notice plan, as well as the mailed notice and published notice, satisfies due process. The mailed notice and published notice are written in clear and concise language, which "may be understood by the average class member." *See Wal-Mart*, 396 F.3d at 114. Members of the Settlement Class were provided with a full and fair opportunity to consider the proposed Settlement and to respond and/or appear in Court. The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950). In addition to an extensive mailed notice program, Plaintiffs' Class Notice plan consists of published and online notice—which easily satisfies the Rule 23(c)(2)(B) factors and due process. *See Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (due process does not require actual notice to every class member as long as class counsel "acted reasonably in selecting means likely to inform persons affected."). Because Plaintiffs' Class Notice plan is the best under the circumstances, the Court should finally approve the forms and methods of notice as implemented.

## IV.   THE PREVIOUSLY APPROVED PLAN OF DISTRIBUTION SHOULD BE GRANTED FINAL APPROVAL

### A.  The Standard for Final Approval of a Plan of Distribution

A plan of distribution that is supported by competent and qualified counsel is reviewed only to determine whether it has a "reasonable, rational basis." *In re Initial Pub. Offering Sec.*

*Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009); *see also In re NASDAQ Market Makers Antitrust Litig.*, No. 94 Civ. 3996 (RWS), 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel.") (citation omitted). Class Counsel, who have litigated this Action for over eight years and are highly experienced in litigation, including antitrust and commodities manipulation class actions, recommend the Plan of Distribution. *See* ECF Nos. 518-6 (Lowey's firm resume), 518-7 (Lovell's firm resume).

Under Rule 23, "'[t]o warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate.'" *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002); *see also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."). Here, the Plan of Distribution complies fully with these standards.

### B. The Plan of Distribution Fully Satisfies the Standards for Final Approval

Class Counsel has given notice of the Plan of Distribution to the Settlement Class. *See* ECF No. 520; *see also* www.EuriborSettlement.com.   The Court previously approved the Plan of Distribution twice, which includes (1) a *pro rata* payment, subject to guaranteed minimum, to each Authorized Claimant (referred to as "Qualified Claimant" in the Plan of Distribution) from ten percent (10%) of the Net Settlement Fund relating to their Total Adjusted Volume of transactions in specified transactions; and (2) a *pro rata* payment from ninety percent (90%) of the Net Settlement Fund to each Authorized Claimant with Total Adverse Impact to qualifying transactions caused by Euribor Artificiality. ECF No. 498 ¶ 21; ECF No. 424 ¶ 21.

This methodology of allocating settlement proceeds in accordance with what is anticipated to be the amounts of provable artificial impact has repeatedly been approved as a fair, reasonable, and adequate method of allocating settlement funds in antitrust and CEA manipulation class action settlements. *See, e.g.*, *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at \*3 (allocations based on net artificiality on each trading day); *In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377, ECF No. 413 ¶ 6 (S.D.N.Y. May 23, 2012) (modifying final judgment to reflect plan of allocation); *In re Natural Gas Commodities Litig.*, No. 03 Civ. 6186, ECF Nos. 615, 618 (S.D.N.Y. June 4 and 7, 2010) (modifying plan of allocation to reflect net artificial impact at various times). Class Counsel developed and participated in the development of the plans of distribution approved in such prior cases. Here, Class Counsel developed and once again strongly recommends the Plan of Distribution.

## C. Approval of the Plan of Distribution should be considered separate and apart from the other aspects of the Settlement

Settlements of class action claims can be approved, and final judgment entered, before a plan of distribution has been adopted. *See, e.g., NASDAQ III,* 187 F.R.D. at 480 ("[I]t is appropriate, and often prudent, in massive class actions to follow a two-stage procedure, deferring the Plan of Allocation until after final settlement approval."). Further, courts have repeatedly recognized that the equitable power to determine, amend, or supplement a fair method of allocation may be exercised after final judgment has been entered. *See In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at \*3 (stating that the plan of allocation was "subject to revision by this court"); *In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377 (S.D.N.Y. May 23, 2012), ECF No. 413 ¶ 6 (modifying final judgment to reflect plan of allocation). Here, as is common in complex class actions, the Settlement contemplates that the

approval of the Settlement should be considered separate and apart from the consideration the Plan of Distribution. *See* ECF No. 518-1, ¶ 32.

For all the reasons set forth above, the Plan of Distribution fully satisfies the standards for final approval. Any concerns that the Court may have regarding the Plan of Distribution should be considered separately from any other aspects of the Settlement, and Final Approval of the Settlement can proceed even if the Court does not extend the previously approved Plan of Distribution to apply to this Settlement.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) grant Final Approval; (ii) certify the Settlement Class; (iii) approve the Plan of Distribution for use with this Settlement; and (iv) overrule any objections that are received. A Proposed Final Approval Order and Proposed Final Judgment and Order of Dismissal for Crédit Agricole have been filed herewith.

Dated: August 9, 2022

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

_____/s/ Vincent Briganti_____
Vincent Briganti
Geoffrey Horn
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
E-mail: vbriganti@lowey.com
E-mail: ghorn@lowey.com

**LOVELL STEWART HALEBIAN JACOBSON LLP**

_____/s/ Christopher Lovell_____
Christopher Lovell
Gary S. Jacobson
Benjamin M. Jaccarino
500 Fifth Avenue, Suite 2440
New York, NY 10110
Tel.: (212) 608-1900
Fax: (646) 398-8392
E-mail:  clovell@lshllp.com
E-mail:  gsjacobson@lshllp.com
E-mail:  bjaccarino@lshllp.com

*Class Counsel*

**BERMAN TABACCO**
Joseph J. Tabacco, Jr.
Todd A. Seaver
425 California Street, Suite 2300
San Francisco, CA 94104
Tel.: 415-433-3200
Fax: 415-433-6282

**BERMAN TABACCO**
Patrick T. Egan
One Liberty Square
Boston, MA 02109
Tel.: 617-542-8300
Fax: 617-542-1194

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
Lee Albert
122 East 42nd Street, Suite 2920
New York, NY 10168
Tel.: 212-682-5340
Fax: 212-884-0988

**KIRBY MCINERNEY LLP**
David E. Kovel
825 Third Avenue
New York, NY 10022
Tel.: 212-371-6600
Fax: 212-751-2540

*Additional Plaintiffs' Counsel*