## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>– against –<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,<br><br>Defendants | Docket No.: 13-cv-02811 (PKC) |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND <u>PLAINTIFFS' REQUEST FOR INCENTIVE AWARDS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.      CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ...................... 3

        A.    The Fee Request Comports with the Fee Scale Negotiated by CalSTRS and Has CalSTRS' Approval ........................................................................................... 4

        B.    Class Counsel's Request is Within the Range Used Under the Second Circuit's Preferred Percentage-Based Methodology ....................................................... 6

        C.    The Requested Fees are Supported by the *Goldberger* Factors ..................................... 8

           1.    The Time and Labor Expended ................................................................ 8

           2.    The Risk of the Litigation ....................................................................... 12

           3.    The Magnitude and Complexity of the Case ............................................ 15

           4.    Quality of Representation ....................................................................... 17

           5.    The Fee is Reasonable in Relation to the Settlements .............................. 19

           6.    Public Policy Supports Approval ............................................................ 20

        D.    The Lodestar Cross-Check Supports the Requested Fee ................................. 20

    II.    CLASS COUNSEL'S EXPENSES ARE REASONABLE .......................................... 21

    III.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES ................................................................................................... 22

CONCLUSION ...................................................................................................................... 25

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-cv-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ............................... 7, 25

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-cv-118 (VM), 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ........................................ 22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*,
522 F.3d 182 (2d Cir. 2008) .................................................................................................. 2, 4

*Beckman v. KeyBank N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 21, 22, 23

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................................. 3

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................................... 15

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................. 13

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) ...................................................................................... 22, 25

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Employees Ret. Sys.*,
814 F.3d 652 (2d Cir. 2016) ................................................................................................... 2, 4

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016) ................................................................................................... 13

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................................... passim

*Hall v. Children's Place Retail Stores Inc.*,
669 F. Supp. 2d 399 (S.D.N.Y. 2009) ...................................................................................... 6

*In re Air Cargo Shipping Services Antitrust Litig.*,
No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ........................... 25

*In re American International Group, Inc. Securities Litigation*, (DAB),
No. 04 Civ. 8141, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ................................................ 24

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
No. 12 Civ. 5575 (SWK), MDL 1500, 2006 WL 3057232 (S.D.N.Y. Oct. 26, 2006) ............. 12

*In re Arakis Energy Corp. Sec. Litig.*,
No. 95 CV 3431(ARR), 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) .................................. 21

*In re Beacon Assoc. Litig.*,
No. 09 Civ. 777(CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013) ......................................... 6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................................... 4

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013) .................................................................................... 15

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ...................................................................................... 20

*In re Credit Default Swaps Antitrust Litig.*,
No. 13-md-2476, 2016 WL 2731524 (S.D.N.Y. April 26, 2016) ............................. 2, 3, 19, 21

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 CIV. 7789 (LGS), 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) .................................. 21

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543 (JMF), 2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) .................................. 19

*In re Gilat Satellite Networks, Ltd.*
No. CV-02-1510 (CPS)(SMG) 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................... 24

*In re GSE Bonds Antitrust Litig.*,
No. 19 Civ. 1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) .................................. 16

*In re Holocaust Victim Assets Litig.*,
No. CV 06-0983 (FB)(JO), 2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) ............................... 16

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...................................................................................... 7

*In re Interpublic Sec. Litig.*,
No. 02 Civ.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................... 7, 19

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-CV-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) .................................. 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
935 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................................................... 13

*In re Marsh & McLennan Cos., Inc. Sec. Litig*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................. 23

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................... 17

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 6, 15, 19

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ...................................................................................... 4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................ 7, 12, 19

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018) .................................................................... 23

*In re Platinum and Palladium Commodities Litig.*,
   No. 10 CV 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .................. 14, 15, 16

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. Civ. 03-0085 (FSH), 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ....................... 14

*In re Vitamin C Antitrust Litig.*,
   No. 06 Md. 1738 (BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .......... 16

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................ 15, 18, 21

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ...................................................................................... 3

*Meredith Corp. v. SESAC LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................... 16, 18, 21

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983) ................................................................................................ 20

*Roberts v. Texaco*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ......................................................................... 22

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................................... 6

*Sullivan v. Barclays plc*,
   No. 13-cv-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ................................ 13

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
   623 F.3d 82 (2d Cir. 2010) ........................................................................................ 3

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)................................................................................. 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 4, 6

*Warren v. Xerox Corp.*,
    No. 01-CV-2909(JG), 2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008)..................................... 23

**Other Authorities**

WILLIAM B. RUBENSTEIN, 5 NEWBERG ON CLASS ACTIONS ......................................................... 22

Pursuant to this Court's May 9, 2022 Order,[1] Class Counsel respectfully move pursuant to Rule 23(h) of the Federal Rules of Civil Procedure for an attorneys' fees award of $9.055 million, approximately 16.5% of the $55,000,000 common fund created by Plaintiffs'[2] settlement with Defendants Crédit Agricole S.A. and Crédit Agricole CIB ("Crédit Agricole") (the "Settlement"), and reimbursement of $418,962.34 in litigation expenses.  In addition, Plaintiffs seek service awards totaling $240,297.12 for reimbursement of their out-of-pocket expenses and as an incentive for representing the Class for the past nine years and achieving a remarkable overall result.

## INTRODUCTION

Class Counsel's relentless efforts on behalf of Plaintiffs and the Settlement Class have again produced substantial benefits, in this instance increasing the total recovery in this Action by $55 million to $546,500,000.  This additional recovery is a direct result of Class Counsel's litigation strategy and prosecution efforts, as assisted by additional Plaintiffs' Counsel.[3]  Class Counsel have presented strong legal arguments, demonstrated their ability to engage in efficient and effective discovery, developed a persuasive and credible class wide damages model that, Plaintiffs contend, reflect the significant potential liability involved in this case, and stand ready to prosecute the Class's claims through trial.  It is a testament to Class Counsel's skill and capabilities in this Action that this Settlement was reached even before briefing in the appeal and

---

[1] Order Preliminarily Approving Proposed Settlement with Defendants Crédit Agricole S.A. and Crédit Agricole CIB, Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class (S.D.N.Y. May 9, 2022), ECF No. 520.

[2] "Plaintiffs" are California State Teachers' Retirement System ("CalSTRS"), Stephen Sullivan, White Oak Fund LP, any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC ("FLH"). Unless otherwise defined, capitalized terms herein have the same meaning as in the Settlement Agreement. ECF No. 518-1.

[3] "Plaintiffs' Counsel" includes Class Counsel and Berman Tabacco; Glancy Prongay & Murray LLP ("Glancy"); Kirby McInerney LLP ("Kirby"); Cafferty Clobes Meriwether & Sprengel LLP ("Cafferty"); and Nussbaum Law Group ("NLG"). The Declaration of Todd A. Seaver (Berman Tabacco) accompanies this motion.

cross-appeal, *Sullivan, et al. v. Barclays PLC, et al.*, Nos. 19-1769, 19-2012 (2d Cir.) (the "Appeals") had begun.

Class Counsel's excellent work on behalf of Plaintiffs and the Class in this Action is just one of the bases supporting the fairness and reasonableness of their attorneys' fee request. First, the fee request reflects the agreed-upon sliding scale percentage CalSTRS negotiated in retaining Class Counsel prior to CalSTRS' participation in the Action. *See also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008) (a "reasonable" fee reflects "what a reasonable, paying client would be willing to pay" for counsel's services; *see* Part I.A. *infra*. The fee agreement is entitled to "presumption of correctness" because its terms were negotiated by a "sophisticated benefits fund"—such as CalSTRS—"with fiduciary obligations to its members and . . . a sizeable stake in the litigation." *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476, 2016 WL 2731524, at *16 (S.D.N.Y. April 26, 2016) ("*CDS Litig.*") (quoting *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Employees Ret. Sys.*, 814 F.3d 652, 659 (2d Cir. 2016)).  In this context, the negotiated fee is an "ideal proxy" for the fee that should be awarded.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). CalSTRS' *post hoc* support of the fee request based on its close monitoring of Class Counsel's time and efforts provides further confirmation of the appropriateness of the fee request. *See* Declaration of Brian J. Bartow ("Bartow Decl.") ¶¶ 21-22, 26.

Based on cases in this District and the separate risk multiplier cap included in the CalSTRS agreement, the proposed fee award is reasonable, even when considering prior fee awards made in connection with the approval of settlements by the Prior Settling Defendants.[4] *See* Part I.B, *infra*.

---

[4] The "Prior Settling Defendants" are Barclays plc, Barclays Bank plc and Barclays Capital Inc. ("Barclays"), Deutsche Bank AG and DB Group Services (UK) Ltd. ("Deutsche Bank"), HSBC Holdings plc, and HSBC Bank plc. ("HSBC"), Citigroup Inc. and Citibank, N.A. ("Citi"), and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan").

Equally important, all six *Goldberger* factors, including the time and labor expended by Class Counsel, quality of representation, and lodestar cross-check, support awarding the fee request. *See* Part I.C, *infra*.

Plaintiffs' Counsel spent 142,416.94 total hours prosecuting this case from inception, and 3,222.16 hours since March 1, 2019 (the cutoff date in Class Counsel's last fee motion, *see* ECF No. 471) to achieve this extraordinary additional result for the Class. The results of that work are evident and adequately support Plaintiffs' Counsel's fee request.

Plaintiffs' Counsel also seek reimbursement of $418,962.34 for out-of-pocket litigation costs and expenses incurred from March 1, 2019 through present. *See* Part II, *infra* These expenses, described in the accompanying declarations of Vincent Briganti ("Briganti Decl."), Benjamin M. Jaccarino ("Jaccarino Decl."), and Todd A. Seaver ("Seaver Decl."), were incurred for the Class's benefit and predominantly related to engaging specialized appellate counsel to assist with prosecuting the Appeals. Such costs are reasonable and should be awarded by the Court. Plaintiffs also seek Incentive Awards relating to their representation of the Class since the inception of the Action. *See* Part III, *infra*. Plaintiffs willingly undertook this representation, and their expenses and efforts should also be compensated.

## ARGUMENT

### I.   CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also CDS Litig.*, 2016 WL 2731524, at *16 (quoting *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 86 (2d Cir. 2010)). Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method" although "the trend in this Circuit is toward the

percentage method." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). Class Counsel's attorneys' fee request is reasonable under either approach because it: (1) is consistent with the fee schedule CalSTRS negotiated at arm's-length when it first retained Class Counsel, which includes both percentage and lodestar risk multiplier caps; (2) is within the range of "percentage method" fee awards made in this Circuit; and (3) satisfies all six *Goldberger* factors, including the lodestar "cross-check." *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

A. **The Fee Request Comports with the Fee Scale Negotiated by CalSTRS and Has CalSTRS' Approval**

The touchstone of "reasonableness" when evaluating attorneys' fees is "what a reasonable, paying client would be willing to pay" for counsel's services. *See Arbor Hill*, 522 F.3d at 184 n.2; *see also Goldberger*, 209 F.3d at 52 ("market rates, where available, are the ideal proxy for [class counsel's] compensation."). Courts accordingly give great weight to negotiated fee agreements because they typically reflect actual market rates. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("In many cases, the agreed-upon fee will offer the best indication of a market rate."). For example, there is "a well-recognized rebuttable 'presumption of correctness' given to the terms of an *ex ante* fee agreement between class counsel and lead plaintiffs" applied in antitrust cases where the fee was negotiated by a "sophisticated benefits fund with fiduciary obligations to its members and where that fund has a sizeable stake in the litigation." *CDS Litig.*, 2016 WL 2731524, at *16 (quoting *Flanagan*, 814 F.3d at 659); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001).

CalSTRS is the largest educator-only pension fund in the world and the second largest pension fund in the United States, with more than 980,000 members and beneficiaries, and an investment portfolio currently valued at more than $300 billion. Bartow Decl. ¶ 4. A sophisticated

market participant with a keen interest in protecting its members and ensuring financial markets are free from manipulative and anticompetitive forces, CalSTRS' regular practice prior to entering a complex litigation is to negotiate a retainer agreement with a contingent fee structure. *Id.* ¶ 5-7. In this case, recognizing the attendant risks of the litigation, CalSTRS negotiated a graduated fee structure that provides for a fee of 23% for the common fund on the first $100 million recovered ("Band 1"), 22% on the next $200 million recovered ("Band 2"), 19% on the next $200 million recovered ("Band 3") and 16.0% fee percentage on any recoveries above $500 million ("Band 4"). *Id.* ¶ 7. CalSTRS' negotiation with Class Counsel of the declining percentage fee, constitutes "an ideal proxy for [Class Counsel] compensation." *Goldberger,* 209 F.3d at 52. The retainer agreement further limits the total aggregate fee received by Plaintiffs' Counsel to a risk multiplier of 3.5. Bartow Decl. ¶ 7.  Class Counsel respectfully submits that this cap is a strong indication of the appropriate aggregate lodestar multiplier in light of the risk of this Action.  *See* Part I.D, *infra*.

The $9,055,000 attorneys' fee request reflects a blended rate of approximately 16.5% (19% of the remaining $8.5 million in Band 3, and 16% on the $46.5 million in Band 4) and complies with CalSTRS' retainer.  If the fee request is awarded in full, the aggregate risk multiplier will be approximately 1.61, less than half of the 3.5 multiplier permitted under the retainer agreement.

Further, CalSTRS has approved the fee request based on its supervision of the Action. CalSTRS' General Counsel reviewed Class Counsel's time on a regular basis, and CalSTRS actively participated in the prosecution of the claims here.  Bartow Decl. ¶ 10-22; Joint Decl. ¶¶ 67-68. Based upon Mr. Bartow's knowledge of the risks of continued prosecution and the skillfulness of Class Counsel's prosecution of the claims in light of those risks, Mr. Bartow has submitted a declaration supporting the requested fee.  Bartow Decl. ¶¶ 23-26.  CalSTRS' *ex ante* judgment about the attorneys' fees in this case, as well as CalSTRS' *post hoc* support of the fee

request in light of its involvement in the Action amply exceed the factors identified in *CDS Litig.* to create a presumption of reasonableness here.

**B.**  **Class Counsel's Request is Within the Range Used Under the Second Circuit's Preferred Percentage-Based Methodology**

The reasonableness of the requested fee is further confirmed by the cases applying the "percentage method" of fee calculation favored in this Circuit. *See Wal-Mart Stores*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method"); *see also In re Beacon Assoc. Litig.*, No. 09 Civ. 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) (explaining that "percentage of recovery" is "the preferred method of calculating the award for class counsel in common fund cases"). Courts prefer the "percentage method" because it is easy to administer and avoids the "dubious merits of the lodestar approach." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 485 (S.D.N.Y. 1998) ("*NASDAQ III*") (noting that the percentage method is easy to administer). It also "aligns the interests of the class and its counsel" while incentivizing "the efficient prosecution and early resolution of litigation." *Hall v. Children's Place Retail Stores Inc.*, 669 F. Supp. 2d 399, 401 (S.D.N.Y. 2009) (citation omitted).  Use of the percentage method is particularly appropriate in this instance, as the Settlement simplified the Appeal by eliminating the need for the Second Circuit to review the question of personal jurisdiction over Crédit Agricole.

The fee request by Class Counsel is within, if not below, the range of reasonable attorneys' fees approved in complex class actions in this Circuit, including other "IBOR" cases.  The 16.5% fee request is a smaller percentage than the fees approved in similarly sized settlements.  *See, e.g.*, Order Awarding Attorney's Fees, at 2, *In re JPMorgan Precious Metals Spoofing Litig.*, No. 18 Civ. 10356 (GHW) (S.D.N.Y. Jul. 7, 2022), ECF. No. 114 (awarding 33.3% of a $60 million

common fund as attorneys' fees in a complex CEA class action); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2019 WL 4734396, at *2 (S.D.N.Y. Sept. 23, 2019) (awarding one-third fee from $75 million settlement fund); Order, *In re Perrigo Company PLC Securities Litig.*, No. 19-cv-70 (DLC) (S.D.N.Y. Feb. 18, 2022), ECF No. 331 (awarding one-third fee from $31.9 million settlement); *accord In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 447 n.11 (E.D.N.Y. 2014) ("*Interchange Fee Litig.*") (noting that in complex common fund class actions, "courts have sometimes awarded contingency fees exceeding 30% of the overall fund.").

Due to the pre-negotiated sliding scale, the 16.5% fee request here is less than the fee percentage awarded in connection with the Barclays, Deutsche Bank, HSBC, JPMorgan and Citi settlements in this Action. *See* ECF Nos. 425, 500; *see also In re Interpublic Sec. Litig.,* No. 02 Civ.6527(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("Graduated fees scales recognize both the benefit to the class and the investment of effort by counsel").  It is also consistent with percentages awarded in other cases that also used a sliding scale methodology for recoveries around $500 million.  *Interchange Fee Litig.*, 991 F. Supp. 2d at 445 (adopting a fee schedule that awards a 20% fee on settlement recoveries between $100 million and $500 million, and a 15% fee on the portion of any recoveries between $500 million and $1 billion).

If the Court considers the total fees awarded in the Action, granting the $9.055 million request will result in Plaintiffs' Counsel receiving, in the aggregate, attorneys' fees of $112.44 million, or 20.57% of the $546.5 million recovered.  This percentage is comparable to or less than the total fee awards granted in other similarly sized settlements.  *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF), 2018 WL 6250657, at *3 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of the net settlement fund from a $504.5 million settlement); *In re Initial Pub.*

*Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding one-third of the net settlement fund arising from a $586 million settlement). Regardless of how the fee request is framed, it is objectively reasonable when compared to fee percentages awarded in other cases.

**C.** **The Requested Fees are Supported by the *Goldberger* Factors**

The requested fee is also supported by the application of the six-factor reasonableness test set forth in *Goldberger*.[5]

1. *The Time and Labor Expended*

This Settlement is the product of the continued investigation, diligence and skill of Class Counsel, who are among the most experience attorneys litigating interest rate benchmark manipulation cases. They shouldered the risk of the litigating this Action and, through their work, continue to produce outstanding results for Plaintiffs and the Class.

While Class Counsel's work since February 28, 2019 (the cutoff date for Plaintiffs' last fee motion, *see* ECF No. 471), was integral in achieving the Settlement, Class Counsel's earlier efforts laid the foundation for this Settlement. A description of the efforts of Plaintiffs' Counsel can be found in the Joint Declaration accompanying this brief, as well the declarations filed in support of the prior settlements. *See* ECF Nos. 403-04, 411, 472-473, 483. A summary of Class Counsel's and additional Plaintiffs' Counsel's work is described below.

a. Settlement Negotiations with Crédit Agricole

Negotiations between Plaintiffs and Crédit Agricole to resolve their dispute initially began in November 2019. Joint Decl. ¶ 17. In advance of these discussions, Class Counsel conducted targeted searches through the discovery and cooperation materials it received and reviewed

---

[5] Courts evaluating whether a fee is "reasonable" must consider: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation. . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

regulatory settlements and findings to compile information on Crédit Agricole's culpability. *Id*. The information generally informed Class Counsel's negotiation strategy, and certain key findings were integrated into robust settlement presentations. *Id*. Using this information, Class Counsel engaged in preliminary settlement discussions with Crédit Agricole's counsel that continued over several months. The Parties discussed their views of the factual and legal issues in the case as to Crédit Agricole, and what opportunities there may be to pursue a settlement. *Id*. ¶ 18. Ultimately, this first attempt at a settlement stalled by March 2020. *Id*. ¶ 20.

In November 2020, settlement negotiations resumed, with the Parties sharing their updated views on the case, Crédit Agricole's potential exposure, and the measure of damages in the event of liability. *Id*. ¶ 21. After months of preliminary negotiations, on June 22, 2021, the Parties reached an agreement in principle and signed a settlement term sheet ("Term Sheet"). *Id*. Extensive negotiations continued between the Parties over the next nine months to reduce the Term Sheet to a formal settlement agreement, culminating in the execution of the Settlement Agreement on March 10, 2022. *Id*. ¶ 22.

### b. Class Counsel's Efforts Since March 1, 2019

In addition to negotiating the Settlement with Crédit Agricole, Class Counsel continued to actively advance the Action. After successfully filing and obtaining final approval of the settlements with Citi and JPMorgan, on June 14, 2019, Class Counsel timely filed Plaintiffs' notice of appeal from certain orders, including the February 21, 2017 Order denying in part and granting in part Defendants' motion to dismiss. *Id.* ¶ 28. After the stay of the Appeals, Class Counsel engaged specialized appellate counsel Goldstein & Russell, P.C. to assist with developing the strategy, briefing, and arguing Plaintiffs' appeal. *Id.* ¶ 29. Class Counsel worked closely with Goldstein & Russell to craft an appellate brief on behalf of Plaintiffs that was filed on May 17, 2022. *Id.* ¶ 30. Non-settling Defendants will file their brief on or before August 16, 2022. In the

interim, Class Counsel have continued their investigation to identify additional sources of information and cooperation.   Class Counsel also continue to supervise the settlement administration process to ensure an accurate and efficient processing of the over 40,000 claims received. *Id.* ¶ 33.

  c. <u>Plaintiffs' Counsel Substantial Prior Work</u>

   i.  **Substantial Discovery Efforts.**

Class Counsel have devoted substantial resources in obtaining and analyzing discovery, including:

- analyzing more than one million pages of documents, tens of thousands of audio files and other data received from Prior Settling Defendants. *Id.* ¶ 35.

- participating in dozens of meet-and-confers concerning documents and data production, including negotiating access to transaction data essential for class certification. *Id.* ¶ 46.

- working under significant time pressure given the Court's schedule to complete discovery. *Id.* ¶ 44.

- leveraging in-house technological expertise to locally deploy Relativity, a sophisticated document review platform, to greatly reduce the hours required for review and to prioritize the most relevant files. *Id.* ¶ 38.

- using sophisticated document review software to exploit potential key terms through smart searches, "relational searching" and other analytic tools. These tools identified relevant documents, followed themes and dates of conversations, and cross-referenced and matched them to significant individuals. *Id.* ¶ 39.

- identifying over 1,400 potential instances of agreement or manipulation, over 400 instances of potential admissions of manipulation, and over 100,000 relevant documents. *Id.*

- preparing witness lists and correlating witnesses to significant documents. *Id.* ¶ 48.

- preparing Plaintiffs' expert witnesses for deposition and defending the depositions during two separate all-day depositions. *Id.* ¶¶ 64-66.

Class Counsel also responded to Citi and JPMorgan's discovery requests, working closely with CalSTRS and FrontPoint/FLH to identify responsive documents. *Id.* ¶ 53. Specifically, Class Counsel:

- worked with former FrontPoint personnel to identify and collect relevant documents (*id.* ¶ 54);

- reviewed boxes of documents held in storage for information responsive to document requests and interrogatories (*id.* ¶ 55);

- collected and reviewed over 457,000 documents of potentially relevant documents to Relativity (*id.* ¶ 56);

- produced over 49,000 pages of FrontPoint's and CalSTRS' documents (*id.* ¶ 59).

ii.     **Development of the Class Wide Models of Alleged Violative Conduct and Price Impact and Preparation of Class Certification Reports**

Even before all the necessary data and documents were available, Class Counsel engaged in comprehensive discussions with industry and economic experts to outline a strategy for class certification. Class Counsel decided to use two experts to develop expert reports relating to (1) JPMorgan's and Citi's alleged violations of customs and standards in the euro-denominated interbank loan market and the Euribor Products market, and (2) common impact and common proof of damages. *Id.* ¶ 60.

To assist the expert preparing the report on the alleged violations of market customs and standards, Class Counsel provided the expert with relevant policy and procedure guides produced by Citi and JPMorgan, as well as related communications. *Id.* ¶ 61. The expert used these documents to support his ultimate opinion. *Id.*

Plaintiffs' second expert employed a benchmark comparison approach to demonstrate how Plaintiffs could show common impact and common proof of damages. *Id.* ¶ 62. Class Counsel obtained nearly a decade's worth of historical Euribor submissions data and benchmark data that

could be used to demonstrate the artificiality caused by Euribor manipulation. *Id.* Plaintiffs' expert recommended applying a regression analysis of the relationship between Euribor and the benchmark data during the alleged manipulated and unmanipulated periods to assess where artificiality could be objectively observed. *Id.* To ensure that this model was defensible, additional research was performed to understand the use of regression analysis in expert reports and the commonly accepted characteristics of such analysis, as well as the use of control periods in expert analysis and the standards applied to such data. *Id.* This research helped Class Counsel to ensure the expert report properly framed the inquiry and would ultimately be deemed reliable. *Id.*

*****

Plaintiffs' Counsel have spent more than 142,400 hours over nine years prosecuting this Action, with Class Counsel contributing the vast majority of time (over 131,000 hours) and resources to the case. The fruits of this labor are evident in the extraordinary recovery of $546,500,000 thus far for the Settlement Class. Accordingly, this *Goldberger* factor weighs heavily in favor of granting the fee request.

2. *The Risk of the Litigation*

The risk of the litigation is the preeminent *Goldberger* factor. *See Interchange Fee Litig.*, 991 F. Supp. 2d at 440 ("The most important *Goldberger* factor is often the case's risk"); *see also In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. 12 Civ. 5575 (SWK), MDL 1500, 2006 WL 3057232, at *15 (S.D.N.Y. Oct. 26, 2006) (the judiciary's focus is on "fashioning a fee" that encourages lawyers to "undertake future risks for the public good"); *Goldberger,* 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."). The risk of undertaking litigation is "measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. As this Court previously

observed, the claims involved in this Action were particularly high risk. *See* May 17, 2019 Settlement Hearing Tr. at 22-23 (ECF No. 504).

**Risk of Prosecuting the Case as Class Counsel**: Class Counsel took this case on a fully contingent basis and invested considerable time, money, and resources to advance the Action. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."). As is evident from the proceedings thus far, the claims against Crédit Agricole were particularly high risk in light of the personal jurisdiction defense available to Crédit Agricole, which led to the dismissal of claims against it and the subsequent appeal of that decision to the Second Circuit.

When this Action was initiated, it was also unclear whether a private right of action was available under antitrust laws. The risks of dismissal of private antitrust claims were realized in multiple cases shortly after filing this case. *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 688 (S.D.N.Y. 2013) ("*LIBOR I*"). Plaintiffs' antitrust claims survived here because the Second Circuit's decision in *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 771-75 (2d Cir. 2016), vacated the prior consensus that private plaintiffs did not have antitrust claims for benchmark rate manipulation. *See Sullivan v. Barclays plc*, No. 13-cv-2811, 2017 WL 685570, at *13 (S.D.N.Y. Feb. 21, 2017). When *Gelboim* was decided, Class Counsel had already been prosecuting these claims in high-risk conditions for thirty-nine months. *Gelboim* did not, however, mitigate other risks such as personal jurisdiction and the inherent difficulty of litigating against some of the world's largest financial institutions with the financial resources and ability to prolong this case for years.

Due to these high risks and despite the presence of an ACPERA applicant, no companion or tag along class actions were filed. Accordingly, Class Counsel assumed all of the foregoing risks alone, bearing the costs and potential loss on a contingent basis. *See In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 (FSH), 2005 WL 3008808, at *14 (D.N.J. Nov. 9, 2005) (identifying "the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by plaintiffs, and the fact that the risk of failure and nonpayment in an antitrust case are extremely high" as risks in an antitrust class action.).

**Risk of Certifying a Class and Establishing Liability**: Assuming Plaintiffs prevail on appeal, Plaintiffs would still face enormous challenges in certifying a litigation class and establishing liability. These antitrust claims involving both domestic and foreign misconduct are inherently complex. At class certification, Class Counsel would have to demonstrate, supported by expert testimony, that Defendants' alleged manipulation of the Euribor Products market caused class wide impact, an argument Defendants would vigorously oppose with expert testimony of their own. Class Counsel would need to establish Defendants' liability using evidence that in part uses technical financial language and industry jargon with which a factfinder is likely unfamiliar. Such information would also need to be used to establish common impact and show that class wide damages could be calculated based on common proof. The risks associated with certifying a class and establishing liability independently satisfy this *Goldberger* factor.

**Risk of Establishing Damages**: Crédit Agricole would have argued that it was not liability for any of the damages that Plaintiffs allege. In addition, there were risks associated with establishing a class wide damages model. *See In re Platinum and Palladium Commodities Litig.*, No. 10 CV 3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) ("[I]n any market manipulation or antitrust case, [p]laintiffs face significant challenges in establishing liability and

damages."). For example, Plaintiffs' case depended on showing what Euribor would have been absent manipulation. Euribor is intended to reflect the cost of borrowing Euros in the interbank money market. Class Counsel, with the assistance of its experts, had to show that the Euribor was not reflective of such borrowing costs. Plaintiffs' experts opined on whether there were violations of the customs and standards in the relevant markets, and on how common impact and common proof of damages could be used to calculate class wide damages. *See* Joint Decl. ¶ 62. These opinions were thoroughly scrutinized when Citi and JPMorgan deposed Plaintiffs' experts. *Id*. ¶¶ 64-66. While Class Counsel is confident in its position that class wide damages could be determined, there is always uncertainty where a battle of experts is involved. *Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (noting the complexities of calculating damages in class actions); *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (citing *Chatelain* and stating the complex issue of calculating damages incurred by the Class requires a battle of the experts). Given the risks involved with the litigation, the requested attorneys' fee is appropriately calibrated.

3. *The Magnitude and Complexity of the Case*

A greater fee award is warranted for counsel prosecuting complex class action cases. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award."); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") ("[C]lass actions have a well deserved reputation as being most complex"). Complex cases require a greater level of investment, in terms of effort, expertise, and resources, by counsel to competently litigate the claims and issues at stake on behalf of plaintiffs and the class. Class actions involving antitrust and commodities claims stand out as some of the most "'complex, protracted, and bitterly fought.'" *Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650,

670 (S.D.N.Y. 2015) (citations omitted); *see also In re Platinum and Palladium Commodities Litig.,* 2014 WL 3500655 at *12 (noting that commodities cases are "complex and expensive" to litigate); *In re Vitamin C Antitrust Litig.*, No. 06 Md. 1738 (BMC)(JO), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). This case is no exception.

**Complexity**: This case involves a conspiracy among multiple banks and interdealer brokers to fix Euribor and Euribor Products prices over a Class Period of five years and nine months through multiple means, including, *inter alia*: (1) making false Euribor submissions; (2) "pushing cash" with manipulative transactions; (3) "spoofing" the market with false bids and offers; and (4) sharing proprietary information. ECF No. 174 (Fourth Amended Class Action Complaint) ¶ 18.  The amount of work required to understand the inner workings of a cartel with this level of sophistication was "extraordinary" in both its "complexity and scope" and required Class Counsel to master the properties of complex financial instruments and markets. *See In re GSE Bonds Antitrust Litig.*, No. 19 Civ. 1704 (JSR), 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020) (finding "complexity [is] present [where] plaintiffs claimed that the defendants colluded in the GSE Bond market over more than seven years, involving thousands of bond issuances, and implicating sixteen defendants"); *In re Holocaust Victim Assets Litig.*, No. CV 06-0983 (FB)(JO), 2007 WL 805768, at *46 (E.D.N.Y. Mar. 15, 2007).

**Magnitude**: This is a massive case. Over the course of nine years of litigation involving up to 20 Defendants, the parties have produced over 520 docket entries associated with four amended complaints and motions to dismiss, transfer venue, reconsider orders, and issue a request to obtain documents via The Hague Convention. The motion to dismiss briefing involved a total of six memoranda of law, 19 declarations, numerous exhibits, and 14 letter briefs discussing decisions issued after the motion had been fully briefed. There have been hundreds of thousands

of documents, spreadsheets and audio files produced, and thousands of hours of work spent on understanding all of this information.  The appeal and cross-appeal of the Court's decisions further expanded the cost and duration of the Action. The nature, duration, size of the case, complexity of the financial instruments, and sophistication and the depth of the conspiracy weigh heavily in favor of approving the requested fee.

    4.  *Quality of Representation*

"[T]he quality of representation is best measured by results," *Goldberger*, 209 F.3d at 55, which are evaluated in light of "the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008).

**Results Obtained**: The settlements reached so far provide significant value to the Class. $491,500,000 has already been obtained from Barclays, Deutsche Bank, HSBC, JPMorgan and Citi, in and of itself an extraordinary result by Class Counsel. The Settlement with Crédit Agricole will add $55,000,000, bringing the total funds available to the Class to $546,500,000. These funds will provide Class members with an immediate recovery.

Moreover, the size of the Settlement Fund may continue to grow as Class Counsel continue to appeal Plaintiffs' claims against the non-settling Defendants. In negotiating the Settlement, Class Counsel secured significant cooperation from Crédit Agricole intended to assist with the prosecution of any claims against any non-settling Defendants remanded to this Court. *See* Settlement Agreement ¶¶ 25-29.  This cooperation was a significant component of the Settlement Agreement, requested to enhance Class Counsel's ability to further prosecute the Action. Class Counsel acted in the best interests of the Class and protected Plaintiffs' potential ability to pursue claims against the non-settling Defendants.

The Settlement Class consists of numerous institutional investors, including Plaintiffs, with the sophistication and resources to object to the Settlement or opt out to pursue claims on their own. While the deadlines to object or opt out have not passed, it is noteworthy that no objections have been lodged and only two potential Class Member have opted out of the Settlement. *See* Straub Decl. ¶ 29-31. The Class's reaction thus far provides another indication of the incredible results achieved in this Action.

**Background of Lawyers Involved**: Class Counsel have decades of experience prosecuting class action cases, including some of the largest class action recoveries under the commodities and antitrust laws.[6] This includes specific expertise in benchmark manipulation as demonstrated by Class Counsel's current tenure as lead counsel in cases alleging anticompetitive and manipulative conduct for several "IBOR" rates and the London Silver Fix.[7] Additional examples of Class Counsel's more than 70 years of combined experience with complex litigation are detailed in Class Counsel's resumes.

Another consideration for assessing the quality of the representation is "[t]he quality of the opposing counsel" in the case. *See Maley*, 186 F. Supp. 2d. at 373. The valuable settlement that Class Counsel secured cannot be understated given the caliber of Crédit Agricole's counsel in this Action. *See Meredith Corp.*, 87 F. Supp. 3d at 670 (noting that counsel's achievement in "obtaining valuable recompense . . . for its clients is particularly noteworthy given the caliber and vigor of its

---

[6] *See* ECF Nos. 518-6 (attaching Lowey's firm resume), 518-7 (attaching Lovell's firm resume).

[7] *See, e.g.*, *Sonterra Capital Master Fund Ltd. et al. v. Credit Suisse Group AG et al.*, No. 15-cv-871 (SHS) (S.D.N.Y.); *In re London Silver Fixing Ltd., Antitrust Litig.*, No. 14-md-2573 (VEC) (S.D.N.Y.); *Sonterra Capital Master Fund Ltd. et al. v. Barclays Bank plc*, 15-cv-3538 (VSB) (S.D.N.Y) (Sterling Libor); *Fund Liquidation Holdings LLC v. Citibank, N.A.*, 16-cv-5263 (AKH) (S.D.N.Y.) (SIBOR); *Laydon v. Mizuho Bank Ltd., et al.*, No. 12-cv-3419 (GBD) (S.D.N.Y.) and *Fund Liquidation Holdings LLC as assignee and successor-in-interest to Sonterra Capital Master Fund, Ltd., et al. v. UBS AG, et al.*, No. 15-cv-5844 (GBD) (S.D.N.Y.); and *Richard Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.).

adversaries").[8] The fact that Class Counsel successfully prosecuted this Action for more than nine years against other formidable opponents leading to the recovery of more than a half billion dollars further reflects the quality of representation provided.  The work that Class Counsel and defense counsel performed led this Court to conclude when reviewing prior settlements in this case that the "lawyering was a judge's dream."  *See* May 17, 2019 Settlement Hearing Tr. at 31 (ECF No. 504).

5.  *The Fee is Reasonable in Relation to the Settlements*

Courts evaluate the requested fee in relation to the settlement by looking to "comparable cases" for "guideposts." *See Interchange Fee Litig.*, 991 F. Supp. 2d at 443-44 (evaluating a fee request against other "large class cases with court-set fees").  The fee requested here is reasonable in relation to the settlement for at least two reasons:

*First*, Class Counsel's request for approximately 16.5% of the common fund comes directly from the graduated fee scale that CalSTRS negotiated before joining the action. *See* Bartow Decl. ¶ 7.

*Second*, the graduated fee CalSTRS negotiated is less than the fee approved in connection with the earlier settlements in this Action. This satisfies a key legal "guidepost" that Judge Gleeson identified in large class action cases—that "the percentage of the fund awarded should scale back as the size of the fund increases." *See Interchange Fee Litig.*, 991 F. Supp. 2d at 444. Other courts in this District have approved fee awards in large antitrust class cases based on a graduated fee scale. *See CDS Litig.*, 2016 WL 2731524, at *17 n.24; *Interchange Fee Litig.*, 991 F. Supp. 2d at 445; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 ("Graduated fees scales recognize

---

[8]  *See also NASDAQ III*, 187 F.R.D. at 488 (approving attorneys' fee award where defendants were represented by "several dozen of the nation's biggest and most highly regarded defense law firms."); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2020 WL 7481292, at *2 (S.D.N.Y. Dec. 18, 2020) (litigating against sophisticated opposing counsel with a well-funded defendant are "the hallmarks of a challenging case.").

both the benefit to the class and the investment of effort by counsel"). Moreover, as discussed above, the fee request is comparable to or less than the fee awards for similarly sized settlements. *See* Part I.B, *supra.* The requested fee is reasonable in relation to the settlement achieved here and compares favorably to other concrete "guideposts" such as the fees awarded in analogous cases.

6.  *Public Policy Supports Approval*

Had Class Counsel not taken on the risk of this lawsuit in February 2013, the class of investors in Euribor Products would have been left without recompense for their losses. Despite the subsequent government investigations and certain Defendants' admissions of wrongdoing, many investors who were harmed by Defendants' conspiracy would not have received any money at all. *See, e.g.*, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) ("providing lawyers with sufficient incentive to bring common fund cases . . . serve[s] the public interest") (citations omitted).  With certain limited exceptions, none of the regulatory fines or settlements were allocated to private investors.

Public policy encourages enforcement of the antitrust laws through private civil suits to deter infringing conduct in the future. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This Court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."). Awarding a reasonable percentage of the common fund further ensures that Class Counsel retains the ability and incentive to pursue antitrust violations at their own expense even when recovery is uncertain. *See Goldberger*, 209 F.3d at 51 ("There is . . . commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.").

D.  **The Lodestar Cross-Check Supports the Requested Fee**

Class Counsel's fee request is also reasonable under the lodestar method, which has "fallen out of favor . . . because it encourages bill-padding and discourages early settlements." *In re*

*Colgate-Palmolive*, 36 F. Supp. 3d at 353. Courts in this Circuit use the lodestar "a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2018 WL 5839691, at *5 (S.D.N.Y. Nov. 8, 2018).  There is no windfall here.

Plaintiffs' Counsel have spent 142,416.94 hours working in this Action as of June 30, 2022, for an aggregate lodestar of $69,803,958.95.  *See* Joint Decl. ¶75, Briganti Decl., Jaccarino Decl.; Seaver Decl.  In addition to applying certain rate caps, and auditing the time for reasonableness and necessity, Class Counsel froze the lodestar for the work performed prior to March 1, 2019 at their 2019 rates rather than applying their current rates to those hours.  The $9.055 million fee requested, when combined with the previously awarded fees totaling $103,385,000 million, constitutes a 1.61 multiplier.  This is far less than the negotiated risk multiplier cap in the CalSTRS's fee agreement, demonstrating that the full fee will not result in an "unwarranted windfall." *Goldberger v. Integrated Res., Inc.*, 209 F.3d at 49.[9]  It is also comparable or less than the range of multipliers approved in this and other circuits.[10]

## II.   CLASS COUNSEL'S EXPENSES ARE REASONABLE

The attorneys whose work leads to the creation of "a common settlement fund for a class are entitled to reimbursement of [reasonable] expenses that they advance to a class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015); *see also In re Arakis Energy*

---

[9] Under the CalSTRS fee agreement such agreement, the risk multiplier is based on the total lodestar since inception. But even if the risk multiplier were calculated solely based on Class Counsel's incremental lodestar since March 1, 2019, the 9.055 million fee request in this application would represent a risk multiplier of 3.13 on that lodestar.

[10] *See, e.g.*, *CDS Litig.*, 2016 WL 2731524, at *17 (approving a lodestar multiplier of "just over 6" in a complex antitrust class action); *Beckman v. KeyBank N.A.,* 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (approving a multiplier of 6.3 in class action, explaining that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Maley*, 186 F. Supp. 2d at 371 (holding that a 4.65 lodestar multiplier is modest, fair, and reasonable); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where the lodestar multiplier ranged up to 8.5).

*Corp. Sec. Litig.*, No. 95 CV 3431(ARR), 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."). Plaintiffs' Counsel incurred $418,962.34 in expenses from March 1, 2019 to the present. *See* Joint Decl. ¶ 77-78. This amount is well below the $1 million Class Counsel advised in the Court-approved notice sent to Settlement Class Members. *See* ECF No. 518-3 at 7.

These costs and expenses were "incidental and necessary to the representation of the [C]lass," and should be reimbursed. *See Beckman*, 293 F.R.D. at 482. Since March 1, 2019, $267,000 (or 63.6%) of Plaintiffs' Counsel's reimbursable expenses went towards professional, consulting and expert fees, which involved engaging Goldstein & Russell to assist Plaintiffs in the Appeals.

## III.  THE COURT SHOULD GRANT PLAINTIFFS' INCENTIVE AWARDS REQUEST

Awards to class representatives, whether termed as "service" or "incentive" awards, are granted at the discretion of the Court to "compensate class representatives for their services to the class and simultaneously serve to incentivize them to perform this function." WILLIAM B. RUBENSTEIN, 5 NEWBERG ON CLASS ACTIONS § 17:1 (5th ed. 2011). In deciding whether to grant such awards, a court considers "'the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff . . . and, of course, the ultimate recovery.'" *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (quoting *Roberts v. Texaco*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)); *see also Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM), 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens

they endure during litigation."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) ("It is important to compensate plaintiffs for the time they spend and the risks they take."). Further, courts recognize that out-of-pocket costs incurred by class representatives are reimbursable as part of a service award. *See Warren v. Xerox Corp.*, No. 01-CV-2909(JG), 2008 WL 4371367, at *6 n.3 (E.D.N.Y. Sept. 19, 2008). Based on these factors, service awards for Plaintiffs are warranted.

As set forth in their respective declarations, Plaintiffs were vigilant in their representation of the Class. Their requests for incentive awards are based upon the substantial amount of time devoted to and costs incurred in the Action by Plaintiffs. *See generally* Bartow Decl. on behalf of Plaintiff CasSTRS; Declaration of Plaintiff Stephen Sullivan; Declaration of William Sullivan on behalf of Plaintiff White Oak Fund LP (submitted herewith).[11] Plaintiffs played active roles throughout this litigation in pursing their claims against Defendants and provided valuable assistance to Class Counsel by, among other things, providing information, data and documents at the outset of the litigation, reviewing pleadings and motions, providing discovery, and keep apprised of key developments in the case.

The efforts by Plaintiffs are precisely the types of activities courts have found to support reimbursement to class representatives. *See, e.g., In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 873 (S.D.N.Y. 2018) (Rakoff, J.) (awarding three class representatives a total of $400,000 as compensation for, among other things, responding to discovery, "providing oversight of the mediation and settlement process," and reviewing and authorizing settlement).; *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to the New Jersey Attorney General's Office and $70,000

---

[11]  FLH has opted not to seek an Incentive Award at this time.

to certain Ohio pension funds, to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives"); *In re Satyam Computer Servs. Ltd. Sec. Lit*ig., No. 09-MD-2027-BSJ, slip. op. at 3-4 (S.D.N.Y. Sept. 13, 2011), ECF No. 365 (awarding an aggregate amount of $195,111 as reimbursement for the costs and expenses of class representatives directly relating to their services in representing the class). As Judge Sweet observed in *In re Gilat Satellite Networks, Ltd.,* "[s]ince the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation, the motion for . . . expenses for Lead Plaintiffs is granted." No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007). Similarly, in *In re American International Group, Inc. Securities Litigation*, Judge Batts found that "the request of [lead plaintiffs] OPERS and STRS Ohio for reimbursement of $71,910.00 in lost wages related to their active participation in this action is reasonable," No. 04 Civ. 8141 (DAB), 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012). Here, the awards sought by Plaintiffs are reasonable and fully justified based on their extensive involvement in the Action and should be granted.

The Settlement Notice to Class Members stated that in the event Plaintiffs sought reimbursement for their expenses and time devoted to this litigation, such amount would not exceed $400,000. To date, there have been no objections to this request. Class Counsel respectfully request that the Court award $226,347.12 to CalSTRS; $9,000.00 to Stephen Sullivan; and $4,950.00 to White Oak Fund LP, as compensation for their reasonable costs and expenses incurred in representing the Class. The total incentive awards of $240,297.12 represent

24

0.44% of the Crédit Agricole Settlement, and 0.044% of the total settlements achieved in this Action.  These percentages are comparable to incentive or service awards granted in other cases. *See In re GSE Bonds Antitrust Litig.,* 19-cv-1704 (JSR) (S.D.N.Y.); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), ECF No. 724 (S.D.N.Y. Nov. 10, 2016) (awarding $580,000 in incentive awards to plaintiffs, representing 1% of the settlement fund); *Dial Corp.*, 317 F.R.D. at 438-39 (awarding 0.12% of the $244 million settlement fund ($300,000) to six class representatives; *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273, at *6 (E.D.N.Y. Oct. 9, 2015) (granting $540,000 in incentive awards, representing 0.06% of the total $900 million in settlements, to six class representatives). Awards of $50,000 or more to a class representative in antitrust and other complex class actions are not uncommon. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720(MKB)(JO), ECF No. 7823 (E.D.N.Y. Dec. 16, 2019) (awarding class representatives between $53,600 and $208,000 for out-of-pocket expenses and as a service award); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126(JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (granting six named plaintiffs incentive awards of $50,000 each, and $100,000 to two other named plaintiffs).

## **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully requests that the court approve their application for attorneys' fees and costs and incentive awards in the amounts set forth above.

Dated: August 9, 2022

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

_____/s/ Vincent Briganti_____
Vincent Briganti
Geoffrey Horn
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
E-mail: vbriganti@lowey.com
E-mail: ghorn@lowey.com

**LOVELL STEWART HALEBIAN
JACOBSON LLP**

_____/s/ Christopher Lovell_____
Christopher Lovell
Gary S. Jacobson
Benjamin M. Jaccarino
500 Fifth Avenue, Suite 2440
New York, NY 10110
Tel.: (212) 608-1900
Fax: (646) 398-8392
E-mail: clovell@lshllp.com
E-mail: gsjacobson@lshllp.com
E-mail: bjaccarino@lshllp.com

_Class Counsel_

**BERMAN TABACCO**
Joseph J. Tabacco, Jr.
Todd A. Seaver
425 California Street, Suite 2300
San Francisco, CA 94104
Tel.: 415-433-3200
Fax: 415-433-6282

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
Lee Albert
122 East 42nd Street, Suite 2920
New York, NY 10168
Tel.: 212-682-5340
Fax: 212-884-0988

**BERMAN TABACCO**
Patrick T. Egan
One Liberty Square
Boston, MA 02109
Tel.: 617-542-8300
Fax: 617-542-1194

**KIRBY MCINERNEY LLP**
David E. Kovel
825 Third Avenue
New York, NY 10022
Tel.: 212-371-6600
Fax: 212-751-2540

_Additional Plaintiffs' Counsel_

26