# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SULLIVAN, WHITE OAK FUND LP, CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT PARTNERS TRADING FUND, L.P., AND FRONTPOINT AUSTRALIAN OPPORTUNITIES TRUST on behalf of themselves and all others similarly situated, | Docket No.: 13-cv-02811 (PKC) |

Plaintiffs,

– against –

BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BNP PARIBAS S.A., CITIGROUP, INC., CITIBANK, N.A., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., CRÉDIT AGRICOLE S.A., CRÉDIT AGRICOLE CIB, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, J.P. MORGAN CHASE & CO., CRÉDIT AGRICOLE CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, SOCIÉTÉ GÉNÉRALE SA, UBS AG AND JOHN DOE NOS. 1-50,

Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT SOCIÉTÉ GÉNÉRALE, SCHEDULING HEARING FOR FINAL APPROVAL THEREOF AND APPROVAL OF THE PROPOSED FORM AND PROGRAM OF NOTICE TO THE SETTLEMENT CLASS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

   I.   THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2) ........... 3

      A.  The Preliminary Approval Standard ....................................................................... 3

      B.  The Settlement Is Procedurally Fair ....................................................................... 4

          1.     The Class Has Been Adequately Represented ................................................. 4

          2.     The Settlement Is the Product of Arm's Length Negotiations .......................... 6

      C.  The Settlement Is Substantively Fair ...................................................................... 7

          1.     The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement .................. 9

          2.     The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii) .............................................................. 13

          3.     The Requested Attorneys' Fees and Other Awards Are Limited to Ensure That the Settlement Class Receives Adequate Relief ......................... 14

          4.     There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class .............................................................. 15

          5.     The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences .......................................................................... 16

          6.     The *Grinnell* Factors Not Expressly Addressed Above Also Support Approval of the Settlement .............................................................................. 16

   II.  THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS ......................................................................................................................... 18

      A.  The Settlement Class Meets the Rule 23(a) Requirements ..................................... 19

          1.     Numerosity ...................................................................................................... 19

          2.     Commonality .................................................................................................... 19

          3.     Typicality ........................................................................................................ 20

          4.     Adequacy ........................................................................................................ 20

      B.  The Settlement Class May Be Certified Under Rule 23(b)(3) ................................. 21

          1.     Predominance ................................................................................................. 21

          2.     Superiority ...................................................................................................... 22

   III. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR ............................... 23

   IV. THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT ............. 24

V.  PROPOSED SCHEDULE OF EVENTS ........................................................................... 25

CONCLUSION .................................................................................................................. 25

APPENDIX A ................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
222 F.3d 52 (2d Cir. 2000) ...................................................................................... 20

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................. 17

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*,
No. 14-cv-09367, 2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018) ............................. 19

*Bolivar v. FIT Int'l Grp. Corp.*,
No. 12-cv-781, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) ............................... 11

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ..................................................................................... 21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ....................................................................................... 9

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ....................................................................................... 21

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................ 12

*Gottesman v. General Motors Corp.*,
436 F.2d 1205 (2d Cir. 1971) ................................................................................... 11

*Harry v. Total Gas & Power N. Am., Inc.*,
889 F.3d 104 (2d Cir. 2018) ..................................................................................... 12

*In re "Agent Orange" Prod. L*iab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 1*984),* aff'd 818 F.2d 145 (2d Cir. 1987) .................. 10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........... 6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-1775 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014),
*adopted,* 2015 WL 5093503 (E.D.N.Y. July 10, 2015) ........................................... 21

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ..................................................................................... 18

*In re Amaranth Nat. Gas Commodities Litig.*,
269 F.R.D. 366 (S.D.N.Y. 2010) ............................................................................. 20

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................. 17

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................................... 4

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   No. 12-md-2330, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)........................................... 15

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .............................................................................................. 17

*In re Credit Default Swaps Antitrust Litig.*,
   No. 13-md-2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ................................. 14

*In re Currency Conversion Fee Antitrust Litig.*,
   224 F.R.D. 555 (S.D.N.Y. 2004) ....................................................................................... 22

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................................. 5, 10

*In re Facebook, Inc., IPO Sec. & Derivative* Litig.,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................................. 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)................................................................................................. 20

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................. 17, 18

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................. 4, 10, 12, 16

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ......................................................................................... 19

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................... 13

*In re Michael Milken and Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................................... 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................... 8, 10, 13, 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................................... 12

*In re Nissan Radiator/Transmission Cooler Litig.*,
    No. 10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013)...................................... 17

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ......................................... 17

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1977) ................................................................................... 7, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................................. passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................................. 15

*In re Platinum & Palladium Commodities Litig.*,
    No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014).......................................... 3, 14

*In re Sinus Buster Products Consumer Litig.*,
    No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ................... 17

*In re Tronox Inc.*,
    No. 14-cv-5495 (KBF), 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ................................ 18

*In re Visa Check/Mastermoney Antitrust Litig.*,
    192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*,  280 F.3d 124 (2d Cir. 2001) ..................................... 12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................................... 11

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)............................................................................................... 20

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015).............................................................................. 11, 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)........................................................................................................... 23

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)................................................................................................. 9

*Ploss v. Kraft Foods Grp., Inc.*,
    431 F. Supp. 3d 1003 (N.D. Ill. 2020) ................................................................................ 20

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982)............................................................................................... 17

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)....................... 6

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983) ........................................................................................................ 23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................................ 4, 5, 23

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ...................................................................................................... 23

**Rules**

FED. R. CIV. P. 23(e)(1) ........................................................................................................................ 3

FED. R. CIV. P. 23(e)(2)(B) .................................................................................................................. 6

FED. R. CIV. P. 23(a)(2) ...................................................................................................................... 19

FED. R. CIV. P. 23(a)(4) ...................................................................................................................... 21

FED. R. CIV. P. 23(c)(2)(B) ................................................................................................................ 23

FED. R. CIV. P. 23(e)(2)(A) .................................................................................................................. 4

FED. R. CIV. P. 23(e)(2)(B) .................................................................................................................. 4

FED. R. CIV. P. 23(e)(2)(C) .................................................................................................................. 8

FED. R. CIV. P. 23(e)(2)(C)(i) .............................................................................................................. 9

FED. R. CIV. P. 23(e)(2)(D) ............................................................................................................ 9, 16

FED. R. CIV. P. 23(e)(3) ...................................................................................................................... 15

FED. R. CIV. P. 23(g) ............................................................................................................................ 5

FED. R. CIV. P. 23(a) .......................................................................................................................... 19

FED. R. CIV. P. 23(b)(3) ................................................................................................................ 21, 22

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH)  § 21.631 (2004) ............................................... 16

## INTRODUCTION

Plaintiffs[1] move under Rule 23(e) of the Federal Rules of Civil Procedure (the "Rules") for preliminary approval of a $105,000,000 Settlement with Defendant Société Générale ("Société Générale" or "Settling Defendant").  In light of the proposed Settlement, the United States Court of Appeals for the Second Circuit granted the Parties' joint motion to sever and remand the appeal and cross-appeal (the "Appeals") as to Société Générale only to permit review of the proposed Settlement pursuant to Rule 23.  *See* ECF No. 552 (Order severing and remanding action).  This Court previously approved similar settlements in this Action between Plaintiffs and Barclays,[2] HSBC,[3] Deutsche Bank,[4] JPMorgan, Citi[5] and Crédit Agricole[6] (collectively, the "Prior Settlements") providing the Settlement Class with cash consideration totaling $546,500,000 and valuable cooperation that has assisted Plaintiffs with the prosecution of the action. ECF No. 424 (Order Granting Final Approval of Barclays, HSBC, and Deutsche Bank Settlements); ECF No. 498 (Order Granting Final Approval of JPMorgan/Citi Settlement); ECF No. 549 (Order Granting

---

[1] "Plaintiffs" are Stephen Sullivan, White Oak Fund LP, California State Teachers' Retirement System ("CalSTRS"), any subsequently named plaintiff(s), and any of their assignees that may exist now or in the future, including but not limited to Fund Liquidation Holdings, LLC.  Unless otherwise noted, capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement of Settlement executed on March 31, 2023 (the "Agreement" or "Settlement Agreement"), attached as Exhibit 1 to the Joint Declaration of Vincent Briganti and Christopher Lovell dated April 14, 2023 ("April 2023 Joint Decl."), filed herewith.  Unless otherwise noted, internal citations and quotation marks are omitted and ECF citations are to the docket.

[2] "Barclays" means Barclays plc, Barclays Bank plc, and Barclays Capital Inc. The "Barclays Settlement" means the Settlement Agreement between Plaintiffs and Barclays, dated October 7, 2015.  ECF No. 218-1.

[3] "HSBC" means HSBC Holdings plc and HSBC Bank plc. The "HSBC Settlement" means the Settlement Agreement between Plaintiffs and HSBC, dated December 27, 2016.  ECF No. 276-1.

[4] "Deutsche Bank" means Deutsche Bank AG and DB Group Services UK Limited. The "Deutsche Bank Settlement" means the Settlement Agreement between Plaintiffs and Deutsche Bank, dated May 10, 2017.  ECF No. 360-1.

[5] "JPMorgan" means JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.  "Citi" means Citibank, N.A. and Citigroup Inc.  The "JPMorgan/Citi Settlement" means the Settlement Agreement between Plaintiffs and JPMorgan and Citi, dated November 21, 2018.  ECF No. 452-1.

[6] "Crédit Agricole" means Crédit Agricole S.A. and Crédit Agricole CIB.  The "Crédit Agricole Settlement" means the Settlement Agreement between Plaintiffs and Crédit Agricole dated March 10, 2022. ECF No. 518-1.

Final Approval of Crédit Agricole Settlement).  If approved, the proposed Settlement with Société Générale would bring the Settlement Class's total recovery to $651,500,000.

The proposed Société Générale Settlement is likely to receive final approval after notice to the Class and thus satisfies the Rule 23 requirements for preliminary approval.  The Settlement was reached after lengthy negotiations over years between experienced counsel and with the input and approval of Plaintiffs, including CalSTRS, one of the largest pension fund systems in the nation.  The Settlement is substantively fair, reasonable, and adequate, requiring Société Générale to provide valuable cooperation and pay $105,000,000 into a Settlement Fund.  Pursuant to the terms of the retention agreement with CalSTRS, Plaintiffs' Counsel will seek no more than 16% of the Settlement Fund or $16,800,000 in attorneys' fees, assuring that the Settlement Class will receive adequate relief from the Settlement.  *See* Agreement ¶¶ 17, 30.  The Settlement Class may be conditionally certified with respect to the Société Générale Settlement as it is identical to the settlement class that this Court previously certified in connection with the Prior Settlements.[7]  *See* Argument.

Accordingly, Plaintiffs respectfully move the Court to enter an order that:

(a)     preliminarily approves Plaintiffs' proposed Settlement with Société Générale, subject to later, final approval;

(b)     conditionally certifies a Settlement Class on the claims against Société Générale solely for purposes of effectuating the Settlement;

(c)     appoints Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP as Class Counsel for the Settlement Class;

(d)     appoints Citibank, N.A., as Escrow Agent for purposes of the Settlement Fund;

(e)     appoints A.B. Data, Ltd. as the Claims Administrator for the Settlement;

---

[7]  Société Générale consents to certification of the Settlement Class solely for the purpose of the Settlement and without prejudice to any position they may take with respect to class certification in any other action or in the event that the Settlement is terminated.  *See* Agreement ¶ 5.2.  Société Générale expressly denies all allegations and liability to Plaintiffs.

(f)     approves Plaintiffs' proposed forms of Notice to the Settlement Class of the Société Générale Settlement (*see* April 2023 Joint Decl. at Exs. 3-5) and the proposed Notice plan (*id.* Ex. 2); and

(g)     sets a schedule leading to the Court's consideration of final approval of the Settlement, including: (i) the date, time, and place for a hearing to consider the fairness, reasonableness, and adequacy of the Settlement; (ii) the deadline for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement; (iii) the deadline for Class Counsel to submit a petition for attorneys' fees and reimbursement of expenses, and incentive awards for Settlement Class representatives; and (iv) the deadline for Settlement Class Members to object to the Settlement and any of the related petitions.

*See* [Proposed] Preliminary Approval Order, filed herewith.

## <u>ARGUMENT</u>

## I.     THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

### A.     The Preliminary Approval Standard

The Court may preliminarily approve and direct notice of the Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies Rule 23(e)(2) and the proposed Class may be certified.  FED. R. CIV. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing the Rule 23(e)(2) standards at preliminary approval).  In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014); *see also Payment Card*, 330 F.R.D. at 30 n.25.  The proposed Settlement here meets this standard.  It is entitled to an initial presumption of fairness and adequacy as it is the result of arm's length negotiations by experienced counsel.  Further, the Settlement provides a significant benefit for the Settlement Class in the face of substantial costs and risks associated with continued litigation.

3

**B.     The Settlement Is Procedurally Fair**

To assess procedural fairness, Rule 23(e)(2) requires the Court to find that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(A)-(B).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

**1.     The Class Has Been Adequately Represented**

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[8] requires that the "interests . . . served by the Settlement [are] compatible with" those of settlement class members. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 110 (2d Cir. 2005) ("*Wal-Mart Stores*").  "Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim." *Id*. at 106-07.

Plaintiffs' interests are wholly aligned with those of the Settlement Class.  All Settlement Class Members, including Plaintiffs, share an overriding common interest in: (1) obtaining the largest possible monetary recovery from Société Générale; (2) obtaining cooperation from Société Générale; (3) developing a factual record sufficient to overcome any dispositive motions filed by Defendants; and (4) establishing Defendants' liability for the alleged Euribor manipulation, and

---

[8] Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under FED. R. CIV. P. 23(a)(4).  *See Payment Card*, 330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context.  As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."); *accord In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019).

quantifying the impact of that manipulation on the prices of Euribor Products.[9] Further, these common interests demonstrate that there are no disabling conflicts between Plaintiffs and the Settlement Class Members that would impede Plaintiffs' ability to fully represent the Class.

Courts evaluating adequacy of representation also consider the adequacy of plaintiffs' counsel. *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."); *accord* FED. R. CIV. P. 23(g).   Interim Lead Counsel have led the prosecution of this Action from its inception, negotiated each of the Prior Settlements, and negotiated the terms of this Settlement.  Interim Lead Counsel were extremely well informed about the strengths and weaknesses of the claims against Société Générale in advance of negotiating the Settlement.  Before and during negotiations with Société Générale, Interim Lead Counsel reviewed and considered Barclays' ACPERA production and settlement cooperation, cooperation materials produced by Barclays, HSBC and Deutsche Bank, and document discovery produced by JPMorgan and Citi.  *See* April 2023 Joint Decl. ¶ 12.  Although the cooperation and document discovery related in significant part to those Defendants' own conduct, the information provided insights into the conduct of other Defendants, including Société Générale.  Further, Interim Lead Counsel had the benefit of expert discovery and analysis completed in connection with preparing for their class certification motion. *Id.,* ¶¶ 12, 45, 55.

Interim Lead Counsel's extensive class action experience, including with complex antitrust and market manipulation claims, also provides substantial support for procedural fairness of the Settlement. *See* April 2023 Joint Decl., Exs. 6 and 7 (firm resumes); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive"

---

[9] *See, e.g., Wal-Mart Stores*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class they seek to represent; *Payment Card,* 330 F.R.D. at 31 ("Defendants' imposition of 'supracompetitive interchange and merchant-discount fees on purchases using Visa- and/or Mastercard-Branded cards, and anti-steering and other restraints'" similarly injured class representatives and absent class members).

experience of counsel in granting final approval of settlement); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). In addition, Plaintiffs' Counsel include firms with extensive experience in complex class actions, and whose assistance prosecuting these claims with Interim Lead Counsel reinforces the adequacy of counsel.

2.      **The Settlement Is the Product of Arm's Length Negotiations**

Procedural fairness is presumed where a settlement is "the product of arm's length negotiations between experienced and able counsel on all sides." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2009 WL 3077396, at *7 (E.D.N.Y. Sept. 25, 2009); *see also* FED. R. CIV. P. 23(e)(2)(B) (courts must consider whether settlement "was negotiated at arm's length"). That presumption applies here, as the Settlement was negotiated by knowledgeable counsel for Plaintiffs and Société Générale, each with a deep understanding of the case's risks and the Settlement's benefits. Interim Lead Counsel have decades of experience litigating antitrust and commodities manipulation cases. *See* April 2023 Joint Decl. ¶¶ 9-11. Société Générale, for its part, is represented by skilled counsel from a top international law firm with extensive experience in litigating class action antitrust cases. *Id.*, ¶ 45.

Negotiations between Plaintiffs and Société Générale to resolve their dispute initially began in February 2017, but these discussions did not progress. *Id.*, ¶ 50. In May 2022, the Parties again raised the possibility of reaching a settlement. *Id.* On May 5, 2022, Interim Lead Counsel and Société Générale's counsel again began initial discussions for a potential settlement. *Id.* For several months, Interim Lead Counsel and Société Générale counsel discussed their views of the factual and legal issues in the case as to Société Générale, and what opportunities there may be to pursue a settlement. *Id.*, ¶¶ 50-51. Settlement negotiations continued, with the Parties sharing their updated views on the case, Société Générale's potential exposure, and the measure of damages in

the event of liability.  *Id.*, 52.  On November 8, 2022, the Parties reached an agreement in principle and signed a Term Sheet.  *Id.*, ¶ 53.  The Parties then moved to sever and remand the Appeals as to Société Générale on November 11, 2022, which was granted.  Settlement discussions continued over the next several months to reduce the Term Sheet to a formal settlement agreement, culminating in the execution of the Settlement Agreement on March 31, 2023.  *Id.*, ¶ 54.

In recommending that the Court approve the Settlement, Interim Lead Counsel have accounted for the uncertain outcome and the risks of further litigation and believe the Settlement confers significant benefits on Plaintiffs and the Settlement Class in light of the risks.  Accordingly, there is "a strong initial presumption that the compromise is fair and reasonable."  *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977) (observing that "great weight" is given to advice of experienced counsel).

### C.    The Settlement Is Substantively Fair

If approved, this $105,000,000 Settlement, together with the Prior Settlements in this Action, would provide the Settlement Class with a combined recovery to date of $651,500,000. Plaintiffs successfully negotiated with Société Générale to provide that none of the Settlement Amount will revert to Société Générale if the Settlement is finally approved, regardless of how many Class members submit proofs of claims. Agreement ¶ 10.  Because claim rates typically fall below 100%, the non-reversion term will substantially enhance Authorized Claimants' recovery.

The Settlement is a significant achievement because this case provides the Class one of the few (if not only) means to recover for Euribor-related misconduct.  The $105 million to be paid by Société Générale will provide an additional recovery to those Settlement Class Members who allegedly suffered losses on their Euribor Product transactions.

Under the Settlement, Société Générale will also provide potentially valuable non-monetary cooperation to Plaintiffs and the Class to aid in the pursuit of claims against the remaining Dismissed Defendants in the event the Second Circuit remands the Action after resolution of the pending Appeals. The cooperation will focus on materials designed to address merits and damages issues likely to be raised in the case.[10] Société Générale, through its counsel, will also provide proffers of fact concerning the Euribor-related conduct alleged in the Action known to Société Générale. Agreement ¶ 28.

In exchange for these benefits, the Settlement Class Members will release Société Générale from all U.S.-based claims relating to the manipulation of Euribor or the prices of Euribor Products which Defendants allegedly manipulated. *Id.* ¶ 15.[11] Plaintiffs will also voluntarily dismiss their claims against Société Générale on the merits and with prejudice. These terms are substantively fair and easily fall within "the range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

To assess substantive fairness, the Court considers whether "the relief provided for the class is adequate," accounting for: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court also evaluates whether the Settlement "treats class members

---

[10] This may include, among other things: (i) trade data pertaining to certain of Société Générale's transactions in Euro-denominated interbank money market instruments; (ii) trade data pertaining to certain of Société Générale's transactions in Euribor Products; and (iii) to the extent they already exist, non-privileged declarations, affidavits, witness statements, or other sworn or unsworn witness statements of former and/or current Société Générale directors, officers, or employees. Agreement ¶ 25.

[11] Plaintiffs are unaware of any other domestic cases involving Euribor that would be impacted by the release in this Action.

equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).  Additionally, Second Circuit courts apply the factors provided in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"),[12] which overlap with Rule 23(e)(2)(C)-(D).  *See Payment Card*, 330 F.R.D. at 29. In this case, Rule 23(e)(2)(C)-(D) and *Grinnell* support preliminary approval of the Settlement.

### 1.    The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36.  Satisfying this factor necessarily "implicates several *Grinnell* factors, including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id*.  Relatedly, to assess whether the recovery is within the range of reasonableness, courts weigh the settlement relief against the strength of the plaintiff's case, including the likelihood of a recovery at trial. *See Grinnell*, 495 F.2d at 463.  This approach "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  As a result, "[d]ollar amounts [in class settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).

---

[12] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.

The consideration that the Settlement provides falls well within the range of what the Court may consider reasonable at final approval. *NASDAQ II*, 176 F.R.D. at 102.  The factual and legal issues in this Action are complex and expensive to litigate.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (finding that the "complex issues of fact and law related to the sale of GSE bonds at different points in time" weighed in favor of preliminary approval); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) ("The complexity of Plaintiffs' claims *ipso facto* creates uncertainty.").  The questions in this Action start with whether the Court has personal jurisdiction over Société Générale and the other Dismissed Defendants for the alleged misconduct and whether Plaintiffs stated a claim under antitrust laws, among others, issues that are currently on appeal to the Second Circuit.[13]

If the Second Circuit remands the Action after finding personal jurisdiction is present and Plaintiffs stated claims for relief, the work to prosecute the Action will expand.  Plaintiffs will need to gather evidence to prove that the remaining Dismissed Defendants are liable for the alleged misconduct.  This case involves esoteric financial products and damages models, and significant discovery is necessary to develop a comprehensive understanding of the market and any alleged misconduct.  Establishing liability will involve obtaining and proving the meaning and significance of evidence, including instant messages and emails, Euribor Product transactions and trading patterns, profit and loss statements, deposition testimony, and other facts collected in discovery.  As is always true in cases involving large document productions, the duration of the case will depend on the time that the non-settling Defendants require to produce their documents, and that the Parties require to review the Defendants' and non-party documents. Dismissed Defendants will

---

[13] *See* ECF No. 286 (Order, dated February 21, 2017, denying in part and granting in part Defendants' motion to dismiss); and ECF No. 339 (Order, dated April 18, 2017, granting the motion of certain Defendants for clarification of the February 21, 2017 Order). *See also* App. Dkt. Nos. 243 at 24-38 (Plaintiffs' Final Form Appellate Opening Brief); 170 at 17-33 (Société Générale's Appellate Response Brief).

also conduct their own discovery and may attempt to provide alternative interpretations or explanations for the evidence supporting Plaintiffs' claims. These competing theories about the relevance of certain evidence may create ambiguities for the factfinder and make it difficult to establish liability.

Litigation costs in this Action have been amplified due to the involvement of experts, and such costs will continue to rise if this case continues. Expert discovery has been necessary given the complex subject matter of the Action. Experts have been or will be retained to provide complex econometric and industry analyses, adding to the cost and duration of the case and triggering a "battle of the experts."[14] This expert discovery would likely lead to *Daubert* motion practice by both sides, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this Action and its focus on a market that would likely be unfamiliar to the average juror, this case presents a significant level of risk and uncertainty. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015).

Unlike the government, private antitrust plaintiffs must prove anticompetitive impact and damages to prevail. *Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir. 1971); *see also*, *Bolivar v. FIT Int'l Grp. Corp.*, No. 12-cv-781, 2019 WL 4565067, at *1 (S.D.N.Y. Sept. 20, 2019) ("it is Plaintiffs who bear the burden of establishing their claimed damages to a reasonable certainty").[15] "Indeed, the history of antitrust litigation is replete with cases in which antitrust

---

[14] *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative* Litig., 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation"). "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

[15] *Compare* Order Instituting Proceeding Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions, *In the Matter of: Total Gas & Power North America, Inc. and Therese Tran*, Docket No. 16-03 (CFTC Dec. 7, 2015) (fining respondent $3.6 million for manipulating natural gas prices), *with Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 114 (2d Cir. 2018) ("Plaintiffs have failed to provide facts sufficient to allege a plausible connection between their trading and [defendant's conduct]."); *see also Special*

plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("*NASDAQ III*"). Plaintiffs' impact and damages theories would have been sharply disputed prior to and at trial, likely involving competing expert opinions concerning what conduct (if any) could be considered actionable conduct to which compensable damages could be ascribed.

The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. Though present in every class action, this risk is significant where defendants are likely to challenge class certification, including by petitioning for an interlocutory appeal under Rule 23(f). *In re GSE Bonds*, 414 F. Supp. 3d at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"). Even if the Court were to certify a litigation class, certification can be reviewed and modified at any time. *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 89 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) ("If factual or legal underpinnings of the plaintiffs' successful class certification motion are undermined once they are tested . . . , a modification of the order, or perhaps decertification, might then be appropriate." ); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a class certification motion], the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement.").

Société Générale's monetary consideration, $105,000,000, is greater than the maximum potential damages for which Société Générale would have argued they were liable had the case proceeded to trial. This Settlement represents an excellent recovery for the Class and a reasonable hedge against the risks of pursuing the claims against Société Générale to trial. *PaineWebber*, 171

---

*Verdict on Indirect Purchases, In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal. Sept. 3, 2013), ECF No. 8562.

F.R.D. at 125 ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). The proposed Settlement provides "the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). It exchanges extensive prosecution costs and a lengthy litigation timeline with respect to Société Générale for finality between Plaintiffs and Société Générale, while providing Plaintiffs and the Settlement Class with valuable information with which to pursue claims against the Dismissed Defendants. Accordingly, the Settlement is well within the range of that which may later be found to be fair, reasonable, and adequate at final approval. *NASDAQ II*, 176 F.R.D. at 102; April 2023 Joint Decl. ¶ 53.

### 2. The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii)

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *Payment Card*, 330 F.R.D. at 40. In addition, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*.

This Court has previously found Plaintiffs' Distribution Plan (ECF No. 382) to be fair and adequate on three separate occasions in connection with the Prior Settlements. *See* ECF Nos. 392; 498 at ¶ 21; 548 at ¶ 21. As previously described to the Court in the Prior Settlements, the Distribution Plan includes (1) a *pro rata* payment, subject to a guaranteed minimum, to each Authorized Claimant (referred to as "Qualified Claimant" in the Distribution Plan) from ten percent (10%) of the Net Settlement Fund relating to their Total Adjusted Volume of transactions in specified transactions; and a *pro rata* payment from ninety percent (90%) of the Net Settlement Fund to each Authorized Claimant with Total Adverse Impact to qualifying transactions caused by the Euribor artificiality. *See* Distribution Plan, ECF No. 382-1 at 2. This methodology of

allocating settlement proceeds based on the amounts of provable artificial impact has been approved as a fair, reasonable, and adequate method of allocating settlement funds not only by this Court but repeatedly by courts in other antitrust and CEA manipulation class action settlements as well. *See, e.g.*, *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *3 (allocations based on net artificiality on each trading day); *In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377, ECF No. 413 ¶ 6 (S.D.N.Y. May 23, 2012) (modifying final judgment to reflect plan of allocation).  The Distribution Plan should again be found to satisfy Rule 23(e)(2)(C)(ii) for this Settlement.

### 3.     The Requested Attorneys' Fees and Other Awards Are Limited to Ensure That the Settlement Class Receives Adequate Relief

Based on an agreed-upon fee scale with CalSTRS in its retention agreement,[16] Plaintiffs' Counsel will seek no more than 16% or $16,800,000 in attorneys' fees, which may be paid upon final approval and will be allocated among Plaintiffs' Counsel in proportion to their contributions to the case.  Should the Court fully approve the requested attorneys' fee award, Plaintiffs' Counsel will have received attorneys' fees of approximately 19.8% of the total recovery in this Action so far.  The proposed attorneys' fee percentage is comparable to sliding fee schedules used to approve fee awards in other similarly complex class actions.  *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 WL 2731524, at *17-18 (S.D.N.Y. Apr. 26, 2016) (approving fee award for $2 billion settlement based on graduated fee scale that proposed a 15% fee award for the portion of the settlement recovery between $400 million to $600 million); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014)

---

[16]   As Plaintiffs previously disclosed, CalSTRS negotiated a retention agreement with Interim Lead Counsel and Plaintiffs' Counsel Berman Tabacco that included a graduated fee schedule to govern contingency payments from any common fund settlements in this Action.  *See* ECF No. 402 at 6; *see also* ECF No. 526 (Bartow Decl., ¶ 7).  CalSTRS' retention agreement also includes a second cap that limits the total attorneys' fees to no more than 3.5 times the aggregate lodestar.  *Id.*

(approving fee schedule proposing 20% fee for the marginal settlement recoveries between $100 million to $500 million and 15% fee for marginal recoveries between $500 million and $1 billion).

Plaintiffs' Counsel will also seek no more than $500,000 (less than 0.5% of the Settlement) as reimbursement for their expenses incurred since the Prior Settlements. With respect to service awards, Plaintiffs may submit an additional request for service awards in light of their continued commitment and contributions that led to this Settlement for the benefit of the putative class. *See, e.g., Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (court may recognize class representatives with an award from the settlement funds for their efforts benefitting the whole class). Any service/incentive award request will not exceed a total of $150,000 (approximately 0.14% of the $105 million Settlement with Société Générale). April 2023 Joint Decl. ¶ 56.

Any motion for attorneys' fees, reimbursement of expenses and service/incentive awards will be made at least fourteen (14) days prior to the deadline for Class Members to object or opt out of the Settlement and posted to the Settlement website. The motion will detail Plaintiffs' Counsel's efforts in this Action, support the reasonableness of the requests, and make clear that a substantial portion of the Settlement Fund will remain for the Class's benefit.

### 4. There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). Here, the Settlement Agreement sets forth all such terms or specifically identifies all other agreements that relate to the Settlement (namely, the Supplemental Agreement). *See* April 2023 Joint Decl., Ex. 1, § 40. The Supplemental Agreement provides Société Générale a qualified right to terminate the Settlement Agreement under certain circumstances before final approval. *Id.* This type of

agreement is standard in complex class action settlements and does not impact the fairness of the Settlement.[17]

### 5. The Settlement Treats the Settlement Class Equitably and Does Not Provide Any Preferences

The Settlement also "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Distribution Plan provides for a *pro rata* distribution of the Net Settlement Fund among Authorized Claimants, a method this Court has already approved as fair, reasonable, and adequate. *See, e.g.*, *Payment Card*, 330 F.R.D. at 47 (finding that "pro rata distribution scheme is sufficiently equitable"). The Settlement does not favor or disfavor any of the Plaintiffs or Settlement Class Members; nor does it discriminate against, create any limitations, or exclude from payments any persons or groups within the Settlement Class. *See NASDAQ II*, 176 F.R.D. at 102. All Settlement Class Members would release Société Générale for claims based on the same factual predicate of this Action. The proposed Class Notice provides information on how to opt out of the Settlement; absent opting out, each Class Member will be bound by the release.

### 6. The *Grinnell* Factors Not Expressly Addressed Above Also Support Approval of the Settlement

#### a. The reaction of the Settlement Class to the Settlement.

Consideration of this *Grinnell* factor is premature prior to the Class receiving notice of the Settlement. *See In re GSE Bonds*, 414 F. Supp. 3d at 699 n.1. Plaintiffs support the Settlement with Société Générale (April 2023 Joint Decl. ¶ 57), and their approval likely is probative of the other Settlement Class Members' reaction to the Settlement. In connection with the Prior Settlements, few class members have opted out; there may be a similar reaction given the similarity

---

[17] *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-2330, 2016 WL 4474366, at *5, 7 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement); *accord* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) (explaining that "[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out.").

of the Société Générale Settlement to the Prior Settlements.  Plaintiffs will fully address the reaction to the Settlement in their final approval motion and at the Settlement Hearing.

### b.      The stage of the proceedings.

"[C]ourts encourage early settlement of class actions . . . because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).  The relevant inquiry for this factor is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc*., No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *see also In re Global Crossing Sec. and ERISA Litig*., 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  This factor does not require extensive discovery, or indeed any discovery at all, "as long as '[counsel] have engaged in sufficient investigation . . . to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.[18]

Plaintiffs conducted extensive factual and legal research and consulted experts to assess the merits of their claims. April 2023 Joint Decl. ¶ 12. Plaintiffs reviewed public information, including government pleas, non-prosecution agreements, and deferred prosecution agreements. Plaintiffs also had the benefit of Barclays' ACPERA cooperation, substantial settlement

---

[18] *See also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating that "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (finding that the litigants had "conducted meaningful pre-trial discovery," which included "an 'extensive' investigation" prior to filing the consolidated class complaint); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (stating that "'[t]he overriding theme of our caselaw is that formal discovery is not necessary'" so long as the class is not prejudiced and there is a factual basis for the settlement); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (stating that "formal discovery was [not] a necessary ticket to the bargaining table").

cooperation by HSBC and Deutsche Bank, and discovery produced by Citi, and JPMorgan. Because discovery is not required to support even final approval of a settlement, *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982), Interim Lead Counsel's well-informed views of the strength of claims and likely defenses weigh in favor of preliminary approval.

**c.**     **The ability of Société Générale to withstand greater judgment.**

Société Générale can withstand a judgment greater than $105 million but this factor alone does not affect the Settlement's reasonableness.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439, 460 (S.D.N.Y. 2004) (a defendant's ability to "pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"); *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014).

**II.     THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS**

The proposed Settlement Class to be certified for settlement purposes is:

> All Persons who purchased, sold, held, traded or otherwise had any interest in Euribor Products from June 1, 2005 through and including March 31, 2011, who were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted in Euribor Products in the United States or its territories from June 1, 2005 through and including March 31, 2011, including, but not limited to, all Persons who traded CME Euro currency futures contracts, all Persons who transacted in NYSE LIFFE Euribor futures and options from a location within the United States, and all Persons who traded any other Euribor Product from a location within the United States.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate, or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

As the Court already found when approving the Prior Settlements, the proposed Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). [19]  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).

---

[19] *Compare* Settlement Agreement ¶ 4, with ECF No. 234 ¶ 4, ECF No. 279 ¶ 4, ECF No. 364 ¶ 4, ECF No. 454 ¶ 4, ECF No. 518 ¶ 4.

A.      **The Settlement Class Meets the Rule 23(a) Requirements**

1.      **Numerosity**

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a). "Sufficient numerosity can be presumed at a level of forty members or more." *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). Here, there are thousands of geographically dispersed persons and entities that fall within the Settlement Class definition. *See* April 2023 Joint Decl. ¶ 54. Joinder would be impracticable

2.      **Commonality**

Commonality only requires the presence of a single common question of law or fact capable of class-wide proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); FED. R. CIV. P. 23(a)(2). Courts in this district routinely hold that the Rule 23(a) commonality requirement poses a "low hurdle." *See, e.g.*, *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-09367, 2018 WL 5619957, at *8 (S.D.N.Y. Aug. 7, 2018) (citations omitted).

This case presents scores of common questions of law and fact concerning, among other issues, personal and subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions that Defendants raised in their motions to dismiss. For example:

1. What constitutes a false or manipulative submission by a Euribor contributor panel bank? This threshold question involves issues of fact that will be of overriding importance in this litigation. As their traders talked and allegedly colluded about the optimal level of Euribor to profit from their proprietary positions held in Euribor Products, certain Defendants allegedly (and in some cases, admittedly) adjusted their Euribor submissions in the direction of their financial self-interest. We expect Defendants will contend that the communications are ambiguous, that the evidence is otherwise mixed, that that they had non-manipulative reasons for the Euribor submissions, and/or that the resulting submissions met the Euribor definition.

2.  Which of the Defendants were engaged in conspiratorial conduct in Euribor, and for what period(s) were they involved in the same?

19

3.   What would the non-manipulated Euribor be in the "but-for" world for each day of the class period?

Accordingly, Rule 23(a)(2) is satisfied.

### 3.   Typicality

Typicality under Rule 23(a)(3) requires that "each class member's claim arises from the same course of events[,] and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Here, Plaintiffs' and Class Members' claims arise from the same course of conduct involving Defendants' alleged false reporting and manipulation of Euribor and the prices of Euribor Products.   Plaintiffs' claims are typical of the Class Members' claims for purposes of the Settlement.  *See, e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997).[20]

### 4.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000). As discussed in Argument I.B.1. above, there are no conflicts between Plaintiffs and Class Members, and Plaintiffs' interest in proving liability and damages wholly aligns with the Settlement Class's interest.  Further, as this Court has twice found, Interim Lead Counsel are highly experienced in complex class action antitrust litigation and are adequate class counsel.  Accordingly, the requirements of both Rule 23(a)(4) and Rule 23(g) are satisfied.

---

[20]  *See also In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 379 (S.D.N.Y. 2010) (finding typicality where plaintiffs and the class "transacted in the same contracts, in the same centralized marketplace, [and] were allegedly negatively impacted by the same common course of manipulative conduct for which the same group of defendants is alleged to be legally responsible for the damages"); *Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1011 (N.D. Ill. 2020) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.").

**B.** **The Settlement Class May Be Certified Under Rule 23(b)(3)**

Rule 23(b)(3) certification is proper where the action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). To satisfy Rule 23(b)(3), Plaintiffs must conditionally establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

**1.** **Predominance**

"If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2014 WL 7882100, at *35 (E.D.N.Y. Oct. 15, 2014), *adopted,* 2015 WL 5093503 (E.D.N.Y. July 10, 2015). To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483 (ellipses in original).

Here, if the claims against Société Générale were not settled, common questions would have predominated over individual ones. All Plaintiffs and Class Members must answer the same questions regarding personal jurisdiction, subject matter jurisdiction, conspiracy, unlawful Euribor manipulation, and the amount of such manipulation. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) ("allegations of the existence of a price-

fixing conspiracy are susceptible to common proof"). Therefore, the Settlement Class satisfies

Rule 23(b)(3) for purposes of the Settlement.

### 2.    Superiority

Plaintiffs must also show that a class action is superior to individual actions.[21]  Here, a

class action is the superior method for the fair and efficient adjudication of this Action. *First*,

Settlement Class Members are significant in number and geographically disbursed, making a

"class action the superior method for the fair and efficient adjudication of the controversy." *See In*

*re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

*Second*, many Class Members have neither the incentive nor the means to litigate these

claims individually.  No Class Member "has displayed any interest in bringing an individual

lawsuit." *See Meredith Corp.*, 87 F. Supp. 3d at 661.  The damages most Class Members suffered

are likely small compared to the considerable expense and burden of individual litigation.  This

makes it uneconomic for an individual to protect his/her rights through an individual suit.  A class

action allows claimants to "pool claims which would be uneconomical to litigate individually," as

"no individual may have recoverable damages in an amount that would induce him to commence

litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566.

*Third*, the prosecution of separate actions by hundreds (or thousands) of individual

Settlement Class Members would impose heavy burdens upon the Court. It would create a risk of

inconsistent or varying adjudications of the questions of law and fact common to the Settlement

Class.  Thus, both prongs of Rule 23(b)(3) are satisfied for purposes of the Settlement

---

[21] Superiority considers: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action."  FED. R. CIV. P. 23(b)(3).

III.    **THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR**

Due process and Rule 23 require that the Class receive adequate notice of the Settlement. *Wal-Mart Stores*, 396 F.3d at 114.[22]  To be adequate, the method(s) used to issue notice must be reasonable. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988).

The proposed Notice and notice program—consisting of mailed, e-mailed, published, and online notice—is similar to the programs previously approved and successfully used for the Prior Settlements.[23]  *See* ECF No. 424 ¶ 6; ECF No. 498 ¶ 6; 549 ¶ 6.  The Notice carefully details the nature of the Action and the Settlement Class, provides an ample "Background of the Litigation," which describes the claims, issues, and/or defenses presented in the Action, and advises that the Court's Final Judgment will be binding for all Class Members that remain in the Class. Class Members are also advised of their opportunity to share their views on the Settlement with the Court. Claimants from the Prior Settlements will receive notice of the additional Settlement with Société Générale and will not have to file a new Proof of Claim and Release, if one was previously submitted, to participate in the Settlement.

By e-mailing the publication notice to claimants in Prior Settlements and sending the mailed notice to others identified as having traded Euribor products, notice is reasonably calculated

---

[22] Rule 23(c)(2) requires only that Rule 23(b)(3) class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must clearly state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

[23] The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950).  The direct-mailing notice component of the notice program will involve sending the Mailed Notice (April 2023 Joint Decl. Ex. 3) and the Proof of Claim and Release form (*id.* at Ex. 5) via First-Class Mail, postage prepaid to potential Settlement Class Members. Class Members that previously submitted claims will be e-mailed copies of the Publication Notice. *See id.*, Ex. 2 (Declaration of Elaine Pang) ("Pang Decl.").

23

to reach all Settlement Class Members.  The database of these recipients was compiled in connection with the Prior Settlements, and will be updated to capture any address changes to the extent possible. To the extent any non-duplicative potential Class Members are identified from cooperation received from Société Générale, notice will be mailed to them as well.

The Claims Administrator also will publish the publication notice (April 2023 Joint Decl. Ex. 4) in *The Wall Street Journal*, *Investor's Business Daily*, *The Financial Times*, B*arron's*, *Stocks & Commodities*, *Global Capital* (digital only), *Hedge Fund Alert*, *Grant's Interest Rate Observer*, *EuroMoney Magazine*.  Pang Decl. ¶¶ 4-14.  Banner ads will appear on targeted financial websites such as marketplace.com, cnbc.com, finance.yahoo.com, and hundreds of others, and newsfeed ads will be purchased on LinkedIn and microtargeted to individuals who may be Class Members. The Claims Administrator will disseminate a news release announcing the Settlement via *PR Newswire's* US1 Newsline distribution list, which reaches the news desks of approximately 10,000 newsrooms. Any Settlement Class Members that do not receive Notice via direct mail will likely receive Notice through the foregoing publications or word of mouth. The existing Settlement Website, www.EuriborSettlement.com, will continue to serve as a source to obtain necessary information regarding the Settlement. The Claims Administrator will continue operating a toll-free telephone number to answer questions and facilitate the filing of claims.

Interim Lead Counsel recommends that A.B. Data, Ltd. ("A.B. Data") be appointed as Settlement Administrator.  A.B. Data developed the Class Notice plan here and in the Prior Settlements with Interim Lead Counsel and is administering the claims in this Action.

## IV.    THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT

Interim Lead Counsel have designated Citibank, N.A. ("Citibank") to serve as Escrow Agent, to which Société Générale has consented.  Citibank has served as escrow agent in this case

and a number of complex class action settlements.[24]  Citibank has agreed to provide its services at market rates.

## V.    PROPOSED SCHEDULE OF EVENTS

In Appendix A (attached below), Plaintiffs propose a schedule for issuance of Class Notice, objection and opt-out opportunities for Settlement Class Members, and Plaintiffs' motions for final approval, attorneys' fees, expense reimbursements, and Incentive Awards.  If the Court agrees, Plaintiffs request that the Court schedule the Settlement Hearing for a date at least one hundred forty (140) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the Settlement Hearing.  The remaining dates will be determined by the date the Preliminary Approval Order is entered and the Settlement Hearing date.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with Société Générale and enter the accompanying Preliminary Approval Order.

---

[24]  *See, e.g., Boutchard v. Gandhi et al.*, No. 18-cv-7041 (N.D. Ill.); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y), and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (GBD); *In re JPMorgan Precious Metals Spoofing Litig.*, No. 18-cv-10356 (GHW) (S.D.N.Y.); *In re JPMorgan Treasury Futures Spoofing Litig.*, 20-cv-3515 (PAE) (S.D.N.Y.).

Dated: April 14, 2023
      White Plains, New York
                                          Respectfully submitted,

**LOWEY DANNENBERG, P.C.**            **LOVELL STEWART HALEBIAN**
                                              **JACOBSON LLP**

      */s/ Vincent Briganti*                        */s/ Christopher Lovell*
Vincent Briganti                         Christopher Lovell
44 South Broadway                     500 Fifth Avenue, Suite 2440
White Plains, NY 10601               New York, NY 10110
Tel.: (914) 997-0500                Tel.: (212) 608-1900
Fax: (914) 997-0035                Fax: (646) 398-8392
E-mail: vbriganti@lowey.com        E-mail:  clovell@lshllp.com

*Interim Lead Counsel*

**BERMAN TABACCO**                 **GLANCY PRONGAY & MURRAY LLP**
Joseph J. Tabacco, Jr.              Brian P. Murray
Todd A. Seaver                        Lee Albert
44 Montgomery Street, Ste. 650     122 East 42nd Street, Suite 2920
San Francisco, CA 94104            New York, NY 10168
Tel.: 415-433-3200                 Tel.: 212-682-5340
Fax: 415-433-6282                Fax: 212-884-0988

**BERMAN TABACCO**                 **KIRBY MCINERNEY LLP**
Patrick T. Egan                      David E. Kovel
One Liberty Square                 825 Third Avenue
Boston, MA 02109               New York, NY 10022
Tel.: 617-542-8300                Tel.: 212-371-6600
Fax: 617-542-1194                Fax: 212-751-2540

*Additional Plaintiffs' Counsel*

**APPENDIX A**

| PROPOSED SCHEDULE OF SETTLEMENT EVENTS | |
|---|---|
| **Event** | **Timing** |
| Deadline to begin mailing of Class Notice to Class Members and post the Notice and Claim Form on the Settlement Website (the "Notice Date") (Preliminary Approval Order ("PAO") ¶ 15) | 30 days after entry of the Preliminary Approval Order |
| Substantial completion of initial distribution of mailed notices (PAO ¶ 15) | 40 days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (PAO ¶ 34) | 56 days prior to the Settlement Hearing |
| Postmark Deadline for requesting exclusion (PAO ¶ 24) | 42 days prior to the Settlement Hearing |
| Filing Deadline for submitting objections (PAO ¶ 21) | 35 days prior to the Settlement Hearing |
| Deadline for filing reply papers (PAO ¶ 35) | 10 days prior to the Settlement Hearing |
| Settlement Hearing (PAO ¶ 12) | 140 days after PAO |
| Postmark Deadline for submitting Claim Forms (PAO ¶ 30) | 30 days after the Settlement Hearing |