**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FRONTPOINT AUSTRALIAN OPPORTUNITIES
TRUST and CALIFORNIA STATE TEACHERS'
RETIREMENT SYSTEM, on behalf of themselves and
all others similarly situated,

                    Plaintiffs,

       v.

UBS AG and THE ROYAL BANK OF SCOTLAND
PLC,

                    Defendants.

Docket No. 13-cv-2811 (PKC)

**COÖPERATIEVE RABOBANK U.A.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S FED. R. CIV. P. 60(B) MOTION TO VACATE THE DISMISSAL OF
COÖPERATIEVE RABOBANK U.A. (F/K/A COÖPERATIEVE CENTRALE
<u>RAIFFEISEN-BOERENLEENBANK B.A.)</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................. 1

RELEVANT PROCEDURAL BACKGROUND ....................................................... 2

      A.      Prior Proceedings in this Court............................................................ 2

      B.      The Second Circuit Appeal .................................................................. 5

LEGAL STANDARD ............................................................................................... 9

ARGUMENT .......................................................................................................... 10

I.      THE MANDATE RULE BARS THE REQUESTED RELIEF. ..................... 10

II.     THE LAW OF THE CASE DOCTRINE BARS CONSIDERATION OF
       *FULD* BECAUSE CALSTRS ABANDONED AND THUS WAIVED
       THE ARGUMENT.........................................................................................11

III.    CALSTRS'S MOTION IS UNTIMELY. ........................................................ 13

IV.   A CHANGE IN LAW IS NOT AN EXTRAORDINARY CIRCUMSTANCE
       UNDER RULE 60(B)(6). .............................................................................. 15

V.     IF THE MOTION IS GRANTED, RABOBANK RESERVES THE RIGHT TO
       MOVE TO DISMISS THE PROPOSED SIXTH AMENDED COMPLAINT. ............... 25

CONCLUSION....................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*53rd St., LLC v. U.S. Bank Nat'l Ass'n,*
  2023 WL 8283656 (E.D.N.Y. Nov. 30, 2023)..........................................................................14

*Agostini v. Felton,*
  521 U.S. 203 (1997).................................................................................................................16

*Asahi Metal Indus. Co. v. Sup Ct. of Cal.,*
  480 U.S. 102 (1987).................................................................................................................20

*Beazer E., Inc. v. Mead Corp.,*
  525 F.3d 255 (3d Cir. 2008).....................................................................................................13

*Biocad JSC v. F. Hoffmann-La Roche,*
  942 F.3d 88 (2d Cir. 2019).......................................................................................................19

*BLOM Bank SAL v. Honickman,*
  606 U.S. 204 (2025).................................................................................................................25

*Boyd v. Meachum,*
  77 F.3d 60 (2d Cir. 1996).........................................................................................................21

*Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.,*
  622 F. App'x 73 (2d Cir. 2015) ...............................................................................9, 11, 12, 13

*Caplan v. Dollinger,*
  2025 WL 1808530 (S.D.N.Y. Jun. 30, 2025) ........................................................................21

*Charles Schwab Corp. v. Bank of America Corp. (Schwab I),*
  883 F.3d 68 (2d Cir. 2018).........................................................................................................5

*Chevron Corp. v. Donziger,*
  2018 WL 1137119 (S.D.N.Y. Mar. 1, 2018) ....................................................................11, 12

*Chew v. Dietrich,*
  143 F.3d 24 (2d Cir. 1998).......................................................................................................12

*CIT Bank, N.A. v. Zisman,*
  2022 WL 17400908 (E.D.N.Y. Nov. 16, 2022)......................................................................18

*Cobb v. Am. Urb. Radio Networks LLC,*
  2025 WL 641437 (S.D.N.Y. Feb. 27, 2025)...........................................................................21

*In re Coudert Bros. LLP,*
  809 F.3d 94 (2d Cir. 2015)..................................................................................................11, 12

*Cruz v. Smith*,
2022 WL 4951539 (S.D.N.Y. Oct. 4, 2022) ...............................................................................9

*Devino v. Duncan*,
215 F. Supp. 2d 414 (S.D.N.Y. 2002)....................................................................................24

*In re: Diisocyanates Antitrust Litig.*
2026 WL 233978 (W.D. Pa. Jan. 29, 2026),............................................................................20

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,
417 F.3d 1267 (D.C. Cir. 2005) ...............................................................................................19

*Empresa Cubana del Tabaco v. Culbro Corp.*,
587 F. Supp. 2d 622 (S.D.N.Y. 2008).....................................................................................23

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 156 (2004)....................................................................................................................19

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
589 U.S. 1164 (2020)....................................................................................................................6

*FTC v. Elite IT Partners, Inc.*,
91 F.4th 1042 (10th Cir. 2024) .................................................................................................16

*FTC v. Ross*,
74 F.4th 186 (4th Cir. 2023) .....................................................................................................16

*Fuld v. Palestine Liberation Org.*,
101 F.4th 190 (2d Cir. 2024) .....................................................................................................11

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025)............................................................................................. *passim*

*Gonzalez v. Crosby*,
545 U.S. 524 (2019)....................................................................................................................23

*Gross v. Rell*,
585 F.3d 72 (2d Cir. 2009).............................................................................................................8

*Jones v. Goord*,
2007 WL 2903779 (W.D.N.Y. Sept. 30, 2007) ...................................................................9, 11

*Kashner Davidson Sec. Corp. v. Mscisz*,
601 F.3d 19 (1st Cir. 2010)..................................................................................................12, 22

*Kellom v. Quinn*,
86 F.4th 288 (6th Cir. 2023) .....................................................................................................25

*Kelly v. City of New York*,
  2001 WL 1132017 (S.D.N.Y. Sept. 24, 2001).................................................................18, 23

*Kerman v. City of New York*,
  374 F.3d 93 (2d Cir. 2004)..............................................................................................10

*LaFontaine v. Comm'r of Corr. Servs.*,
  2005 WL 1161934 (S.D.N.Y. May 17, 2005) ...................................................................14

*LFoundry Rousset, SAS v. Atmel Corp.*,
  690 F. App'x 748 (2d Cir. 2017) .......................................................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  Nos. 11 MDL 2262, 11 Civ. 2613, slip op. at 7 (S.D.N.Y. Apr. 24, 2023) ...........................15

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014)..............................................................................................19

*Maradiaga v. City of New York*,
  2022 WL 1782120 (S.D.N.Y. June 1, 2022) ........................................................................17

*Mark E. Mitchell, Inc. v. Charleston Libr. Soc.*,
  114 F. Supp. 2d 259 (S.D.N.Y. 2000)..................................................................................6

*Marrero Pichardo v. Ashcroft*,
  374 F.3d 46 (2d Cir. 2004).........................................................................................15, 16

*Marshak v. Sheppard*,
  381 F. Supp. 3d 261 (S.D.N.Y. 2019)..................................................................................14

*McDonald v. Piedmont Aviation, Inc.*,
  793 F. Supp. 75 (S.D.N.Y. 1992) .......................................................................................10

*Medinol Ltd. v. Cordis Corp.*,
  2019 WL 1428342 (S.D.N.Y. Mar. 29, 2019) ......................................................................23

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
  970 F.3d 133 (2d Cir. 2020).........................................................................................10, 14

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
  63 F.3d 160 (2d Cir. 1995)................................................................................................12

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir.1986)........................................................................................9, 15, 24

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018).............................................................................14, 24

iv

*In re OpenAI, Inc., Copyright Infringement Litig.*,
  2025 WL 1707564 (S.D.N.Y. June 18, 2025) .................................................................16

*Orient Plus Int'l Ltd. v. Baoseng Media Grp. Holdings Ltd.*,
   2025 WL 3022826 (S.D.N.Y Oct. 29, 2025) .................................................................21

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)...............................................................................................13, 15

*Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*,
   2025 WL 41609 (S.D.N.Y. Jan. 7, 2025) .................................................................18

*PRC Harris, Inc. v. Boeing Co.*,
   700 F.2d 894 (2d Cir. 1983)......................................................................................14

*Rodriguez v. Mitchell*,
   252 F.3d 191 (2d Cir. 2001).....................................................................................14

*Sargent v. Columbia*,
   75 F.3d 86 (2d Cir. 1996)............................................................................17, 18, 23

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC (Schwab II)*,
   22 F.4th 103 (2d Cir. 2021) ........................................................................................5

*Scott v. Gardner*,
   344 F. Supp. 2d 421 (S.D.N.Y. 2004)..................................................14, 18, 23, 24

*SEC v. Penn*,
   2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021) .........................................................15

*Smith v. Hochul*,
   2023 WL 2598841 (N.D.N.Y. Mar. 22, 2023) .........................................................14

*Stevens v. Miller*,
   676 F.3d 62 (2d Cir. 2012)..................................................................................17, 24

*Sullivan v. UBS AG*,
   149 F.4th 206 (2d Cir. 2025) ............................................................................. *passim*

*Tafari v. Weinstock*,
   2012 WL 1067810 (W.D.N.Y. Mar. 29, 2012)....................................................9, 11

*Tapper v. Hearn*,
   833 F.3d 166 (2d Cir. 2016)........................................................................10, 15, 16

*In re Terrorist Attacks on Sep. 11, 2001*,
   741 F.3d 353 (2d Cir. 2013).............................................................................16, 17, 24

*Tolbert v. Queen's Coll.*,
242 F.3d 58 (2d Cir. 2001)............................................................................................8

*Tronox Inc. v. Anadarko Petro. Corp.*,
2025 WL 2242166 (S.D.N.Y. Aug. 6, 2025)..................................................................13

*United Airlines, Inc. v. Brien*,
588 F.3d 158 (2d Cir. 2009)........................................................................................16

*United States v. Aquart*,
92 F.4th 77 (2d Cir. 2024) ..........................................................................................18

*United States v. Bell*,
5 F.3d 64 (4th Cir. 1993) .............................................................................................10

*United States v. Ben Zvi*,
242 F.3d 89 (2d Cir. 2001)......................................................................................10, 11

*United States v. Epskamp*,
832 F.3d 154 (2d Cir. 2016)..........................................................................................21

*United States v. Husband*,
312 F.3d 247 (7th Cir. 2002) ........................................................................................12

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002)..............................................................................9, 11, 12

*United States v. Tenzer*,
213 F.3d 34 (2d Cir. 2000)............................................................................................10

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)..................................................................................................20

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)..........................................................................................12

*Warren v. Fisher*,
2013 WL 1164492 (D.N.J. Mar. 19, 2013)...................................................................25

*We-Flex, LLC v. NBSP, Inc.*,
2012 WL 1440439 (S.D. Tex. Apr. 25, 2012) .............................................................25

*Wright v. Poole*,
81 F. Supp. 3d 280 (S.D.N.Y. 2014)..........................................................................9, 11

*Wyche v. Advanced Drainage Sys., Inc.*,
332 F.R.D. 109 (S.D.N.Y. 2019) ..................................................................................15

**Statutes**

15 U.S.C. § 22................................................................................................................6, 20

**Other Authorities**

Fed. R. Civ. P. 60(b) ...........................................................................................................9

Fed. R. Civ. P. 60(c)(1)......................................................................................................13

Coöperatieve Rabobank U.A. ("Rabobank") respectfully submits this memorandum of law in opposition to Plaintiff California State Teachers' Retirement System's ("CalSTRS") Fed. R. Civ. P. 60(b) Motion to Vacate the Dismissal of Rabobank (the "Motion"), Dkt. No. 621.[1]

**PRELIMINARY STATEMENT**

Nine years ago, after permitting five complaints, this Court dismissed Plaintiffs' claims against Rabobank based on a lack of personal jurisdiction. No Plaintiff transacted with Rabobank and there were no allegations of relevant Rabobank conduct in the United States. This Court also concluded at the time that enough was enough and denied Plaintiffs leave to file a fifth amended complaint. The Second Circuit affirmed the dismissal of Rabobank, holding that "there is no personal jurisdiction over Rabobank . . . and the claims against [it] must be dismissed." *Sullivan v. UBS AG*, 149 F.4th 206, 220 (2d Cir. 2025). CalSTRS now wants a do-over. It argues that *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), represents a "sea change in the law" requiring a recall of the Second Circuit's mandate, reversal of this Court's prior decision, and the reinstatement of claims against Rabobank. Pls.' Mem. Supp. Mot. to Vacate the Dismissal of Rabobank ("Mem.") at 1, Dkt. No. 622. CalSTRS's motion should be denied. Rule 60 presents an extraordinarily high burden for CalSTRS—one it does not and cannot meet; none of CalSTRS's arguments override bedrock legal principles concerning respect for the finality of judgments.

To begin with, CalSTRS's motion betrays an extraordinary lack of candor about the history of this nearly 13-year-old case. In opposing Rabobank's motion to dismiss nine years ago, CalSTRS advanced the very argument it now wants to make again—that personal jurisdiction over antitrust claims should be analyzed under a more lenient Fifth Amendment standard. CalSTRS

---

[1] Rabobank also opposes CalSTRS's Motion for Leave to Amend and File a Proposed Sixth Amended Class Action Complaint, Dkt. No. 623, because it is premised on CalSTRS's Rule 60 motion being granted. If the motion to amend is granted, Rabobank reserves its rights to move to dismiss the Sixth Amended Complaint.

1

then abandoned that argument on appeal. The Supreme Court decided *Fuld* while CalSTRS's appeal was still pending, yet CalSTRS did not bring it to the attention of the Second Circuit. For strategic purposes or otherwise, CalSTRS remained silent. Following the Second Circuit's decision, CalSTRS did not seek rehearing in the Second Circuit, ask the Second Circuit to recall its mandate, or petition for Supreme Court review.

CalSTRS's Motion fails for at least four independent reasons. *First*, the Motion is an improper collateral attack on the Second Circuit's ruling and violates the mandate rule. CalSTRS cites no case granting Rule 60 relief based on a change in law that occurred during the pendency of an appeal—let alone a case where the movant failed to bring the change to the attention of the appellate court. *Second*, CalSTRS waived its Fifth Amendment theory by arguing it to this Court and then failing to raise it on appeal (even after *Fuld*). *Third*, the Motion is untimely. No court has ever granted a Rule 60 motion nine years after the fact based on a change in the law. *Fourth*, mere changes in law do not constitute the extraordinary circumstances required for Rule 60(b)(6) relief. And, *Fuld* is not "beyond any question" inconsistent with this Court's 2017 order dismissing Rabobank. Accordingly, this Court should deny CalSTRS's Motion.

## **RELEVANT PROCEDURAL BACKGROUND**

### A.     **Prior Proceedings in this Court**

This action commenced in February 2013. Class Action Compl., Dkt. No. 1. Plaintiffs[2] thereafter amended their complaint four times between 2013 and 2015,[3] including twice after Defendants made a submission to the Court explaining the jurisdictional and other defects in the

---

[2] We refer to Plaintiffs collectively when discussing prior proceedings. CalSTRS is the only Plaintiff seeking to re-assert claims against Rabobank.

[3] Fourth Am. Class Action Compl. (the "FAC"), Dkt. No. 174; Third Am. Class Action Compl., Dkt. No. 139; Second Am. Class Action Compl., Dkt. No. 113; Am. Class Action Compl., Dkt. No. 75.

complaints.[4]   As relevant here, Plaintiffs alleged that Rabobank conspired with 19 other Defendants to manipulate the Euro Interbank Offer Rate ("Euribor") up and down over a six-year period, June 2005 to March 2011 (the "Relevant Period"), in violation of the Sherman Antitrust Act of 1890, 15 U.S.C. §§ 1–7.  FAC ¶ 1, FAC ¶¶ 422–456.[5]  The FAC did not allege that any Plaintiff transacted with Rabobank or that Rabobank engaged in wrongful acts in the United States.

In October 2015, Defendants moved to dismiss the FAC for failure to state a claim, lack of subject matter jurisdiction, and, as to Rabobank and other foreign banks and brokers (collectively, the "Foreign Defendants"), for lack of personal jurisdiction.  Dkt. No. 197.  In opposing the Foreign Defendants' jurisdictional motion, Plaintiffs argued, among other things, that personal jurisdiction should be analyzed under a broader Fifth Amendment standard, not the Fourteenth Amendment's minimum contacts analysis:

> When a plaintiff invokes the Court's federal question jurisdiction with claims under federal statutes authorizing nationwide service of process—as here—specific jurisdiction over the person is analyzed differently from the traditional . . . "minimum contacts" approach . . . .  The resulting inquiry gives more deference to the federal government's enforcement of congressionally-enacted legislative policies than the . . . "minimum contacts" test's concern for interstate federalism.

Pls.' Mem. Opp. Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction at 3–4, Dkt. No. 228.

In February 2017, this Court dismissed all claims against the Foreign Defendants, including Rabobank, for lack of personal jurisdiction.  Mem. and Order, Dkt. No. 286, at 73–99.  The Court applied the traditional minimum contacts test to assess the exercise of specific jurisdiction.  *Id.* at 74–75.  In doing so, the Court declined to adopt Plaintiffs' position that the appropriate test for

---

[4] *See* Defs.' Ltr., Dkt No. 126.

[5] Contrary to CalSTRS's suggestion (Mem. at 17), no regulator found that Rabobank engaged in any multi-bank, six-year Euribor conspiracy.  The Department of Justice found that between January 2006 and December 2007, a single Rabobank Euribor submitter based in Utrecht, the Netherlands "received requests from two swaps traders located in London at a non-Contributor Panel bank [] to move Rabobank's Euribor submission in a direction that would benefit their trading positions."  Dkt. No. 174-9, Attachment A ¶ 81; *see* Dkt. No. 174-10 (Commodities Futures Trading Commission Order) at 39 (same).

3

personal jurisdiction in federal question cases differs from the test in diversity cases. *Id.* at 85. The Court also rejected Plaintiffs' invocation of the effects test, explaining that "[h]armful effects alone will not establish jurisdiction," *id.* at 87, and dismissed Plaintiffs' contention that New York bank registration constituted consent to jurisdiction, *id.* at 75–80. As to Rabobank specifically, the Court explained that Plaintiffs did not allege that "the existence, causation or intent to manipulate the Euribor . . . had its 'nucleus' or 'focal point' in the United States." *Id.* at 92. The Court emphasized that Plaintiffs neither "link[ed] communications, planning or enactment of the Euribor scheme to any Rabobank office, executive or employee in the United States" nor "allege[d] that Rabobank made communications with any United States person in furtherance of a conspiracy to fix the Euribor." *Id.* Mere allegations of "the existence of a New York branch" and employment of "derivatives traders in New York" did not suffice. *Id.* The Court concluded that "the Complaint fails to allege that Rabobank's underlying 'suit-related conduct . . . create[d] a substantial connection with the forum," and "conclude[d] that the Complaint does not allege minimum contacts between Rabobank and the United States sufficient to confer specific jurisdiction on . . . Rabobank." *Id.* The Court sustained only certain claims against Citigroup, Inc. and Citibank, N.A. (collectively, "Citi") and J.P. Morgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan"). *Id.* at 3, 100.

In March 2017, Plaintiffs requested leave to submit a Fifth Amended Complaint, contending that the amendments would cure the jurisdictional deficiencies in its pleadings. Pls.' Notice of Mot. for Leave to Amend and File Proposed Fifth Am. Class Action Compl., Dkt. No. 299. The Court had enough, recognized the prejudice to Defendants, and denied that request:

> Plaintiffs have already filed five complaints in this action. . . . **Rule 15(a)'s instruction that a court 'should freely give leave when justice so requires' does not contemplate an unchecked volley of re-pleading and motion practice**. . . . This action has now been pending for more than four years and is one of the oldest

actions on the undersigned's civil docket. ***Permitting further amendment to allege long-available facts and theories would result in undue delay, undue prejudice to defendants and misuse of the considerable judicial resources already expended on defendants' motion to dismiss***. . . . The time has come for this case to progress out of the pleading stage and toward a resolution on the merits.

Order on Proposed Fifth Am. Compl. 2, 4–6, Dkt. No. 340 (emphases added) (citation modified).

Two years later, Plaintiffs settled with the only remaining defendants, Citi and JPMorgan, and in May 2019 the Court entered a final judgment. Dkt. No. 499.

## B.    The Second Circuit Appeal

Plaintiffs appealed the dismissal of the Foreign Defendants. Dkt. Nos. 506, 509. Three months after filing their appeal, in August 2019, Plaintiffs requested a stay of appellate proceedings pending issuance of the Second Circuit's mandate in *Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC (Schwab II)*, 22 F.4th 103 (2d Cir. 2021).[6] The stay was lifted in 2022. Order, *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 132.

On appeal, Plaintiffs did not challenge this Court's denial of the motion to file a Fifth Amended Complaint, and they abandoned their argument that the Fifth Amendment applied to the personal jurisdiction analysis. Instead, Plaintiffs argued that their FAC satisfied the minimum contacts test under the Fourteenth Amendment. Final Form Response/Reply Brief for Plaintiffs-Appellants-Cross-Appellees ("App. Br.") at 11, *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 244 ("This is exactly what it means for a defendant to have purposely availed itself of U.S. markets and U.S. laws . . . ."); *id.* at 15 n.1 (invoking "minimum-contacts analysis"). Plaintiffs' appellate strategy was to argue that their complaint easily satisfied the minimum contacts test in light of three intervening decisions: *Schwab II* (addressing conspiracy jurisdiction); *Charles Schwab Corp. v. Bank of America Corp. (Schwab I)*, 883 F.3d 68 (2d Cir. 2018) (addressing jurisdiction

---

[6] Appellants' Motion to Hold the Appeals in Abeyance, *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 115.

based on defendants' transactions with plaintiffs); and *Ford Motor Co. v. Montana Eighth Judicial District Court*, 589 U.S. 1164 (2020) (addressing jurisdiction based on defendants' broader in-forum activities).  App. Br. at 24–45.  Plaintiffs' choice to abandon their Fifth Amendment argument was strategic—CalSTRS and its same counsel continued to advance the Fifth Amendment argument in other interest rate benchmark cases, including preserving the argument in a different Second Circuit appeal while the Euribor appeal was pending.[7]

While the appeal was pending, the Supreme Court issued *Fuld*.  *Fuld* was not an antitrust case.  It was a high-profile case that proceeded through this District and the Second Circuit and concerned the jurisdictional provision of the Promoting Security and Justice for Victims of Terrorism Act of 2019 (the "PSJVTA"), 18 U.S.C. §§ 2333-2334.  That carefully worded statute provided jurisdiction over the Palestine Liberation Organization ("PLO") and Palestinian Authority ("PA") if they decided to (1) maintain "facilities or establishments in the United States" or (2) "conduct[] any activity while physically present in the United States."  *Fuld*, 606 U.S. at 9.  Applying a "more flexible jurisdiction inquiry" under the Fifth Amendment, the Supreme Court held the provision constitutional because "[t]he PSJVTA ties federal jurisdiction to conduct closely related to the United States that implicates important foreign policy concerns."  *Id.* at 18.  The

---

[7] *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction at 25, *Sonterra Cap. Master Fund, Ltd. v. UBS AG*, 2017 WL 1091983 (S.D.N.Y. Mar. 10, 2017) (No. 15-cv-5844), Dkt. No. 209 (Yen LIBOR) ("The exercise of personal jurisdiction in [cases brought under federal statutes authorizing nationwide service of process] is subject only to the limitations imposed by the Due Process Clause of the Fifth Amendment, which are less restrictive [than the Fourteenth Amendment] . . . ." (quoting *Mark E. Mitchell, Inc. v. Charleston Libr. Soc.*, 114 F. Supp. 2d 259, 263–64 (S.D.N.Y. 2000))); Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction at 19, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516 (S.D.N.Y. 2018), (No. 15-cv-3538), Dkt. No. 114 (Sterling LIBOR) ("The exercise of personal jurisdiction in [a federal question case] is subject only to the limitations imposed by the Due Process Clause of the Fifth Amendment, which are less restrictive [than the Fourteenth Amendment] . . . ." (quoting *Mark E. Mitchell*, 114 F. Supp. 2d at 263–64)); Brief for Plaintiff-Appellant-Cross-Appellee at 73 n.11, *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86 (2d. Cir 2022) (No. 20-3626), Dkt. No. 128 ("Plaintiff also maintains that there are properly no constitutional or other limits on personal jurisdiction where (as here) Congress has provided for worldwide service of process.  15 U.S.C. § 22. That argument is foreclosed by this Court's existing precedent but appropriate for *en banc* consideration or Supreme Court review.").

Supreme Court declined "to delineate the outer bounds of" personal jurisdiction under the Fifth Amendment, but held that "[i]t is permissible for the Federal Government to craft a narrow jurisdictional provision that ensures, as part of a broader foreign policy agenda, that Americans injured or killed by acts of terror have an adequate forum in which to vindicate their right to [] compensation." *Id*. at 18, 21. The Court emphasized that the PJSTVA's jurisdictional provision is "suitably limited" so as to "not put respondents at broad risk of being haled into U.S. courts for myriad civil liability actions." *Id.* at 20. The Court explained:

> Far from haling just any run-of-the-mill private defendant into American courts, the PSJVTA represents but one targeted aspect of a multifaceted foreign policy toward these two *sui generis* foreign entities, both of which exercise governmental functions in a geopolitically sensitive region and have decades of meaningful contacts, ties, and relations with the United States.

*Id.* at 22 (citation modified).

If *Fuld* represented the "sea change" CalSTRS now ascribes to it in the antitrust context, Plaintiffs could have and should have requested leave to submit supplemental briefing—or at least submitted a Federal Rule of Appellate Procedure 28(j) letter informing the Second Circuit of *Fuld* and its impact on the personal jurisdiction issue being appealed. Indeed, on two prior occasions during the pendency of the appeal, Plaintiffs wrote Rule 28(j) letters to the Second Circuit with respect to other legal developments. Pls.' Ltr., *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 279; Pls.' Ltr., *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 304. Instead, Plaintiffs deliberately stayed silent.

On August 22, 2025, two months after *Fuld*, the Second Circuit affirmed in part, reversed in part, and vacated in part this Court's judgment. *Sullivan*, 149 F.4th at 226. The Second Circuit upheld jurisdiction as to certain claims against Foreign Defendants The Royal Bank of Scotland PLC ("RBS") and UBS AG ("UBS"), and affirmed dismissal of "[a]ll other claims by all other plaintiffs against all other defendants . . . for lack of personal jurisdiction." *Id.* at 221.

7

After concluding that no defendant (including Rabobank) engaged in any actions in the forum sufficient to justify the exercise of conspiracy jurisdiction, the Second Circuit ruled that RBS and UBS were subject to jurisdiction because certain Plaintiffs adequately alleged that: (1) they transacted with RBS and UBS in Euribor-based derivatives; and (2) RBS and UBS engaged in such transactions with other counterparties in the United States. *Id.* at 220. As to Rabobank, the Second Circuit held that no named Plaintiff transacted with Rabobank, and "Plaintiffs did not plausibly allege that Rabobank engaged in Euribor-based derivatives transactions with U.S. counterparties." *Id.* The Court thus instructed that "***there is no personal jurisdiction over Rabobank,*** *. . .* ***and the claims against [Rabobank] must be dismissed***." *Id.* (emphasis added).

The Second Circuit noted in its decision that Plaintiffs did not challenge, and thus forfeited any argument concerning, this Court's denial of leave to file a Fifth Amended Complaint:

> We recognize that Plaintiffs moved before the district court for leave to file a Fifth Amended Complaint, which the district court denied. However, Plaintiffs do not meaningfully argue on appeal that the district court erred in denying them leave to amend. Accordingly, they have forfeited any challenge to that ruling, *see Tolbert v. Queen's Coll.*, 242 F.3d 58, 75 (2d Cir. 2001); *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009), and our review is thus confined to the facts as alleged in the Fourth Amended Complaint.

*Sullivan*, 149 F.4th at 214 n.2.

Plaintiffs did not petition for *en banc* review at the Second Circuit based on *Fuld* or otherwise, nor did they petition the Supreme Court for a writ of certiorari. The Second Circuit issued its mandate on October 17, 2025. Oct. Mandate, *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 337-1. Plaintiffs did not move for the Second Circuit to recall its mandate.

On December 12, 2025, five months after *Fuld,* CalSTRS for the first time argued that *Fuld* requires the exercise of personal jurisdiction over Rabobank and asked this Court for leave to file a Rule 60 Motion vacating its nine-year-old order of dismissal. Letter at 1, Dkt. No. 613.

8

## LEGAL STANDARD

"[A] district court does not have jurisdiction to alter an appellate ruling where the appellate court has already considered and rejected the basis for the movant's Rule 60(b) motion." *LFoundry Rousset, SAS v. Atmel Corp.*, 690 F. App'x 748, 751 (2d Cir. 2017) (citation omitted).  A Rule 60 movant may not raise "matters implicitly decided by an appellate court" or relitigate "matters that could have been raised on appeal but were not." *Wright v. Poole*, 81 F. Supp. 3d 280, 287 (S.D.N.Y. 2014).  Thus, where a movant invokes a change in law that "arose *before* the issuance of the Second Circuit's [m]andate," the district court "lacks jurisdiction to consider the merits of the Rule 60(b) motion." *Jones v. Goord*, 2007 WL 2903779, at *2 (W.D.N.Y. Sept. 30, 2007); *accord Tafari v. Weinstock*, 2012 WL 1067810, at *3 (W.D.N.Y. Mar. 29, 2012).  And "[w]here an issue would have been ripe for review on an initial appeal but was not raised, the issue 'is [generally] considered waived'" if "a party had 'both an opportunity and an incentive to raise it . . . on appeal.'" *Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.*, 622 F. App'x 73, 74 (2d Cir. 2015) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)).

A Rule 60(b)(6) motion "must be made 'within a reasonable time' after entry of the judgment, and a court 'will not examine the merits of a judgment if the motion to set it aside was untimely.'" *Cruz v. Smith*, 2022 WL 4951539, at *2 (S.D.N.Y. Oct. 4, 2022) (citations omitted). "Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986).  No court has granted a Rule 60 motion nine years after the challenged decision.

Although timely Rule 60(b)(6) motions permit district courts to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief," Fed. R. Civ. P. 60(b)(6), such relief is appropriate "only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and

9

when the asserted grounds for relief are not recognized in" Rule 60(b)(1)-(5). *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (citation omitted). "[A] mere change in decisional law does not constitute an 'extraordinary circumstance.'" *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (citation omitted).

## <u>ARGUMENT</u>

## I. THE MANDATE RULE BARS THE REQUESTED RELIEF.

The mandate rule "describes the duty of the district court on remand." *United States v. Tenzer*, 213 F.3d 34, 40 (2d Cir. 2000). It "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Put differently, where the Second Circuit "has decided a question of law, the lower court on remand lacks discretion to decide that question to the contrary." *Kerman v. City of New York*, 374 F.3d 93, 110 (2d Cir. 2004). Importantly, "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Ben Zvi*, 242 F.3d at 95. An argument that a mandate should be recalled must be made to the appellate court, not the district court. *See, e.g.*, *McDonald v. Piedmont Aviation, Inc.*, 793 F. Supp. 75, 78–79 (S.D.N.Y. 1992).

Here, the Second Circuit's mandate forecloses CalSTRS from relitigating whether Rabobank is subject to personal jurisdiction. The Second Circuit held that "there is no personal jurisdiction over Rabobank, . . . and the claims against [it] must be dismissed," *Sullivan*, 149 F.4th at 220, and its mandate directed "further proceedings consistent with [that] opinion," Oct. Mandate at 2, Dkt. No. 337-1.

10

No exception to the mandate rule applies here.  CalSTRS's argument that Rabobank is subject to jurisdiction under the Fifth Amendment standard was "ripe for review" by the Second Circuit, *Ben Zvi*, 242 F.3d at 95, including because the "basis for relief . . . occurred before the mandate was issued."  *Wright*, 81 F. Supp. 3d at 287.  Plaintiffs made the Fifth Amendment argument eleven years ago in this Court, **and** *Fuld* issued while the appeal was pending.  Pls.' Mem. Opp. Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction at 3–4, Dkt. No. 228.  CalSTRS's choice to abandon the Fifth Amendment argument on appeal does not provide any basis to ignore the mandate.  *Ben Zvi*, 242 F.3d at 95; *Wright*, 81 F. Supp. 3d at 287 (district courts "lack[] jurisdiction to grant relief" where the "basis for relief . . . occurred before the mandate was issued"); *Tafari*, 2012 WL 1067810, at *3 (same); *Jones*, 2007 WL 2903779, at *2 (same); *see also In re Coudert Bros. LLP*, 809 F.3d 94, 101–02 (2d Cir. 2015) ("Our mandate impliedly decides at least enough issues to allow it to be effective.").[8]

## II.     THE LAW OF THE CASE DOCTRINE BARS CONSIDERATION OF *FULD* BECAUSE CALSTRS ABANDONED AND THUS WAIVED THE ARGUMENT.

The law of the case doctrine provides that "[w]here an issue would have been ripe for review on an initial appeal but was not raised, the issue 'is [generally] considered waived'" if "a party had 'both an opportunity and an incentive to raise it . . . on appeal.'"  *Call Ctr. Techs.*, 622 F. App'x at 74 (quoting *Quintieri*, 306 F.3d at 1229).  Said another way, a district court's "legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to [subsequently] challenge that decision."  *Chevron Corp. v.*

---

[8] Moreover, there can be no serious dispute as to the Second Circuit panel's awareness of *Fuld*, which itself reversed a prior Second Circuit decision.  Indeed, Circuit Judge Sullivan—who authored the August 22, 2025 opinion, *Sullivan*, 149 F.4th at 213—not only sat on the *Fuld* panel that denied the plaintiffs' motion for rehearing but also joined in part Circuit Judge Menashi's dissent from that denial.  *Fuld v. Palestine Liberation Or.g.*, 101 F.4th 190, 203 (2d Cir. 2024) (Menashi, J., dissenting).

11

*Donziger*, 2018 WL 1137119, at \*7 & n.55 (S.D.N.Y. Mar. 1, 2018) (quoting *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995)) (collecting cases).  This doctrine provides not only that a party relinquishes its *right* to advance an argument (such that the district court nevertheless may revisit the argument), but also generally[9] "bars the district court on remand . . . from reopening [waived] issues."  *Call Ctr. Techs.*, 622 F. App'x at 74 (quoting *Quintieri*, 306 F.3d at 1229); *see also, e.g.*, *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded.").[10]

CalSTRS waived the argument it now seeks to revive.  Plaintiffs raised the same argument when opposing Defendants' October 2015 motion to dismiss but then changed course on appeal and contended that three intervening precedents (*Schwab I*, *Schwab II*, and *Ford*) militated for the exercise of personal jurisdiction under the traditional minimum contacts standard.[11]  Even after *Fuld* issued, Plaintiffs never argued to the Second Circuit that it impacted this case, nor did they seek rehearing, recall of the mandate, or certiorari.  Instead, whether "by strategic choice or through lack of diligence," CalSTRS "waited until the last possible moment to raise [its *Fuld*] argument."  *Kashner Davidson Sec. Corp. v. Mscisz*, 601 F.3d 19, 23 (1st Cir. 2010).

CalSTRS's argument that "*Fuld* came too late to be considered in the Second Circuit," Mem. at. 1, fails.  The Third Circuit squarely rejected a nearly identical argument in *Beazer E.,*

---

[9] One inapplicable exception exists where "the mandate can reasonably be understood as permitting" the reopening of an issue.  *Call Ctr. Techs.*, 622 F. App'x at 74 (quoting *Quintieri*, 306 F.3d at 1229).  For the reasons discussed above, the October Mandate does not permit challenges to the Second Circuit's holding that "there is no personal jurisdiction over Rabobank, . . . and the claims against [it] must be dismissed."  *Sullivan*, 149 F.4th at 220.

[10] The law of the case doctrine's prohibition against consideration of waived issues is similar to, but distinct from, the mandate rule.  *See In re Coudert Brothers*, 809 F.3d at 101.

[11] CalSTRS suggests that *Waldman* (and subsequent Second Circuit decisions) dissuaded CalSTRS from advancing its Fifth Amendment argument by holding that the Fourteenth Amendment standard "appl[ies] in Fifth Amendment cases."  Mem. at 15.  This distorts jurisprudential history, as *Waldman* merely echoed long-standing precedent.  835 F.3d at 317 ("[T]he due process analysis . . . is basically the same under both the Fifth and Fourteenth Amendments.") (quoting *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)).

12

*Inc. v. Mead Corp.*, 525 F.3d 255, 264 (3d Cir. 2008), which describes the present circumstance quite well with just minor alterations, bracketed here:

> [*Fuld*] was issued about [two] months before [the appellate court's] decision in [*Sullivan*]. Aware of the [*Fuld*] opinion, [CalSTRS] made no effort to bring it to [the appellate court's] attention before the filing of [*Sullivan*]. [CalSTRS] now seeks to excuse its inaction by arguing that it was not permitted or required under Fed. R.App. P. 28(j) to notify the Court because [*Fuld*] did not affect an issue raised in its [*Sullivan*] brief. . . . [CalSTRS] cites no case in this Court adopting an unduly narrow construction of Rule 28(j) or a rigid limitation on our discretion to consider relevant new law. In any event, [CalSTRS] could have requested an opportunity to submit additional briefing based on [*Fuld*]. . . . The combination of the initial failure to raise the [Fifth Amendment argument] in the briefs and subsequent failure to advise this Court of the [*Fuld*] opinion before [*Sullivan*] was decided precludes [CalSTRS] from invoking the intervening law exception.

*Id.* CalSTRS speculates that raising its Fifth Amendment argument to the Second Circuit after *Fuld* issued would have "likely ultimately result[ed] in a remand to this Court" such that its Motion offered the most efficient course of action. Mem. at 16. That speculation is not a valid excuse. "Rule 60(b)(6) does not afford a second bite at the apple when a party voluntarily relinquishes the arguments it could have made against the decision on appeal." *Tronox Inc. v. Anadarko Petro. Corp.*, 2025 WL 2242166, at *3 (S.D.N.Y. Aug. 6, 2025); *Call Ctr. Techs.*, 622 F. App'x at 75 ("Our law on waiver disfavors a double-bite at the apple").

## III.    CALSTRS'S MOTION IS UNTIMELY.

Parties must seek Rule 60(b)(6) relief "within a reasonable time." Fed. R. Civ. P. 60(c)(1). CalSTRS has not and cannot cite a Rule 60 case holding that nine years is a "reasonable time"—whatever the circumstances for the delay. CalSTRS's motion effectively asks this Court to say that there is no outer bound of time—nine years, decades, more—to make a Rule 60 motion based on a change in law. In addition, Rule 60(b)(6)'s "extraordinary circumstances" standard requires that the movant be "faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). CalSTRS is not faultless here.

13

Prolonging "litigation indefinitely would cause [d]efendants undue prejudice given their interest in finality and repose." *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 240 (S.D.N.Y. 2018), *aff'd sub nom.*, *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020).  Accordingly, courts routinely deny Rule 60(b)(6) motions as untimely when made multiple years after the judgment.  *See, e.g.*, *Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir. 2001) ("We do not think that three and one-half years from the date judgment was entered is a reasonable time."); *Marshak v. Sheppard*, 381 F. Supp. 3d 261, 264 (S.D.N.Y. 2019) ("[F]ive years is not a reasonable time . . . ."); *see also Smith v. Hochul*, 2023 WL 2598841, at *5 (N.D.N.Y. Mar. 22, 2023) ("Courts in the Second Circuit have recognized 18 months as a reasonable time for bringing a Rule 60(b)(6) motion, and have required parties who delayed for more than 18 months, but not less, to demonstrate good cause for the delay." (citation modified)).

CalSTRS argues that its Motion is timely because "rather than count the number of years that have elapsed, the court 'must scrutinize the particular circumstances of the case,'" and CalSTRS "could not have brought this motion until *Fuld* came down—which was just six months ago."  Mem. at 9 (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)).  But decisions within this circuit, including those relied on by CalSTRS, confirm that the Court must evaluate the temporal gap "'between the *earlier decision* and the pending motion'—not only the controlling change in law." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 2023 WL 8283656, at *4 (E.D.N.Y. Nov. 30, 2023) (quoting *Scott v. Gardner*, 344 F. Supp. 2d 421, 426 (S.D.N.Y. 2004)).[12]

---

[12] CalSTRS cites *LaFontaine v. Comm'r of Corr. Servs.* to suggest that the period of "reasonable time" under Rule 60(c)(1) begins to run from the date the intervening change in law is issued, not the date of the original decision the movant is seeking to vacate.  2005 WL 1161934 (S.D.N.Y. May 17, 2005), *aff'd* 184 F. App'x 96 (2d Cir. 2006).  But the statement from *LaFontaine* upon which CalSTRS relies—"the argument raised by petitioner, based on the Second Circuit decision in *Galarza*, could not have been raised until that decision was handed down"—is *dicta* in a case where the Court denied Rule 60(b)(6) relief on the grounds that the motion was untimely.  *Id.* at *3.  The controlling rule is that the Court must evaluate the temporal gap "'between the earlier decision and the pending motion'—not only the controlling change in law." *53rd St.*, 2023 WL 8283656, at *4 (quoting *Scott*, 344 F. Supp. 2d at 426).

The unusual circumstance of prolonged appellate proceedings does not change the analysis. Indeed, in the Rule 60(b)(2) context, "[i]t is well-settled law in the Second Circuit that an appeal of a final judgment does not toll" the time to file under Rule 60(c)(1). *Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109, 113 (S.D.N.Y. 2019). There is no valid reason to exempt Rule 60(b)(6) motions from that limitation. A change in law arising six years after the 2019 judgment does not justify "a zombie-like form of litigation, where despite extensive briefing, extensive decisions undisturbed on appeal, and the passage of many years, there is no finality and litigants may simply begin anew." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Nos. 11 MDL 2262, 11 Civ. 2613, slip op. at 7 (S.D.N.Y. Apr. 24, 2023).

Nor is CalSTRS "faultless in the delay." *Pioneer Inv. Servs.*, 507 U.S. at 393. **Plaintiffs** requested a stay of the appellate proceedings pending the outcome of *Schwab II*—a request which Rabobank did not join. That stay delayed the appellate proceedings by more than two years. Appellants' Motion to Hold the Appeals in Abeyance, *Sullivan*, 149 F.4th 206 (No. 19-1769), Dkt. No. 115. Further, Plaintiffs could have raised *Fuld* before the Second Circuit and failed to do so. *SEC v. Penn*, 2021 WL 1226978, at *6 (S.D.N.Y. Mar. 31, 2021) ("delay in filing [Rule 60(b)(6)] motion" was unacceptable where party filed motion "more than two years after the Court entered judgment . . . and more than two months after the Supreme Court's [intervening] decision"). CalSTRS's motion is untimely.

## IV.   A CHANGE IN LAW IS NOT AN EXTRAORDINARY CIRCUMSTANCE UNDER RULE 60(B)(6).

"Rule 60(b)(6) applies only 'when . . . there are extraordinary circumstances justifying relief.'" *Tapper*, 833 F.3d at 172 (quoting *Nemaizer*, 793 F.2d 58 at 63). The Second Circuit has made clear on a number of occasions that "a mere change in decisional law does not constitute an 'extraordinary circumstance.'" *Id.* (quoting *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir.

15

2004)); *In re Terrorist Attacks on Sep. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) (quoting *Marrero Pichardo*, 374 F.3d at 56); *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (same). Similarly, the Supreme Court has held that "[i]intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997). Otherwise, "the Supreme Court's [adoption of a] novel position" would always "justify vacatur under the Rule 60(b) catch-all." *FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1051 (10th Cir. 2024) (quoting *FTC v. Ross*, 74 F.4th 186, 194 (4th Cir. 2023)). That outcome "would effectively eviscerate finality interests and open the floodgates to newly meritorious Rule 60(b)(6) motions each time the law changes." *Id.* (quoting *Ross*, 74 F.4th at 194).

Extraordinary circumstances justifying relief based on a change in law have arisen in multidistrict litigations where district court decisions "result[] in disparate [and unreviewable] outcomes for similarly situated parties." *In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 1707564, at *4 (S.D.N.Y. June 18, 2025); *see Terrorist Attacks*, 741 F.3d at 358 ("disparate treatment of two sets of litigants suing for the same underlying tort" justified relief where cases were "ongoing in the same court, yet subject to different rules based on [the] use of the unusual 'mini-en banc' process"). But "[w]henever the law changes, parties who lost a prior case because of the now-altered law may feel that justice was not done," and "[g]enerally, the interest in finality outweighs that concern." *Terrorist Attacks*, 741 F.3d at 357.

CalSTRS fails to establish any extraordinary circumstances. This is not a case effecting "[t]he disparate treatment of two sets of litigants" alleging the same wrong. *Id.* at 358. Rather, CalSTRS simply "assert[s] the same injuries [it has] alleged in [its] complaint," *Tapper*, 833 F.3d at 172, with the added grievance that it "lost [its] case" as to Rabobank "because of the now-altered law" of personal jurisdiction, *Terrorist Attacks*, 741 F.3d at 357. That is not enough.

16

CalSTRS attempts to invoke a four-factor test set forth in *Sargent v. Columbia,* 75 F.3d 86 (2d Cir. 1996).  However, *Sargent* applied to a motion to recall a mandate, not a Rule 60(b) motion, and the Second Circuit since has declined to apply *Sargent* in the Rule 60 context, including because it "found no Second Circuit case, and none has been cited to [it], that has employed the [*Sargent*] framework in the context of a Rule 60(b) motion."  *Stevens v. Miller*, 676 F.3d 62, 69 n.7 (2d Cir. 2012).[13]  The above-discussed "exceptional circumstances" framework controls here.

But even under *Sargent's* four-factor test, CalSTRS's Motion fails.  The *Sargent* factors ask:  (1) whether the new decision is "beyond any question inconsistent with [the] earlier decision"; (2) whether the moving party notified the court of a pending case or motion that may alter the decisional law; (3) whether "substantial" time had elapsed between the earlier decision and the pending motion; and (4) whether the equities "strongly favor" the moving party.  *Sargent*, 75 F.3d at 90.  The factors are evaluated holistically, and courts have denied Rule 60(b)(6) relief even where three out of the four factors weigh in the movant's favor.  *See, e.g.*, *Maradiaga v. City of New York*, 2022 WL 1782120, at *2–3 (S.D.N.Y. June 1, 2022) (three of the *Sargent* factors weighed in favor of moving party but "[a]fter considering the equities . . . the factors in the aggregate weigh against reopening this case").  All four *Sargent* factors weigh against CalSTRS.

### A.    *Fuld* Is Not "Beyond Any Question Inconsistent" with this Court's Earlier Decision.

CalSTRS argues that *Fuld* is inconsistent, "beyond any question," with this Court's February 2017 dismissal order because *Fuld* applies a different test for personal jurisdiction than the one in the dismissal order.  Mem. at 13.  But to satisfy this factor, the "change in law must do

---

[13] While the Second Circuit "recognize[d] that *in some cases Sargent's* framework *may* be helpful in determining whether a change in decisional law, *unaccompanied by the neglect on the part of a moving party* . . . , may constitute the 'extraordinary circumstances' needed to warrant Rule 60(b)(6) relief," it has never adopted *Sargent* in the Rule 60 context.  *Stevens*, 676 F.3d at 69 n.7 (emphases added).  In any event, as set forth throughout this brief, there has been ample "neglect on the part of [the] moving party" here, which is another reason *Sargent* does not apply.  *Id.*

17

more than merely 'cast doubt' on the previous [decision]." *Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, 2025 WL 41609, at *2 (S.D.N.Y. Jan. 7, 2025) (quoting *United States v. Aquart*, 92 F.4th 77, 92 (2d Cir. 2024)).  *Sargent* requires that the change in law must "call[] into serious question the correctness of the court's judgment."  75 F.3d at 90 (citation omitted); *CIT Bank, N.A. v. Zisman*, 2022 WL 17400908, at *8 (E.D.N.Y. Nov. 16, 2022) (change in law not inconsistent when "it is likely that its holding would not change the result of [the] earlier decision").[14]  This standard was met in *Sargent* because the prior decision was diametrically opposed to the intervening change in law:  The prior decision barred a claim because the Second Circuit assumed the "Vermont Supreme Court would not imply a private right of action" but the Vermont Supreme Court then "held that employees [do] have a private right of action."  *Sargent*, 75 F.3d at 90.

*Fuld* is not "beyond any question inconsistent" with this Court's dismissal order.  While the Supreme Court in *Fuld* "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment," it did so only in a "narrow" context and did not delineate the outer bounds of the Fifth Amendment personal jurisdiction test or articulate what the personal jurisdiction inquiry should be for antitrust claims.  606 U.S. at 16, 18, 21.  Rather, the Supreme Court held that the PSJVTA's "narrow jurisdictional provision" is "suitably limited" and "does not put respondents at broad risk of being haled into U.S. courts."  *Id*. at 20.

CalSTRS argues that there is personal jurisdiction here by operation of the Clayton Act and the Foreign Trade Antitrust Improvements Act ("FTAIA"), and that the FTAIA's requirements

---

[14] The cases CalSTRS cites do not hold that this factor is met where an intervening change in law merely applies a "different analysis." Mem. at 13–14.  Those cases involved intervening changes in law which directly and specifically undermined the reasoning of prior decisions. *See Scott*, 344 F. Supp. 2d at 426–27 (intervening law held that a failure to exhaust administrative remedies was justified if the inmate "reasonably believed that DOCS regulations foreclosed such [remedies]" whereas prior decision noted inmate's "misinterpretation of the DOCS regulations did not excuse his failure to exhaust available administrative remedies"); *Kelly v. City of New York*, 2001 WL 1132017, at *5 (S.D.N.Y. Sept. 24, 2001) (intervening change in law issued two months after prior decision and specifically defined four new factors which were not considered in the prior decision).

"map[] perfectly onto the due process standard set forth in *Fuld*." Mem. at 6–7.  But CalSTRS's

argument asks this Court, on a Rule 60 motion, to interpret *Fuld* more broadly than it has ever

been interpreted—and misreads *Fuld* and Second Circuit precedent.

While the PSJVTA was enacted specifically to subject the PLO and PA to the jurisdiction

of U.S. courts, the FTAIA is not a jurisdictional statute.[15]  *See Fuld*, 606 U.S. at 20–21.  Rather,

the FTAIA addresses the *merits* of an antitrust claim.  *See Lotes Co. v. Hon Hai Precision Indus.

Co.*, 753 F.3d 395, 405 (2d Cir. 2014) ("[T]he requirements of the FTAIA go to the merits of an

antitrust claim rather than to subject matter [or personal] jurisdiction.").  In apparent recognition

that "[n]othing in the [FTAIA] 'speak[s] in jurisdictional terms or refer[s] in any way to the

jurisdiction of the district courts,'" *id*. at 405, CalSTRS argues that the FTAIA must be read

together with Section 12 of the Clayton Act to "reflect Congress's clear intent to enable domestic

plaintiffs to sue for antitrust injuries caused to them by defendants acting overseas."  Mem. at 7.

Such a reading is well beyond the bounds of the Supreme Court's holding in *Fuld*.  The FTAIA—

whether read alone or together with Section 12 of the Clayton Act—is not a "narrow jurisdictional

provision."  *Fuld*, 606 U.S. at 21 (PSJVTA is sufficiently "narrow" and "limits jurisdiction to only

two enumerated nonsovereign foreign entities").

Unsurprisingly, CalSTRS does not cite a single case applying *Fuld* to the FTAIA, the

Clayton Act, or antitrust claims generally.  The only decision Rabobank has identified applying

*Fuld* in the antitrust context did not adopt anything close to the rule CalSTRS urges; instead, it

held that "*Fuld* . . . does not alter the view that some showing of minimum contacts and purposeful

---

[15] Courts have rejected attempts to construe the FTAIA broadly in a way that is inconsistent with Congress's intent. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 156, 169 (2004) ("Congress designed the FTAIA to clarify, perhaps to limit, but not to expand the Sherman Act's scope."); *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) (rejecting attempt to "read the FTAIA broadly to permit a more flexible, less direct standard than proximate cause"); *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 99 (2d Cir. 2019).

19

availment with the United States remains necessary to establish personal jurisdiction in federal antitrust cases[.]" *In re: Diisocyanates Antitrust Litig.*, 2026 WL 233978, at *4 (W.D. Pa. Jan. 29, 2026).  In the absence of any caselaw extending *Fuld*'s "narrow" holding in the manner CalSTRS proposes, this Court, like the Supreme Court, should be "wary to reach further and bless more attenuated assertions of jurisdiction." *Id*. at 18.[16]

Moreover, unlike in *Fuld* where the Supreme Court held that "there is a close connection between the [federal statutory] predicate conduct and the United States," *id.* at 24, this Court already held that "the Complaint fails to allege that Rabobank's underlying suit-related conduct . . . create[d] a substantial connection with the forum." Mem. and Order, Dkt. No. 286, at 92 (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)) (internal quotation marks omitted; alterations in original).  Plaintiffs' "allegations of United States presence are limited to the existence of a New York branch, and the assertion that Rabobank employs derivatives traders in New York." *Id*. CalSTRS does not connect the alleged Euribor scheme to any Rabobank office or employee located in the United States. *Id*.  That is hardly the "meaningful relationship to the United States" that the Supreme Court required in *Fuld*.  *Fuld*, 606 U.S. at 23.

CalSTRS cites securities law cases to argue that *Fuld* "upended" the personal jurisdiction analysis, Mem. at 5, but its reliance on these cases is misplaced.  The court in *Orient Plus Int'l*

---

[16] To the extent CalSTRS is arguing that Section 12 of the Clayton Act *alone* provides a basis to establish personal jurisdictional over Rabobank, such an argument must be rejected under *Fuld*.  Like the Clayton Act, the U.S. Antiterrorism Act at issue in *Fuld* involved a nationwide service provision, but the Supreme Court did not hold that jurisdiction could be premised on a nationwide service provision alone.  606 U.S. at 7.  Such an argument is precisely the type of "unbounded jurisdictional theory" that the Supreme Court refused to endorse.  *Id*. at 18 (rejecting petitioners' argument that the Fifth Amendment due process clause "imposes *no* territorial limits on personal jurisdiction").  Moreover, if Section 12 of the Clayton Act, which requires only that a defendant "transact[] business" in the forum, 15 U.S.C. § 22, were found to confer personal jurisdiction, Rabobank and other foreign defendants would effectively be subject to general jurisdiction in the United States.  Not only would such a result ignore the Supreme Court's requirement that a jurisdictional statute link "the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States," *Fuld*, 606 U.S. at 23, but it would not comport with the reasonableness requirements of due process, which the Supreme Court has left undisturbed.  *Id*. (citing *Asahi Metal Indus. Co. v. Sup Ct. of Cal.*, 480 U.S. 102, 115 (1987)).

*Ltd. v. Baoseng Media Grp. Holdings Ltd.* applied *Fuld* to determine whether it had jurisdiction over claims brought against foreign independent directors of a corporation that issued securities on a U.S.-based exchange. 2025 WL 3022826, at \*1 (S.D.N.Y Oct. 29, 2025). That court held that Section 22 of the Securities Act is akin to the PSJVTA because it "confers jurisdiction only in certain securities cases, and even then, only to an enumerated set of individuals and entities whom Congress deemed to hold special positions of responsibility in the American financial system." *Id*. at \*7. The court explained that the Securities Act "does not put noncitizen corporate directors without a meaningful connection to the United States 'at broad risk of being haled' from across the globe, without warning, into this country's courts." *Id*. (quoting *Fuld*, 606 U.S. at 20). To the contrary, the independent directors voluntarily took on important roles in the governance of a U.S.-traded company, creating the requisite "meaningful relationship" to the United States. *Id*.; *see also Fuld*, 606 U.S. at 23.[17] By contrast, CalSTRS's requested expansion of *Fuld* would put foreign

---

[17] In *Orient Plus*, Judge Rochan "borrow[ed]" the Second Circuit's sufficient nexus test and applied it to the Fifth Amendment due process analysis. 2025 WL 3022826, at \*5. While CalSTRS has not argued for the applicability of the sufficient nexus test here, to the extent it does so on reply, it has waived this argument by failing to raise it. *Cobb v. Am. Urb. Radio Networks LLC*, 2025 WL 641437, at \*3 n.2 (S.D.N.Y. Feb. 27, 2025) ("[A]n argument omitted in a party's opening brief . . . is waived."). Moreover, the sufficient nexus test is employed in the *criminal* context to determine whether "extraterritorial application of federal criminal law comport[s] with constitutional due process." *United States v. Epskamp*, 832 F.3d 154, 168 (2d Cir. 2016). But the test for personal jurisdiction in criminal cases, where courts have long applied a less exacting due process inquiry, has no applicability in the civil context. *See e.g.*, *Boyd v. Meachum*, 77 F.3d 60, 66 (2d Cir. 1996) ("It has been said that a criminal court 'has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained.'"). To apply such a broad test would be in direct contravention with the Supreme Court's narrow holding and warning that defendants not be put "at broad risk of being haled into U.S. courts for myriad civil liability actions." *Fuld*, 606 U.S. at 20. Finally, even if the sufficient nexus test could be extended to civil cases—which it cannot—CalSTRS cannot demonstrate a sufficient nexus to the United States here. This Court has already held that Rabobank's suit-related conduct lacked a substantial connection to the forum, Mem. and Order, Dkt. No. 286, at 92, and Plaintiffs have not even attempted to tie any allegedly fraudulent communications by any Rabobank employees to any specific U.S.-based derivative transaction involving CalSTRS. Therefore, exercising personal jurisdiction here would be "arbitrary [and] fundamentally unfair." *Orient Plus*, 2025 WL 3022826, at \*6 (citation omitted).

*Caplan v. Dollinger* is inapposite. The *Caplan* court, in exercising personal jurisdiction over defendants' securities fraud claims, noted that "many" of the defendants were United States citizens and defendants had "all but concede[d] minimal contacts" with the United States. 2025 WL 1808530, at \*6 (S.D.N.Y. Jun. 30, 2025).

defendants with no connection to the United States "at broad risk of being haled into U.S. courts," in contravention of the Supreme Court's guidance. *Fuld*, 606 U.S. at 20.

At best for CalSTRS, it is unclear whether *Fuld* requires a different test in the antitrust context—let alone one that would provide for the exercise of jurisdiction over Rabobank. *Fuld* is not "beyond any question" inconsistent with this Court's prior dismissal of Rabobank. Accordingly, this factor weighs against relief.

### B.    CalSTRS Did Not Notify the Second Circuit of *Fuld*.

CalSTRS argues that it could not have known "that the Supreme Court would change the game." Mem. at 14.  That argument is disingenuous.  CalSTRS knew about the Fifth Amendment argument all along and advanced it in this Court.  And, CalSTRS and its counsel continued to press the Fifth Amendment argument in other cases while this case was pending.  Moreover, *Fuld* was a high-profile case in this District and before the Second Circuit even before it reached the Supreme Court, and continued to be well-publicized thereafter.[18]  CalSTRS could have flagged the pending case for the Second Circuit at any point in the appeal, including when the Supreme Court granted a writ of certiorari in 2024.  CalSTRS could have asked the Second Circuit to hold the appeal in abeyance pending resolution of *Fuld*, as it did with respect to *Schwab II*.  It did not.  And, CalSTRS's argument ignores that it had more than six months ***after*** *Fuld* issued to (1) submit a Rule 28(j) supplemental authority letter to the Second Circuit panel; (2) request to submit supplemental briefing based on *Fuld*; (3) petition the Second Circuit for rehearing *en banc*; (4) petition the Second Circuit to recall its mandate; and or (5) petition the Supreme Court for a writ of certiorari.  "By strategic choice or through lack of diligence," CalSTRS failed to do so. *Kashner*, 601 F.3d at 23.  And "a plaintiff's 'lack of diligence in pursuing review' is a factor mitigating the

---

[18] *See, e.g.*, *Fuld v. Palestine Liberation Organization*, SCOTUSblog, https://www.scotusblog.com/cases/case-files/fuld-v-palestine-liberation-organization/ (last visited Jan. 29, 2026) (collecting nine articles about *Fuld*).

extraordinary nature of a case." *Medinol Ltd. v. Cordis Corp.*, 2019 WL 1428342, at *3 (S.D.N.Y. Mar. 29, 2019) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 537 (2019)).

Indeed, in *Sargent*, the Second Circuit recalled its mandate only as to one of the two asserted claims. On that claim, the movant's "appeal papers not only made the argument that prevailed in [the intervening Vermont Supreme Court decision] but also brought to [the Second Circuit's] attention the fact that [a decision] was pending in the Vermont Supreme Court." *Sargent*, 75 F.3d at 90. By contrast, the Second Circuit declined to recall its mandate as to the other claim where the new argument "was not made to us on the appeal." *Id.* at 91. Accordingly, this factor weighs against relief.

### C.      Substantial Time Has Elapsed Between the Earlier Decision and this Motion.

CalSTRS brings this Motion nearly nine years after Rabobank was dismissed for lack of personal jurisdiction and more than six years after this Court entered final judgment. *See supra* Section III. This is clearly "'substantial time . . . between the earlier decision and the pending motion." *Scott*, 344 F. Supp. 2d at 426 (citations omitted). CalSTRS attempts to sidestep this factor by arguing that it is "inapplicable" because the nearly nine-year delay between this Court's dismissal and this Motion was not a result of "Plaintiff's willful delay." Mem. at 16. Not so. Plaintiffs triggered the two-year stay at the Second Circuit, and Plaintiffs abandoned their Fifth Amendment argument on appeal instead of raising it with the Second Circuit. In any event, whether CalSTRS willfully delayed the proceedings has nothing to do with this factor. Even the cases CalSTRS cites recognize that this factor focuses on preserving the finality of judgments. *See Kelly*, 2001 WL 1132017, at *3 ("In the interest of securing the finality of litigation, courts are reluctant to revisit long closed judgments, even in the face of a change in the controlling law."); *Empresa Cubana del Tabaco v. Culbro Corp.*, 587 F. Supp. 2d 622, 628 (S.D.N.Y. 2008) (same). Accordingly, this factor, too, weighs strongly against CalSTRS.

23

**D.    The Equities Do Not "Strongly Favor" CalSTRS.**

Here, the equities do not "strongly favor" CalSTRS; they weigh heavily against CalSTRS. CalSTRS argues extensively that the equities favor it because Rule 60 is "designed to afford parties an opportunity to resolve a dispute on its merits." Mem. at 17–18 (quoting *Nemaizer*, 793 F.2d at 63*)*. But, as noted, *supra*, in Section IV, "the interest in finality outweighs that concern." *Terrorist Attacks*, 741 F.3d at 357. Moreover, CalSTRS had—and forfeited—multiple opportunities to pursue its Fifth Amendment argument at the Second Circuit. As the Second Circuit said in *Stevens*:

> Even a cursory reading of [*Sargent*] demonstrates that it is of no help to the [Rule 60 movant's] position here. In *Sargent*, recall of the mandate was the only recourse available to the diligent appellant. She timely appealed, petitioned for a rehearing, and filed a petition for a writ of certiorari—in short, she exhausted every avenue of potential relief from the erroneous judgment. Here, the [movant] was not diligent.

676 F.3d at 69. So too here. CalSTRS may regret its decision to abandon its Fifth Amendment argument in light of *Fuld*, and it may be unsatisfied with the outcome in the Second Circuit, but that is not a basis to undo Rabobank's nine-year-old dismissal.

In addition, the cases on which CalSTRS relies involved far shorter time periods than the one at issue here, and the changes in law in those cases clearly affected the resolution of threshold issues—unlike the undefined test for personal jurisdiction that *may* apply in the antitrust context and which CalSTRS *hopes* will result in a different outcome. *Scott*, 344 F. Supp. 2d at 427 (change in law 10 months after challenged decision undermined prior threshold basis for dismissal, *see supra* n. 14); *Devino v. Duncan*, 215 F. Supp. 2d 414, 418 (S.D.N.Y. 2002) (change in law 27 months after judgment effectively converted voluntary dismissal into dismissal with prejudice).

Vacatur of a near-decade-old dismissal would eviscerate the "finality and repose" in which every defendant has a valid interest. *Ong*, 294 F. Supp. 3d at 240. It would be inequitable to reinstate, in 2026, claims the Court dismissed in 2017 solely because the Supreme Court issued a decision impacting the personal jurisdiction standard when that decision does not clearly alter the

24

jurisdictional outcome, especially when CalSTRS has not diligently litigated the issue.

Accordingly, this factor weighs against CalSTRS.

## V.   IF THE MOTION IS GRANTED, RABOBANK RESERVES THE RIGHT TO MOVE TO DISMISS THE PROPOSED SIXTH AMENDED COMPLAINT.

Rabobank was dismissed from this case with prejudice years ago.  Mem. and Order, Dkt. No. 286.  Notwithstanding Rabobank's status as dismissed, CalSTRS improperly includes claims against Rabobank in its Proposed Sixth Amended Complaint.[19]  Accordingly, this Court should deny CalSTRS's motion to amend to the extent that it includes Rabobank as a defendant.  Should this Court grant CalSTRS's Rule 60 Motion and allow Rabobank to be included as a defendant, Rabobank reserves the right to move to dismiss CalSTRS's Proposed Sixth Amended Complaint to the extent directed at Rabobank, *see Kellom v. Quinn*, 86 F.4th 288, 292 (6th Cir. 2023) ("[A] party doesn't forfeit a defense by failing to oppose a motion for leave to amend."),[20] including on personal jurisdiction grounds.[21]

## CONCLUSION

For the foregoing reasons, Rabobank respectfully requests that the Court deny the Motion.

---

[19] Proposed Sixth Amended Class Action Complaint, Dkt. No. 619.

[20] *See Warren v. Fisher*, 2013 WL 1164492, at *6 (D.N.J. Mar. 19, 2013) (similar); *We-Flex, LLC v. NBSP, Inc.*, 2012 WL 1440439, at *3 (S.D. Tex. Apr. 25, 2012) (similar).

[21] The Supreme Court has made clear that this Court must decide this Rule 60(b) motion before ruling on CalSTRS's proposed amendment as to Rabobank.  *See BLOM Bank SAL v. Honickman*, 606 U.S. 204, 210 (2025) ("[A] party seeking to reopen his case and replead must first satisfy 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply.").

25

Dated: January 30, 2026
      New York, New York

                Respectfully submitted,

                */s/ David R. Gelfand*
                David R. Gelfand
                Andrew B. Lichtenberg
                MILBANK LLP
                55 Hudson Yards
                New York, NY 10001
                Tel.:  (212) 530-5000
                Fax:  (212) 530-5219
                dgelfand@milbank.com
                alichtenberg@milbank.com

                Mark D. Villaverde
                MILBANK LLP
                2029 Century Park East, 33rd Floor
                Los Angeles, CA 90067
                Tel.:  (424) 386-4000
                Fax:  (213) 629-5063
                mvillaverde@milbank.com

                *Attorneys for Coöperatieve Rabobank U.A.*
                *(f/k/a Coöperatieve Centrale Raiffeisen-*
                *Boerenleenbank B.A.)*