# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Tel. 212.351.4000
www.gibsondunn.com

Jefferson E. Bell
Direct +1 212.351.2395
Fax: +1 212.351.5295
JBell@gibsondunn.com

*The Court has considered the position*
*of the parties (ECF 665 & 670) and agrees*
*that a stay of discovery pending the*
*resolution of a motion to dismiss is*
*warranted. The defendants' assertion*
*of a release in part of claims*
*alters the mix. Stay of discovery is*
*provisionally granted.*
*SO ORDERED*

June 8, 2026

VIA ECF
The Honorable P. Kevin Castel
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*[signature]*, USDJ
*6-12-26*

Re:     *FrontPoint Australian Opportunities Trust et al. v. UBS AG et al.*, 13-cv-2811 (S.D.N.Y.)

Dear Judge Castel:

Pursuant to Rules 1(C) and 3(B) of the Court's Individual Practices in Civil Cases, we write on behalf of Defendants in the above-captioned action, to respectfully request a stay of discovery pending resolution of Defendants' motion to dismiss the Fifth Amended Complaint.[1] *See* Dkt. 661 at 3. Defendants are also available for a conference, should the Court find it useful. Defendants have not previously asked the Court for an extension or adjournment of the schedule, Dkt. 611, and there are no upcoming conferences. The parties have conferred in good faith, and CalSTRS does not consent to Defendants' request for a stay of discovery, citing its preference for the existing schedule.

Following remand, Defendants have diligently advanced discovery in accordance with the scheduling order, Dkt. 611, and sought dismissal of all claims at the first opportunity, *see id.* ¶ 2. On April 17, 2026, Defendants filed a letter-brief, Dkt. 642, explaining why all of CalSTRS's claims merit immediate dismissal based on the AG Release and the *Allianz* Release. Not only does the text of the AG Release unambiguously bar CalSTRS from bringing "any and all claims that have been or could be asserted" against UBS in this very lawsuit by name, but it also bars CalSTRS from serving as a named plaintiff against *any* defendant. *See id.* at 11-20; Dkt. 659 at 7-13. On top of that, the *Allianz* Release bars CalSTRS's claims related to FX forwards. *See* Dkt. 640 at 20-23; Dkt. 658 at 13-15. In its opposition, Dkt. 655, CalSTRS failed to rebut Defendants' arguments; it did not dispute that it *elected* to enter settlements concerning the conduct at issue in this litigation, *see id.* at 10, 18. Instead, CalSTRS insisted that the Court could not consider two legal documents without a "full evidentiary record," *id.* at 1-2—a claim the Court has since rejected by authorizing Defendants to file a motion to dismiss premised on the releases, which will be fully briefed by August 28, 2026, *see* Dkt. 661 at 2-3. Despite the release of its claims, CalSTRS continues to pursue expansive discovery, including cross-border depositions, that will impose a substantial burden on not only Defendants, but also its non-party former employees. This discovery is not necessary—as the Court recognized, "the enforcement of a release may properly be considered on a Rule 12(b)(6) motion." Dkt. 661 at 2 n.1. Because it is now clear that Defendants' dispositive motion will likely render discovery unnecessary, the Court should stay discovery until it has an opportunity to adjudicate the motion.

---

[1] Capitalized terms share the same meaning as those defined in Defendants' letter-brief, Dkt. 642.

Courts exercise "considerable discretion" to stay discovery while a motion to dismiss is pending, *Gross v. Madison Square Garden Ent. Corp.*, 2023 WL 6815052, at *1 (S.D.N.Y. Oct. 17, 2023), or where a party has "sought leave to file a dispositive motion," *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277, at *2 (S.D.N.Y. Mar. 7, 1996) (citation modified); *see Cartica Mgmt., LLC v. CorpBanca S.A.*, 2014 WL 12788656, at *2 (S.D.N.Y. Aug. 1, 2014) (where this Court recognized its "broad discretion to grant a stay"). In deciding whether there is "good cause" to stay discovery under Federal Rule of Civil Procedure 26(c), courts consider: (1) "the strength of the motion to dismiss," (2) "the breadth of the discovery being sought and the burden of responding to the discovery requests," and (3) "the prejudice to the party opposing the stay." *Burns v. City of New York*, 2025 WL 3456671, at *1 (S.D.N.Y. Dec. 2, 2025). Each of these factors weighs in favor of staying discovery while the Court considers Defendants' motion. *See Amron v. 3M Minnesota Mining & Manufacturing Co.*, 2024 WL 263010, at *3 (E.D.N.Y. Jan. 24, 2024) (staying discovery pending motion to dismiss based on release); *Bah v. Apple Inc.*, No. 19-CV-3539 (S.D.N.Y. Feb. 9, 2021), Dkt. 133 (Castel, J.) (staying discovery pending resolution of defendants' motion to dismiss a third amended complaint).

### 1. Defendants' Forthcoming Motion Exposes Fatal Deficiencies In This Case.

A stay of discovery pending a motion to dismiss is appropriate where the underlying "motion is not unfounded in the law." *London v. Sony Music Publ'g*, 2025 WL 3172392, at *2 (S.D.N.Y. Nov. 13, 2025) (citation modified). Defendants' forthcoming motion clears that low bar because it raises "substantial arguments for dismissal of many, if not all, of the claims asserted in this lawsuit," obviating the need for discovery. *Richardson v. City of New York*, 2022 WL 2003340, at *2 (S.D.N.Y. June 6, 2022). As previewed in Defendants' letter-briefing, *see* Dkts. 642, 659, by signing the AG Release, CalSTRS not only settled the very claims it asserts against UBS, but it bargained away its ability to bring this class action against *any* defendant, including UBS and NatWest. Further, CalSTRS entered another settlement, the *Allianz* Release, that bars its claims related to its FX forward transactions. *See* Dkt. 640 at 20-23; Dkt. 658 at 13-15. CalSTRS cannot cure this fatal deficiency because it *already recovered* with respect to the alleged conduct. In authorizing Defendants to move to dismiss over CalSTRS's objection, the Court recognized that Judge Daniels granted a motion to dismiss based on the very same AG Release in *Fund Liquidation Holdings LLC v. UBS AG*, 2022 WL 3904556, at *3-4 (S.D.N.Y. Aug. 30, 2022), finding the AG Release "unambiguous." *See* Dkt. 661 at 2 & n.2; Dkt. 659 at 2, 6, 8. A stay is particularly warranted here, where, "the costs of modern federal antitrust litigation . . . counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citation modified).

Further, Defendants' anticipated motion presents a straightforward question of law—whether CalSTRS may proceed in the face of the undisputed releases. In *Amron*, a court stayed discovery in a similar situation, finding defendants made "a strong showing that Plaintiff's claims are barred by [a] Settlement Agreement release provision." 2024 WL 263010, at *3. Where "there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive," a stay of discovery is warranted. *Sharma v. Open Door NY Home Care Servs., Inc.*, 345 F.R.D. 565, 568 (E.D.N.Y. 2024) (citation modified).

Moreover, regardless of how the Court rules on Defendants' motion, the Court's decision is likely to significantly shape the contours of discovery moving forward. CalSTRS itself has

**Gibson, Dunn & Crutcher LLP**
200 Park Avenue | New York, NY 10166-0193 | T: 212.351.4000 | F: 212.351.5295 | gibsondunn.com

already conceded that the AG Release bars its individual claims against UBS for 96% of the proposed class period, Dkt. 655 at 2, and it appears to concede that it cannot serve as a named plaintiff against UBS for that time period, *id.* at 17. Consistent with that admission, the Court has already recognized that "[t]he release applies to claims alleging misconduct as to interbank offering rates from January 1, 2006 through December 31, 2010." Dkt. 661 at 2. The Court explained that the AG Release "'releases [UBS] from all civil claims . . . with respect to other IBORS,' specifically citing to this action," and it also "preclude[s] [CalSTRS] from . . . serving as a named plaintiff in a class action concerning the Relevant Conduct . . . ." *Id.* (quoting Dkt. 643-1 ¶ 10-11). Further, the Court recognized that the *Allianz* Release "contains a release provision governing CALSTRS's FX forward claims." Dkt. 661 at 2-3. Accordingly, at a minimum, Defendants' "motion to dismiss has the capacity to prune substantially the volume of worthy discovery," and thus "such a stay may meaningfully conserve the parties' resources." *Gastineau v. ESPN Inc.*, 2025 WL 2733155, at *2 (S.D.N.Y. Sept. 24, 2025). Given the strength of Defendants' motion based on the threshold issue of the releases—which have the potential to "dispose of the entire case," or at the very least, substantially narrow the claims and attendant discovery—a stay of discovery is appropriate. *Thrower v. Pozzi*, 2002 WL 91612, at *7 (S.D.N.Y. Jan. 24, 2002); *see Maddix v. City of New York*, 2025 WL 1530648, at *3 (E.D.N.Y. May 29, 2025) (staying discovery where a motion raised "substantial" arguments based on "gating issues").

### 2. Responding To The Discovery Sought Is Unduly Burdensome.

In deciding whether to stay discovery, courts also consider "the breadth of discovery sought and the burden of responding to it." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002). Even where (as here) discovery is already underway, "it [is] prudent to defer the rest of discovery until the pending motion to dismiss is adjudicated," especially when discovery is "quite substantial" and "will require a significant expenditure of time and energy on Defendants' part." *Psychic Readers Network, Inc. v. A&E Television Networks LLC*, 2025 WL 1380956, at *1 (S.D.N.Y. May 13, 2025); *Moore v. Johnson & Johnson*, 2025 WL 1569669, at *1 (S.D.N.Y. June 3, 2025) (same). Responding to the discovery sought here will require Defendants to devote a substantial amount of time and energy for several reasons.

To start, this action concerns sprawling allegations—an alleged six-year conspiracy with at least 12 co-conspirators—and the discovery at issue mimics the expansive pleading. For example, CalSTRS demands "*All*" documents related to 23 topics, based on its 233-page pleading, from a six-year period; this discovery will inevitably be voluminous and complex. *See* Exs. 1-2; Dkt. 625-1. Courts have recognized that, where the "breadth of the discovery sought . . . will cover a six-year period," a stay may be warranted. *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009); *see Sharma, Inc.*, 345 F.R.D. at 569. Defendants object to the overly broad discovery sought, but even if the Court "limit[ed] the boundaries of discovery," the allegations "go back decades in time," *O'Sullivan v. Deutsche Bank AG*, 2018 WL 1989585, at *8 (S.D.N.Y. Apr. 26, 2018), and the "search for such old records" is "time-consuming and expensive," *Maddix*, 2025 WL 1530648, at *3. Defendants have already logged hundreds of hours and significant resources advancing document discovery. Completing it will require Defendants to spend hundreds of hours and hundreds of thousands of dollars more—including reviewing tens of thousands of documents, many of which are more than 20 years old and/or implicate sensitive information that must be carefully reviewed under foreign data privacy laws. That level of expenditure makes a stay appropriate. *Accord In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *6 (S.D.N.Y. May 8, 2013) (staying discovery where it could

"take over 1000 attorney hours" and "cost at least $250,000 in attorney fees").

In addition, because the alleged conduct in this case occurred abroad, it requires Defendants to engage in discovery outside of the U.S., which will be complex and resource-intensive. UBS will need to engage Swiss counsel, engage a Swiss eDiscovery firm, and likely send New York-based counsel to Switzerland. UBS cannot use artificial intelligence to ease this burden, as Swiss law carries the threat of criminal penalties for certain breaches, and thus UBS requires manual review and redaction of every responsive document. As for NatWest, discovery will require retrieving data from a legacy system outside of the U.S. Considering "the complexity of the issues that discovery will present," *Lively v. Wayfarer Studios LLC*, 2025 WL 698287, at *1 (S.D.N.Y. Mar. 4, 2025), and "that it would be very burdensome for Defendants to search for and produce" the requested material, *Burns*, 2025 WL 3456671, at *1, a stay is warranted.

And beyond document discovery, CalSTRS has expressed interest in deposing 23 individuals, all of whom reside outside the U.S. Defendants do not agree that so many depositions are remotely warranted, but given Defendants' motion, it would be "wasteful" to subject any of "defendants' principals [or former employees] to wide-ranging depositions in the absence of a pleading that has withstood scrutiny under Rule 12(b)(6)." *In re Currency Conversion Fee Antitrust Litig.*, 2002 WL 88278, at *3 (S.D.N.Y. Jan. 22, 2002). The discussions concerning the logistics and availability of witnesses alone are "time consuming and frequently cumbersome," due in part to the likely need to proceed via The Hague Convention for some or all witnesses. *Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 330 (S.D.N.Y. 2024). Indeed, for NatWest, CalSTRS seeks to depose 12 former employees believed to be located in the Netherlands, France, and/or Scotland. For UBS, nine proposed deponents are believed to be located in Switzerland, which means that Plaintiffs may have no choice but to take depositions in Swiss court, under the supervision of a Swiss judge. Article 271 of the Swiss Criminal Code limits the ability of CalSTRS to compel individuals in Switzerland to participate in the collection of evidence for foreign proceedings outside of judicial or administrative assistance. Specifically, Chapter I of the Hague Convention applies to a potential witness who is unwilling to voluntarily participate in formal questioning in Switzerland. *See* Fed. Dep't of Just. & Police, *International Judicial Assistance in Civil Matters: Guidelines*, 10, 30, 32-36 (Jan. 1, 2026) (Switz.). Rather than a traditional U.S.-style deposition, under Chapter I, a Swiss judge poses questions to the witness in court; while counsel may proffer questions, "[t]he Swiss judge . . . remains the master of the proceedings." *Id.* at 42.[2]

### 3. A Temporary Stay Of Discovery Will Not Prejudice CalSTRS.

Finally, courts consider whether a stay would prejudice the non-moving party. But courts do not credit "general and unsubstantiated" claims of prejudice. *Gastineau*, 2025 WL 2733155, at *2. Where, as here, a "new Complaint" remains "unresolved, a delay in discovery, without more, does not amount to unfair prejudice." *Borjas v. N.Y. City Dep't of Educ.*, 2025 WL 3227476, at *2 (S.D.N.Y. Nov. 19, 2025). Instead, CalSTRS must identify the "specific harm" it will incur "from waiting for the adjudication of Defendants' motion." *Sigma Lithium Corp. v. Gardner*, 2024 WL 2867504, at *1 (S.D.N.Y. June 4, 2024).

---

[2] Given Plaintiffs' burdensome and complex requests, discovery motions may be unavoidable, and thus a "waste of precious resources" "could be entirely avoided . . . by staying discovery until the motion to dismiss has been decided." *Amron*, 2024 WL 263010, at *3; *see Davidoff v. Verifund Holdings, Inc.*, 2026 WL 391412, at *1 (E.D.N.Y. Feb. 12, 2026) (where a motion to dismiss "could end the case," a stay of discovery was warranted).

Gibson, Dunn & Crutcher LLP
200 Park Avenue | New York, NY 10166-0193 | T: 212.351.4000 | F: 212.351.5295 | gibsondunn.com

CalSTRS cannot "articulate[] any compelling reason why" it will incur prejudice from a stay of discovery "while the motion to dismiss is pending." *Gross*, 2023 WL 6815052, at *2. There is no need for immediate discovery here because "[t]here is no need to resolve any contested factual issues to decide Defendant[s'] pending motion to dismiss." *London*, 2025 WL 3172392, at *2. Further, CalSTRS's claims are not "inherently time sensitive"; they are "based upon allegations as to what allegedly occurred decades ago." *Amron*, 2024 WL 263010, at *3. Indeed, given that this case has been pending for more than 13 years, it would not be credible for CalSTRS to claim that it will suffer prejudice if it is required to wait for the Court's decision on Defendants' motion, to seek discovery above and beyond the tremendous amount of discovery it already has in its possession. Moreover, if the Court prefers, Defendants would be happy to expedite the motion to dismiss briefing.

If the Court grants a stay of discovery during the pendency of the motion to dismiss, this case will not come to a crashing halt. During any stay, CalSTRS would remain "busy with document discovery from the other parties," as well as the hundreds of thousands of documents and tens of millions of trading records already in its possession. *Lively*, 2025 WL 698287, at *2; *see Harrison v. Loc. One*, No. 24-cv-8619 (E.D.N.Y. Apr. 23, 2025 Order) ("Plaintiffs already have a significant amount of evidence related to their claims"); *Maddix*, 2025 WL 15306489585, at *3 (plaintiff "already appears to have a lot of relevant evidence"). In addition to CalSTRS's ongoing document review, the parties could take the opportunity to brief the motion to dismiss during a stay, as well. In other words, a stay will not inhibit CalSTRS's ability to make its case; a stay will simply promote efficiency as the Court determines if any part of this case should move forward.

Where, as here, Defendants have "a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay," a stay of discovery is appropriate. *Spencer Trask Software*, 206 F.R.D. at 368. We appreciate the Court's consideration of this matter.


Respectfully submitted,

*/s/ Jefferson E. Bell*
Jefferson E. Bell

*Attorney for Defendant UBS AG*

cc:  Counsel of Record (via ECF)


**Gibson, Dunn & Crutcher LLP**
200 Park Avenue  |  New York, NY 10166-0193  |  T: 212.351.4000  |  F: 212.351.5295  |  gibsondunn.com